(1)    Exhibit "A"    pgs. 1 of 4

REQUEST FOR RESTORATION OF PRIVILEGES AND FOR PARTICULAR RIGHTS

5 - 11749

DATED: DEC. 17, 2004.

MADE TO:

Commissioner of Massachusetts Department of Corrections: 50 Maple Street, Suite 3 Milford, MA 01757

FROM:

Felipe Oteze Fowlkes #W84202 AND ALL other inmates of the Massachusetts Department of Corrections who are similarily situated. MCI Concord: P.O. Box 9106, 965 Elm St., Concord, MA 01742.

YOUR COMMISSIONER:

PLEASE TAKE NOTICE, I AM making this Request in behalf of myself and other inmates who are or who may become similarily situated.

This Request involves challenges to your current Departmental policies and procedures which have ~~been~~ arbitrarily deprived me and other inmates of particular privileges and Rights which we enjoyed and were secured to us by the U.S. Constitutional Amendments and the Declaration of Rights from the Constitution of Massachusetts. It should be noted by you that the deprivation of some of these privileges and Rights violates the due process requirements and equal protection clauses of the Constitutions and threatens the safety, security and well-being of the inmates in your custody.

WHEREFORE, it is Respectfully Requested that you restore the following privileges and allow myself and other inmates, to exercise the following Rights.

1: Inmate Grievance Program to include inmate grievance Representatives similar to New York State and Federal prisoners.
2: Inmate Liason Committees to serve as a Liason between inmates and Administration similar to New York State and Federal prisoners.

3. Inmate organizations representative of the ethnic groups such as N.A.A.C.P., Latin-Americans and etc.

4. Inmate Account from the Canteen purchases to purchase Appliances and Recreation equipment and etc., by and for inmates.

5. Illeviate double bunking in all facilities.

6. Increase quality and quantity of meals.

7. New clothing to include pants with pockets, new coats and boots for all.

8. Proper Classification and Separation of Pre-Trial Detainees or un-Sentenced inmates from State Convicts.

9. Idle pay for inmates unable to work or awaiting transfer

10. Family Reuniuun Program to include Conjugal visits and free Bus Rides for Relatives and friends to visit inmates in facilities.

11. Music by mail to include Walkman Cassett players and cassett orders.

12. Packages to include hermitically sealed items and etc.

13. Smoking privilege of Cigarretts, tobacco products to be Restored. This privilege was taken away arbitrarily and capriciously.

As you KNOW, iNMATES iN MASSAChusetts were entitled to hearings before the imposition of SANctioNS to deprive them of A privilege which included smoking, CANteeN ANd etc. No DiscipliNARy Reports or HeaRiNgS were coNducted prior to imposing this SANctioN of No SmokiNg. Neither was the AlterNAtive of SmokiNg outdoors or iN A desigNAted AreA implemented. AlSO, NO NON-SmokiNg patches, NicodeRM OR ANti-smokiNg tablets or chewiNg gum issued to treat the Affects of NicotiNe CRAViNgS. Also, there is AN iNhereNt threat to the SAfety of iNmAtes siNce CorrectioN officials ARE NOW Able to MANipulate iNmates to hARm other iNmates FoR A pACk of CigARRetts or tobAcco. This places to much Power iN the hANds of OFFiCERS who ARE oNly humAN And NOT iNFAllible. INmAtes hAVe A geNeRAl feAR of beiNg hARmed by other iNmAtes who ARe pAid with cigARRetts by CorrectioN officiAl. This iNhereNt threAt ANd poteNtiAl FoR the Abuse of officiAl power Should be RemoVed by the RestoRAtioN of the SmokiNg priVilege.
The SmokiNg priVilege should be RestoRed FoR All those ReAsoNs listed Above.

(cont. on Reverse side)

# COMMO NEALTH OF MASSAC USETTS   Exhibit "B"

## DEPARTMENT OF CORRECTION

### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| Name | FOWLKES FELIPE O | | Grievance# 10874 | Institution MCI CEDAR JUNCTION |
|---|---|---|---|---|

| Commit No. | W84202 | Housing ~~10N BLOCK~~ OU#/22 | Date Of Incident | 20050519 | Date Of Grievance | 20050519 |
|---|---|---|---|---|---|---|

**Complaint**

Deprivations of rights and privileges. Deprivation of rights and privileges. the inmate complains that he is being deprived of particular rights and privileges, and that the deprivation of such rights and privileges are so "dissimilar" to the rights and privileges enjoyed by other state and federal prisoners, that it violates the eighth amendment clause which prohibits "cruel and unusual punishments" and the due process and equal protection clauses of the fourteenth amendment. The particular rights and privileges he complains of being deprived in violation of his constitutional rights, are listed as follows:
1. Smoking, privilege of cigarettes and tobacco products. The smoking privilege was taken away arbitrarily and capriciously as a form of punishment, and could have been maintained outside or in a designated area of the prison.
2. Inadequate food per meal (i.e. lack of quantity is unable to satisfy the human needs of an adult. repetitive is five types of breakfast meals for seven days a week; appauling is food meals that appears to be spit in and tampered with, and etc.)
3. Inadequate clothes (i.e. no boot-shoes, ski-coats, sweatshirts, long sleeve shirts; for north-eastern inclement weather are state issued; pants with no pockets are undignified and post a health risk from prisoners holding their genitals and matching shirt has no buttons, short sleeves, v-neck with DOC letters on the back, are the same as jailhouse clothing or worse, and etc.) Blankets fall apart within six months and pose a health risk to the lungs from breathing in the synthetic material. My clothing and blanket are incomparable with other state and federal prisoners. In fact, everything on this list shows that my rights and privileges are incompatible and so dissimilar with the rights and privileges of other state and federal prisoners as to violate my constitutional rights.
4. Idle pay when unable to work, is not recived by me (i.e. no inmate account.

**Remedy Requested**

Restoration and changes (where applicable) of the foregoing rights and privileges. Monetary compensations. I would like to be restoredmy smoking privilege and that you will address and allow each one of the rights and privileges I've listed above.

| Staff Recipient | Sullivan Daniel   CO II |
|---|---|

**Staff Involved**

**Signature**

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

| Date Received 20050530 | Decision Date |
|---|---|

**Signature**

**Final Decision**

**Decision**

**Signature** _____ **Date** _____

# COMMON<sup>--</sup>EALTH OF MASSACHSETTS  10874
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| Name | FOWLKES FELIPE O | | | Institution | MCI CEDAR JUNCTION | | |
|------|------------------|--|--|-------------|--------------------|--|--|

| Number | W84202 | Housing | O1 | Appeal Date | 06-JUL-2005 | Date Of Grievance | 19-MAY-2005 |
|--------|--------|---------|----|-------------|-------------|-------------------|-------------|

Appeal Received Date __13-JUL-2005__

**Appeal**

The inmate argues on this appeal that the IGC never rendered a decision on the grievance #10874 regarding the deprivation of his rights and privileges, and that IGC did not type in the full facts of his complaint which he provided to IGC.
Therefore, he appeals for a full review of the grievance #10874, including those portions which were not typed in the body of the complaint.

**Remedy Requested**

Is the same as that sought in the grievance except that the portion involving protective custody status is no longer applicable since he signed off of "AA" status.
Other than that, he still seeks restoration and privileges listed.  Also, monetary compensation and restoration of the smoking privilege "outside" or in a designated area of the prison(s).  He argues that the in-house smoking band does not and should not prevent him for exercising the smoking privilege outside or in other designated areas in or around the facilities or prison(s).  That each of the rights and privileges listed above will be addressed except for the protective custody issue which is no longer applicable because he signed off "AA".
He also requests such other and further reliefs.

Dated: July 6, 2005

**Staff Recipient**  Sullivan Daniel  CO II

**Signature**

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date**  13-JUL-2005     **Decision Date**  03-AUG. 05     **Decision**  DENIED

**Decision By**  SuPERINTENdENT,  DAVId F. NolAN

**Reasons**

**Signature** _____   **Date** _____

---

## INMATE RECEIPT

**Inmate's Name**  FOWLKES FELIPE O                    **Institution**  MCI CEDAR JUNCTION

**Number**  W84202                                    **Appeal Received Date**   13-JUL-2005

**Staff Recipient**  Sullivan Daniel  CO II

**Superintendent's Signature**  David Nolan

# COMMON 'EALTH OF MASSACI JSETTS    11434

## DEPARTMENT OF CORRECTION

### INMATE GRIEVANCE APPEAL FORM

### FORWARD TO SUPERINTENDENT

| | | | | |
|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | **Institution** | MCI CEDAR JUNCTION |

| | | | | | |
|---|---|---|---|---|---|
| **Number** | W84202 | **Housing** O1 | **Appeal Date** | 07-JUL-2005 | **Date Of Grievance** 23-JUN-2005 |

**Appeal Received Date** 11-JUL-2005

**Appeal**

I am appealing those portions of my grievance #11434 which do not apply to the medical provider, which are: my request for an extra tray or extra meal, and that the Prison comply with the public health law of daily minimum requirement of a 2,000 calorie diet. Inmate complains that the June 28, 2005, decision on his inmate grievance #11434; a copy of which is enclosed herewith, is erroneous because a portion or portions of the grievance does not apply to the medical provider and is therefore grievable through the DOC grievance process.

He complains that the prison is responsible for him being denied of a daily minimum 2000 calorie diet and that the prison should provide him with an extra tray or extra meal, or comply with the Public Health Law which requires a daily minimum of 2000 calories. He states that the breakfast, lunch and Dinner each contains less than 500 calories which when added together, equals far less than the minimum 2000 calories and do not contain a variet of nutrients. As a result he suffers ailments related to nutritional deficiency such as frequent urination, dry skin, brittle bones, pulled muscles, cramps and numbness in limbs as well as a crawling empty stomach, which can be remedied by an extra tray or extra meal, or that prisons compliance with the Public Health Law of daily minimum 2000 or more diet. Currently he is indigent and has been indigent since his imprisonment in DOC's sept 2004, and therefore could not afford to purchase canteen products, Although canteen is not a supplement for a healthy diet which law says he is entitled to despite canteen items.

**Remedy Requested**

That prison comply with the Public Health Law of daily minimum 2000 calorie diet and or provide him with an extra tray or meal.

Dated July 7, 2005

**Staff Recipient**

Sullivan Daniel  CO II

**Signature**

## DECISION BY SUPERINTENDENT

**Appeal Received Date** 11-JUL-2005    **Decision Date** 28-JuL-05 **Decision** DENIED

**Decision By** SupERiNtENdENt, DAVid F. NoLAN

**Reasons**

**Signature** _____    **Date** _____

## INMATE RECEIPT

| | | | | |
|---|---|---|---|---|
| **Inmate's Name** | FOWLKES FELIPE O | | **Institution** | MCI CEDAR JUNCTION |

| | | | | |
|---|---|---|---|---|
| **Number** | W84202 | | **Appeal Received Date** | 11-JUL-2005 |

**Staff Recipient** Sullivan Daniel  CO II

**Superintendent's Signature**

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| Name | FOWLKES FELIPE O | | | Grievance# 11434 | | Institution | MCI CEDAR JUNCTION | |
|---|---|---|---|---|---|---|---|---|
| Commit No. | W84202 | Housing | ORIENTATION ONE | | Date Of Incident | 20050623 | Date Of Grievance | 20050623 |

**Complaint**

denial of medical treatment for nutritional deficiency and deprivatino of daily minimum 2000 calorie diet. Inmate complaines that he is suffering from nutritional deficiency because he is not getting a sufficient amount of nutrients or calories per meal and necause the hypertension medicaitons he is taking absorbs the few nutrients or calories he receives from the deficient meals. He states that regular exervise is required to help control high bloood pressure and for his general health, but that he is unable to exercise regularly due to a lack of sufficient calories in the meals. He also suffers numbness in his limbs and other related illnesses. He complains that the doctor and dietician refuses to treat him for this deficiency by providing him with supplememtal multiple vitamins (which he cannot afford to purchase due to his indigency); liquid dietary supplement called 'ensure; and by refusing to direct that he be provided with an extra meal or extra tray per meal. He states that the daily dietary intake requires by law a minimum of 2,000 calories or more for those with speical dietary needs and that he's not receiving the minimum daily requirements nor those which are required to meet his special dietary needs of additional calories.

**Remedy Requested**

That he be provided with supplemental multiple vitamins together with an extra meal or extra tray evry meal and/or that the prison comply with the public health law of daily minimum requirement of a 2,000 calorie diet.

**Staff Recipient**    Sullivan Daniel    CO II

**Staff Involved**

**Signature**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20050626    **Decision Date** 20050628

**Signature** AUCOIN ANN MARIE CO I

**Final Decision** NON - GRIEV Med TREATMENT/DIAGNOS

**Decision** PURSUANT to 103 CMR 491, Medical decisions are not grievable as the medical prouider HAS ITS OWN GRIEVANCE PROCESS. I have Attached a Medical GRIEVANCE FORM FOR YOU to utilize. YOU MAY Submit YOUR Medical GRIEVANCE to the health service Administrator IN HSU.

**Signature**    **Date** 6-28-05

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## INMATE RECEIPT

| Name | FOWLKES FELIPE O | | | Institution | MCI CEDAR JUNCTION |
|---|---|---|---|---|---|
| Commit No. | W84202 | Grievance# | 11434 | Date Received | 20050626 |
| Signature. | Sullivan Daniel | CO II | | | |

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

Exhibit "E"

### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | Grievance# 11824 | **Institution** MCI CEDAR JUNCTION | | |
| **Commit No.** | W84202 | **Housing** ORIENTATION ONE | | **Date Of Incident** 20050711 | | **Date Of Grievance** 20050711 |

| | |
|---|---|
| **Complaint** | The inmate complains that DOC policy (103 CMR 481) which prohibits him from subscribing to, possessing and receiving pornograpic magazines for Playboy, Penthouse, Players, and etx., is unconstitutional because it violates his first Amendment right to access to media or free speech and press.  He further complains that since the prion and DOC have no legitimate reasons for restricting the pornographic magazines other than to :punish: him, that his due process rights are beingviolated as well as his fourteenth amendment right of equal protection of the law since some other state and federal inmates are being permitted to receive the magazines. |
| **Remedy Requested** | To subscribe to, possess and receive pornographic magazines from Playboy, Penthouse, Players and etc. |
| **Staff Recipient** | Aucoin Ann Marie    CO I |
| **Staff Involved** | |
| **Signature** | |

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

| | | | |
|---|---|---|---|
| **Date Received** | 20050712 | **Decision Date** 20050713 | |
| **Signature** | AUCOIN ANN MARIE | | |
| **Final Decision** | DENIED | | |
| **Decision** | IN ACCORDANCE with 103 CMR 481 SPECIFICAIIY 481.15 SECTion(6) PUBLICATIONS MAY BE Excluded solely because they CONTAIN SEXUAIIY Explicit MATERIAL OR feature Nudity AS deFiNed iN 103 CMR 481.06. | | |
| **Signature** | | **Date** 7/13/05 | |

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

### INMATE RECEIPT

| | | | |
|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | **Institution** MCI CEDAR JUNCTION |
| **Commit No.** | W84202 | **Grievance#** 11824 | **Date Received** 20050712 |
| **Signature.** | Aucoin Ann Marie    CO I | | |

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

**Name** FOWLKES FELIPE O                    **Institution** MCI CEDAR JUNCTION

**Number** W84202   **Housing** O1

**Appeal Date** 16-JUL-2005   **Date Of Grievance** 11-JUL-2005

**Appeal Received Date** 18-JUL-2005

**Appeal**

The inmate appeals from the decision of IGC on the grounds that DOC policy 103 CMR 481.15 section (b) and 103 CMR 481.06,which prohibits him from subscribing to, possessing and receiving pornographic magazines from Playboy, Penthouse, Players, And etc., is unconstitutional because it violates his First Amendment Right to Access to media or Free Speech and press. The Appellant also states that since the prison and doc have no legitimate reasons for restricting the pornographic magazine other than to punish him,  that his due process rights are being violated as well as his 14th Amendment right of equal protection of the law since other state and federal inmates are being permitted to receive the magazines and because he is being punished without a hearing.

**Remedy Requested**

To subscribe to, possess and receive pornographic magazines from Playboy, Penthouse, Players and etc.  And that DOC 103 CMR 481 be revised to permit the right or privilege, and for such other and further reliefs as may compensate for or remedy the violations of his constitutional Rights.

Dated: July 15, 2005

**Staff Recipient** Aucoin Ann Marie  CO I

**Signature**

## DECISION BY SUPERINTENDENT

**Appeal Received Date** 18-JUL-2005   **Decision Date** 11-Aug-05   **Decision** DENiEd

**Decision By** SupERiNtendENt, DAvid F. NolAN

**Reasons**

**Signature** _____ **Date** _____

## INMATE RECEIPT

**Inmate's Name** FOWLKES FELIPE O                **Institution** MCI CEDAR JUNCTION

**Number** W84202                    **Appeal Received Date** 18-JUL-2005

**Staff Recipient** Aucoin Ann Marie  CO I

**Superintendent's Signature** DavidNolan

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

Exhibit "F"

## FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| | | | | | |
|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | **Grievance#** 11823 | **Institution** | MCI CEDAR JUNCTION | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Commit No.** | W84202 | **Housing** ORIENTATION ONE | **Date Of Incident** | 20050712 | **Date Of Grievance** | 20050712 |

**Complaint**

The inmate complains that DOC inmate grievance program is not providing meaningful review of his inmate grievances, and the inmate grievance coordinator(s), Superintendent and Commissioner's grievance reviewer, Christian LaDucia, were and are not able to make informed decisions on his inmate grievances because the DOC grievance program does not have a "Master Index" containing a record of prior decisions by subject matter upon which they may rely on to base their decisions. As a result, the inmate claims he is being denied his first amendment right to effectively address DOC for redress of grievances, and that his right under the equal proteciton clause of the 14th Amendment is also being violated because the grievance coordinator, Superintendent, and Commissioner's grievance reviewer, may have made decisions allowing another inmate a right or privilege which they have denied to him. The inmate claims that he has the education and skills, and experience to prepare a master index system for the prison and DOC and would like to be assigned a job preparing it.

**Remedy Requested**

That the prison and DOC improve the inmate grievance program to provide for meaningful review of his inmate grievances by preparing a "master Index System containing a record of prior decisions by subject matter, upon which the grievance coordinator, Superintendent, and Commissioner's grievance reviewer may rely on to base their decisions, and that if possible, he be assigned a job to help prepare the Master Index System because he has the education, skills and experience, and for such other and further feliefs as may compensate for or remedy the violations of his constitutinal rights, and that the master index if prepared, be made availabel to him in the inmate population through law library or grievance program.

| | |
|---|---|
| **Staff Recipient** | Aucoin Ann Marie    CO I |
| **Staff Involved** | |
| **Signature** | |

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

| | | | |
|---|---|---|---|
| **Date Received** | 20050712 | **Decision Date** | 20050715 |

**Signature** AUCION ANN MARIE  CO I

**Final Decision** DENIED

**Decision** All GRIEVANCES ARE PROCESSED PURSUANT to 103 CMR 491, INMATE GRIEVANCES. EACH GRIEVANCE IS INVESTIGATED AND RESPONDED TO INDIVIDUALLY BASED ON SUPPORTING evidence that is provided And collected.

**Signature** _____ **Date** 7/15/05

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

## INMATE RECEIPT

| | | | |
|---|---|---|---|
| **Name** | FOWLKES FELIPE O | **Institution** | MCI CEDAR JUNCTION |

| | | | | | |
|---|---|---|---|---|---|
| **Commit No.** | W84202 | **Grievance#** | 11823 | **Date Received** | 20050712 |

11823

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| Name | FOWLKES FELIPE O | | | **Institution** MCI CEDAR JUNCTION | | | |
|---|---|---|---|---|---|---|---|

| **Number** | W84202 | **Housing** | O1 | **Appeal Date** | 16-JUL-2005 | **Date Of Grievance** | 12-JUL-2005 |
|---|---|---|---|---|---|---|---|

**Appeal Received Date** 18-JUL-2005

**Appeal**

The inmate appeals from the decision of the IGC on the grounds that DOC Inmate Grievance Program promulgated and maintained pursuant to 103 CMR 491, is not providing meaningful review of his inmate grievances and the grievance coordinator(s) Superintendent and Commissioner's grievance reviewer, Christian LaDucia, were and are not able to make informed decisions on his inmate grievances because the DOC grievance program does not have a "Master Index" containing a record of prior decisions by subject matter upon which they may rely on to base their decisions.
As a result, the Appellant claims that he is being denied his first Amendment Right to effectively Address DOC for redress of grievances, and that his right under the equal protection clause of the 14th Amendment is also being violated because the grievance Coordinator, Superintendent and Commissioner's grievance reviewer, may have made decisions allowing another inmate a right or privilege which they have denied to him.
The inmate claims that he has the education, skills and experience to prepare a Master Index System for the prison and DOC and would like to be assigned a job preparing it.

**Remedy Requested**

That the prison and DOC improve the inmate grievance program to provide for meaningful review of his inmate grievances by preparing a "Master Index System" containing a record of prior decisions by subject matter, upon which the grievance coordinator(s), superintendent(s) and commissioner's grievance reviewer may rely on to base their decisions, and if possible, he be assigned a job to help prepare the "Master Index System" because he has the education, skills and experience, and that the Master Index System if prepared, be made available to him in the inmate population through the grievance program and law library.
He also requests such other and further reliefs as may compensate for or remedy the violations of his Constitutional Rights.
Dated: July 16, 2005.
W/enc. Decision

**Staff Recipient**    Aucoin Ann Marie  CO I

**Signature**

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date**    18-JUL-2005    **Decision Date** 11-Aug-05 **Decision** DENIED

**Decision By**    SupERiNtendeNt, DAVid F. NoLAN

**Reasons**

**Signature**                                                    **Date**

---

## INMATE RECEIPT

**Inmate's Name**  FOWLKES FELIPE O                          **Institution**  MCI CEDAR JUNCTION

**Number**    W84202                                  **Appeal Received Date**    18-JUL-2005

**Staff Recipient**    Aucoin Ann Marie  CO I

**Superintendent's Signature**

Exhibit "G"

MARCH 21, 2005

FELIPE OTEZE FOWLKES# W84202
MCI- CEDAR JUNCTION
Box 100, So. WALpole, MA 02071

Commissioner: KAthleen M. Dennehy
MASS. Dept. of Correction
50 Maple Street, Suite 3
MILFORd, MA 01757 - 3698

IN Re: Placement in Protective Custody Program or Unit;
    Admission to Inter-State Prisoner exchange Program,
    And Status on Grievances Referred to Internal Affairs.

Dear Commissioner:

On MARCH 7, 2005, AN inmate grievance filed by me
WAS fowarded to the Superintendent of Cedar Junction
by the Grievance Coordinator for his Action Regarding
my Protective Custody issues. I've consistently Requested
to be placed in a Protective Custody Program or unit.
The REASONS for that REQUEST ARE set forth in my inmate
grievance #8836; A copy of which I've enclosed. The officials
And Superintendent of Cedar Junction have been Reluctant
to place me in the Program or Unit. I would simply ask

(CONT. ON REVERSE side)

Exhibit "H"

# COMMON 'EALTH OF MASSACI JSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

# 8836

| **Name** | FOWLKES FELIPE O | | | **Institution** | MCI CEDAR JUNCTION | | |
|---|---|---|---|---|---|---|---|
| **Number** | W84202 | **Housing** | O1 | **Appeal Date** | 06-MAY-2005 | **Date Of Grievance** | 03-MAR-2005 |
| | | | | **Appeal Received Date** | 11-MAY-2005 | | |

**Appeal**

Inmate grievance #8836 at the direction of Administrative Assistant, Joanne Paquin

**Remedy Requested**

To be placed in protective custody program or unit ASAP or to be transferred to another state facility preferrably New York State DOCS

**Staff Recipient**

Barrett Patrick M CO I

**Signature**

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date**    11-MAY-2005    **Decision Date**    08-JUN-2005    **Decision**    DENIED

**Decision By**    Nolan David F  SUPERINTENDENT

**Reasons**

**Signature**

Be advised, pursuant to 103 CMR 491, Inmate Grievances, appeals must be filed within ten working days from receipt of a decision on the original grievance. You received a decision on grievance #8836 on March 7, 2005. You have clearly exhausted these time limits; however, the Director of Classification has been informed of your issues regarding your housing placement.

**Date**    6/7/15

---

## INMATE RECEIPT

**Inmate's Name**    FOWLKES FELIPE O                                 **Institution**  MCI CEDAR JUNCTION

**Number**    W84202                                                              **Appeal Received Date**    11-MAY-2005

**Staff Recipient**    Barrett Patrick M  CO I

**Superintendent's Signature**

# COMMO WEALTH OF MASSAC JSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

Exhibit "C"

11331

| | | |
|---|---|---|
| **Name** | FOWLKES FELIPE O | **Institution** MCI CEDAR JUNCTION |

| | | | |
|---|---|---|---|
| **Number** | W84202 | **Housing** O1 | **Appeal Date** 08-JUL-2005 **Date Of Grievance** 21-JUN-2005 |

**Appeal Received Date** 11-JUL-2005

**Appeal**

First, the inmate appeals because the IGC refused to include the full facts of his grievance #11331 which he wrote to IGC, and Secondly, that the IGC did not address all of the remedies requested.

He therefore, ask for a denova review of the entire grievance he submitted.

On appeal he argues that the prison or DOC is responsible for discriminating against him due to his poverty, through its in-cell T.V. policy provides and allows the T.V. privilege only to those inmates who can afford them. He also argues that due to his poverty, the prison or DOC should allow him to receive his T.V. through the community charitable organizations he's listed and that no decision was made by IGC as to whether or not that would be allowable.

He also argues on this appeal that the law entitles him to idle pay and that due to his long term indigent status and inability to work, he is entitled to an equitable amount of canteen items without interference with his indigent legal mail status. The IGC never made a decision on his claims for idle pay and whether or not he should be provided with canteen items. Thus, his appeal revolves around his poverty and exactly what a poor inmate under these circumstances, would be entitled to.

Discriminatory pollicies violates the equal protection clause of the 14th amend to the U. S. Constitution.

**Remedy Requested**

That inmate's entire grievance be reviewed, including the "page" which IGC did not type in the body of the complaint containing the full facts. And that the IGC decision be reversed and modified to allow the prison to provide him with a color T.V. or to allow him to receive the color T.V. from the community charitable organizations he's listed. And that he be allowed "idle pay" which the law entitles him and an equitable amount of canteen items without interference with his indigent legal mail status, and for such other and further reliefs as might remedy these problem.

Dated: July 8, 2005

| | |
|---|---|
| **Staff Recipient** | Sullivan Daniel CO II |

| | |
|---|---|
| **Signature** | |

## DECISION BY SUPERINTENDENT

**Appeal Received Date** 11-JUL-2005    **Decision Date** 28-Jul-05    **Decision** DENIEd

**Decision By** SUPERintendent, DAVid F. NOLAN

**Reasons**

| | | |
|---|---|---|
| **Signature** | | **Date** |

## INMATE RECEIPT

| | | |
|---|---|---|
| **Inmate's Name** | FOWLKES FELIPE O | **Institution** MCI CEDAR JUNCTION |

| | | |
|---|---|---|
| **Number** | W84202 | **Appeal Received Date** 11-JUL-2005 |

| | |
|---|---|
| **Staff Recipient** | Sullivan Daniel CO II |

**Superintendent's Signature** David Nolan

# COMMOI VEALTH OF MASSAC JSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | | **Grievance#** 11331 | **Institution** MCI CEDAR JUNCTION | | | |
| **Commit No.** | W84202 | | **Housing** ORIENTATION ONE | | **Date Of Incident** | 20050621 | **Date Of Grievance** | 20050621 |

**Complaint**
Inmate complains that he is being deprived of the privilege of having a color T.V. and canteen items because of his poverty, while other inamtes are being allowed (see attached page)

**Remedy Requested**
That the prison refrain from discriminating against him due to his poverty through its in-cell T.V. policy by providing him with a color T.V. like the other inamtes have in their cells and/or by allowing and making arrangements for him to receive his color T.V. from the Americal Red Cross Worker in Pittsfield or another dontated color T.V. from the Christian Center in Pittsfield. He also requests to be provided with the idle pay which the law entittles him to inorder to purchase canteen items, and that such idle pay does not interere with his indigent legal mail status. In the alternative, he also request to be provided with the canteen items he requested through AA Joanne Paquin because of his long term and on-going poverty status as an indigent inmate.

**Staff Recipient**
Sullivan Daniel   CO II

**Staff Involved**
Paquin Joanne M   Admin Assistant II

**Signature**

---

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20050622   **Decision Date** 20050701

**Signature** AUCION ANN MARIE CO I

**Final Decision** DENIED

**Decision** The iNStitution is Not ResPonSible to PROVide you with A T.V.

**Signature** _____   **Date** _____

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

---

### INMATE RECEIPT

| | | | | | |
|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | | **Institution** MCI CEDAR JUNCTION | |
| **Commit No.** | W84202 | **Grievance#** 11331 | **Date Received** 20050622 | | |
| **Signature.** | Sullivan Daniel   CO II | | | | |

FELIPE OTELE FOWLKES,                              )
                                                   )    INMATE
                        Plaintiff(s)               )    CIVIL
                                                   )    RIGHTS
                                                   )    COMPLAINT
            vs.                                    )    PURSUANT TO
Commissioner of MASS. DOC, Kathleen               )    42 U.S.C. § 1983
M. DENNEhy, et., AL.                               )
                        Defendant(s)               )
                                                   )    Civil Case No.: 6:
_____ )

Plaintiff(s) in the above-captioned action, allege(s) as follows:

## JURISDICTION 11749

1.          This is a civil action seeking relief and/or damages to defend and
protect the rights guaranteed by the Constitution of the United States. This
action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction
over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.

## PARTIES

2.      Plaintiff:          FELIPE OTEZE FOWLKES #W27202

        Address:            CEDAR JUNCTION PRISON
                            BOX 100
                            So. WALPOLE, MA 02071


**Additional Plaintiffs may be added on a separate sheet of paper.**

3.   a.   Defendant:           KATHLEEN M. DENNEHY
          Official Position:   COMMISSIONER

          Address:             MASS. DEPT. OF CORRECTION
                               50 MAPLE STREET, SUITE 3
                               MILFORD, MA 01757

-1-

**b.** **Defendant:** JAMES R. BENDER

**Official Position:** DEPUTY COMMISSIONER

**Address:** MASS. DEPT. OF CORRECTION | ALTERNATE ADDRESS:
OFFICE OF DEPUTY COMMISSIONER
50 Maple Street, Suite 3 | P.O. BOX 9125
Milford, MA 01757 | West Concord, MA 01742-

**c.** **Defendant:** Timothy HALL

**Official Position:** ASSt. Deputy Commissioner

**Address:** MASS. Dept. OF CORRECTION
50 Maple Street, Suite 3
Milford, MA 01757

**d.** **Defendant:** John MARSHALL

**Official Position:** ASSt. Deputy Commissioner

**Address:** MASS. Dept. OF CORRECTION
50 Maple Street, Suite 3
Milford, MA 01757

**e.** **Defendant:** VERONICA M. MADDEN

**Official Position:** Associate Commissioner of ReentRy
And ReinterGRAtion

**Address:** MASS. Dept. OF CORRECTION
50 Maple Street, Suite 3
Milford, MA 01757

·2·

f.  **Defendant:** RONALD T. DUVAL

**Official Position:** ASST. Commissioner of Administration

**Address:** MASS. Dept. of Correction
50 Maple Street, Suite 3
Milford, MA 01757

g.  **Defendant:** Christian LaDucia

**Official Position:** Commissioner's Inmate Grievance Reviewer

**Address:** MASS. Dept. of Correction
50 Maple Street, Suite 3
Milford, MA 01757

h.  **Defendant:** PETER PEPE

**Official Position:** Superintendent of Concord Prison

**Address:** MASS. Corr. Institution: Concord
P.O. Box 9106
Concord, MA 01742

i.  **Defendant:** David Nolan

**Official Position:** Superintendent of Cedar Junction

**Address:** Cedar Junction Prison
Box 100
So. Walpole, MA 02071

-3-

A    ess: _____    _____

_____    _____

_____

**j.**    Defendant:    ANN MARIE AUCION, CO I
Official Position:    INMATE GRIEVANCE COORDINATOR

Address:    CEDAR JUNCTION PRISON
BOX 100
SO. WALPOLE, MA 02071

Additional Defendants may be added on a separate sheet of paper.

4.    ## PLACE OF PRESENT CONFINEMENT

a.    Is there a prisoner grievance procedure at this facility?

(√) Yes    ( ) No

b.    If your answer to 4(a) is YES, did you present the facts relating to your complaint in this grievance program?

(√) Yes    ( ) No

If your answer to 4(b) is YES:

(i)    What steps did you take?
I MADE WRITTEN REQUESTS to the Commissioner AND filed INMATE GRIEVANCES.

(ii)    What was the final result of your grievance?
MY REQUESTS AND MY GRIEVANCES WERE ALL denied. (See PART '6'(B) thru(H) ON pages 30 thru 37)

.4.

complaint in the prison's grievance program.

*My complaints were m le in the prison's grievance program and appealed to the Superintendent for Review by the Commissioner. (see 103 CMR 491)*

c.    If there is no grievance procedure in your institution, did you complain to prison authorities about the facts alleged in your complaint?

       (   ) Yes          (   ) No

If your answer to 4(c) is YES:

    (i)      What steps did you take?

              _____

              _____

    (ii)     What was the final result regarding your complaint?

              _____

              _____

If your answer to 4(c) is NO:

        Why did you choose to not complain about the facts relating to your complaint in such prison?

            _____

            _____

            _____

5.

## PREVIOUS LAWSUITS

a.    Have you ever filed any other lawsuits in any state and federal court relating to your imprisonment?

    (   ) Yes         (√) No

b.    If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page.

Defendants:

_____

ii.   Court (if federal court, name District; if state court, name County:

_____

iii.  Docket number: _____

iv.   Name of Judge to whom case was assigned:

_____

v.    Disposition (dismissed? on appeal? still pending?)

_____

vi.   Approximate date of filing prior lawsuit:

_____

vii.  Approximate date of disposition:

_____

6.                           FACTS

Set forth the facts of your case which substantiate your claim of violation of your civil and/or Constitutional rights. List the events in the order they happened, naming defendants involved, dates and places.

**Note: You must include allegations of wrongful conduct as to EACH and EVERY defendant in your complaint. (You may use additional sheets as necessary.)**

(A) The plaintiff complains that at all times during his imprisonment within Massachusetts Department of Corrections, that the Commissioner, Kathleen M. Dennehy, Deputy Commissioner, James R. Bender, Assistant Deputy Commissioner, Timothy Hall, Assistant Deputy Commissioner, John Marshall, Associate Commissioner of Reentry & Reintergration)

-6-

VERONICA M. MADDEN, ASSISTANT Commissioner of Administration, RONALD T. DUVAL, Commissioner's INMATE GRIEVANCE REVIEWER, Christian LADUCIA, Superintendent of Concord PRISON, PETER PEPE, where plaintiff was confined from September 17, 2004, until January 27, 2005, Superintendent of CEDAR Junction PRISON, David NOLAN, INMATE GRIEVANCE COORDINATOR of CEDAR Junction PRISON, CORRECTION OFFICER, ANN MARIE AUCOIN, where plaintiff has been confined since January 27, 2005, and All Superintendents of the MASSAchusetts DOC PRISONS, where plaintiff is likely to be confined, ARE and will be depriving plaintiff of particular Rights and privileges pursuant to a pattern or practice of RESISTANCE to the full enjoyment of the Rights and privileges under an illegal punitive program policy, and that the deprivation of these Rights and privileges ARE so "dissimilar" to the Rights and privileges enjoyed by other STATE and federal INMATES, that it violates his eighth amendment Right to be free from CRUEL and UNUSUAL punishments and the due process and equal protection clauses of the fourteenth amendment to the UNITED STATES Constitution.

.7.                    (cont. on Reverse side)

IN doing so, the plaintiff states that all of the above named defendants under the direction, supervision and authority of the Commissioner, Kathleen M. Dennehy, have employed and are enforcing an illegal punitive program policy rather than Rehabilitative, and that such punitive programs were outlawed in the mid 1980's when the system of "Corrections" were implemented. The system of corrections became National Correctional Law; standards on the treatment of inmates, and policy with the understanding that criminals were not "born" but were "made" by enviromental, social and economic factors, and that therefore, they could be Rehabilitated or "corrected." Under the former punitive penal system, which the plaintiff states is being employed by the Commissioner of MASS. DOC, they believed criminals were "born" and that therefore, the only measures to be taken were to punish the offenders. Under the new system called "Corrections", prisons were no longer to be called "Prisons" but correctional facilities, and a prisoner no

longer AS A prisoner, but an "inmate" with A focus on Rehabilitation programs designed to give the offender the attitude, skills and Education to become A productive member of society.

The plaintiff states that the Required Rehabilitative programs are not being implemented and his Rights and privileges are being denied and witheld in the maximum security facilities such as Concord and Cedar Junction and all other MCI-DOC facilities because of the defendants illegal punitive program policy to punish inmates rather than Rehabilitate them. Therefore, the plaintiff states that because of the defendants punitive rather than Rehabilitative program policy, he is being deprived of particular Rights and privileges pursuant to A pattern or practice of Resistance to the full

.9.                    (cont. on Reverse side)

enjoyment of Rights and privileges.
The deprivation of the particular Rights
and privileges which he alleges are
so "dissimilar" to the Rights and
privileges enjoyed by other state
and federal inmates, as to violate
the eighth amendment prohibition
against cruel and unusual punishments
and the due process and equal protection
clauses of the fourteenth amendment
are set forth as follows:

1. Smoking privilege of purchasing and receiving cigarettes and tobacco products. The plaintiff states that as an inmate of Massachusetts DOC, this smoking privilege was taken away from him and/or that he has been deprived of it as a form of punishment without due process of law because the defendants in-house ban on smoking could not be applied to preclude him from smoking 'outside' or in a designated area of the facility. He states that the current policy and proposals of most or all state and federal facilities in the United States permits inmates to smoke outside or in designated areas. For example: New York State DOCS. However, he states that the defendants have maintained a policy which completely prohibits him from smoking outside or in a designated area of the facility and that the policy is being maintained by the defendants for no other reason than to punish him. He also cites that fact that Massachusetts DOC is the only correctional system within the United States which has placed a complete ban on the inmates use of tobacco

-11-

(cont. on reverse side)

products, and that therefore, not only is he being punished without due process but he is also being discriminated against as a state inmate who is similarily situated with other state and federal inmates. Furthermore, he states that the defendants have refused to issue anti-smoking devises such as non-smoking patches, anti-smoking tablets, Nicoderm and etc., to help curve the physiological affects of nicotine cravings, and that therefore, he's had to suffer from the physiological affects.

2. INADEQUATE FOOD. The plaintiff complains that the meals served to him at Concord facility and Cedar Junction facility, which were approved by the commissioner, Deputy commissioner, Superintendent Pepe and Superintendent Dolan, as the same foods being served throughout Massachusetts DOC, does not meet the minimum requirements of public health law which requires a daily minimum of a 2000 calorie diet. He also states that the

-12-

MEALS lACK iN quAliTY foods ANd does NoT
CoNTAiN A VARiETY of NUTRiCioUS foods.
FoR EXAMPLES: THE BREAKFAST NEVER
iNcludes butter ANd jelly ANd ARE REpETATiVE
becAuSE they CoNSiST of fivE types of bREAKFASTS
foR SEVEN dAYS A wEEK, which ARE: ① two
PANCAKES with SYRUP, MiLK, jUiCE ANd Coffee;
② DRY uNSWEETENED CEREAL with SMAll CAKE,
MiLK, jUiCE ANd Coffee; ③ OATMEAL with SMAll
thomAS ENglish mUFFiN, MiLK, jUiCE ANd Coffee;
④ Cold GRiTS with SMAll thomAS ENglish MUFFiN,
MiLK, jUiCE ANd Coffee, ANd ⑤ SMAll dish of eggs
with thomAS ENglish mUFFiN, MiLK, jUiCE ANd Coffee.
UsuAlly, it is the OATMEAL thAT is REpEATEd
duRiNg the SEVEN dAYS fRom AmoNgST the fivE
bREAKFAST MEALS.   THE LUNCH ANd DiNNER ARE
AlSo REpETATiVE, CoNSiSTiNg AlWAYS of ~~coffee~~
iNexpENSiVE foods SUCH AS white RiCE, MACARoNi,
ANd white potAToE ANd CARRoTS which ARE
PREpAREd ANd SERVEd iN AN AppAlliNg MANNER to
~~be~~ AppEAR AS though they've bEEN SpiT iN oR
tAmpEREd with.  MEALS which ARE SUppoSE to
iNclude two beef bURGERS, oNly iNcludES oNE.
oNly oNE pieCE of VEAL oR oNE chicken pATTY
pER mEAL.  So, iN AddiTioN to beiNg iNexpENSiVE,

-13-    (CoNT. oN REVERSE Side)

AND APPAULING, the inMATE CLAIMS that his
meALS ARE 'RATIONED' which iS A punitive
procedure used by other state prisons to
punish AN inmate AS A disciplinary
penalty from A disciplinary hEARING.
FOR EXAMPLE: 'NEW YORK STATE DOCS uses it
iN its SpeciAL HOUSING UNIT At GREAT MEAdoWS."
But only for several dAYS At A time.
HoweveR, iN mASSACHusetts DOCS, the plAintiff
complAins that the defendAnts hAve Approved
And directed that he be served 'RAtioned'
meALS while iN the GenerAL population AS A
form of punishment without ANY due process
heARING.  HE ALSo STAtes that the tAX pAyeRS
which included himself, provided money for
him to Receive AdeQuATe food And that this
money is going unAccounted for AS A Result
of the defendAnts punitive policy pROgRAm
which hAS imposed extreme SAnctions without
due process, ON the Amount of foods he Receives.
AS A Result he STAtes that he hAs Suffered
the effects of NutritionAL deficiency Such
AS dRy SKin, brittle bones, CRAmpS, NUmbness

in limbs, pulled muscles, weight loss and crawling empty stomach. He states that the defendants have resisted his requests for an extra tray or extra meal, supplemental multiple vitamins which he could not afford, and compliance with the Public Health law to improve the meals by a daily minimum of 2000 calories of a variety of quality foods.

3. INADEQUATE CLOTHES: The plaintiff complains that the defendants are not providing him with adequate clothing such as "pants with pockets and zippers, button-up shirts with collars (long and short sleeves), brief underware, formal dress shirts, sweatshirt, ski-coat and boot-shoes, which are suppose to instill a sense of self-worth, self-esteem and dignity with an eye towards rehabilitation as well as protect his body from the cold and inclement north-eastern weather. He states that the style of clothing that the defendants approved and given him to wear, are issued by other state and federal facilities to

-15-

(cont. on reverse side)

inmates in punitive segregation units, and
that therefore, the clothing is punitive in   .
nature and designed to punish him without
due process of law. Such clothing which he
complains of consist of A "short sleeve V-neck
shirt with no buttons and large D.O.C. letters
on the back. Pants with no pockets nor
zippers, boxer underware, T-shirts, socks,
blue cloth loafers, wool knot cap and blue
denim jacket. The plaintiff states that not
only are the clothing undignified and designed
to humiliate and punish him, but they do not
protect his body from the cold and inclement
north-eastern weather. For examples:
He states that during the long winter months
which in the north-east, includes the fall and
spring seasons, when it rain, hails and snows,
he could not button up the short sleeve shirt
and that the blue denim jacket becomes easily
soaked and wet and does not protect him from
the cold and that he is not issued any thermal
underware. The blue cloth loafers also become
soak and wet and do not protect his feet from
the cold, snow, ice and pouring rain. While
at Concord facility, he states he had to walk
back and forth to the mess hall;  the health

SERVICES UNIT, LIBRARY, GYM, YARD AND OTHER
PLACES WHICH REQUIRED him to exit the housing
UNIT, AND that he became subject to the common
cold, flue, PNEMONIA AND that his body SUFFERED
from the cold, wet AND INCLEMENT WEATHER.
HE ALSO STATE that the PANTS POSE A HEALTH RISK
AND ARE undignified because INMATES OFTENTIMES
hold their genitals because they have NO pockets
AND CAN exchange such germs such AS genital
herpes, lice AND etc., during handshakes AND ON
OBJECTS Such AS tables, SEATS AND etc.
HE ALSO complains that the lack of 'brief'
UNDERWARE CAN CAUSE testicle INJURIES Such AS
CANCER AND swelling because the testicles go
UNSUPPORTED FOR A long term. This potential
health RISK IN MALES ARE Recognized by physicians
who Recommend MALE Athletes to wear jock STRAPS.
Therefore, he state that brief UNDERWARE ARE
Required for his health AS A MALE.
The plaintiff states that the defendants have
Resisted his REQUESTS to provide him with
Adequate clothing and that the tax PAYERS, which
included himself, provided money FOR Adequate
clothing which is NOT being used for that purpose.
FURTHERMORE, he states that MASSACHUSETTS
DEPARTMENT OF CORRECTIONS is the ONLY CORRECTIONAL

-17-                    (CONT. ON REVERSE SIDE)

system within the United States, who provides punitive and inadequate clothing to its state inmates.

4. Idle Pay. ———————— The plaintiff states that since his imprisonment on September 17, 2004, he has been indigent and unable to work because the defendants are not providing him with work programs. He complains that as a result, he is entitled to idle pay, and that the idle pay is a percentage or portion of the money provided by the tax payers, which included himself, towards each inmate's work and vocational programs. He states that when the inmate is unable to work, a percentage or portion of that general support money, must be allocated to him, but that he has not been receiving his and neither have the defendants set up an inmate account for that purpose. He states that it is the defendants policy not to pay him idle pay to which he is entitled, and that the defendants have resisted their obligations to pay the money to him. He states that other state and federal inmates receive idle pay. For example: New York DOCS.

5. DOUBLE BUNKING. The plaintiff states that the defendants have approved and maintained an illegal double bunking system through which he has been or will be subjected to double bunking within Massachusetts DOC, and that such double bunking was and is illegal because while at Concord facility, it deprived him of his own personal privacy, adequate space, and subjected him to a health risk of exposure to germs and diseases from another inmate with whom he had to breath the same air and share the sink and toilet with. He states that double bunking has been outlawed and condemned as violative of the eighth amendment prohibition against cruel and unusual punishments, in all state and federal facilities, ■ and that therefore, the defendants policy which caused or will cause him to be double bunked, violated his eighth amendment right to be free from cruel and unusual punishments. Furthermore, he complains that he was subjected to a discriminatory policy and practice while at Concord facility between September 2004 and January 2005, which was also approved and directed by the defendants at Concord and

-19-

(cont. on reverse side)

IN All MASSACHUSETTS DOC facilities where double bunking exist. The defendant PETER PEPE was the Superintendent at Concord Facility who also implemented the discriminatory double bunking policy and practice under the direction and authority of the Commissioner, Dennehy, Deputy Commissioner, Bender and other defendants listed. IN doing so, the plaintiff claims that he was double bunked with only 'black inmates of his race'; and that 'white inmates were only double bunked with whites; hispanics with hispanics, Asians with Asians, Indians with Indians, and etc.

6. INMATE ORGANIZATIONS. The inmate complains that the defendants have refused to allow him the privilege or first amendment right of association with other inmates as an INMATE ORGANIZATION called the "N.A.A.C.P." He states that he is an AFRICAN-AMERICAN black person and that the N.A.A.C.P. provides charters, constitution and by-laws to African American inmates to set up and operate the N.A.A.C.P. organization within state and

federal correctional facilities throughout the United States.    He states that the defendants have deprived him of this privilege and denied him this right of association as an inmate organization called the N.A.A.C.P., while other state and federal inmates are being allowed.  FOR EXAMPLE: New York State DOC. Furthermore, he states that he has been denied this right and deprived of this privilege because the defendants have implemented an illegal punitive program policy directed towards the punishment of inmates rather than rehabilitation.

7. INMATE LIASON COMMITTEE. The inmate complains that the defendants have refused to allow him the privilege or first amendment right of association with other inmates as an INMATE LIASON Committee.  The INMATE LIASON Committee is a program directed towards reducing misunderstandings and promoting better relations between the inmates and the administration through an interaction which explains to each the problems and concerns of the other.

-21-                    (cont. on reverse side)

The Inmate Liason Committee (ILC) proposed by the plaintiff is the same as that being utilized by inmates within New York State DOCS. The plaintiff states that the defendants are depriving him of this privilege and denying him this right because of their illegal punitive program policy which punishes inmates rather than rehabilitate them, and that he is being discriminated against because other state and federal inmates are allowed this privilege or right while the defendants of Massachusetts DOCS are denying and depriving him.

8. INMATE GRIEVANCE PROGRAM

The inmate complains that the defendants have refused to allow meaningful review and decisions on his inmate grievances by not allowing inmates to participate in the review and decision making process and by not having a 'master index' of recorded prior decisions upon which to base the grievance decisions. He states that the defendants denial violates his first amendment rights of association and to effectively petition them for redress of grievances as

well as his fourteenth amendment right to due process of the law. He states that his inmate grievances are not thouroughly investigated, and he is not afforded a hearing with an impartial tribunal which includes his peers of elected inmates from the general inmate population, and that the facility's staff coordinator cannot make an informed decision because he does not have a master index of prior decisions. The master index tells what the rulings are on a particular subject matter. He also states that it violates his equal protection rights since the coordinator could have granted a right or privilege to one inmate while denying him the same right or privilege. The right or privilege to have inmates participate in the inmate grievance program and for meaning review and decisions through a master index system, are contained in the plaintiff's proposal to have the same inmate grievance program which is utilized by inmates and staff within New York State Docs.

-23-                    (cont. on reverse side)

This request was denied by the defendants while other State and Federal inmates are being allowed. Therefore, the plaintiff states that not only is he being discriminated against, but the defendants have denied him these rights and deprived him of this privilege because of their illegal punitive program policy directed towards the punishment of inmates rather than rehabilitation.

9. FAMILY REUNIOUN PROGRAM.

The plaintiff states that the defendants have denied his request to implement a "Family Reunioun Program" consisting of conjugal visits and free State sponsored bus rides for relatives and friends to visit him. He states that the current policy discourages visits from them because the visitation schedule does not provide enough time per visit and are not frequent enough. He states that he is being denied the "Family Reunioun Program" while other State and Federal inmates are being allowed. For example: New York State DOCS.

-24-

He also proposed that the "Family Reunioun Program" be the same as that utilized by inmates within New York State Docs which allows inmates conjugal visits with their family and relatives, and free state sponsored bus rides for relatives and friends to visit him. He further states that the reasons the defendants are denying him is because of their illegal punitive program policy towards inmates to punish them rather than Rehabilitate.

10. MUSIC BY MAIL. The plaintiff states that the defendants deprived him of the privilege or Right to purchase and receive Walkman cassett players with cassett tapes through the 'Music by Mail' program which serves inmates in all other state and federal facilities, and that therefore, he's being discriminated against. He complains that he is unable to listen to the most recent or new released music from recording artists and that his First Amendment Right of access to media materials or free speech is being

-25-

(cont. on Reverse side)

violated by the inability to receive speeches, lectures and other political and educational materials which are recorded on cassetts. He further states that the defendants have no legitimate reasons for denying him the music by mail program other than to punish him without due process as part of their illegal punitive program policy.

II. ACCESS TO PORNOGRAPHIC MATERIALS. The plaintiff states that the defendants current policy (103 CMR 481) deprives him of access to pornographic materials such as 'Playboy', 'Penthouse' and 'Players' magazines, while inmates in all other state and federal facilities are allowed to subscribe and receive them, and that therefore, the defendants are discriminating against him. He also claims a First Amendment right of access to media or free speech with respect to the pornographic materials, and that the defendants have no legitimate reasons for denying and depriving him of access to the materials other than to punish him without due process of law under their illegal punitive program policy.

-26-

12. IN-CELL COLOR T.V.: The plaintiff states that he is being deprived of the privilege of having a color T.V. in his cell and/or of the privilege of watching one, due to his poverty of being unable to afford one, while other inmates who can afford the T.V. are being allowed, and that therefore, the defendants in-cell T.V. policy in effect at Cedar Junction and other Massachusetts DOC facilities, discriminates against him. He states that if there was no in-cell T.V. program, that Mass. DOC have in the past and would in the present, provide a T.V. on the units to be watched by all inmates during their recreation time. He states that the defendants in-cell T.V. program disenfranchises the poor inmates such as himself, of the privilege of watching a T.V. He states that as a remedy to disenfranchising the poor, the defendants should provide an in-cell free color T.V. to every inmate. He further complains that the defendants would not allow him to receive a color T.V. from charitable community organizations.

-27-                    (cont. on reverse side)

He states that this discrimination and deprivation is also a part of the defendants illegal punitive program policy to punish inmates without due process Rather than Rehabilitate them.

13. PROTECTIVE CUSTODY PROGRAM.
The plaintiff states that the defendants do not have a protective custody program for their state inmates who need or request protection, And that when he applied for admission into such a program while at Cedar Junction prison between January and May 2005, he was not admitted because the defendants do not have one. He states that the defendants are required to have a protective custody program within MASS. DOC and that every other state and federal facility has one. FOR EXAMPLE. NEW YORK STATE DOC at Clinton Dannemora facility.  The plaintiff states that as a result of not having a protective custody program, the defendants have approved and directed that inmates who request

-28-

Protection, be placed in punitive Administrative segregation units where they are punished and exposed to a greater risk of harm, rather than protected. He further states that in response to his requests, he was placed in the punitive Administrative segregation unit of 10 Block at Cedar Junction on or about June 1, 2005. He did, however, sign-off from his need for protection but claims that his placement in the punitive segregation unit constituted a failure to protect, and that if the need for protection arise in the future, he would not be adequately protected within Mass.Doc but instead, punished and put in a greater risk of harm because the defendants do not have a required protective custody program for state inmates in their custody. Furthermore, he states that when placed in the punitive Administrative segregation unit as a protective custody inmate, he was subject to the same penalties and restrictions as the inmates who were placed in there for disciplinary reasons. He further states that the defendants do not have a protective custody program because of their illegal punitive program policy to punish inmates rather than rehabilitate.

-29-    (Cont. on reverse side)

14. SAFE AND SECURE PRISONS. The plaintiff states that the MASS. DOC PRISONS in which he has been confined (CONCORD), and is currently confined (CEDAR JUNCTION) and to which he is likely to be confined, are not safe nor secure because the defendants policies on prison operations and treatment of inmates, promotes racial and gang violence amongst inmates which threatens his safety, security, well-being and has caused him serious physical injuries to his head, fractured nose and stitches from a cut in his face. The plaintiff cites 4 policies of the defendants which has left him without safety and security. First, he states that because the defendants policy does not regulate a seat-by-line formation in the prisons mess halls which requires each seat at the tables to be filled consecutively as each inmate enters the mess hall and leaves the food line, inmates are allowed to group at the tables by race, gang and other illegal affiliations for the purpose of excluding other inmates such as himself from eating in the mess hall by use of threats, intimidations and assaults, and that on several days between July 27 and Aug. 10, 2005, the inmates did that to him. Secondly, the defendants policy employed by Superintendent David Nolan and prison officials at Cedar Junction, does not provide security officers in the prison yard and along the walkways during recreation as well as no recreation equipment. As a result, the plaintiff was assaulted on the walkway on July 28, 2005, and received the above physical injuries. Thirdly, the defendants policy on the penalty for inmate assaults on other inmates and inmate fights, are so minimum or non-existent that it encourages inmate assaults on each other, and that as a result he was assaulted on July 28, 2005, and is in continual fear, threat and risk of assaults. The current policy imposes a couple days or less of AA in-cell lock-in for assaulting another inmate or initiating a fight with another inmate, while the inmate who is the victim of the assault or fight, such as the plaintiff, suffers lock-in status for a long period of time for his own protection. Fourthly, the defendants policy of depriving inmates including plaintiff of the above rights, privileges and programs which are needed for rehabilitative purposes, does not provide incentatives or rewards for good behavior and encourages misbehavior. The plaintiff filed grievances on these policies which were either denied or fowarded to Commissioner Dennehy at Internal Affairs and her I.G.R. Christian DA LUCIA.

-29 ½-

FACTS, cont.:

6. (B)    While at Concord Prison, the plaintiff wrote a December 17, 2004, Request to the Commissioner, Kathleen M. Dennehy, to be Restored and to receive the aforementioned Rights and privileges. A copy of the letter of Requests is annexed hereto as 'EXHIBIT 'A'. In her written Response made through her Deputy Commissioner, JAMES R. BENDER, dated JANUARY 19, 2005, the Commissioner denied all of the plaintiff's Requests for the Rights and privileges.

(C)    While at CEDAR JUNCTION PRISON, the plaintiff filed an INMATE GRIEVANCE #10874 dated MAY 19, 2005, involving the same Rights and privileges; to be restored and to Receive them. A copy of the GRIEVANCE is annexed hereto as 'EXHIBIT 'B'. However, the GRIEVANCE Coordinator did not Record the entire complaint and did not make a decision on the grievance. The plaintiff then appealed the GRIEVANCE to Superintendent DAVID NOLAN, between July 6-8, 2005, with a complaint that the GRIEVANCE

-30-                    (cont. on Reverse side)

COORdiNAtoR did Not iNclude the full facts of the grievANce ANd did Not mAke A decision. Since the Rights ANd privileges complAiNed of iN the grievANce hAd been deNied by the CommissioNeR iN heR JANuARy 19, 2005, Response, they weRe Also deNied by SuperiNtendent DAvid NolAN, AfterwhicH it becAme subject to the CommissioNeR's Review through heR desigNee oR INmAte GRievANce RevieweR, ChRistiAN LADuciA. (see 103 CmR 491) Thus, those Rights ANd privileges weRe AgAiN deNied to the plAiNtiff by the CommissioNeR.

(D)    While At CedAR JuNction PRisoN, the plAiNtiff filed AN INmAte GRievANce #11331, oN the discRimiNAtioN ANd depRivAtioN, iNvolviNg the iN-cell coloR T.V. pRivilege ANd the deNiAl of Idle pAy. The GRievANce wAs dAted MAy 21, 2005; A copy of which is ANNexed heRewith AS 'EXHIBIT 'C'. The GRievANce wAs deNied oN July 1, 2005, ANd AppeAled to SuperiNtendent DAvid NolAN, betweeN July 6 to 8, 2005. The SuperiNtendent NolAN Also deNied the plAiNtiff the Relief sought iN the gRievANce, AfterwhicH it becAme subject to the CommissioNeR's Review through heR INmAte GRievANce RevieweR, ChRistiAN LADuciA. (103 CmR 491) ANd, wAs AgAiN deNied by the CommissioNeR.

-31-

FACTS, cont.:

6. (E)   In the plaintiff's December 17, 2004, Request to the Commissioner, Kathleen M. Dennehy, on page '3' at Number '6', he Requested an "increase in quality and quantity of meals." (See EXHIBIT "A")  In her January 19, 2005, Response, she denied the plaintiff's Request; stating that "DOC was providing healthy and hearty meals."  On May 19, 2005, while at Cedar Junction Prison, the plaintiff filed Inmate Grievance #10874 containing a complaint of "Inadequate food per meal" at Number '2' of the Grievance. (See EXHIBIT "B" at No. 2) See the above sub-paragraph (c) for the Resolutions of denials on Grievance #10874. On June 23, 2005, while at Cedar Junction Prison, the plaintiff filed another similar Inmate Grievance #11434; complaining that he was being deprived of the daily minimum 2000 calorie diet by the prison's failure to comply with that public health law.  On June 28, 2005, the Inmate Grievance Coordinator, Ann Marie Aucoin, decided that the Grievance was a non-

-32-      (cont. on reverse side)

FACTS, cont.:

grievable medical grievance. The plaintiff appealed that portion of the grievance which was non-medical and applied to the prison's failure to comply with the public health dietary law of a daily minimum requirement of 2000 calories. A copy of the inmate grievance # 11434 together with its July 7, 2005, appeal to superintendent, David Nolan, are annexed herewith as "EXHIBIT "D". The plaintiff also filed a grievance with the medical health services administrator at Cedar Junction regarding the other portion of the grievance which related to medical. Superintendent, David Nolan, concurred with the IGC decision and denied plaintiff the relief sought in the appeal; afterwhich it became subject to the Commissioner's Review through her inmate grievance reviewer, Christian LaDucia (see 103 CMR 491) whom also affirmed and denied plaintiff.

FACTS, cont.:

6. (F) While at Cedar Junction Prison, the plaintiff filed an Inmate Grievance #11824 on July 11, 2005, to subscribe to and receive pornographic magazines from PLAYBOY, PENTHOUSE and PLAYERS. A copy of the grievance is annexed herewith as EXHIBIT 'E'. MASS. DOC policy 103 CMR 481, which is being maintained by the defendants, restricts inmates from subscribing to, possessing and receiving pornographic materials. As a result, the grievance was denied on July 13, 2005, by Inmate Grievance Coordinator, ANN MARIE AUCOIN, and appealed to Superintendent NOLAN by the plaintiff on July 16, 2005. Superintendent, DAVID NOLAN, concurred with the IGC decision and denied plaintiff the relief sought in the appeal; afterwhich it became subject to the Commissioner's review through her Inmate Grievance Reviewer, Christian LADUCIA (see 103 CMR 491) whom also affirmed and denied plaintiff.

(cont. on reverse side)

FACTS, cont.:

(G)   In the plaintiff's December 17, 2004,
Request to the Commissioner, Kathleen M.
Dennehy, on page '2' at Number '1', he
Requested an improvement in the Inmate
Grievance Program by including Inmate
Grievance Representatives similar to New
York State and Federal Prisoners. (See EXHIBIT "A")
In her January 19, 2005, Response, she denied
the defendant's Request. On July 12, 2005,
the plaintiff made a similar complaint at
Cedar Junction Prison in Grievance#11823;
complaining that MASS. DOC Grievance Program
was not providing him with meaningful Review
of his inmate grievances because there were
no inmate grievance Representatives and that
the Grievance Coordinator, Superintendent, and
Commissioner's Reviewer, were not able to
make informed decisions on his Inmate Grievances
because the Grievance Program does not have
a "MASTER Index" containing a Record of prior
decisions by subject matter upon which they
may Rely on to base their decisions. As a
Result, he claimed that his FIRST Amendment

# FACTS, cont. :

Right to effectively address DOC for redress of his inmate grievances, was being violated together with his right under the equal protection clause of the fourteenth amendment. A copy of the GRIEVANCE #11823 is annexed hereto as 'EXHIBIT ■"F", together with the July 15, 2005, decision of INMATE GRIEVANCE COORDINATOR, ANN MARIE AUCOIN, which denied the GRIEVANCE. The GRIEVANCE was appealed by the plaintiff to SUPERINTENDENT NOLAN on July 16, 2005. Superintendent, DAVID NOLAN, CONCURRED with the IGC decision and denied plaintiff the relief sought in the appeal; afterwhich it became subject to the Commissioner's review through her GRIEVANCE Reviewer, CHRISTIAN LA DUCIA (103 CMR 491) whom also affirmed and denied plaintiff.

(H)  While at CEDAR JUNCTION PRISON, between JANUARY and MAY 2005, the plaintiff made a series of requests for protection followed by an INMATE GRIEVANCE #8836 dated MARCH 7, 2005, to be placed in a protective custody program.  The plaintiff also wrote a letter of request to the Commissioner, KATHLEEN M. DENNEHY, for placement in a protective custody program.

-36-          (CONT. ON REVERSE SIDE)

A copy of that letter is annexed hereto as 'EXHIBIT'G'. In the interim, the plaintiff appealed grievance #8836 to Superintendent, David Nolan. A copy of the appeal decision is also annexed hereto as 'Exhibit 'H'. However, as previously stated, the defendants did not have a state protective custody program and as a result, they have approved and directed that inmates who requests protection, be placed in the punitive administrative Segregation units, where plaintiff contends he was punished rather than protected, and subjected to a greater risk of harm. The Superintendent's decision was reviewed by the commissioner through her INMATE GRIEVANCE Reviewer, Christian LaDucia (103 CMR 491) Also, the plaintiff signed-off from his need for protection but claims that the defendants conduct in failing to have a protective custody program constitutes a failure to protect and that they are discriminating against him because other state and federal inmates have one. He also claims that the defendants do not have such a program because of their illegal punitive program to punish inmates rather than Rehabilitate them.

6 (I) The defendant's denial of plaintiff's 'MUSIC BY MAIL PROGRAM' is contained in the defendant's JAN. 19, 2005, RESPONSE letter AND GRIEVANCE # 10874.

7.                          CAUSES OF ACTION

Note: You must clearly state each cause of action you assert in this lawsuit.

FIRST CAUSE OF ACTION

DUE PROCESS. The plaintiff states that the courts have recognized his right as an inmate to due process of law which involves his right to Notice and opportunity to be heard, before and during the imposition of punishments, and that the defendants have denied and deprived him of the aforementioned rights and privileges without due process, for no legitimate reasons other than to punish him under an illegal punitive program policy.

SECOND CAUSE OF ACTION

EQUAL PROTECTION. The plaintiff states that as a state convicted inmate committed to MASS. DOC, he is similarily situated by virtue of that status, with other convicted state and federal inmates, whom on a National Correctional standard, are being allowed the afore-mentioned Rights and privileges, while he is not, and that therefore, he is being denied equal protection of the law.

THIRD CAUSE OF ACTION

CRUEL AND UNUSUAL PUNISHMENT. The plaintiff states that the denial and deprivation of the aforementioned rights and privileges by the defendants for no legitimate reasons other than to punish him without due process under an illegal punitive program policy, is so dissimilar to the Rights and privileges being afforded other convicted state and federal inmates, that it violates his eighth amendment Right to be free from cruel and unusual punishments, in that, the eighth amendment prohibits more than physical barbarous punishments, it also embodies broad and                    ideatistic concepts of dignity, civilized standards, 'humanity' and decency against which the punitive penal measures of the defendants can be evaluated. Furthermore, in this case, the plaintiff states that the denial and deprivation of some of the aforementioned rights and privileges states a cause of action under the eighth amendment in and of themselves.

-38-

## 8. PRAYER FOR Relief

WHEREFORE, plaintiff REQUEST that this Court grant the following Relief:

i. Compensatory damages from the defendants in the amount of $500.000 (FIVE HUNDRED-THOUSAND DOLLARS) for the UNNECESSARY infliction of the pain and sufferings associated with the denial and deprivation of the Rights and privileges set forth in the complaint, and to compensate or reimburse plaintiff for the food, clothing, idle pay and other benefits to which he was entitled and would have otherwise received.

ii. Punitive damages from the defendants in the amount of $250.000 (Two HUNDRED Fifthy THOUSAND DOLLARS).

iii. Order directing the defendants to restore or allow plaintiff the privilege of purchasing, receiving, possessing and smoking tobacco

-39-        (cont. on REVERSE side)

PRAYER FOR RELIEF, CONT.:

products outside or in a designated area
of the facilities of MASS. DOC and/or to
provide or allow plaintiff non-smoking
patches, anti-smoking tablets and anti-
smoking devises. And, that the defendants
make a provision in its 103 CMR which would
permit an inmate privilege of smoking
tobacco products outside or in a designated
area of the facilities of MASS. DOC.

iv. Order directing the defendants to provide
the plaintiff with adequate food per meal
consisting of a variety of quality nutricious
foods in compliance with the Public Health
Law of no less than a daily minimum 2000
calorie diet. That the menu be prepared
by a certified dietician and that the meals
are not repetative nor punitively rationed.
That butter and jelly are included with the
breakfast, and that ketchups, mustards,
mayonaise, tarta sauce, relish, chilli, onions,
peppers, sandwich dressings and etc., for all
sandwich meats such as beef burgers, turkey,
hot dogs, fish patties and etc. Also, that

PRAYER FOR RELIEF, CONT.:

the MEALS include A VARIETY of FResh fRuits and FResh vegetables And deserts with the lunch And dinner such AS cakes, cupcakes, muffins, pies And etc. And, such other And further corrective measures AS the court deems Appropriate to ensure that the defendants provide Adequate food per meal And not punitively RAtioned meals. Also, holiday MEALS.

V.  ORder directing the defendants to provide the plaintiff with Adequate clothes such AS pants with pockets And zippers; button-up shirts (long And short sleeves) with NAme tags And number on pockets rather than DOC letters on the back; brief underware; formal dress shirt, sweatshirt, ski-coat And boot-shoes together with such other And further corrective measures AS the court deems Appropriate to ensure that the defendants provide Adequate clothes.

V½. ORder directing the defendants to provide SAFE And Secure prison enviroments by discouraging ethnic And gang violence Amongst inmates by enforcing seat-by-line mess hall formation; recreation equipment And security in prison yard And its walkways; by maximum or increased penalty for inmate on inmate Assaults And initiated fights including mandatory criminal charges, And the above rights, privileges And programs as incentives for good behavior.

-41-                    (cont. on reverse side)

PRAYER FOR Relief, cont.:

vi.   ORDER directing the defendants to provide
      the plaintiff with idle PAY when he is
      available to WORK OR PROGRAM but is Not
      assigned WORK OR PROGRAM, AND that the
      idle PAY be deducted AS A PERCENTAGE
      OR PORTION FROM the money which is
      provided to the defendants FOR his education,
      VOCATIONAL AND WORK PROGRAMS. AND, that
      the defendants MAKE A PROVISION IN its
      103 CMR governing idle PAY.

vii.  ORDER directing the defendants to
      eliminate double bunking within MASS.DOC
      facilities which would ALSO eliminate
      the PRACTICE of RACIAL SEGREGATION
      (discrimination) IN the defendants double
      bunking process.

viii. ORDER directing the defendants to Allow
      the plaintiff the FIRST Amendment Right
      OR privilege of ASSOCIATION with other
      INMATES AS AN INMATE ORGANIZATION
      called the N.A.A.C.P., AND that the
      defendants MAKE A PROVISION IN their
      103 CMR FOR INMATE ORGANIZATIONS.

PRAYER FOR RELIEF, cont.:

ix. Order directing the defendants to allow the plaintiff the first amendment right or privilege of association with other inmates as an Inmate Liason Committee. And, that the defendants make a provision in their 103 CMR for its function.

x. Order directing the defendants to improve the Inmate Grievance Program by allowing inmate representatives to participate in the review and decision making process, and by the creation and maintenance of a "Master Index" containing prior decisions by subject matter upon which review and decisions shall be based. And, that the 'Master Index be made available to the inmate population, and for such other and further corrective measures as the court deems appropriate for a fair and just Inmate Grievance Program.

-43-    (cont. on reverse side)

PRAYER FOR RELIEF, cont.:

xi. ORDER directing the defendants to implement a "FAMILY REUNIOUN PROGRAM" consisting of conjugal visits and free state sponsored bus rides for relatives and friends to visit, and that the visiting schedules provide more time per visit and are made more frequent. AND, that the defendants make a provision in their 103 CMR governing a "FAMILY REUNIOUN PROGRAM."

xii. ORDER directing the defendants to restore or allow plaintiff's privilege or right to purchase and receive WALKMAN CASSETT players with cassett tapes through the "MUSIC BY MAIL" PROGRAM, and that the defendants make a provision in their 103 CMR governing such a "MUSIC BY MAIL" PROGRAM, including the receipt and possession of musical instruments.

-44-

# PRAYER FOR RELIEF, cont.:

xiii. Order directing the defendants to restore or allow plaintiff's right and privilege to subscribe and receive pornographic materials such as "PLAYBOY, PENTHOUSE and PLAYERS magazines, and that the defendants revise their 103 CMR 481 to allow this right and privilege.

ivx. Order directing that the defendants provide the plaintiff with an in-cell color T.V. due to his poverty and/or that the defendants allow such inmates as the plaintiff, who are unable to afford a color T.V., to receive a color T.V. from a charitable community organization. As an alternative, an order directing that the defendants provide a color T.V. in every cell of DOC facilities in which T.V. is allowed, and that the color T.V. be a part of the appliance or furniture of state property belonging to the cell. And for such other and further corrective measures as the court deems appropriate to ensure equality in the privilege of the defendants' in-cell color T.V. program.

-45-    (cont. on reverse side)

PRAYER FOR RELIEF, cont. :

XV. Order directing that the defendants implement and maintain a protective custody program and units for all of their state inmates who need or request protection, and that such program is not within the punitive administrative segregation units; that such protective custody inmate would not be placed in the punitive administrative segregation units under an order or request for protection, and that such protective custody inmate receive the same privileges afforded inmates in the general population which is not inconsistent with their protective custody status, and such other and further corrective measures as the court deems appropriate.

XVi. The plaintiff demands a trial by jury.

I swear under the penalty of perjury that the foregoing is true and correct.

Dated: August 18, 2005.

Signature:

Felipe Oteze Fowlkes:

-46-