UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FELIPE FOWLKES,                    )
        Plaintiff,             )
                               )
     v.                        )          C.A. No. 05-11749-JLT
                               )
KATHLEEN M. DENNEHY, ET. AL.,      )
        Defendants.            )

<u>MEMORANDUM AND ORDER</u>

TAURO, D.J.

      For the reasons set forth below: (1) Plaintiff's claims alleging Eighth Amendment

violations in connection to inadequate food, and inadequate clothing shall proceed with respect

to Defendants Dennehy, Nolan, Spencer, and Pepe; (2) Plaintiff's claim alleging Eighth

Amendment violations in connection to facility safety and security shall proceed only against

Defendant Dennehy and Nolan; (3) Plaintiff's claim regarding his ability to purchase and use

tobacco as a member of the Five Percenter religion shall proceed as to Defendants Nolan,

Spencer, and Dennehy; (4) Plaintiff's claim regarding discriminatory double bunking shall

proceed only against Defendants Dennehy and Nolan; (5) Plaintiff's claims for monetary

damages against Defendant Dennehy are dismissed *sua sponte*; (6) summonses shall issue with

respect to Defendants Dennehy, Nolan, Spencer, and Pepe only, and no other summonses shall

issue pending Plaintiff's compliance with this Memorandum and Order; (7) within forty-two (42)

days of the date of this Memorandum and Order, Plaintiff is Ordered to show cause in writing as

to why all of his remaining claims (including his First Amendment claims) against all other

Defendants should not be dismissed; (8) the U.S. Marshal shall bear the costs of service of

process on Defendants Dennehy, Nolan, Spencer, and Pepe; (9) to the extent Plaintiff seeks to

bring his claims as a class action, such request is denied without prejudice; and 10) Plaintiff is

advised he is responsible for continued notification of a current mailing address.

BACKGROUND

On August 17, 2005, Plaintiff Felipe Fowlkes ("Fowlkes"), then a prisoner at MCI Cedar Junction,[1] filed a civil rights Complaint challenging a myriad of conditions of confinement at various state prison facilities. Fowlkes names 11 Defendants to this action, including (1) Kathleen M. Dennehy, Commissioner of Corrections; (2) James R. Bender, Deputy Commissioner; (3) Timothy Hall, Assistant Deputy Commissioner; (4) John Marshall, Assistant Deputy Commissioner;[2] (5) Veronica Madden, Associate Commissioner of Reentry and Reintegration; (6) Ronald T. Duval, Assistant Commissioner of Administration; (7) Kristie LaDouceur, Commissioner's Inmate Grievance Reviewer;[3] (8) Peter Pepe, Superintendent of Concord Prison; (9) David Nolan, Superintendent of Cedar Junction;[4] (10) Ann Marie Aucion, Inmate Grievance Coordinator; and (11) Luis Spencer, Superintendent of MCI-Norfolk.

Fowlkes claims that at all times during his imprisonment within the Massachusetts Department of Corrections his civil rights were violated in a variety of ways. He does not, however, specify the dates of his imprisonment. Specifically, he alleges that (1) he has been

---

[1]At the time of filing of the Complaint, Fowlkes was housed at MCI Cedar Junction. Since the filing, he has been moved to MCI Norfolk, and the last known information of his whereabouts is that he is currently housed at the Souza Baranowski Correctional Center in Shirley, MA.

[2]See footnote 3, supra.

[3]Initially Fowlkes identified this Defendant as Christian Laducia, but has since amended this to Kristie Ladouceur.

[4]Since the filing of the Complaint, John Marshall Jr. has become the Superintendent of MCI Cedar Junction, replacing David Nolan. This Memorandum and Order addresses Fowlkes's claims as pled, however, the Court will entertain a motion to substitute John Marshall Jr. at a later point in the proceedings.

2

denied smoking privileges in view of the complete ban on tobacco products, and that he has been denied treatment to assist in alleviating his smoking related withdrawal symptoms, Compl. at 11-12;  (2) the food served is inadequate since it does not reach the 2000 calories required by public health law, and that this inadequacy has resulted in nutritional deficiencies manifested in various physical symptoms, id. at 12-15; (3) there is a lack of adequate clothing, resulting in colds, flu, and pneumonia, id. at 15-18; (4) he has been denied idle pay, id. at 18; (5) he has been forced to double bunk and is only bunked with members of his own race, id. at 19-20; (6) he has been denied the opportunity to form an inmate organization chapter of the NAACP and an "Inmate Liaison Committee," id. at 20-22; (7) Defendants have not meaningfully reviewed his grievances, do not allow his participation in the process, and do not keep an index of previous decisions, id. at 22-24; (8) his request to form a "family reunion program" was wrongfully denied, id. at  24-25; (9) he is not allowed to purchase music cassettes through the mail, id. at 25-26; (10) he has been denied access to pornographic materials, id. at 26; (11) Defendants discriminate against him by not providing him with a color TV when he is unable to afford one for himself, id. at 27; (12) Defendants do not have a protective custody program in place, id. at 28-29; and (13) the prison is not safe and secure due to mess hall seating arrangements, the lack of security in the prison yard, and lenient penalties for inmates who engage in violent conduct, id. at 29.5.

Fowlkes subsequently filed documents seeking to amend the Complaint (# #6 and 7) in which he alleges that the right to purchase and use smoking products is vital to his religion, and that the denial of tobacco constitutes a violation of his First Amendment rights.  Additionally, in

his Amendments (##6 and 7),  Fowlkes reasserts and expounds on the allegations previously

made regarding inadequate safety measures and inadequate food.

        In his amendments, Fowlkes also added another Defendant, Luis Spencer for denying his

grievances and because he is suing all "superintendents of Mass. DOC facilities where plaintiff

is likely to be confined.…"  The amended complaint also seeks to correct a typographical error

in the spelling of Defendant Kristie LaDouceur.

        Fowlkes requests compensatory and punitive damages as well as injunctive relief

remedying these matters.  Plaintiff application to proceed *in forma pauperis* was previously

allowed by this Court.  See Order (#3).

ANALYSIS

I.        Plaintiff's Amended Complaint

        To the extent that  Plaintiff's amended complaint (as contained in documents ##6 and 7)

adds Superintendent Luis Spencer as a defendant, the Court will permit this additional Defendant,

subject to the limitations set forth in this Memorandum and Order.   With respect to the correction

of a typographical error regarding  Defendant Kristie LaDouceur , the Court accepts this correction

and instructs the Clerk to correct the docket accordingly.


II.        The Court May Screen this Action Pursuant to Sections 1915, 1915A, and 1997e.

        Because Fowlkes is a prisoner, he is subject to the provisions of the Prison Litigation

Reform Act.  The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134,

110 Stat. 1321-1375 (1996), enacted several provisions which grant this Court the authority to

screen and dismiss prisoner complaints.  See 28 U.S.C. § 1915 (proceedings *in forma pauperis*);

28 U.S.C. § 1915A (screening of suits against governmental officers and entities).  Section 1915

authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2).  *In forma pauperis* Complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Additionally, § 1915A authorizes the Court to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the Plaintiff has paid the filing fee, if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

Here, many of Fowlkes's claims are subject to dismissal or are otherwise limited, for the reasons set forth below.

III.    Failure to Comply with Fed. R. Civ. P. 8(a) and 10

Rule 8(a) of the Federal Rules of Civil Procedure governs the substance of a pleading, and requires a Plaintiff to include in the Complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a) (2).  This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)), such that the defendant is afforded a "meaningful opportunity to mount a defense." Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting

Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).  "In a civil rights action

..., the complaint should at least set forth minimal facts as to who did what to whom, when,

where, and why." Educadores PuertorriqueZos en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir.

2004). Although "the requirements of Rule 8(a)(2) are minimal ... minimal requirements are not

tantamount to nonexistent requirements." Id.  (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513,

514 (1st Cir. 1988)).   Additionally,  Rule 10 of the Federal Rules of Civil Procedure governs the

form of pleadings, and requires, in part, that "[a]ll averments of claim or defense shall be made

in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a

statement of a single set of circumstances..." Fed. R. Civ. P. 10(b).[5]

The Court recognizes that *pro se* Complaints should be read liberally.  Hughes v. Rowe,

449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion

---

[5] Rule 10 provides:

Rule 10— Form of Pleadings

(a) Caption; Names of Parties. Every pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a). In the complaint the title of the action shall include the names of all the parties, but in other pleadings it is sufficient to state the name of the first party on each side with an appropriate indication of other parties.

(b) Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

(c) Adoption by Reference; Exhibits. Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.

Universal Corp. v. U.S. Dept., 209 F.3d 18, 23 (1st Cir. 2000).   However, even under a generous

reading, Fowlkes fails to meet the minimum pleading standards under both Rules 8(a) and 10, to

raise legally cognizable claims with respect to most of the listed Defendants, and as to many of

his asserted claims.  For instance, in the body of his Complaint, Fowlkes does not mention

Defendants Bender, Hall, Marshall, Madden, Duval, LaDouceur, or Aucion, or their connection

to any of his claims, or, if mentioned, there is no factual allegation set forth which would link

these Defendants to any cognizable cause of action.  The only names mentioned in the body of

the Complaint are Commissioner Kathleen M. Dennehy, Superintendent Pepe, and

Superintendent Nolan (and Superintendent Spencer in the amendments to the Complaint).

Accordingly, for failure to plead cognizable claims against the other Defendants, Fowlkes must

show cause as to why his claims against Defendants Bender, Hall, Marshall, Madden, Duval,

LaDouceur, and Aucion should not be dismissed.

IV.    Plaintiff's Claims Against Kathleen Dennehy, Commissioner of Corrections.

      A.    Sovereign Immunity

First, to the extent that Plaintiff seeks monetary damages against Commissioner Dennehy

in her official capacity, his claims are barred because Defendant Dennehy is entitled to Eleventh

Amendment sovereign immunity.  See  28 U.S.C. § 1915(e)(2)(B).  It is well settled that a

plaintiff cannot sue an official, acting within the scope of his/her office, for money damages.

Will v. Michigan Department of State Police, 491 U.S. 58, 64-71 (1989).  "...[A] suit against a

state official in his or her official capacity is not a suit against the official but rather is a suit

against the official's office.  As such, it is no different from a suit against the State itself."  Id. at

71.  Accordingly, these claims are dismissed *sua sponte*.

B.    <u>Prospective Injunctive Relief</u>

Notwithstanding the above, however, Defendant Dennehy may be sued in her official

capacity in a § 1983 suit for prospective injunctive relief.  <u>See</u> <u>Will v. Michigan Dept. of State</u>

<u>Police</u>, 491 U.S. 58, 71 n.10 (1989). Therefore, the Court will permit Plaintiff's claims for

prospective injunctive relief to proceed as set forth in this Memorandum and Order, and a

summons shall issue with respect to Defendant Dennehy.

C.    <u>No Respondeat Superior Liability</u>

Moreover, to the extent that Fowlkes seeks to hold Commissioner Dennehy liable,

*respondeat superior* is not a viable theory of § 1983 liability here. <u>Capozzi v. Department of</u>

<u>Transp.</u>, 135 F. Supp. 2d 87, 98 (D. Mass. 2001) <u>citing</u> <u>Ruiz v. Riley</u>, 209 F.3d 24 (1st Cir. 2000).

Rather, a supervisor is liable only for his or her own acts and omissions and is not vicariously

liable for the acts of his or her subordinates. <u>See</u> <u>id</u>.  <u>See</u> <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41,

43-44 (1999).  Accordingly, for the reasons stated above, all of Plaintiff's claims for damages

against Commissioner Kathleen Dennehy are dismissed *sua sponte*.  Similarly, to the extent

Plaintiff raises § 1983 claims against any other supervisor based on vicarious liability, such

claims are subject to dismissal as well.

V.    <u>Exhaustion of Administrative Remedies</u>

Section 1997e(a) provides that no action shall be brought with respect to "prison

conditions" under § 1983 by a prisoner "until such administrative remedies as available are

exhausted."  42 U.S.C. § 1997e(a).  Prison conditions, for the purposes of § 1997e(a), have been

broadly interpreted to include "all inmate suits about prison life."  <u>Porter v. Nussle</u>, 534 U.S.

516, 532 (2002).  <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 740 (2001) (a prisoner must exhaust all

available administrative processes regardless of the relief offered through those procedures);

accord Menina-Claudio, 292 F.3d 31, 35 (1st Cir. 2002) (no futility exception to the exhaustion

requirement; cf. Casanova v. Dubois, 289 F.3d 142, 147 (1st Cir. 2002) (citation omitted)

(although the exhaustion requirement is not jurisdictional, it is mandatory).  While Plaintiff

alleges exhaustion, many of his claims do not appear to have been completely grieved.  Rather,

they appear to be raised in a request for restoration of rights and privileges sent directly to

Defendant Dennehy.  The present record is not entirely clear as to Fowlkes's exhaustion efforts,

and this Court will not dismiss his claims *sua sponte* for lack of exhaustion, but notes the claims

are subject to dismissal for lack of exhaustion at a future time.

VI.     The Section 1983 Claims

        A.      First Amendment Claims

        Plaintiff's claims regarding his inability to possess pornography, his inability to receive

cassette tapes, and his inability to form inmate organizations are properly analyzed under the

First Amendment.  Turner v. Safley, 482 U.S. 78, 84 (1987) (prisoners retain a First Amendment

right to petition the government for redress of grievances).  As noted previously, Fowlkes fails to

allege sufficient facts in accordance with Rule 8(a) and Rule 10.  However, even if he had pled

the requisite factual details, the claims are also subject to dismissal on the merits.

        While it has been recognized that a prisoner does not lose First Amendment rights while

incarcerated, the Supreme Court has recognized that such rights may be limited so long as the

limits are "reasonably related" to penological interests.  Bell v. Wolfish, 441 U.S. 520, 545

(1979).  In Turner v. Safley, 482 U.S. 78, 89 (1987), the "reasonably related" test of Bell was

applied to a prisoners' rights to send and receive mail.  The Turner Court held that a prison's

rule which prohibited inmate to inmate correspondence via the mail was reasonably related to a legitimate penological interest of security, and did not infringe upon the prisoners' constitutional rights. Turner, 482 US at 91-92. The right of association and the right to possess other materials such as cassette tapes and pornography are similarly analyzed under Turner. Courts have found that the policy of screening cassette tapes for explicit content does not violate an inmate's First Amendment rights because it is reasonably related to the security concerns. See, e.g., Golden v. McCaughtry, 937 F.Supp 818, 822 (E.D.Wisc. 1996). Similarly, courts have found that certain regulations against certain prisoner organizations also may be related to penological interests. See Jones v. North Carolina Prisoner's Union, 433 U.S. 119, 126-132, (1977). Finally, courts have found that there is no right to possess pornographic materials under the Constitution when regulations restricting this are related to legitimate penological interests. Amatel v. Reno, 156 F.3d 192, 202-203 (D.C. Cir. 1998); Mauro v. Arpaio, 188 F.3d 1054, 1060-62 (9th Cir. 1999).

While Fowlkes's claims raise issues of fact as to the feasibility and reason for denial of the materials and the associations desired by him, these claims cannot proceed as pled, because of the substantial pleading deficiencies presented. The lack of material factual information as to the dates, places, and persons involved makes it virtually impossible for any of the Defendants to file a meaningful response. Therefore, Plaintiff is ordered to show cause as to why these claims should not be subject to dismissal.

i.    Family Reunion Program

Fowlkes requests that a "family reunion program" be implemented so as to allow conjugal visits and free transport for friends and relatives to the facility in which he is held. It thus appears he is attempting to invoke the right to "intimate association." See Roberts v. United

10

States Jaycees, 468 U.S. 609, 617-18 (1984) (the right to "freedom of association" which requires that "choices to enter into and maintain certain intimate human relationships… be secured against undue intrusions by the State" is a right which "receives protection as a fundamental element of personal liberty"); Board of Directors of Rotary Intern'l v. Rotary Club of Duarte, 481 U.S. 537, 545 (1987) (First Amendment right of association "protects those relationship, including family relationships).

Apart from this First Amendment right, courts have recognized that one of the interests protected by the substantive due process aspect of the Fifth Amendment is "an abstract fundamental liberty interest in 'familial integrity.'" Frazier v. Bailey, 957 F.2d 920, 929 (1st Cir. 1992). However, while the government generally may not interfere in certain family decisions such as religion or schooling, there is no constitutionally protected interest in the companionship of a family member. See, e.g., Ortiz v. Burgos, 807 F.2d 6, 8 (1st Cir. 1986). There is also no right to "unfettered visitation." Kentucky Department of Corrections v. Thompson, 490 U.S. 545, 460 (1989). Limitations upon visitations that serve legitimate penological goals are valid. See Pell v. Procunier, 417 U.S. 817, 826 (1974).

Once again, while Fowlkes's allegations raise questions of fact regarding the amount and type of visitation Plaintiff is allowed, he has not provided any meaningful details regarding the denied visitation or the involvement of any of the Defendants in this regard. Therefore, Fowlkes is ordered to show cause as to why these claims should not be dismissed for failing to comply with Rules 8 and 10.

    ii.    First Amendment Claims Relating to the Religion of the Five Percenters

Plaintiff, a follower of the Five Percenters,[6] alleges violations of his First Amendment right to freedom of religion pursuant to 42 U.S.C. § 1983, by purposefully denying him tobacco products.

Despite the lack of detail presented by Fowlkes, the Court will permit this claim to proceed at this time, only as to Defendants Nolan, Spencer and Dennehy.  If Fowlkes asserts this claim as to any other Defendant, he must show cause how this claim invokes the liability of any other Defendant.

B.    Eighth Amendment Claims

To the extent that Plaintiff claims violation of the Eight Amendment, he must (1) allege a deprivation that is objectively "sufficiently serious," meaning that a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," and (2) the prison official's state of mind must be one of "deliberate indifference" to inmate health or safety.  Farmer v. Brennan, 511 U.S. 825, 831 (1994); accord Kosilek v. Maloney, 221 F. Supp. 2d 156, (D. Mass. 2002).  This standard contemplates "a condition of urgency" that may result in "degeneration" or "extreme pain."  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

i.    Punitive Rather than Rehabilitative Policies

To the extent that Plaintiff claims that Defendants' policies are punitive rather than rehabilitative he fails to allege how this raises a constitutional issue.  While Plaintiff alleges that the punitive function of prison facilities was outlawed in the mid-1980s when the "system of

---

[6]The Five Percenter religion, also known as the Nation of Gods and Earths, is a recognized religion by many federal and state courts.  Like many other religions, there are certain dietary restrictions.  See, e.g., Patrick v. LeFevre, 745 F.2d 153, 155-156 (2nd Cir. 1984); Fraise v. Terhune, 283 F.3d 506, 511-512 (3rd Cir. 2002).

'corrections' [was] implemented… [and] became national correctional law", Compl. at 8, he

does not cite any authority for this statement, or how this fact relates to his particular

circumstances.  Again this raises Rule 8(a) problems insofar as these allegations do not provide

any Defendant with sufficient information by which a meaningful response could be filed.

Therefore, Plaintiff is ordered to show cause as to why these claims should not be dismissed for

failure to state a cognizable claim in view of the lack of constitutional issues.

ii.    <u>Deliberate Indifference to Health and Safety</u>

Fowlkes's inadequate food claim, his inadequate clothing claim, his claim regarding the

lack of an anti-smoking treatment, and his claim that the facility is not safe and secure, are

properly analyzed as deliberate indifference to health and safety causes of action.  Defendant

may have a viable § 1983 claim if he can show deliberate indifference on the part of prison

officials to his health and safety.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

a.    <u>Inadequate food and clothing</u>

Fowlkes alleges that because of the facility's inadequate meals he is not receiving his

daily nutritional needs.  He claims this has resulted in physical injuries such as, *inter alia*, dry

skin, brittle bones, cramps, numbness in limbs, pulled muscles, and weight loss. Compl. at 14-

15.[7]  Prisoners are dependant on the state for meals and are entitled to "nutritionally adequate

food that is prepared and served... under conditions which do not present an immediate danger to

the health and well being of the inmates who consume it." <u>Ramos v. Lamm</u>, 639 F.3d 5559, 570-

---

[7]As part of this claim, Fowlkes alleges that Defendants have failed to provide him with condiments, and have failed to serve special holiday meals on Christmas, Easter, Patriot's Day, Thanksgiving, etc.  These assertions, in and of themselves, do not raise constitutional considerations, and the Court will not consider these allegations as distinct claims.

571 (10th Cir. 1985).  As an additional assertion regarding his inadequate food claim, Fowlkes

alleges that he has been prevented from using the mess hall facility because of Defendants'

policy of letting prisoners congregate at the tables of their choice.  Plaintiff alleges that this

policy allows gangs and other illegal affiliations to congregate, and these people have prevented

Plaintiff from eating, through the use of threats, intimidation, and assault.

With respect to his inadequate clothing claim, Fowlkes alleges that he is not provided

with adequate clothing, and that this has led to unnecessary exposure to cold and inclement

weather. Compl. at 15-16.[8]   Courts have condemned prison official's failure to provide adequate

clothing to protect inmates from exposure to raw weather.  Gorden v. Faber, 973 F.2d 686 (8th

Cir. 1992) (constitutional violation when prison officials sent inmates into freezing weather

without hats or gloves); Balla v. Idaho State Board of Corrections, 595 F. Supp. 1558, 1575 (D.

Idaho 1984) (constiutional violation when clothing was "patently insufficient to protect [them]

from the cold during winter).

Although Fowlkes's Complaint is devoid of any specific dates as to these serious alleged

deprivations, the Court will permit the claim to proceed against Defendants Dennehy, Pepe,

Spencer, and Nolan only, unless Fowlkes shows cause as to how these claims relate to any other

Defendant.

b.    Lack of anti-smoking treatment

----

[8]As part of this claim, Fowlkes alleges that the boxer-style underwear with which inmates
are provided are inherently dangerous to male inmates.

Fowlkes alleges that the prisons' no smoking policy, combined with their lack of smoking treatment programs, has led to significant physiological damage. The type of physiological damage is not specified and Fowlkes does not allege any physical symptoms. Although the Court recognizes the pleading problems presented, this claim will be permitted to proceed at this time, only as to Defendants Dennehy, Pepe, Spencer, and Nolan, unless Fowlkes shows cause as to how these claims relate to any other Defendant.

c.    <u>Facility Safety and Security</u>

Fowlkes alleges 1) that the policy allowing inmates to congregate at the table of their choice leads to gang-related violence which has resulted in numerous assaults of him, 2) that guards are not provided in the prison yards and along the walkways during recreation time, and that this has led to an assault which left the Plaintiff with serious injuries to his head, a fractured nose, and stitches on his face, 3) that penalties for inmate fights are non-existent or so minimal as to not be effective in deterring inmate assaults; and 4) that no workable protective custody system is in place. Compl. at 29.5. According to Fowlkes, these policies encourage inmate violence and have contributed to the assaults he has suffered. He alleges the prison officials' acts and omissions are willful and deliberately indifferent to his safety. Because these allegations raise significant questions of fact, Fowlkes's claims will be permitted to proceed as against Defendants Dennehy and Nolan only, with respect to MCI Cedar Junction. Fowlkes fails, however, to provide sufficient detail as to the occurrences at MCI Concord or MCI Norfolk at which Defendant Pepe and Defendant Spencer are the superintendents. If Fowlkes seeks to include Defendant Pepe and/or Defendant Spencer, or any other Defendant in this claim, he must show cause as to why those Defendant(s) should be included.

d.    Double-Bunking

Fowlkes alleges that the prison's double-bunking policy has exposed him to numerous health risks. However, he does not allege any harm other than this increased chance. To that extent Plaintiff has not alleged a cognizable deprivation to state a claim of cruel and unusual punishment under the Eighth Amendment, the claim is subject to dismissal. See Rhodes v. Chapman, 452 US 337, 349 (1981) (explaining that overcrowding may be unpleasant and painful but no Eighth Amendment violation occurs unless this overcrowding caused serious hardships); Cote v. Maloney, 2005 WL 2708221 (1st Cir. (Mass.) October 21, 2005) (double-bunking is not *per se* unconstitutional). However, Plaintiff raises allegations of discrimination with respect to double bunking practices, and this Court will not dismiss this claim *sua sponte* but will permit the claim to proceed as only against Defendants Dennehy and Nolan. If Fowlkes seeks to include Defendant Pepe and/or Defendant Spencer, or any other Defendant in this claim, he must show cause as to why those Defendant(s) should be included.[9]

C.    Fourteenth Amendment Claims

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." United States Const. Amend XIV. To the extent that Fowlkes claim that he is being treated differently than other inmates within state and federal systems his claim is properly analyzed under the Fourteenth Amendment. As an initial matter, Fowlkes's

---

[9]Fowlkes makes bald allegations that the "Defendants" are liable, however, he fails to identify the Defendants to which he refers, and fails to link the facts upon which the claims are based. Therefore, the Court's limitations on the claim is without prejudice to his showing cause why any other named Defendant should be included in the claim. It is also noted that although Fowlkes generally has sought to add Defendant Spencer to his claims, he has not pled details of any double bunking practices at MCI Norfolk.

16

Equal Protection claims is subject to dismissal because he does not allege that the purported unequal treatment is based on any constitutionally impermissible motive. See, e.g., Judge v. City of Lowell, 160 F.3d 67, 74 (1st Cir. 1998) (in order to state a claim under the Equal Protection clause, a plaintiff must allege not only that the defendants were aware of her race at the time of their actions but also that defendants acted because of plaintiff's race); accord Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp., 246 F.3d 1, 7-8 (1st Cir. 2001) (same).  To the extent that Fowlkes seeks transfer to another facility or alleges disparity in the conditions of his confinement as compared to prisoners in other facilities, his claim is subject to dismissal because he has no right to be held in the facility of his choosing with the rules he finds most acceptable. Johnson v. Fair, 697 F. Supp. 567, 572 (D. Mass. 1988) (citing Meachum v. Fano, 427 U.S. 215, 224 (1976), Moody v. Daggett, 429 U.S. 78, (1976), and Montanye v. Haymes, 427 U.S. 236 (1976)).  Therefore, Plaintiff is directed to show cause as to why his Equal Protection claims should not be dismissed for failure to state a claim upon which relief can be granted.

      D.    Due Process Claims

Plaintiff brings a claim under the Due Process clause of the Fifth Amendment regarding the denial of his grievances.  In evaluating Plaintiff's due process claim, the Court must first consider whether there is an identifiable liberty or property interest with which the state has interfered. Board of Regents v. Roth, 408 U.S. 564 (1972).  The framework for determining whether a state prisoner challenging prison practices has stated a liberty interest is set forth by the United States Supreme Court in Sandin v. Conner.  515 U.S. 472 (1995).  To establish a right to procedural due process, prisoners must assert either (1) that the deprivation was of the sort giving rise to due process protection of its own accord, or (2) that mandatory language in prisoner regulations has created a

liberty interest with respect to a deprivation that is "atypical and significant." <u>Sandin v. Conner</u>, 515

U.S. at 484; <u>Skinner v. Cunningham</u>, 430 F.3d 483 (1st Cir. 2005). [10]

      i.   <u>Grievance Procedures</u>

Fowlkes alleges that Defendants:1) do not allow meaningful review of his grievances, 2)

do not allow him to participate in the decision-making process; and 3) do not have an index of

written records of past decisions.  As previously noted, Fowlkes fails to make his allegations

with enough specificity to satisfy Rule 8(a) and allow defendants to adequately respond.

Furthermore, Fowlkes fails to state a liberty or property interest to raise a constitutional violation

as a result of this denial.

To the extent that Fowlkes alleges that that he should have a more extensive role in his

grievance proceedings he likens these proceedings with disciplinary proceedings in which

inmates have more extensive rights.  <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).  Unlike

sanctions after a disciplinary hearing, the denial of an inmate grievance does not result in any

punitive action by prison officials.   To the extent Fowlkes complains that certain defendants

failed to answer his grievances or denied his grievances and the appeals, he has not demonstrated

that he had a constitutionally protected interest in the grievance procedures. <u>See</u> <u>Piper v. Alford</u>,

2003 WL 21350215 at *2  (N.D.Tex., June 4, 2003) (holding that an inmate "does not have a

constitutional entitlement to an adequate grievance procedure" and the ineffectiveness or even

---

[10]In the prison context, very few deprivations give rise to direct protection by the Due Process Clause of its own force. In <u>Sandin</u>, the Supreme Court references only two instances: the involuntary transfer of a prisoner to a psychiatric hospital, and the involuntary administration to a prisoner of antipsychotic medication. <u>Sandin v. Conner</u>, 515 U.S. at 484, (citing <u>Vitek v. Jones</u>, 445 U.S. 480, 493, (1980) (involuntary hospitalization), and <u>Washington v. Harper</u>, 494 U.S. 210, 221-222 (1990) (involuntary medication)).

absence of a grievance procedure does not give rise to a constitutional claim); <u>see</u> <u>also</u> <u>Leavitt v.</u> <u>Allen</u>, 46 F.3d 1114 (1st Cir. 1995) (citing <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991); <u>accord</u> <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994) (citations omitted).

Accordingly, Fowlkes is ordered to show cause as to why these claims should not be dismissed.

### ii. <u>Idle Pay</u>

To the extent that Fowlkes claims that he is entitled to earn idle pay for his time without a position in the prison work program, he fails to allege how this raises a constitutional issue. As previously noted, while the state may create a property right through their regulations, he has failed to state where or how this right was created and how a state created property right raises a constitutional issue. Therefore, Plaintiff is ordered to show cause as to why these claims should not be dismissed.

### iii. <u>Color Television</u>

Similarly, Fowlkes claim of discrimination based on his economic condition and his ability to purchase a color television also fails to implicate a constitutional issue. Plaintiff has not set forth that he is a member of a protected class for purposes of any equal protection claim. Accordingly, Fowlkes is ordered to show cause as to why these claims should not be dismissed.

### VI. <u>Class Certification</u>

Although no formal motion for class certification was filed by Fowlkes, it appears from his pleadings that he is attempting to prosecute his civil rights claims on behalf of other unidentified inmates within the Massachusetts Correctional system.

There is an independent obligation on the Court to determine whether this action may be maintained as a class action "as soon as practicable." See Fed. R. Civ. P. 23(c)(1); Caputo v. Fauver, 800 F. Supp. 168, 169 (D. N.J. 1992); accord, Shaffery v. Winters, 72 F.R.D. 191, 193 n.1 (S.D.N.Y. 1976).

Title 28 U.S. C. § 1654 permits persons to proceed *pro se*. However, this provision does not authorize unlicensed laypeople to represent co-plaintiffs or any other individuals. See Feliciano v. DuBois, 846 F. Supp. 1033, 1039 (D. Mass. 1994); Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308 (2nd Cir. 1991). Additionally, this Court's Local Rules do not provide such authorization. See District of Massachusetts Local Rule 83.5.3(c), providing that "[a] person who is not a member of the bar of this court, and to whom section (a) and (b) are not applicable, will be allowed to appear and practice before the court only in his own behalf." Id.

Moreover, a basic requirement for all class actions is that the named plaintiff can "fairly and adequately" represent the class. Fed. R. Civ. P. 23(a)(4). Courts have generally recognized that a non-attorney, *pro se* prisoner (or civilly detained litigant in this case) cannot "fairly and adequately" represent the interests of fellow inmates in a class action. See Caputo, 800 F. Supp. at 170; See also Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000); Fowler v. Lee, 2001WL 1033312 (4th Cir. Sept. 10, 2001) (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975)) (not selected for publication); Cahn v. United States, 269 F. Supp. 2d 537, 547 (D.N.J.

2003); <u>Barth v. Town of Sanford</u>, 2001 WL 1356157, at *1 (D. Me. 2001); <u>Hussein v. Sheraton New York Hotel</u>, 100 F. Supp. 2d 203, 206 (S.D.N.Y. 2000).

Thus, this Court could not certify a class without appointing counsel.  Fed. R. Civ. P. 23(g)(1)(A).  Although Fowlkes has not sought appointment of counsel at this juncture, any such request is not ripe at this time.  The Defendants have not been served with the Complaint, nor has a responsive pleading been filed, and this Court does not find at this time that the appointment of *pro bono* counsel is warranted in view of the specious merits of the claims presented.

Accordingly, in view of the above, this Court will not treat this action as a class action, and Fowlkes may only litigate his *own* claims at this time, and may not act on behalf of any class of inmates.

VII.    <u>Plaintiff's Request for the Court to Locate His Correct Address</u>

Fowlkes has requested that once a preliminary screening has been conducted, this Court search for his whereabouts to ensure that he has notice of any Court rulings.  It is his responsibility to notify this Court of any change in address, and not the responsibility of the Clerk or Court to conduct investigations as to Plaintiff's current residence.  Local Rule 83.5.2(e) provides:

> Each attorney appearing and each party appearing pro se is under a continuing duty to notify the clerk of any change of address and telephone number.  Notice under this rule shall be filed in every case.  Any attorney or party appearing pro se who has not filed an appearance or provided the clerk with his current address in accordance of this rule shall not be entitled to notice. Notice mailed to an attorney's or party's last address of record shall constitute due notice contestable only upon proof of a failure to mail delivery.

<u>Id.</u>

Accordingly, Fowlkes's request is denied.  Notice will be provided to him at Souza Baranowski Correctional Center, unless he submits a pleading entitled "Notice of Change of Address" which indicates a different mailing address.

VIII.    <u>Restrictions on Any Show Cause Response Filed by Plaintiff</u>

Based on the foregoing, this Court has limited the scope of Plaintiff's claims and will dismiss others absent a show cause response from Plaintiff why his claims should not be permitted to proceed.   Any show cause response must be filed within forty-two (42) days of the date of this Memorandum and Order.

In order to facilitate the filing of a meaningful show cause response, Plaintiff's show cause filing <u>may not exceed ten (10) double-spaced pages</u>, and shall strictly be limited to the matters contained in the original Complaint and this Memorandum and Order.  In the event Plaintiff seeks to file an Amended Complaint in an attempt to cure the deficiencies noted herein, he shall also provide a Memorandum in support of any Amended Complaint, which explains the modifications to the original Complaint, and shows cause how the proposed Amended Complaint cures the deficiencies in the original Complaint.  Any such Memorandum in support shall be limited to ten (10) double-spaced pages.

CONCLUSION

Based on the foregoing, it is hereby ORDERED that:

1.    Plaintiff's claims alleging Eighth Amendment violations in connection to inadequate food, and inadequate clothing shall proceed with respect to Defendants Dennehy, Nolan, Spencer, and Pepe;

2.    Plaintiff's claim alleging Eighth Amendment violations in connection to facility safety and security shall proceed only against Defendant Dennehy and Nolan;

3.    Plaintiff's claim regarding his ability to purchase and use tobacco as a member of the Five Percenter religion shall proceed as to Defendants Nolan, Spencer, and Dennehy;

4.    Plaintiff's claim regarding discriminatory double bunking shall proceed only against Defendants Dennehy and Nolan;

5.    Plaintiff's claims for monetary damages against Defendant Dennehy are dismissed *sua sponte*;

6.    Summonses shall issue with respect to Defendants Dennehy, Nolan, Spencer, and Pepe only, and no other summonses shall issue pending Plaintiff's compliance with this Memorandum and Order;

7.    Within forty-two (42) days of the date of this Memorandum and Order, Plaintiff is Ordered to show cause in writing as to why all of his remaining claims (including his First Amendment claims) against all other Defendants should not be dismissed;

8.    The U.S. Marshal shall bear the costs of service of process on Defendants Dennehy, Nolan, Spencer, and Pepe;

9.    To the extent Plaintiff seeks to bring his claims as a class action, such request is denied without prejudice; and

10.   Plaintiff is advised he is responsible for continued notification of a current mailing address

SO ORDERED.


                                        /s/ Joseph L. Tauro
                                        JOSEPH L. TAURO
                                        UNITED STATES DISTRICT JUDGE

DATED: March 16, 2006