U.S. DISTRICT COURT: DISTRICT OF MASSACHUSETTS:

FILED
IN CLERKS OFFICE

FELIPE OTEZE FOWLKES,

PLAiNtiFF,

VS.

2006 APR 28  A 11: 07

CA.NO: 05-11749-JLT

U.S. DISTRICT COURT
DISTRICT OF MASS.

KATHLEEN M. DENNEHY, ET.AL.,

DEFENDANTS.

PLAINTIFF'S SHOW CAUSE WHY HIS CLAIMS SHOULD
NOT BE DISMISSED AND WHY ADDITIONAL DEFENDANTS
SHOULD BE ADDED AND SUMMONSES ISSUED ON THEM

1. On pages 5-7 in Section III of Court's memorandum and order with respect to "Why plaintiff's claims against Bender, Hall, Marshall, Madden, Duval, LaDouceur, and Aucion should not be dismissed," the plaintiff argues and shows that: the complaint states on pages 6-9, that at all times during his incarceration, the defendants by Individual name and official capacity, are and will be depriving the plaintiff of particular rights and privileges pursuant to a pattern or practice of resistance to the full enjoyment of the rights and privileges under an illegal punitive program policy in violation of the eighth amendment's prohibition against cruel and unusual punishment and the due process and equal protection clauses of the fourteenth

-1-          (cont. on reverse side)

Amendment, since September 17, 2004. He has stated the date and time inwhich he was at Concord Prison from Sept. 17, 2004 to Jan. 27, 2005, and the date and time inwhich he was at MCI-Cedar Junction Prison from Jan. 27, 2005, and whereever he will likely to be confined thereafter, as the times inwhich the deprivations of his Rights and privileges, have, are, and would be occuring. On pages 11 thru 29 #, (29 # Amend.) of the complaint, the plaintiff sets forth in separate statements numbered 1 thru 17 each of the particular Rights or privileges which the named defendants have caused him to be denied or deprived of as a result of their illegal punitive program policies to punish him as an inmate rather than Rehabilitate. On pages 30 thru 38 of the complaint, the plaintiff set forth in separate statements numbered 6(B) thru 6(I), the conduct of the defendants in denying him Relief from the deprivation or denial of the Rights and privileges he complained of. He showed the court that he had presented the facts of his complaint through the Inmate Grievance Program and written Requests to Commissioner Dennehy.

Thus, on pages 11 thru 29 # (29 #), of the complaint, the statements of allegations applies to "ALL" of the defendants named on pages 6-7 of the complaint, which includes Bender, Hall, Marshall, Madden, Duval,

-2-

LaDouceur, Aucion, and other ▬named Superintendents of the Prisons of Mass. Doc to which the plaintiff was Likely to be confined. In a similar method used by the U.S. Attorney General under Title 42 USCA s. 1997a in U.S. v. Com. of PA., E.D.Pa. 1993, 832 F. Supp. 122, the Court held that:

" Allegations that state officials in their official capacities had failed to protect residents of state mental health facility from abuse and neglect, to provide necessary level of individualized training and behavioral programs, to provide adequate medical care, to ensure adequate and sufficiently trained staff, to safeguard residents from improper and excessive administration of psychotropic medications, and to accurately maintain resident records, was adequate as short and plain statement of claim giving state officials fair and adequate notice to respond. "

Similarily, the plaintiff argues that the portion of his statement of claim (pgs. 11-29M ) should be accepted by the Court as providing State officials (defendants) with fair and adequate notice to respond, and as involving a statement of claim against "ALL" of the named defendants on pages 6-7 and amendments.

At the time of making the complaint, the plaintiff did not think that he was required to cite any legal authority in support of his allegations of the defendants illegal punitive program policies to punish him as an inmate rather than rehabilitate. (Refer to Subpart B.i. pgs. 12-13 of Court's memo and ORDER)

-3-        (Cont. on Reverse side)

Instead, he thought he was only Required to state a cause of action upon which Relief could be granted. Nevertheless, there is legal authority which accords plaintiff state and federal constitutional Rights to Rehabilitation Rather than punitive programs within the prison system. Most states have created constitutional Rights to Rehabilitation and non-punitive treatment of prisoners. Massachusetts is amongst them.  G.L.c.124 sec.1(e)(i) Duties of Commissioner to establish, maintain and administer programs of Rehabilitation; G.L.c.127 sec.32 -- Treatment of prisoners. "The superintendents of the institutions under the supervision of the department of corrections shall treat the prisoners with the kindness which their obedience, industry and good conduct merit." The purpose of G.L.c.127 sec.32, according to the state court, is to ensure equal treatment for prisoners who are not being disciplined, including inmates held under protective custody. (Blaney v. Commissioner of Correction, 374 Mass. 337 (1978)
There is also the authority of Title 42 USCA sec.1997a which prohibits state officials, employees or agents from subjecting persons confined to an institution to egregious or flagrant conditions which deprive such persons of any Rights, privileges or immunities.... causing such persons to suffer grievous harm ... pursuant to a pattern or practice of Resistance to the full enjoyment of such Rights, privileges and immunities...."

-4-

Therefore, the deprivation of the smoking privilege out-of-doors; adequate and sufficient food, adequate clothes; adequate housing (discriminatory double bunking); idle pay; inmate organizations; adequate review of inmate grievances; conjugal visiting; walkman cassett players; pornographic materials; free in-cell color T.V. for indigent inmates; protective custody programs, and safe and secure prison environments, for no other reasons than to punish the plaintiff, constitutes a pattern or practice of illegal punitive program policies where the treatment of the plaintiff as an inmate or prisoner, is punitive in nature.

Wolff v. McDonnell, 418 U.S. 539, 571, N.19 (1974) expanded the concept of a liberty interest to include the right to be free of punishment without a prior adjudication of guilt. Prisoners are not to be stripped of all of their constitutional rights, privileges and immunities upon entering the prison system and punished in the system solely because of their conviction. As pointed out in the above authorities, the ~~████~~ Superintendents under the supervision of the Commissioner, must treat the plaintiff with the kindness which his obedience,

-5-                    (cont. on reverse side)

industry and good conduct merit. Moreover, the deputy commissioners, Bender, Hall, Marshall, Madden, and Duval under the supervision and control of the commissioner, are responsible for planning and directing the efficient administration of each correctional institution of the commonwealth by the officers and employees of the institution. (Superintendents). They are also, under the supervision and control of the commissioner, responsible for directing and planning the rehabilitation services of all the correctional institutions of the commonwealth under G.L. c. 124 sec. 2 -- Duties of Deputy Commissioners. Their duties include planning and directing ~~together~~ together with the commissioner, the policies which ~~_____~~ has deprived or denied the plaintiff of the rights and privileges complained of in his complaint. They are Departmental institutional policies which require the planning, directing, maintenance and enforcement of the Commissioner, Deputy Commissioners, Superintendents, and Grievance Coordinators listed in the plaintiff's complaint. There is also the Associate Commissioner of Re-entry and Reintergration ~~_____~~ named Veronica Madden who is listed as a defendant, and who, according to 103 CMR 478.06, duties include but are not limited to, the management of classification, programs, education, Re-entry and Reintergration.

-6-

Under G.L.c.124 sec.1(Q) the Commissioner makes and promulgate Necessary Rules and Regulations Regarding Nutrition, Sanitation, Safety, discipline, Recreation, Religious Services, communication, visiting privileges, classification, Education, training, employment, care, and custody for all persons committed to correctional facilities. In Addition to the duties already defined, the Deputy Commissioners under the supervision and control of the Commissioner, are oftentimes assigned to assist the Commissioner in performing those duties in paragraph (Q), under G.L.c. 124 sec.2, wherein it Reads that "Each of the said Deputy Commissioners shall perform such other duties as may be assigned to him from time to time by the Commissioner." For Example: the Commissioner Dennehy, Assigned Deputy Commissioner James R. Bender, to Reply to the ~~~~ plaintiff's Dec.17, 2004, Request for Privileges and Rights at Exhibit "A" of the complaint. A copy of the Jan.19, 2005, Reply from Bender which was cc: to Dennehy, is attached to this "Show CAUSE" as Exhibit #1, inwhich Bender in behalf of the Commissioner and DOC, denied the plaintiff all of the Rights and privileges Requested. By virtue of that Reply, Commissioner Dennehy, Bender, & Hall, Marshall, Madden and Duval as Deputy Commissioners under the supervision and control of the Commissioner,

-7-       (Cont. on Reverse side)

planned, directed, made and promulgated the Rules
and Regulations which have deprived the plaintiff
of his Rights and privileges, are all liable in their
official and individual capacities and the claims
against them should not be dismissed.

MONETARY DAMAGES. The plaintiff intended the Court
to construe his request for monetary damages as
claims against each of the defendants in both their
"Individual" and official capacities. However, since
the court did not liberally construe claims, the plaintiff
has submitted a Rule 15(a) amendment alleging the
claims against the defendants in their "Individual" and
official capacities. (See enclosures)

LaDOUCEAR and AUCION. In addition to the above reasons
why the claims against Bender, Hall, Marshall, Madden,
Duval, LaDouceur and Aucion should not be dismissed,
the plaintiff argues and shows that 'Bender' was mentioned
in the body of the complaint on pages '20' in Regards to
discriminatory double bunking policy and '30' in Regards to
the Jan.19, 2005, Reply in which him and Dennehy denied
the plaintiff's requests for all the Rights and privileges
complained of. (See Exhibit #1 of this Show Cause) LaDouceur
(CHRISTINA LADUCIA)
whose name was mispelled but amended to "Kristie Ladouceur"
is mentioned in the body of complaint on pages 31, 33, 34, 29 3/4,
36 and 37, with Regards to the decisions she made under

-8-

the Supervision and control of the commissioner Dennehy (G.L.C. 124 sec. 1(i) denying the plaintiff all of the Rights and privileges he complained of through the prison's grievance procedures. It should be noticed that the 103 CMR 491 does not provide an inmate with the Right to appeal to the commissioner from a decision of a superintendent. The commissioner does, however, have a duty under section 1(i) of chpt. 124 of the G.L., to investigate or review inmate grievances, which is assigned to the Grievance Coordinator for the department, the defendant, Kristie LaDouceur. Because there is no time limit on the automatic Review, the decision of the Superintendent on Grievances could be affirmed or reversed by the commissioner via LaDouceur within an hour, a day, month, year or years. Therefore, the liability of Dennehy and LaDouceur from their "knowledge" of the plaintiff's grievances, incurs at any time after the Superintendents have made their decisions on his grievances. Hence, Dennehy and LaDouceur cannot deny having knowledge of any grievance filed by the plaintiff and denied by the Superintendents on appeal. Similarily, "Aucion" is mentioned by name in the body of the complaint on pages 32, 34, & 36 on the issues of insufficient food, 1st Amend., Right to pornographic materials, and discrimination in the Inmate Grievance Program. It should be noticed that the complaint also alleges "discrimi-nation" in the Inmate Grievance Program due to a lack of a "MASTER INDEX" system of prior decisions. (See pgs. 23, 35-36 of complaint)

-9-      (Cont. on reverse side)

Therefore, based upon all of the foregoing reasons, the claims against Bender, Hall, Marshall, Madden, Duval, LaDouceur and Aucion should not be dismissed and summons should issue on them as well as on the additional defendants whom plaintiff has added in the enclosed Rule 15(a) amendments. The law in the 1st Circuit and elsewhere is that the defendants in their official and individual capacities are liable for monetary damages if they knew or should have known that their actions, policies, rules or regulations were violating plaintiff's constitutional rights. King v. Higgins, 702 F.2d 18, (C.A.1 (mass.) 1983), citing Wood v. Strickland, ~~~~~~~~~~~ 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975); Rizzo v. Goode, 423 U.S. 362, 370, 371, 376, 96 S.Ct. 598 (1976) And DiMarzo v. Cahill, 575 F.2d 15, 17-18, N.3. (1st Cir. 1978). The Jan.19, 2005, Reply letter from Dennehy and Bender (Exh.#1); the grievance complaints, decisions and appeals demonstrate that Dennehy, Bender, Ladouceur, Aucion and all of the named Superintendents, Pepe, Nolan, Spencer, Russo, and the Deputy Commissioners, Marshall, Madden and Duval, knew or should have known about the constitutional violations and have denied plaintiff's requests to prevent the violations from occuring. The theory of Respondeat Superior does not apply to Dennehy, since in this regard, she is liable for her own acts and omissions with respect to the constitutional violations brought to her attention and for the policies, rules or regulations she's maintaining in support of the violations as well as those she's promulgated. Furthermore, the plaintiff has exhausted his administrative remedies because Dennehy, Bender, Ladouceur, Spencer and Aucion have

-10-

Rendered decisions on the grievances Relating to the issues in the complaint; copies of which are annexed hereto as "Exhibits #1-- Jan.19, 2005, Response to "Exhibit A" of the complaint. Exhibit #2-- decision on Exhibit B of the complaint. Exhibit #3--decision on Exhibit C of the complaint. Exhibit #4--decision on Exhibit "D" of the complaint. Exhibit #5-- decision on Exhibit "E" of the complaint. Exhibit #6-- decision on Exhibit "F" of the complaint. And there is Exhibit #7 & 8 on the "Inadequate clothing issue" and Exhibits #9 & 10 on the "Family Reunion Conjugal visiting" issue. Those grievance appeal decisions were made by Dennehy, Bender and Ladouceur from decisions made by Nolan and Spencer and their Grievance Coordinators, Aucion, Sullivan and Kenney. Sullivan and Kenney are included in the Rule 15(a) amendments. As previously mentioned, because plaintiff has no Right to appeal from a decision of the superintendents on his grievances and the superintendents decisions are automatically Reviewed by Dennehy and Ladouceur at any time, the plaintiff's Remedies are exhausted when superintendents made their decisions at which time Dennehy and Ladouceur bears liability.

# SHOW CAUSE ON SECTION 1983 CLAIMS:

In analyzing plaintiff's ability to possess pornography, Receive cassette players and tapes, and form inmate

-11-     (Continued on Reverse side)

ORGANIZATIONS under the first Amendment, the Court
has not applied the "Four Factor" Reasonable Relation
test of "Turner vs. Safley, 107 S.ct. 2254, 2261-62 (1987)."
For examples: The defendants 103 CMR 481.15(2)(9) does
not by its wording, limit all sexually explicit material
or materials which features nudity. According to the
Reading of the Regulation, it only limits those materials
which poses a threat to the security, good order or
discipline of the institution. It does not state what
nature or content that the materials would have to possess
in order to pose such a threat. There are different kinds
of pornography such as S&M (Slave & Master) which features
techniques of sexual captivity and hardcore which features
penetration, ejaculations and unnatural sexual acts, which
prison officials have held to pose such a threat. However,
the plaintiff's request consisted of Playboy, Penthouse,
Players and perhaps Hustler magazines which are the
most commonly read and accepted amongst men and which
does not feature such S&M or hardcore, the contents of
which may pose a threat. Therefore, the plaintiff
argues that the 103 CMR 481.15(2)(9) is written to allow
him to receive those type of magazines and that the
defendants Aucion, Nolan LaDouceur and Dennehy ~~and others~~
as shown on Exhibit #'S' of this Show Cause and Exhibit #"E" of
the Complaint have denied him the Right to Receive the materials.
The plaintiff also argues that the Court has misconstrued
his claim to possess Walkman cassette player and cassette

-12-

tapes as a claim which challenges a policy to screen the cassette tapes for explicit contents. The plaintiff has amended this claim to include a Religious Right to listen to the Religious music, speeches, lectures and other political and educationally relevant materials from Recording artists of the FIVE PERCENTERS on cassette tapes as an exercise of his Religious freedoms as a member of the 5%ers. (See enclosed copies of proposed cassette recordings by 5%er Recording Artists called "BRAND NUBIAN" entitled "IN God WE TRUST" and "WISE INTELLIGENT"-- POOR Righteous TEACHERS as Exhibits Nos. 11 & 12. Additionally, the plaintiff argues that he stated a property interest in possessing the walkman cassette player on which to play the cassette tapes which the court did not address. (see FN) As to his claims on the inmate organizations, plaintiff argues that the 103 CMR 485.02 statutorily authorizes Community Service Programs sponsored on a voluntary basis by a community agency or other group. The statutory authority is issued pursuant to G.L.c.124 sec. 1(Q) among the duties of Commissioner Dennehy. Both the Inmate Liason Committee and the N.A.A.C.P. could be formed under those provisions. Therefore, these claims should not be dismissed with respect to Dennehy, Bender, LaDouceur, Spencer, and Kenney. Dennehy and Bender

-13- (cont. on Reverse side)

*FN. The walkman cassette players and music by cassettes were denied by Dennehy and Bender in their Jan. 14, 2005. Response. Exh.*1. OTHER RELIGIOUS REQUESTS WERE filed that will be denied by Russo and the DEPUTY Commissioners of the Religious Services Review Committee.

first denied the plaintiff's Dec. 17, 2004, Request for these organizations in their Jan. 19, 2005, Response. (see Exhibit #1 And 'A')
(In the same Response, Bender and Dennehy denied plaintiff's Request for walkman cassette players and cassettes.)
Grievance Coordinator, Kimberly Kenney, who has been added by Amended (15a) Rule and Superintendent Spencer, also denied plaintiff's grievance Requests for the ILC and N.A.A.C.P. inmate organizations; copies of which are attached herewith as Exhibits #13 & #14. They were denied for similar reasons given by Bender and Dennehy which was that inmates could not speak for, Represent or have authority over other inmates. In Exhibit #10 plaintiff also alleged a racial animus behind their decisions-- that he was denied because the organization (N.A.A.C.P.) was African-American blacks Representatives. For all of the above Reasons, these First Amendment and property interests claims should not be dismissed against Dennehy, Bender, LaDouceur, Nolan, Aucion, Spencer and Kenney. Furthermore, the plaintiff has argued that it was, and is possible in light of the Rule 15a Amendments, for the defendants to file a meaningful Response.

FAMILY REUNION PROGRAM. In Dennehy and Bender's Jan. 19, 2005, Reply, they denied plaintiff conjugal visitation Request. By stating on page 25 of the complaint, that he was denied conjugal visits because of their illegal punitive program policy to punish him as an inmate Rather

than rehabilitate, he's asserted that the deprivation
of the conjugal visits constitutes cruel and unusual
punishment. (See Imprisoned Citizens Union V.
Shapp, 451 F.Supp. 893 (E.D. Pa. 1978) and Polakoff
V. Henderson, 370 F.Supp. 690) He also states an
equal protection claim which is well-founded because
Dennehy and Bender have indicated in their Jan. 19,
2005, response that they do allow liberal family
visitation programs in some of their facilities.
In a 15(a) amendment on page 25 of the complaint, he
states that Dennehy and Bender denied him conjugal
visits on Jan. 19, 2005 and that on Dec. 8, 2005 and Jan.
5, 2006, Kenney, Spencer, LaDoucer, and Dennehy denied
his grievances for conjugal visits again. He also
states the injuries incured. Therefore, the claim
complies with Rules 8 and 10 and should not be
dismissed against the named defendants.

# FIVE PERCENTER FIRST AMEND. CLAIM - TOBACCO:

The plaintiff states that this claim has been allowed
to proceed against Nolan, Spencer, and Dennehy.
He was required to show cause how this claim invokes
the liability of other defendants. In doing so, he
states that on Dec. 7, 2005, Grievance Coordinator,
Kimberly Kenney denied him this First Amendment
Right to smoke cigarettes and/or tobacco products

-15-     (Cont. on Reverse Side)

IN GRIEVANCE #13516; A COPY of which is ATTACHED hereto
AS Exhibit #15, which ALSO denied on Appeal by Spencer
AND Subject to Review by LaDouceur AND Dennehy.
Therefore, Kimberly Kenney, LaDouceur AND Dennehy
have invoked Liability on this issue. ALSO, Superintendent
Lois Russo invoked liability on this issue from the
plaintiff's Religious services Request to observe the
Holydays of the Five PERCENTERS Gods AND EARTHS
while smoking cigaretts AND/OR tobacco products.
A copy of the INMATE RELIGIOUS SERVICES REQUEST FORM
is ATTACHED hereto AS Exhibit #16 CONSISTING of 14 pgs. dated
The Superintendent Russo has denied the Religious
SERVICES REQUEST AND fowarded her Recommendation
to the Religious Services Review Committee which
CONSIST of either ASSISTANT Deputy Commissioners Timothy
HALL, John MARSHALL OR RONALD T. DUVAL. (See Exhibit #17
of DOC Religious services Handbook ATTACHED hereto).
Therefore, Russo, HALL, MARSHALL AND DUVAL have invoked
liability on this Religious smoking claim AND should ALSO
be served with summons AND complaint which consist
of the 15(a) amendments. (See 15(a) amendments on page 12
of complaint)

EIGHTH AMENDMENT CLAIMS: According to the Supreme
Court of U.S. in Helling V. McKinney, 113 S.CT. 2475, (1993),
the eighth amendment protects against "imminent dangers"
AS well AS against 'PRESENT HARMS'. The Court Ruled that

A plaintiff does not have to show actual present injury. However, in this case plaintiff has shown imminent dangers as well as present harms.

# PUNITIVE RATHER THAN REHABILITATIVE POLICIES.
This was addressed on pages 1-8 of this Show Cause.

# ● INADEQUATE FOOD AND CLOTHING SHOW CAUSE ON OTHER DEFENDANTS.

Plaintiff have made Rule 15(a) amendments to the complaint on pages 14-D to include dates, place and names of other defendants such as Daniel Sullivan, Kimberly Kenney and LaDouceur on the issues of food and Holiday meals from their decisions on his inmate grievances. Therefore, summons and complaint should issue against them.

Also plaintiff made 15(a) amendments to page 18 of the complaint on the inadequate clothing issue giving dates, place and names of Kimberly Kenney, LaDouceur as other defendants whom should be served with summons and complaint on this issue of inadequate clothing. Furthermore, plaintiff states the Superintendent Lois Russo should also be served with a summons and complaint since she is enforcing the same policies at Souza-Baranowski on the inadequate food and clothing issues.

-17-    (cont. on reverse side)

# FACILITY SAFETY AND SECURITY:

ON Aug. 12, 2005, Aucion Received And Referred grievances on these issues to Acting Superintendent John Marshall, JR. On Oct. 31, 2005, John Marshall, JR. denied the Grievance# 12502 And denied All other grievances filed by plaintiff Regarding these issues including Grievance Numbers 12574 And 12310 he denied on April 3, 2006. Deputy Superintendent John Luongo, JR. was in charge of Security operations At Cedar Junction during July And August 2005 when the incidents were occuring. Also Correction Officer Darrin C. Payne was assigned to patrol the walkway and yard Recreation Area on July 28, 2005, when the Assault occured Against plaintiff but did not perform the duty by Remaining inside the building in Anticipation of the Assault. Therefore, Aucion, Marshall, JR., Luongo JR., And C.O. Darrin C. Payne should have Summons And complaint issued Against ▄▄▄▄▄ them on these issues.

Rule 15(a) amendments have been made on or to page 29 3/4 of the complaint. Also, Anderson, DiNardo, Pare, Dragone And unknown Named C.O. At Concord were Added to complaint -18- For denying protective custody And Assaulting plaintiff. (See Amendments on pages 29-E to 29-H of complaint.

-18-

# DOUBLE BUNKING (BY RACE)

Another inmate grievance # 13896 was filed
by plaintiff at MCI-Norfolk on Oct. 16, 2005,
complaining of DOC policy of RACIAL segregation
in the double bunking process at Norfolk
and @ all other double bunked facilities.
Kimberly Kenney denied that RACIAL segregation
in the double bunking process promotes RACIAL
Violence and hatred amongst inmates. ▬▬▬
A copy of the grievance is attached hereto
as Exhibit # 18. The plaintiff appealed
Kenney's decision to Spencer who affirmed
and denied plaintiff Relief sought on 12-28-05.
At that time it became subject to Automatic
Review by Ladouceur and Dennehy, both
of whom have also denied grievance.
Therefore, Kenney and LaDouceur should
be included on this claim. The details
on double bunking in the complaint applies
to all facilities where double bunking exist
including Spencer's at Norfolk.
Rule 15(a) amendments are made on page 20
of complaint about this issue.

-19-          (cont. on Reverse side)

14th AMEND. EQUAL PROTECTION & DUE PROCESS CLAIMS:

On page 10 of the complaint, the plaintiff alleges that he was denied due process and equal protection with Respect to all of the claims set forth in the complaint. He also asserts due process and equal protection among the underlying causes of action on page 38 of the complaint. The legal theory for the bases of those assertions are discussed on pages 1-8 of this show cause. In yet another theory, the plaintiff points out that "prison administrators are permitted considerable discretion in the adoption and implementation of prison policies. Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983) Once DOC has seen fit to promulgate regulations, it must then comply with them as they have the force of law. Royce, 390 Mass. at 427. Thus, when DOC originally promulgated the Rules which allowed smoking tobacco products; cassette players with cassette tapes; pornographic materials of all nature and content, it established the inmate's Right to possess the items. See LaChance v. Coulter, Civil No. 02-02922 (Middlesex Superior Court, March 20, 2003) (Brassard, J.) (holding that DOC's list of approved inmate property created a property interest in possessing a walkman).

-20-

After having established these Rights, DOC could not then interfere with them without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Thus, the plaintiff was arguing in part that all of these originally established Rights such smoking tobacco products and possessing walkman cassette player and tapes, were taken from him without due process of law, which is similar to the liberty interest concept mentioned on page 5 of this Show Cause involving plaintiff's Right to be free of punishment without prior adjudication of guilt.

# GRIEVANCE PROCEDURES.

The plaintiff's claim of being denied equal protection of the law in the grievance procedures should survive because Dennehy, LaDouceur and Aucion, Nolan, the Superintendents and all other Grievance Coordinators such as Sullivan, Kenney, do not have a "Master Index" system of prior decisions. The plaintiff is similarily situated with other inmates. The Master Index is designed to keep the system fair by keeping a record of prior decisions

-21-        (cont. on reverse side)

just as a court of law has a record of case
law decisions. The plaintiff offered to assist
DOC in preparing the Master Index System through which
he could become employed doing so. DEFENDANTS
AUCION, NOLAN, LADOUCEUR AND DENNEHY AND
BENDER denied plaintiff's GRIEVANCE REQUEST.
IF the claim is sustained, they should be
served with summons and complaint on
this issue. Rule 15(a) amendment were
made on page 24 of the complaint with Regards
to this issue.

IDLE PAY.  The plaintiff has started a property
interest under the 5th and 14th amendments, in
Receiving the money allocated by tax payers
towards his incarceration. The money is allocated
monthly and/or annually to cover the expenses
of his incarceration and Rehabilitation.
A portion of the allocations covers wages for work
And Educational/Vocational programs. He's alleged
that when he's unable to work or program at
No fault of his own, he's entitled to receive a
portion of that money similar to unemployment
compensation insurance or welfare benefits.
The deprivation of this idle pay causes him to suffer
the effects of extreme poverty in prison where

he's unAble to AffoRd ShoweR shoes, Shampoo, deodoRAnts And otheR bAsic hygienic items And otheR humAn Necessities which the pRison system does not pRovide. He hAs mAde Rule 15(a) Amendments to the complAint on pAges 18-19, stAting the dAtes And nAmes of those defendAnts who hAve denied him idle pAy. IF this clAim is sustAined, the defendAnts DAniEL SulliNAn who mAde the initiAl decision on the InmAte GRievAnce Exhibits # 3 And Exhibit "C" of ComplAint, shoud be included And seRved with SummoNs And complAint. Also defendAnt NolAn who mAde A July 28, 2005, decision on the GRievAnce As well As LADouceuR And Dennehy who Revieweed it And denied plAintiff idle pAy on Oct. 19, 2005. TheRe is Also Deputy CommissioneR BendeR And Dennehy who mAde theiR initiAl decisions on plAintiff's idle pAy ▬ in theiR JAn. 19, 2005, Reply. (Exh.#1) FuRtheRmoRe, in FAveR v. BAyh, 689 N.E.2d 727 (Ind.Ct.App.1997) pRisoNeRs weRe held to be entitled to StAte pAy oR idle pAy, including inmAtes in pRotective custody. New YoRk StAte DOC Also hAs An "Idle pAy" System.

COLOR TELEVISION: Indigent inmates ARE A clAss of peRsons pRotected undeR the
-23-    (cont. on RevevRse side)

equal protection clause. The plaintiff is a member of that class by virtue of his indigent status. According to the Regulations promulgated by Dennehy, inmates are permitted to possess a color T.V. (13"). The plaintiff is deprived of that Right due to his indigency. When he Requested to Receive a color T.V. (**13**") from a charitable organization in the community, he was also denied by Daniel Sullivan, Nolan and LaDouceur and Dennehy on appeal from the grievance (see Exh.#3) Plaintiff has made a Rule 15(a) amendment on page 28 of this complaint on this issue. Therefore, if the claim is sustained, Sullivan, Nolan, Ladouceur and Dennehy should be included and served with summons and complaint.

WHEREFORE, it is respectfully Requested that the Court sustain all of the aforementioned claims against the defendants and issue summons and complaints against Dennehy, Bender, Hall, Marshall, Madden, Duval, Ladouceur, Pepe, Nolan, Aucion, Sullivan, Kenney, Spencer, Russo, Marshall, Jr., Luongo, Jr. & Payne. Plaintiff has enclosed a copy of the complaint containing the Rule 15(a) amendments, and have directed U.S. Marshal to serve said complaint with 15(a) amendments upon Dennehy, Nolan, Spencer and Pepe.

Dated: April 24, 2006.

Sworn to under penalty of perjury. 28 USCA 1746.

-24-

Respectfully Submitted,
Felipe Otezo Fowlkes
FELIPE OTEZE FOWLKES



**Mitt Romney**
*Governor*
**Kerry Healey**
*Lieutenant Governor*
**Edward A. Flynn**
*Secretary*

*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Office of the Deputy Commissioner*
*P.O. Box 9125*
*Concord, MA 01742-9125*
*(978) 405-6622*
*Fax: (978) 405-6619*
*www.mass.gov/doc*



**Kathleen M. Dennehy**
*Commissioner*
**James R. Bender**
*Deputy Commissioner*

January 19, 2005

Felipe Fowlkes (W84202)
MCI Concord
P.O. Box 9106
Concord, MA. 01742

Dear Mr. Fowlkes:

Please be advised that your letter to Commissioner Dennehy dated December 17, 2004, has been referred to me for reply. I will attempt to address the issues raised in this letter. I cannot assist or advocate your position that you have been falsely convicted. You may, as stated in your letter, plan to exercise your appellate rights.

In terms of your status at MCI-Concord, you were classified for a level five facility. However, since that classification, you have received several disciplinary reports that may alter this placement recommendation. In the near future, a final decision will be made on your placement. It is likely that at some point in time you will be placed in a facility that requires you to be placed in a double cell.

In your letter, you included what appears to be a petition requesting restoration of privileges and rights, stating that you are making the request for yourself and other inmates. Be advised that you cannot speak for or represent other inmates.

You request changes in the grievance process. Please be advised that the Department of Correction is in the process of amending its Inmate Grievance Process. Since this is a Code of Massachusetts Regulation, any changes will need to be brought before a public hearing.

Regarding conditions of confinement, the Department of Correction facilities are accredited by the American Correctional Association. In order to achieve accreditation, the facilities must be in compliance with national standards. It is not possible to eliminate double bunking, nor are inmates assigned to cells based on their race. The Department of Correction is allowed by law to house awaiting trial inmates and sentenced inmates in the same facility. As for your issues with food, be advised that the meals are heart healthy and reviewed by a registered dietician for caloric intake and nutritional balance.

EXHIBIT #1

You raise various issues concerning property, visits, inmate wages and smoking privileges. As mandated by Code of Massachusetts Regulations, clothing is available for purchase through the inmate canteen as stated in 103 CMR 403. If an inmate is indigent, he or she is provided with adequate clothing as noted in 103 DOC 755. Your request to purchase music by mail and Walkman cassette players by mail is denied. Property is limited to that which is available through the inmate canteen. Recreational equipment is purchased with profits from the inmate canteen.

Smoking is not allowed for inmates or staff at any facility. Your request to have smoking privileges restored is denied. Your request that inmates who do not work, are indigent or are awaiting transfer receive "idle pay" is also denied.

In regard to your request for conjugal visits, please be advised that this is not an option. We allow liberal visitation programs, and have family programs in some of our facilities. We are committed to keeping family bonds strong, as we believe this is an important part of reentry. We are not in a position, however, to provide free transportation for visitors.

I trust I have addressed your concerns.

Sincerely,

James R. Bender
Deputy Commissioner


cc:    Kathleen M. Dennehy, Commissioner
       File

Exh. #1

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | | | **Institution** MCI NORFOLK | | |
| **Number** | W84202 | **Housing** | SMU2 | **Appeal Date** | 06-JUL-2005 | **Date Of Grievance** | 19-MAY-2005 |
| | | | | **Appeal Received Date** | 13-JUL-2005 | | |

**Appeal**
The inmate argues on this appeal that the IGC never rendered a decision on the grievance #10874 regarding the deprivation of his rights and privileges, and that IGC did not type in the full facts of his complaint which he provided to IGC.
Therefore, he appeals for a full review of the grievance #10874, including those portions which were not typed in the body of the complaint.

**Remedy Requested**
Is the same as that sought in the grievance except that the portion involving protective custody status is no longer applicable since he signed off "AA" status.
Other than that, he still seeks restoration and privileges listed. Also, monetary compensation and restoration of the smoking privilege "outside" or in a designated area of the prison(s). He argues that the in-house smoking band does not and should not prevent him for exercising the smoking privilege outside or in other designated areas in or around the facilities or prison(s). That each of the rights and privileges listed above will be addressed except for the protective custody issue which is no longer applicable because he signed off "AA".
He also requests such other and further reliefs.

Dated: July 6, 2005

**Staff Recipient**   Sullivan Daniel  CO II

**Signature**

## DECISION BY SUPERINTENDENT

**Appeal Received Date**   13-JUL-2005    **Decision Date**   03-AUG-2005    **Decision**   DENIED

**Decision By**   Nolan David F  DIRECTOR OF AUDIT/ COMPLIANCE

**Reasons**   I concur with the IGC.

**Signature**

9/26/05 - In accordance with 103 CMR 491, I have reviewed grievance/grievance appeal #10874.

Please be advised that I support the Superintendent's decision to deny your grievnace, as I concur with the institutional summary of findings that each grievance must contain one subject matter per grievance. If you wish to pursue the issues noted, you will need to file a separate grievance for each indivdual subject matter. Lastly, in the future grievances that are not submitted in appropriate fomat may be returned to you for proper submission.

*Kristie Ladouceur*

Kristie Ladouceur
Department Grievance Coordinator

**Date**

## INMATE RECEIPT

**Inmate's Name**   FOWLKES FELIPE O                     **Institution**   MCI NORFOLK

**Number**   W84202                                      **Appeal Received Date**   13-JUL-2005

**Staff Recipient**   Sullivan Daniel  CO II

**Superintendent's Signature**

EXHIBIT #2

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

**Name** FOWLKES FELIPE O                    **Institution** MCI NORFOLK

**Number** W84202    **Housing** SMU2    **Appeal Date** 08-JUL-2005   **Date Of Grievance** 21-JUN-2005

**Appeal Received Date** 11-JUL-2005

**Appeal**

First, the inmate appeals because the IGC refused to include the full facts of his grievance #11331 which he wrote to IGC, and Secondly, that the IGC did not address all of the remedies requested.

He therefore, ask for a denova review of the entire grievance he submitted.

On appeal he argues that the prison or DOC is responsible for discriminating against him due to his poverty, through its in-cell T.V. policy provides and allows the T.V. privilege only to those inmates who can afford them.  He also argues that due to his poverty, the prison or DOC should allow him to receive his T.V. through the community charitable organizations he's listed and that no decision was made by IGC as to whether or not that would be allowable.

He also argues on this appeal that the law entitles him to idle pay and that due to his long term indigent status and inability to work, he is entitled to an equitable amount of canteen items without interference with his indigent legal mail status.  The IGC never made a decision on his claims for idle pay and whether or not he should be provided with canteen items.  Thus, his appeal revolves around his poverty and exactly what a poor inmate under these circumstances, would be entitled to.

Discriminatory pollicies violates the equal protection clause of the 14th amend to the U. S. Constitution.

**Remedy Requested**

That inmate's entire grievance be reviewed, including the "page" which IGC did not type in the body of the complaint containing the full facts.  And that the IGC decision be reversed and modified to allow the prison to provide him with a color T.V. or to allow him to receive the color T.V. from the community charitable organizations he's listed.  And that he be allowed "idle pay" which the law entitles him and an equitable amount of canteen items without interference with his indigent legal mail status,  and for such other and further reliefs as might remedy these problem.

Dated: July 8, 2005

**Staff Recipient** Sullivan Daniel  CO II

**Signature**

## DECISION BY SUPERINTENDENT

**Appeal Received Date** 11-JUL-2005    **Decision Date** 28-JUL-2005    **Decision** DENIED

**Decision By** Nolan David F  DIRECTOR  OF AUDIT/ COMPLIANCE

**Reasons** I concur with the IGC.  Furthermore, be advised indigent inmates are provided with the necessary hygiene supplies.  In regards to your mail, indigent mail is processed in accordance with 103 CMR 481.10

**Signature**

10/19/05: In accordance with 103 CMR 491, I have reviewed Grievance/Grievance Appeal #11331.
I am in agreement with the Superintendent's decision, therefore your request is denied.  The state is not obligated to provide you with a TV, nor can a TV be provided to you from the street.

Kristie Ladouceur
Kristie Ladouceur
Department Grievance Coordinator

**Date**

### INMATE RECEIPT

**Inmate's Name** FOWLKES FELIPE O                    **Institution** MCI NORFOLK

**Number** W84202                    **Appeal Received Date** 11-JUL-2005

**Staff Recipient** Sullivan Daniel  CO II

Exhibit #3

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | | | **Institution** MCI NORFOLK | | |
| **Number** | W84202 | **Housing** | SMU2 | **Appeal Date** | 07-JUL-2005 | **Date Of Grievance** | 23-JUN-2005 |
| | | | | | **Appeal Received Date** 11-JUL-2005 | | |

**Appeal**

I am appealing those portions of my grievance #11434 which do not apply to the medical provider, which are: my request for an extra tray or extra meal, and that the Prison comply with the public health law of daily minimum requirement of a 2,000 calorie diet. Inmate complains that the June 28, 2005, decision on his inmate grievance #11434; a copy of which is enclosed herewith, is erroneous because a portion or portions of the grievance does not apply to the medical provider and is therefore grievable through the DOC grievance process.

He complains that the prison is responsible for him being denied of a daily minimum 2000 calorie diet and that the prison should provide him with an extra tray or extra meal, or comply with the Public Health Law which requires a daily minimum of 2000 calories. He states that the breakfast, lunch and Dinner each contains less than 500 calories which when added together, equals far less than the minimum 2000 calories and do not contain a variet of nutrients. As a result he suffers ailments related to nutritional deficiency such as frequent urination, dry skin, brittle bones, pulled muscles, cramps and numbness in limbs as well as a crowling empty stomach, which can be remedied by an extra tray or extra meal, or that prisons compliance with the Public Health Law of daily minimum 2000 or more diet. Currently he is indigent and has been indigent since his imprisonment in DOC's sept 2004, and therefore could not afford to purchase canteen products, Although canteen is not a supplement for a healthy diet which  law says he is entitled to despite canteen items.

**Remedy Requested**

That prison comply with the Public Health Law of daily minimum 2000 calorie diet and or provide him with an extra tray or meal.

Dated July 7, 2005

**Staff Recipient**    Sullivan Daniel  CO II

**Signature**

## DECISION BY SUPERINTENDENT

| | | | | | |
|---|---|---|---|---|---|
| **Appeal Received Date** | 11-JUL-2005 | **Decision Date** | 28-JUL-2005 | **Decision** | DENIED |

**Decision By**    Nolan David F  DIRECTOR  OF AUDIT/ COMPLIANCE

**Reasons Signature**

Be advised, registered dieticians developed the cycle menu that the Department of Correction currently utilizes. Furthermore, the daily average calorie count is 2,775 calories.

10/19/05: In accordance with 103 CMR 491, I have reviewed Grievance/Grievance Appeal #11434.

I find that I find this issue to be non-grievable as it pertains to your medical condition. Therefore, if you feel the need for additional caloric intake, and/or multivitamins, it must be requested through the medical provider. You may also request the services of a dietician.

Kristie Ladouceur

Kristie Ladouceur
Department grievance Coordinator

**Date**

## INMATE RECEIPT

| | | | |
|---|---|---|---|
| **Inmate's Name** | FOWLKES FELIPE O | **Institution** | MCI NORFOLK |
| **Number** | W84202 | **Appeal Received Date** | 11-JUL-2005 |
| **Staff Recipient** | Sullivan Daniel  CO II | | |

Exhibit #4

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
## INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

| **Name** | FOWLKES FELIPE O | | | **Institution** MCI NORFOLK | | |
|---|---|---|---|---|---|---|
| **Number** | W84202 | **Housing** SMU2 | | **Appeal Date** 16-JUL-2005 | **Date Of Grievance** | 11-JUL-2005 |
| | | | | **Appeal Received Date** 18-JUL-2005 | | |

**Appeal**

The inmate appeals from the decision of IGC on the grounds that DOC policy 103 CMR 481.15 section (b) and 103 CMR 481.06,which prohibits him from subscribing to, possessing and receiving pornographic magazines from Playboy, Penthouse, Players, And etc., is unconstitutional because it violates his First Amendment Right to Access to media or Free Speech and press. The Appellant also states that since the prison and doc have no legitimate reasons for restricting the pornographic magazine other than to punish him, that his due process rights are being violated as well as his 14th Amendment right of equal protection of the law since other state and federal inmates are being permitted to receive the magazines and because he is being punished without a hearing.

**Remedy Requested**

To subscribe to, possess and receive pornographic magazines from Playboy, Penthouse, Players and etc. And that DOC 103 CMR 481 be revised to permit the right or privilege, and for such other and further reliefs as may compensate for or remedy the violations of his constitutional Rights.

Dated: July 15, 2005

**Staff Recipient**    Aucoin Ann Marie  CO I

**Signature**

## DECISION BY SUPERINTENDENT

| **Appeal Received Date** 18-JUL-2005 | **Decision Date** 11-AUG-2005 | **Decision** DENIED |
|---|---|---|

**Decision By**    Nolan David F  DIRECTOR OF AUDIT/ COMPLIANCE

**Reasons**    I concur with the IGC. Furthermore, be advised changes to the Codes of Massachusetts Regulations can not be made at this level, as they must go before public hearing.

**Signature**

11/18/05 - In accordance with 103 CMR 491, I have reviewed grievance/grievance appeal #11824.

Please be advised that I support the Superintendent's decision to deny your grievance, as I concur with the institutional summary of findings. Publications containing sexually explicit material or that feature nudity are prohibited.

*Kristie Ladouceur*
Kristie Ladouceur
Department Grievance Coordinator

**Date**

### INMATE RECEIPT

| **Inmate's Name** FOWLKES FELIPE O | **Institution** MCI NORFOLK | |
|---|---|---|
| **Number** W84202 | **Appeal Received Date** | 18-JUL-2005 |
| **Staff Recipient** Aucoin Ann Marie  CO I | | |

**Superintendent's Signature**

Exhibit #5

Case 1:04-cv-... Document 1 Filed ... Page 1 of ... Exhibit #6

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| Name | FOWLKES FELIPE O | | | | Institution | MCI NORFOLK | | |
|---|---|---|---|---|---|---|---|---|
| Number | W84202 | Housing | SMU2 | | Appeal Date | 16-JUL-2005 | Date Of Grievance | 12-JUL-2005 |
| | | | | | Appeal Received Date | 18-JUL-2005 | | |

**Appeal**

The inmate appeals from the decision of the IGC on the grounds that DOC Inmate Grievance Program promulgated and maintained pursuant to 103 CMR 491, is not providing meaningful review of his inmate grievances and the grievance coordinator(s) Superintendent and Commissioner's grievance reviewer, Christian LaDucia, were and are not able to make informed decisions on his inmate grievances because the DOC grievance program does not have a "Master Index" containing a record of prior decisions by subject matter upon which they may rely on to base their decisions.

As a result, the Appellant claims that he is being denied his first Amendment Right to effectively Address DOC for redress of grievances, and that his right under the equal protection clause of the 14th Amendment is also being violated because the grievance Coordinator, Superintendent and Commissioner's grievance reviewer, may have made decisions allowing another inmate a right or privilege which they have denied to him.

The inmate claims that he has the education, skills and experience to prepare a Master Index System for the prison and DOC and would like to be assigned a job preparing it.

PDGC    8/16/05

**Remedy Requested**

That the prison and DOC improve the inmate grievance program to provide for meaningful review of his inmate grievances by preparing a "Master Index System" containing a record of prior decisions by subject matter, upon which the grievance coordinator(s), superintendent(s) and commissioner's grievance reviewer may rely on to base their decisions, and if possible, he be assigned a job to help prepare the "Master Index System" because he has the education, skills and experience, and that the Master Index System if prepared, be made available to him in the inmate population through the grievance program and law library. He also requests such other and further reliefs as may compensate for or remedy the violations of his Constitutional Rights.
Dated: July 16, 2005.
W/enc. Decision

| Staff Recipient | Aucoin Ann Marie  CO I |
|---|---|

**Signature**

## DECISION BY SUPERINTENDENT

| Appeal Received Date | 18-JUL-2005 | Decision Date | 11-AUG-2005 | Decision | DENIED |
|---|---|---|---|---|---|

**Decision By**    Nolan David F  DIRECTOR  OF AUDIT/ COMPLIANCE

**Reasons**    I concur with the IGC.

**Signature**

11/22/05 - In accordance with 103 CMR 491, I have reviewed grievance appeal 11823.

Please be advised that I support the Superintendent's decision to deny your grievance. Pursuant to policy, all grievances are investigated and responded to individually based on supporting documentation. On 7/15/05 your IGC interviewed you in attempt to get a specific complaint to try and address this matter. During this interview, you did not have any specific complaints or issues to reference. Therefore, as policy dictates, the IGC will continue to respond to all grievances individually based on supporting documentation provided.

Kristie Ladouceur

Kristie Ladouceur
Department Grievance Coordinator

**Date**

Exhibit #6

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM

#### FORWARD TO SUPERINTENDENT

| Name | FOWLKES FELIPE O | | | | Institution | SOUZA-BARANOWSKI CORRECTIONAL |
|------|------------------|--|--|--|-------------|------|

| Number | W84202 | Housing | J1 |
|--------|--------|---------|-----|

| | Appeal Date | | Date Of Grievance | 30-SEP-200 |
|--|-------------|--|-------------------|------------|
| | Appeal Received Date | 07-DEC-2005 | | |

**Appeal**

13514

The grievant appeals from a decision which denies him the requested relief that DOC deprived him of, and should therefore, issue him adequate clothing as required fro the inclement and cold Northeastern weather and that DOC should modify its current clothing issue which is punitive in nature: He also asserts that the deprivation of adequate clothing is so dissimilar to the Right of Adequate clothing afforded other state and federal convicts, that it violates his due process and equal protection rights under the 14th Amendment as well as his 8th amendment right to be free from cruel and unusual punishment. Thus, in essence, the appellant?s grievance challenges DOC policy with respect to the state issued clothing being violative of his constitutional rights. In doing so, the appellant states that the clothing he was issued when received in Mass. DOC at Concord on Sept. 17, 2004, and Cedar Junction on Jan. 27, 2005, pursuant to 103 CMR 755, are no different that the clothing issued him under 103 CMR 423, except for the color which is red, while the other were grey and dark green, which is supportive of his argument that DOC clothing are punitive in nature, in that, they are designed to punish him without due process of law rather that rehabilitate him. Moreover, the appellant asserts that the state issued clothing does not protect his body from the cold and inclement northeastern weather. In support thereof, he state that during the long winter season which in the north-east, begans and runs through the fall and spring seasons, when it rains, hail and snows, he could not button up the short-sleeve shirt and the blue denim jacket becomes easily soaked and wet and does not protect his feet form the cold, snow, ice and pouring rain from above and on the ground. While at Concord, he had to walk back and forth to the mess hall; HSU, library, gym and other places which required him to exist the housing unit.

**Remedy Requested**

In addition to the reliefs requested in the grievance, the appellant request that DOC modify its 103 CMR 755 to provide him with adequate clothing suitable for the cold and inclement northeastern weather and to meet rehabilitative standards, such as ski-coat, boots or boot-shoes, sweatshirt, long-sleeve shirt with button ups and name and number tags on pockets rather than DOC letters on back; brief underware, wool cap and such other and further items consistent w/ needs.

**Staff Recipient**

Kenney Kimberly A  CO II

**Signature**

## DECISION BY SUPERINTENDENT

| Appeal Received Date | 07-DEC-2005 | Decision Date | 05-JAN-2006 | Decision | DENIED |
|----------------------|-------------|---------------|-------------|----------|--------|

**Decision By**  Spencer Luis  SUPERINTENDENT

**Reasons**  Your appeal has been review and I conodr with the IOO's findings and rational.

**Signature** _____  **Date** 1/5/06

### INMATE RECEIPT

| Inmate's Name | FOWLKES FELIPE O | Institution | SOUZA-BARANOWSKI CORRECTIONAL |
|---------------|------------------|-------------|------|

| Number | W84202 | Appeal Received Date | 07-DEC-2005 |
|--------|--------|----------------------|-------------|

**Staff Recipient**  Kenney Kimberly A  CO II

**Superintendent's Signature** _____

$Exhibit \#7$

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| | | | | |
|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | **Institution** | SOUZA-BARANOWSKI CORRECTIONAL |

| | | | | | |
|---|---|---|---|---|---|
| **Number** | W84202 | **Housing** | J1 | **Appeal Date** | **Date Of Grievance** 30-SEP-2005 |

**Appeal Received Date** 07-DEC-2005

**Appeal** 13514

The grievant appeals from a decision which denies him the requested relief that DOC deprived him of, and should therefore, issue him adequate clothing as required fro the inclement and cold Northeastern weather and that DOC should modify its current clothing issue which is punitive in nature. He also asserts that the deprivation of adequate clothing is so dissimilar to the Right of Adequate clothing afforded other state and federal convicts, that it violates his due process and equal protection rights under the 14th Amendment as well as his 8th amendment right to be free from cruel and unusual punishment. Thus, in essence, the appellant?s grievance challenges DOC policy with respect to the state issued clothing being violative of his constitutional rights. In doing so, the appellant states that the clothing he was issued when received in Mass. DOC at Concord on Sept. 17, 2004, and Cedar Junction on Jan. 27, 2005, pursuant to 103 CMR 755, are no different that the clothing issued him under 103 CMR 423, except for the color which is red, while the other were grey and dark green, which is supportive of his argument that DOC clothing are punitive in nature, in that, they are designed to punish him without due process of law rather that rehabilitate him. Moreover, the appellant asserts that the state issued clothing does not protect his body from the cold and inclement northeastern weather. In support thereof, he state that during the long winter season which in the north-east, begans and runs through the fall and spring seasons, when it rains, hail and snows, he could not button up the short-sleeve shirt and the blue denim jacket becomes easily soaked and wet and does not protect his feet form the cold, snow, ice and pouring rain from above and on the ground. While at Concord, he had to walk back and forth to the mess hall; HSU, library, gym and other places which required him to exist the housing unit.

**Remedy Requested**

In addition to the reliefs requested in the grievance, the appellant request that DOC modify its 103 CMR 755 to provide him with adequate clothing suitable for the cold and inclement northeastern weather and to meet rehabilitative standards, such as ski-coat, boots or boot-shoes, sweatshirt, long-sleeve shirt with button ups and name and number tags on pockets rather than DOC letters on back; brief underware, wool cap and such other and further items consistent w/ needs.

**Staff Recipient** Kenney Kimberly A CO II

**Signature**

## DECISION BY SUPERINTENDENT

**Appeal Received Date** 07-DEC-2005   **Decision Date** 05-JAN-2006   **Decision** DENIED

**Decision By** Spencer Luis SUPERINTENDENT

**Reasons** Your appeal has been review and I concur with the IGO's findings and rational.

**Signature** 2/22/06 - Please be advised that I have reviewed grievance/grievance appeal #13514. I support the Superintendent's decision to deny your grievance, as I concur with the institutional summary of findings.

*Kristie Ladouceur (AMA)*

Kristie Ladouceur-AMA
Department Grievance Coordinator

**Date**

## INMATE RECEIPT

**Inmate's Name** FOWLKES FELIPE O                    **Institution** SOUZA-BARANOWSKI CORRECTIONAL

**Number** W84202                    **Appeal Received Date** 07-DEC-2005

**Staff Recipient** Kenney Kimberly A CO II

**Superintendent's Signature**

Exhibit #8

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
## INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | | | **Institution** | SOUZA-BARANOWSKI CORRECTIONAL | |

| **Number** | W84202 | **Housing** | J1 | **Appeal Date** | **Date Of Grievance** | 30-SEP-200 |
|---|---|---|---|---|---|---|

**Appeal Received Date** 08-DEC-2005

**Appeal**

13537

The appellant appeals from a decision which denies his requests for conjugal visits in a trailor or apartment like setting with relatives and friends and free transportation for them to visit him on a more frequent and timely basis as parts of a program called ?the family union program.? He argues that he has been denied this program as part of Mass. DOC punitive programs policy designed to punish inmates rather than rehabilitate them. He asserts that the new core values, vision and mission statements governing the family visitation program are reflective of religious values or religious establishment which he does not have to share in and for which DOC is prohibited by the first amendment, from respecting the establishment of. Furthermore, he states that the trailors or apartments behind prison walls and free bus rides for family and friends to visit him in what is called the family reunion program similar to NYSDOCS, can be made possible by the inmate canteen purchases by allowing them to agree on over charges for particular items and the money set aside in a separate account for that purpose.

**Remedy Requested**

That DOC implement a family reunion program similar to or the same as that in NYSDOCS and allow the Appellant conjugal visits with relatives and friends in a trailor or apartment setting and free bus rides and more visitation time for them, and that the appellant and all other inmates be allowed to purchase the trailors and pay for the program through canteen purchases account:

**Staff Recipient**

Kenney Kimberly A CO II

**Signature**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## DECISION BY SUPERINTENDENT

**Appeal Received Date** 08-DEC-2005  **Decision Date** 05-JAN-2006  **Decision** DENIED

**Decision By** Spencer Luis SUPERINTENDENT

**Reasons** Appeal is denied. I concur with the IGC's findings and rationale.

**Signature** _____  **Date** 1/5/06

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## INMATE RECEIPT

| **Inmate's Name** | FOWLKES FELIPE O | **Institution** | SOUZA-BARANOWSKI CORRECTIONAL |
|---|---|---|---|

| **Number** | , W84202 | **Appeal Received Date** | 08-DEC-2005 |
|---|---|---|---|

**Staff Recipient** Kenney Kimberly A CO II

**Superintendent's Signature** _____

Exhibit #9

$Exh.\#10$

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| | | |
|---|---|---|
| **Name** | FOWLKES FELIPE O | **Institution** SOUZA-BARANOWSKI CORRECTIONAL |
| **Number** | W84202    **Housing**  J1 | **Appeal Date Of** **Grievance** 30-SEP-2005 |
| | | **Appeal Received Date**  08-DEC-2005 |

**Appeal**   13537

The appellant appeals from a decision which denies his requests for conjugal visits in a trailor or apartment like setting with relatives and friends and free transportation for them to visit him on a more frequent and timely basis as parts of a program called ?the family union program.?  He argues that he has been denied this program as part of Mass. DOC punitive programs policy designed to punish inmates rather than rehabilitate them.  He asserts that the new core values, vision and mission statements governing the family visitation program are reflective of religious values or religious establishment which he does not have to share in and for which DOC is prohibited by the first amendment, from respecting the establishment of.  Furthermore, he states that the trailors or apartments behind prison walls and free bus rides for family and friends to visit him in what is called the family reunion program similar to NYSDOCS, can be made possible by the inmate canteen purchases by allowing them to agree on over charges for particular items and the money set aside in a separate account for that purpose.

**Remedy Requested**   That DOC implement a family reunion program similar to or the same as that in NYSDOCS and allow the Appellant conjugal visits with relatives and friends in a trailor or apartment setting and free bus rides and more visitation time for them, and that the appellant and all other inmates be allowed to purchase the trailors and pay for the program through canteen purchases account.

**Staff Recipient**   Kenney Kimberly A  CO II

**Signature**

## DECISION BY SUPERINTENDENT

| | | | |
|---|---|---|---|
| **Appeal Received Date**   08-DEC-2005 | **Decision Date**  05-JAN-2006 | **Decision**  DENIED | |

**Decision By**   Spencer Luis  SUPERINTENDENT

**Reasons**   Appeal is denied.  I concur with the IGO's findings and rationale.

**Signature**   2/22/06 - Please be advised that I have reviewed grievance/grievance appeal #13537.  I support the Superintendent's decision to deny your grievance, as I concur with the institutional summary of findings.

Kristie Ladouceur (AMA)

Kristie Ladouceur-AMA
Department Grievance Coordinator

_____   **Date**

## INMATE RECEIPT

**Inmate's Name**  FOWLKES FELIPE O                              **Institution**  SOUZA-BARANOWSKI CORRECTIONAL

**Number**   W84202                                            **Appeal Received Date**   08-DEC-2005

**Staff Recipient**   Kenney Kimberly A  CO II

**Superintendent's Signature**

$Exhibit \#10$

Exh. #11



Exhibit #11

Case 1:05-cv-11749-JLT   Document 11-12   Filed 04/28/2006   Page 2 of 3

Exh. #11

Exhibit #11

Exhibit #11

Exh.#11

Produced by Grand Puba Maxwell & Brand Nubian
Executive Producer: Dante Ross

Except "Ragtime" produced by Skeff Anselm for
Skeffington Productions
    -Wake Up (stimulated Dummies Mix)" produced
and mixed by D. Ross, J. Gamble, G. Dajani for
Stimulated Dummies Inc.
"Step To The Rear", produced and mixed by
D. Ross, J. Gamble and G. Dajani
"Try To Do Me" produced & mixed by D. Half for
Untouchables Productions

Brand Nubian would like to thank:
X Clan, PRT, PE, JB's, Quest, De La, KRS & BDP,
Black Sheep, KMD, Lons, Africa Bambaata & The
Universal Zulu Nation, Jazzy Jay, Nu Sounds, Lord
Finesse, CL Smooth, Pete Rock, Eddie F, Chuck
Chillout, Marley Marl, Red Alert, Clark Kent, Kid
Capri, Queen Latifah, Monie Love, Lucien, Black
Rock & Ron, Kool G. Rap & Polo, Master Ace,
Graig G, Steady Pace, Big Daddy Kane, Scoob &
Scrap, Stetsasonic, Ice T, MC Lyte, Funkmaster
Flex, Ultra's, Nice & Smooth, Vance Wright,
Slick Rick, Doug E. Fresh, Busy B, Mister Biggs,
Divine Styler, Dr. Who, Don Baron, D J Shabazz,
Gngster & Premier, Biznmickle, Paris, Tragedy,
Justice, Dave Hall, Skeff Anselm, The Stimulated
Dummies, Nina Ritter, Andre Harell, Uptown
Management and Elektra Entertainment.

Grand Puba Maxwell would like to thank all those
who feel they need to be thanked. Peace

Lord Jammer says knowledge knowledge to:
Sincere Ahmad, Ja Will, True King, Universal

Sincere, Shaquan, K Born, Nafiz, Supreme
Debonair, Richbove, Ron Sludd, Deakee, Roote,
Said, Daf, Shark, Eaprock, Tyrone, Tony D, Little
Terrence, My Earth, Nyad, John Smooth, Joe
Stick, Lance Curtis, Walik, Skeff, Trevor, Darlene,
Prince Up North, Basim, and my grandmother
Dorothy L. Brodie

Sadaat X (Derrick X): Peace to the Murphy
family, the Williams family, to the Banks family,
Novrolemob, to Big Rich, to Big Batch, Mike P.
with the Cherokee, Omar The Superstar, Ron
Stud, peace to the gods. Du-B-Real and the whole
mob from Beldry, Crownlight Stars to my
Wisdom Diana, Epie, Jeanette and Paul, the
Lower East Side crew, Tone Reese, Monarch and
the crew from Courtland, and the Bran X, the
whole crew from Hunter College, to Sally and
Tiffany and Darryl and Rob G, The Barber and
Chuck up at the Chop Shop and Trevor.

Brand Nubian would especially like to extend
peace and blessings to the following: Master
Farad Muhammad, the Honorable Elijah
Muhammad, the Father Allah & Justice, Marcus
Garvey, Anable Drew Ali, Martin Luther King,
Kwame Toure, Haile Selassie, Minister Louis
Farrakhan, Huey P Newton, Assata Chukur, Fred
Hampton, Malcolm X, Imman Isa and most of
all we would like to give thanks to the original
black mentally which manifested all things in
existence.

Photography: Mark Seliger
Design: Carol Bobolts

Exhibit #11

# Wise man cometh with a message

By CHRIS FARAONE

## MUSIC



RHYME TIME: Hip-hop artist Wise Intelligent.

Before the Garden State produced rappers such as Canibus and Redman, Wise Intelligent represented Trenton, N.J.

And before conscious rap music was labeled as such, his lyrics stood for peace, equality and education.

As the frontman for the '90s rap group Poor Righteous Teachers, Intelligent injected progressive content into accessible music. More than a decade later, he's still pushing heavy lessons in body-moving melodies.

"The Poor Righteous Teachers called it smooth with the roughness," Intelligent said by phone from Trenton. "We were still connected with the streets in the way we conveyed our message, but at the same time it's politically relevant enough for others to relate to it."

Intelligent brings his rhymes to the center of the academic universe on Sunday when he performs at the Middle East in Cambridge. The Central Square nightclub is a fitting venue for a rapper whose career with the Poor Righteous Teachers took him from ivory towers to mean streets.

"One week we would be at Princeton University," he recalled, "and the next week we would be at Liberty Hall in Washington, D.C., and bullets would be flying outside of the venue."

Next up for Intelligent is his seven-CD "Back to School" solo project. The first installment, "The Talented Timothy Taylor," drops next month. And though he remains on message addressing everything from foreign policy to ghetto inequities, Intelligent is not so naive as to believe his message will reach audiences simply because of his high-minded intentions.

"It's about marketing," he said. "The first time hip-hop came across the radio it became commercial. There's no way you can keep something pure and underground if it's gonna be sold. It's about finding a way to market intelligence."

Intelligent has a scheme to reach an international audience that involves more than music. He plans to travel the globe with impoverished children in what he calls an exchange-type mobile school. For both the kids he influences through the community service work he does in Trenton and those who study his rhymes, Intelligent has a message.

"Kanye West said that Bush doesn't like black people," he said. "But where I live at, black people don't like black people. So I hope to convey that love comes from understanding, and that understanding breeds respect."

With a devastating combination of profound delivery and exceptional lyrics, Intelligent promises to leave concertgoers dazzled and rappers questioning their own ability.

"I'm bringing lyrics, lyrics, lyrics and no gimmicks," he said. "There's gonna be lyrical wizardry, songs, concepts and ideas. Even the MCs in the crowd will think, 'Am I really an MC? Am I really good at this?' "

*Wise Intelligent, with Eclectic Collective, the Foundation, Elemental Zazen and Al Jabra, Sunday at 9 p.m. at the Middle East, Cambridge. Call 617-864-EAST.*

Exhibit #12

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| Name | FOWLKES FELIPE O | | Institution | SOUZA-BARANOWSKI CORRECTIONAL |
|------|------------------|------|-------------|-------------------------------|

| Number | W84202 | Housing | J1 | Appeal Date | | Date Of Grievance | 16-OCT-200 |
|--------|--------|---------|-----|-------------|--|-------------------|-----------|
| | | | | Appeal Received Date | 08-DEC-2005 | | |

**Appeal**

13883

The Appellant appeals from a decision which denies him the first amendment right and privilege of association and representation by and with other inmates as an inmate liason committee. He argues that Mass. DOC?s policy that no inmate or group of inmates shall be in a position of control or authority over any other inmates, does not apply to the ILC, and that the application of that policy violates his first amendment rights to peaceably assemble and to petition the government for redress of grievances, as well as his first amendment of free speech. Moreover, he asserts that the ILC has rehabilitative objectives and has never been a security risk group. Furthermore, he states that the ILC does not represent the concerns of one inmate. Instead, it represents the concerns of a group or unit of inmates, who at particular times, may experience the same problem, and its representatives are elected by the inmates by votes.

| Remedy Requested | That appellant be allowed the first amendment rights and privilege of association and representation by and with other inmates as an inmate liason committee through a democratic process called voting. |
|------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|

| Staff Recipient | Kenney Kimberly A  CO II |
|-----------------|--------------------------|

| Signature | |
|-----------|--|

## DECISION BY SUPERINTENDENT

| Appeal Received Date | 08-DEC-2005 | Decision Date | 28-DEC-2005 | Decision | DENIED |
|----------------------|-------------|---------------|-------------|----------|--------|

| Decision By | Spencer Luis  SUPERINTENDENT |
|-------------|------------------------------|

| Reasons | Your appeal has been reviewed and I concur with the IGO's findings and rational. |
|---------|----------------------------------------------------------------------------------|

| Signature | | Date | 12/28/05 |
|-----------|--|------|----------|

## INMATE RECEIPT

| Inmate's Name | FOWLKES FELIPE O | | Institution | SOUZA-BARANOWSKI CORRECTIONAL |
|---------------|------------------|--|-------------|-------------------------------|

| Number | W84202 | | Appeal Received Date | 08-DEC-2005 |
|--------|--------|--|----------------------|-------------|

| Staff Recipient | Kenney Kimberly A  CO II |
|-----------------|--------------------------|

| Superintendent's Signature | |
|----------------------------|--|

Exhibit #13

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| Name | FOWLKES FELIPE O | | | **Institution** | SOUZA-BARANOWSKI CORRECTIONAL |
|---|---|---|---|---|---|

| Number | W84202 | Housing | J1 | **Appeal Date** | | **Date Of Grievance** 16-OCT-200 |
|---|---|---|---|---|---|---|

**Appeal Received Date** 07-DEC-2005

**Appeal** 13887

The appellant appeals from a decision which denies him the right and privilege of association and representation with and by other inmates as an inmate organization called the ?N.A.A.C.P.? He argues that Mass. DOC?s Policy that no inmate or group of inmates shall be in a position of control or authority over any other inmates, does not apply to the N.A.A.C.P. organizational association, and that the application of that policy violates his first amendment rights to peaceably assemble, and to petition the government for redress of grievances as well as his first amendment right to free speech. Moreover, he states that the N.A.A.C.P. inmate organization has rehabilitative objectives and has never been a security risk group and has been implemented and approved in practically all other state and federal facilities such as NYSDOCS. It teaches genuine organizational skills and respect for authority. He further argues that Mass.DOC would not approve the N.A.A.C.P. because it represents African-American blacks. Also, its representatives are elected by votes.

**Remedy Requested** That appellant be allowed the first amendment rights and privilege of association and representation by and with other inmates as an inmate organization called the N.A.A.C.P. through a democratic process called voting.

**Staff Recipient** Kenney Kimberly A  CO II

**Signature**

## DECISION BY SUPERINTENDENT

| **Appeal Received Date** | 07-DEC-2005 | **Decision Date** | 28-DEC-2005 | **Decision** | DENIED |
|---|---|---|---|---|---|

**Decision By** Spencer Luis  SUPERINTENDENT

**Reasons** Your appeal has been reviewed and I concur with the IGO's findings and rational.

**Signature** _____  **Date** 12/28/05

## INMATE RECEIPT

| **Inmate's Name** | FOWLKES FELIPE O | **Institution** | SOUZA-BARANOWSKI CORRECTIONAL |
|---|---|---|---|

| **Number** | W84202 | **Appeal Received Date** | 07-DEC-2005 |
|---|---|---|---|

**Staff Recipient** Kenney Kimberly A  CO II

**Superintendent's Signature**

$Exhibit \#14$

Exh. #15

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

| | | | | |
|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | **Institution** | SOUZA-BARANOWSKI CORRECTIONAL |
| **Number** | W84202 | **Housing** J1 | **Appeal Date** | **Date Of Grievance** 30-SEP-200 |
| | | | **Appeal Received Date** | 07-DEC-2005 |

**Appeal**

13516

SUPPLEMENTAL APPEAL ARGUMENT. The Grievant-Appellant requests that his Nov. 24, appeal in the above Grievance Number 13516, be amended by the following interlineations: •In addition to the arguments set forth in his Nov. 24 appeal on this grievance, the Grievant-Appellant argues that he has a first amendment right to smoke cigaretts and tobacco products in accord with his religious teachings and practice that he is ?Five Percent of the muslims who believe in smoking and drinking and/or Five Percent of the Muslim followers of Elijah Muhammad who believe in smoking and drinking.? This religious belief and practice of the ?Five Percenters? group to which he is a member, is referred to in the ?United States Department of Justice, Freedom o Information Privacy Acts section, F.B.I. files on ?The Five Percenters? at 935 Pennsylvania Ave., N.W. Washington, D.C. 20535. He also argues, upon information and belief, that D.O.C. allows ?Indians? to engage in ceremonial smoking during their religious services, and that similarly, he should also be allowed to smoke cigaretts and tobacco products outside or in a designated area of the facilities of Mass. DOC., and to purchase, receive and possess tobacco products and cigaretts for that religious purpose.

**Remedy Requested**

Supplemental requested remedy. To be allowed his first amendment right to smoke cigaretts and tobacco products in accord with his religious believe in smoking and drinking and/or Five Percent of the muslim followers of Elijah Muhammad who believe in smoking and drinking.? (Refer to U.S. Department of Justice, F.B.I. files in Washington, D.C. on the Five Percenters) He also request to purchase, receive and possess tobacco products for the religious purpose of smoking outside or in a designated area of Mass. DOC facilities. These supplemental requested remedies are requested in addition to the remedies requested in the Nov. 24 appeal of this grievance. (written copy retained by F.F.)

FN. The Five Percenters were recently recognized by NYSDOCS as a bona fide Religion per a recent decision in the U.S. District Court for the Southern District of N.Y., Marria V. Broaddus.

**Staff Recipient**  Kenney Kimberly A  CO II

**Signature**

## DECISION BY SUPERINTENDENT

| | | | | | | |
|---|---|---|---|---|---|---|
| **Appeal Received Date** | 07-DEC-2005 | **Decision Date** | 28-DEC-2005 | **Decision** | DENIED |

**Decision By**  Spencer Luis  SUPERINTENDENT

**Reasons**  Your appeal has been reviewed and your appeal is denied. A religious request form should be submitted for any religious items which you are requesting through you Dir. of Treatment.

**Signature**                                                                    **Date**  12/28/05

## INMATE RECEIPT

| | | | |
|---|---|---|---|
| **Inmate's Name** | FOWLKES FELIPE O | **Institution** | SOUZA-BARANOWSKI CORRECTIONAL |
| **Number** | W84202 | **Appeal Received Date** | 07-DEC-2005 |
| **Staff Recipient** | Kenney Kimberly A  CO II | | |

**Superintendent's Signature**

Exhibit #15

*Exh. #15*

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| Name | FOWLKES FELIPE O | | | Institution | MCI NORFOLK | |
|------|------------------|--|--|-------------|-------------|--|

| Number | W84202 | Housing | SMU2 | Appeal Date | | Date Of Grievance | 30-SEP-2005 |
|--------|--------|---------|------|-------------|--|-------------------|-------------|

Appeal Received Date   07-DEC-2005

**Appeal**

13516

The appellant appeals from a decision which denies and deprives him of the privilege of purchasing, receiving and smoking tobacco products outside in a recreation area or in a designated area of the facility and which, as an alternative to the restriction, denies him the issuance of anti-smoking devises, such as smoking patches, Nicoderm and etc., to help curve the 'physiological' affects of nicotine cravings. He states that while the in-house ban on smoking may be justified under certain circumstances, the ban on smoking outside or in a designated area of the facilities, is not justified and was implemented for no other reasons that to punish him in violation of his due process rights and equal protection rights since other state and federal convicts are allowed this smoking privilege. In doing so, he states that the restriction also violates his 8th amendment right to be free from cruel and unusual punishments. Therefore, he argues that DOC 103 sec. 444 policy should be revised to allow him the privilege of smoking outside or in a designated area of the DOC facilities. Furthermore, the appellant argues that his safety and well-being is threatened by DOC no-smoking policy because it places to much power in the hands of staff who have been know to pay inmates cigarettes to target, threaten, assault and murder other inmates such as himself because of his conviction charges, and/or because a particular staff member may not like him. For examples: the appellant states that he was targeted by other inmates who were paid cigaretts by staff on a number of occasions while at Cedar Junction Prison and brutally assaulted on July 28, 2005, by one of those inmates (see Cedar Junction grievance nos. 8836, 12310, & 12502) and threatend and insulted by others as a result of Cedar Junctions staff payment of cigarrets. NO FURTHER SPACE AVAILABLE...

**Remedy Requested**

In addition to the reliefs requested in the grievance, the appellant requests that DOC modify, if necessary, its non-smoking police (103 CMR 444) to allow and/or restore the privilege of purchasing, receiving, and smoking cigaretts or tobacco products out-of-doors or in a designated area of Mass. DOC facilities, and/or as an alternative, issue him anti-smoking devises such as non-smoking patches, nicoderm, and etc., to help curve the physiological affects of nicotine cravings.

**Staff Recipient**   Kenney Kimberly A  CO II

**Signature**

## DECISION BY SUPERINTENDENT

| Appeal Received Date | 07-DEC-2005 | Decision Date | | Decision | |
|----------------------|-------------|---------------|--|----------|--|

**Decision By**

**Reasons**

**Signature**                                                                    Date

## INMATE RECEIPT

| Inmate's Name | FOWLKES FELIPE O | | Institution | MCI NORFOLK |
|---------------|------------------|--|-------------|-------------|

| Number | W84202 | Appeal Received Date | 07-DEC-2005 |
|--------|--------|----------------------|-------------|

**Staff Recipient**   Kenney Kimberly A  CO II

**Superintendent's Signature**

Exhibit #15

Exh. #16

# INMATE RELIGIOUS SERVICES REQUEST FORM

1. What is the OFFICIAL NAME of the FAITH GROUP?
   FIVE PERCENTERS (AKA Gods and Earths)

2. Who is the head of the FAITH group? CLARENCE 13X Smith KNOWN AS "ALLAH"

3. What is the address and telephone number of the faith group in MASSACHUSETTS OR the U.S.?
   There is NONE. It is a free-flowing group where the mission of the 5% anywhere is to teach the 85% who are being misled by the 10% mystery God teachings.
   ( ) ———/——— .

4. Does the faith have group ministers or teachers?
   Yes ✓   Teachers   NO ____

5. ARE the ministers available to visit incarcerated members of the faith group?
   Yes ____   NO ✓
   The FIVE PERCENTER teachers ARE NOT required to visit other 5%er teachers in jails or prisons to observe the 5% mission.

6. ARE there Religious Holydays to be observed?
   Yes ✓   No ____
   Supreme mathematics must be observed everyday while smoking cigaretts and/or tobacco products.

7. If so, what Religious practices are necessary for the observance?
   The practice of Supreme mathematics every day during which cigaretts and/or tobacco products are smoked, is necessary for the observance of the 5% mission and way of life. (continued on attached pages)

8. ARE there time and space Requirements for the faith? If so, please explain? The smoking of cigaretts or tobacco products during the observance of the 5%er Holydays of Supreme mathematics everyday outside in the yard, on recreation deck which is also outside in a cage, or in a designated area of the prison can be set at any reasonable times during the day

-1-   (cont. on Reverse side)

EXHIBIT #16

9. Is the Religion open to all inmates?

Yes ✓          No _____

The five percent teachers consist of blacks, hispanics, Asians, bi-racials, whites and etc. (Anyone) They have all been members and are welcomed.

10. Please provide reference material, which would be useful for researching this group?

(see attached page with annexed reference material pages) and documents.

11. What is your specific request?

To receive and smoke cigaretts and/or tobacco products during the observance of the five percenter Holy days on everyday of Supreme Mathematics outside in the recreation yard, on recreation deck which is also outside in a cage, or in a designated area of the prison or any other Mass. DOC prison.

NAME: _Felipe Fowlkes_____ Comm.# W84202
        Felipe Fowlkes aka Bisme Allah

Attachment A

"INMATE RELigious SERvices REQUEST FORM", cont. :

#7. If so, what Religious practices are necessary for the observance?

ANSWER: The practice of Supreme Mathematics everyday during which cigaRetts and/or tobacco products are smoked, is necessary for the observance of the FIVE PERCENT mission and way of Life. The FIVE PERCENTER God or Earth is Required to know by memory Supreme Mathematics and what the Mathematics is for each day of the month. Every NumeRal from 1 to 9 and 0 is Represented by the words of Supreme Mathematics which are:

-Supreme Mathematics-
"1= Knowledge  2= wisdom  3= understanding
4= Culture or Freedom  5= Power  6= Equality
7= God  8= Build or Destroy  9= Born  0= Cipher"

By using the above Supreme Mathematics, the FIVE PERCENTER Recite and discuss the daily Mathematics with each other or alone everyday while smoking and sharing cigaRetts or tobacco products. For example: If today's date is the 12th of the month, they ask themselves or each other "What is today's Mathematics?"

-2-   (cont. on Reverse side)

THE ANSWER would be KNOWLedge① And Wisdom②
All being born to equal UNDERSTANDING③.
(1+2=3). They then give or Recite the meanings
of KNowledge, Wisdom And UNDERSTANDING
And discuss or contemplate the Significance
And importance of them to the world, UNiverse
And themselves. The Supreme mAthemAtics
of the day Are Also used to iNterpret the
FiVE PERCENTER LESSONS of 120 degrees.

ON MAY 31, 1965, the founder, ▬▬ CLARENCE
13X Smith (ALLAH) And SeveRAl otheR co-founders
of the FiVE PERCENTERS publicly ANNOUNced
that the meaning of the FiVE PERCENTERS is
that "they ARe 5% of the Muslims who believe
iN Smoking And dRiNking" And that they ARe
5% of the Muslim followeRS of Elijah Muhammad
who believe iN Smoking And dRiNking."
This belief can be veRified within the files held
on the FiVE PERCENTERS At the U.S. DepARtment
of Justice, FReedom of INfoRmation PRivAcy Acts
Section, OFFice of public And CongRessioNAl AFFAIRS,
935 PeNNSYlVANiA AveNue, N.W., WAShington, D.C.
20535-0001, betweeN 1965 And 1969. It is Also
iN their files on CLARENce 13X Smith, founder of
the FiVE PERCENTERS. INdeed, it should be

-4-

verified before any Recommendation to deny
this Request is made. I've Requested a
copy of the files inwhich the document is
contained but due to my indigency I cannot
afford the copying costs. (Please Refer to the
June 21 Response to me from the FOIA Section
of the U.S. Department of Justice, Washington,
D.C. on these subjects in the Referrence
materials I've provided you)

Surely, since the Five Percenters were founded
it has been their practice to smoke cigaretts
and/or tobacco products during the observance
of their Supreme Mathematics Holydays on
every-day. The smoking of cigaretts and/or
tobacco products is the trademark of their faith
or mission which has served to convert the
eighty-five percenters and to distinguish them
from other Muslim or Islamic groups who believe
in the teachings of the 10% that Allah is a
Spirit who created them, transcendental
power or an incomprehensible being (Mystery
God). The Five Percenters do not believe in
the teachings of the ten-percent (10%).
The Five Percenters knows and teach that

-4-    (cont. on reverse side)

they ARE the Almighty true AND living God who
is the Son of MAN, the Supreme Being AND
sole controllers of their own destiny. They
teach the same to the 85% people to free them
from the false teachings of the ten-percent (10%).
Thus, smoking cigaretts AND/OR tobacco products
is A way of showing their "freedom" AND Culture
of I- God while performing their mission.
It is common Knowledge About the 5% AND most
people KNOW AND Recognize that Five PERCENTERS
believe in smoking cigaretts AND/OR tobacco
products in their daily practice of ISLAM
which they spell "I- SELF- LAW- AND- MASTER."
FOR that ████ AND other REASONS the 85%ER
people have joined the 5% mission to teARN
the Knowledge of Self without the prohibition
of smoking AND commANdments OR Restrictions
REQUIRED by other Muslim OR Islamic gRoups.

- 5 -

"Inmate Religious Services Request Form, cont.:

#10. Please provide Reference material, which would be useful for Researching this group.

(A) U.S. Department of Justice, FOIA Section, 935 Pennsylvania Ave., N.W., Wash. D.C. 20535, Response Regarding the files they maintain on Clarence 13X Smith and Five Percenters between 1965-1969, containing the document inwhich the founder Clarence 13X Smith and several other co-founders publicly announced that the meaning of the Five Percenters to them that "they are 5% of the muslims who believe in smoking and drinking" and that "they are 5% of the muslim followers of Elijah Muhammad who believe in smoking and drinking."

I cannot afford the cost of copying the files. I put in another request for waiver of copying fees. If you dont accept my word about it, then you could request a copy of the document from the files or ask FOIA Section to verify it. If they foward me a copy of the files I will send you a copy of the document.

(B) Book entitled "The Mayor's Man" by Barry Gottehrer, who was the assistant

- 6 -        (cont. on Reverse side)

to the late Mayor of New York City, John
V. Lindsey. The Book describes the
Relationship between the NYC Mayor's
office and the Five Percenters including
Allah (Clarence 13X Smith). It was Published
by Doubleday; 1st ed edition (1975) ASIN
0385084684. The Book contains one of
the best Representations of the history
and nature of the Five Percenters which
the NYC Mayor's office of John V. Lindsey
sponsored and supported and helped to establish.

(C) Response from NYSDOCS Deputy Commissioner
of Program Services, John H. Nuttall, dated
August 15, 2005, with attached "Appendix
Protocols for Sincere Adherents of Nation
of Gods and Earths Religious Practices"
Showing that the Gods and Earths are the
Same group as the Five Percenters. (See
Subparagraph 4 wherein Five Percenter
Newspaper is highlighted) Also, see
highlights on Supreme Mathematics.
These documents shows that the Five
Percenters Gods and Earths are Recognized
by NYSDOCS as a bona fide Religion per
Federal Southern District Court of N.Y.
decision in Marria v. Broaddus.

-7-

Since the Five PeRcenteRs, like All other inmates within NYSDOCS, ARe permitted to smoke cigARetts And/or tobAcco pRoducts outside of the fAcility buildings And in RecReAtion YARds, their ~~Right~~ Religious Right to smoke cigARetts And/or tobAcco pRoducts during their dAily pRactice of SupReme mAthemAtics, is NOT inteRfeRed with NOR RestRicted in NYSDOCS. Neither wAs there ANy Need to mention it in their PRotocol.

(D) ExceRpts fRom the Lost-Found muslim Lesson #2 fRom the 120 degRees of the Five PeRcenteRs' Gods And EARths.

QUestion And AnsweR #~~●●~~ 14:
"Who is the 85%?" They uncivilized people, poison AnimAl eAteRs, slAves fRom A mentAl deAth of poweR. People who do NOT KNow who the tRue And living God is or their ORigin in this world. They worship whAt they KNow NOT of. Those who ARe eAsily led in the wRong diRection, but hARd to leAd in the Right diRection.

QUestion And AnsweR #15:
"Who is the 10%?" They ARe the Rich slAve mAKeRs of the pooR who teach the pooR lies to believe thAt the Almighty tRue And living God is A spooK thAt cAnnot be seen by the physicAl (eye). OtheRwise KNown As the blood sucKeRs of the pooR.

(cont. on ReveRse side)

(D) cont.:

Question and Answer #16:

"Who is the 5% on this poor part of the planet earth? They are the poor righteous teachers who do not believe in the teachings of the 10%, and who are all-wise and know who the true and living God is and teach that the Almighty true and living God is the Son of Man, the Supreme Being or Blackman of Asia, who teaches Freedom, Justice and Equality to all the human family of the planet earth. Otherwise known as Civilized people. Also, are Muslim and Muslim Sons."

According to these lessons the purpose of the 5% is to teach the 85% who are being misled by the false teachings of the 10%. See also "Patrick v. Le Fevre, 745 F.2d 153, Sketch of the 5%er creed and animating goal.

# RELIGIOUS SERVICES REQUEST FORM

INSTITUTION: SOUZA-BARANOWSKI        DATE OF REQUEST

INMATE NAME: FELIPE FOWLKES AKA BISME ALLAH: Comm.# W84202

Request (Be specific: What was Requested? When does inmate want it? Where does inmate want to utilize it?):

"To Receive and Smoke cigaretts and/or tobacco products during the observance of the Five Percenters Holidays on everyday of Supreme Mathematics outside in Rec yard, on Rec deck which is also outside in a cage, or in a cage, or in a designated area of the prison or any MASS. DOC PRISON.

RELIGION: FIVE PERCENT MISSION (AKA Gods and Earths)
Please Attach inmate's completed Religious Request Questionaire Form.

INSTITUTION Recommendation: Approve _____ Deny _____
IF Recommendation is to deny, please give the following information:

1. Articulate clearly the security Reason(s) for this Recommendation (Be specific):

2. What Alternatives were Asked for or could be Afforded?

3. Was Anyone contacted outside of the institution concerning this Request? IF So, who?

_____
Signature of Superintendent              DATE

Please send completed form to the Religious Services Review Committee

Attachment B

-14-                    Handbook Amended February 2005

Exh.#17

# MASSACHUSETTS DEPARTMENT OF CORRECTION

# RELIGIOUS SERVICES HANDBOOK

Kathleen M. Dennehy
Commissioner

*Issued April 1999*
*Revised February 2005*

Exhibit #17

# Religious Services Requests

The Religious Services Handbook has been developed as a reference tool to assist administrators when evaluating inmate religious requests. The Handbook includes: Commonly Accepted Practices, Approved Practices and Items by Security Level, religious calendars, and religious vendors. The following procedures should be utilized when processing requests for religious items or practices that are not addressed in the Religious Services Handbook:

1. Inmates are required to submit attachment A with all supporting documentation to the Superintendent's designee.

2. Attachment A is reviewed by the Superintendent's designee to ensure that it is complete and accurate.

3. The Superintendent will then forward his/her recommendation to the Religious Services Review Committee (RSRC) utilizing attachment B. The RSRC will consist of the Assistant Deputy Commissioner of the Southern Region, the Assistant Deputy Commissioner of Northern Region, the Director of Offender Management and Placement, and the Director of Program Services.

4. The committee will review both attachments (A&B) and make a formal determination to the superintendent. The Handbook will then be amended accordingly. This review will be based on case law and commonly accepted practice and the Superintendent's recommendation.

5. Copies of the attachments (A&B) and the formal determination will be forwarded to the Program Services Division to be maintained on file.

6. Copies of attachment A and the formal determination will be placed in the inmate's six-part folder.

Note: Religious books shall be provided in accordance with 103 CMR 403.10 (7) (D), *Inmate Property* which states: "authorized inmates may possess a maximum of ten (10) books, magazines and newspapers. All publications must come directly from the publisher or a pre-approved distributor or book club." Additional religious literature may be available through the institutional library. Inmates requesting religious books that are deemed inappropriate by the Superintendent, or his/her designee, should be directed to complete and submit attachment A with a copy of the book. The Superintendent should then forward his/her recommendation to the Religious Services Review Committee utilizing attachment B.

Note: Religious medals must meet the standards set forth in 103 CMR 403.10(6)c, *Inmate Property* which states: "An inmate may possess a maximum of one (1) religious medal to be worn on a chain. The medal shall not exceed a thickness of 1/8" and a diameter of 1 ½". The chain shall not be longer than 20" in length and shall not exceed 1/8" in diameter. No hollow type, gem stone medals allowed. The religious medal and chain must be purchased as a set."

Note: In accordance with 103 CMR 403.11, Additional Property Authorized for Retention, inmates shall be allowed to retain items in their property acquired prior to April 1999.

Exhibit #17

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| | | | | | |
|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | | **Institution** | SOUZA-BARANOWSKI CORRECTIONAL |

| | | | | |
|---|---|---|---|---|
| **Number** | W84202 | **Housing** | J1 | **Appeal Date** | **Date Of Grievance** 16-OCT-200 |

**Appeal Received Date**  08-DEC-2005

**Appeal**  13896
The appellant appeals from a decision which denies that double bunking together with the practice of racial segregation in the double bunking process, as approved and maintained by Mass. DOC at Norfolk and other Massachusetts DOC facilities, such as Concord and others, is not illegal and did not and would not deprive him of personal privacy, adequate space; health risk of exposure to germs and diseases from other inmates and racial violence and racial hatred from inmate members of toher races. Furthermore, he argues that the I.G.C. K. Kenney, must have visited the double bunking housing areas at Norfolk and witnessed from personal observations that inmates are double bunked by race or contacted the Booking/Intake Processing unit as well as other facilities during the course of her investigation of the grievance and discovered that inmates are double bunked by race. However, she denies that the existing procedure or policy promotes racial discrimination, violence and hatred as alleged by the Appellant.

**Remedy Requested**  That double bunking be eliminated within Mass. DOC facilities together with the practice of racial segregation in the double bunking process, and that if, and when, the appellant is assigned to general population in any Mass DOC facility, that he be provided with a single cell.  He also requests that the DOC conduct an investigation about this claim that the existing policy or double bunking by race promotes racial violence, hatred and is an unlawful practice of racial segregation wich constitutes racial discrimination.

**Staff Recipient**  Kenney Kimberly A  CO II

**Signature**

## DECISION BY SUPERINTENDENT

| | | | | | |
|---|---|---|---|---|---|
| **Appeal Received Date** | 08-DEC-2005 | **Decision Date** | 28-DEC-2005 | **Decision** | DENIED |

**Decision By**  Spencer Luis  SUPERINTENDENT

**Reasons**  In reviewing your appeal, I have concluded that the IGO's findings and rational was appropiate.  Your appeal is denied.

**Signature**  _____  **Date**  12/28/05

## INMATE RECEIPT

**Inmate's Name**  FOWLKES FELIPE O          **Institution**  SOUZA-BARANOWSKI CORRECTIONAL

**Number**  W84202          **Appeal Received Date**  08-DEC-2005

**Staff Recipient**  Kenney Kimberly A  CO II

**Superintendent's Signature**

Exhibit #18