FELIPE OTEZE FOWLKES,

         Plaintiff(s)

vs.

Commissioner of MASS. DOC, Kathleen
M. DENNEhy, et., AL.

         Defendant(s)

INMATE
CIVIL
RIGHTS
COMPLAINT
PURSUANT TO
42 U.S.C. § 1983

Civil Case No.: 6:

Plaintiff(s) in the above-captioned action, allege(s) as follows:

## JURISDICTION

1.    This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.

## PARTIES

2.    Plaintiff:    FELIPE OTEZE FOWLKES #W84202

    Address:    CEDAR JuNCTioN PRiSON
                Box 100
                So. WALpole, MA 02071

**Additional Plaintiffs may be added on a separate sheet of paper.**

THIS CiViL ACTION SEEKS RELIEF AND/OR DAMAGES AGAiNST AlI DEFENDANTS
iN the OFFICIAL AND INDIVIDUAL CAPACITIES.

3.  a.  **Defendant:**  KAthleeN M. DENNehy

    **Official Position:**  CommiSSioNeR
    AND INDIVIDUAL

    **Address:**  MASS. Dept. OF CoRRectioN
                50 MAple StReet, Suite 3
                MiLFoRd, MA 01757

-1-

b. **Defendant:** JAMES R. BENDER

**Official Position:** DEPUTY COMMISSIONER
AND INDIVIDUAL

**Address:** MASS. DEPT. OF CORRECTION
50 MAPLE STREET, SUITE 3
MILFORD, MA 01757

ALTERNATE ADDRESS:
OFFICE OF DEPUTY COMMISSIONER
P.O. BOX 9125
WEST CONCORD, MA 01742-

c. **Defendant:** Timothy HALL

**Official Position:** ASST. DEPUTY COMMISSIONER
AND INDIVIDUAL

**Address:** MASS. DEPT. OF CORRECTION
50 MAPLE STREET, SUITE 3
MILFORD, MA 01757

d. **Defendant:** John MARSHALL

**Official Position:** ASST. DEPUTY COMMISSIONER
AND INDIVIDUAL

**Address:** MASS. DEPT. OF CORRECTION
50 MAPLE STREET, SUITE 3
MILFORD, MA 01757

e. **Defendant:** VERONICA M. MADDEN

**Official Position:** ASSOCIATE COMMISSIONER OF REENTRY
AND INDIVIDUAL AND REINTERGRATION

**Address:** MASS. DEPT. OF CORRECTION
50 MAPLE STREET, SUITE 3
MILFORD, MA 01757

·2·

(AMENDED PAGES 3)

f. DEFENDANT: RONALd T. DUVAL
OFFICIAL POSITION: ASSISTANT COMMISSIONER OF
AND INDIVIDUAL      AdMINISTRATION
   ADDRESS: MASS. Dept. OF CORRECTION
            50 MAPLE Street, Suite 3
            MILFORD, MA 01757

g. DEFENDANT: KRISTIE LADOUCEUR
OFFICIAL POSITION: DEPARTMENT GRIEVANCE COORDINATOR
AND INDIVIDUAL
   ADDRESS: MASS. Dept. OF CORRECTION
            50 MAPLE Street, Suite 3
            MILFORD, MA 01757

h. DEFENDANT: PETER ▮▮▮ PEPE
OFFICIAL POSITION: SuperINTENDENT OF CONCORD PRISON
AND INDIVIDUAL
   ADDRESS: MCI- CONCORd
            P.O. BOX 9106
            CONCORD, MA 01742

i. DEFENDANT: DAVid NOLAN
OFFICIAL POSITION: SuperINTENDENT OF CEDAR JUNCTION
AND INDIVIDUAL
   ADDRESS: CEDAR JUNCTION PRISON
            P.O. BOX 100
            So. WALpole, MA 02071

* i(1). DEFENDANT: LuiS SpenceR
OFFICIAL POSITION: SuperINTENDENT OF NORFOLK PRISON
AND INDIVIDUAL
   ADDRESS: MCI- NORFOLK.
            2 CLARK Street
            NORFOLK, MA 02056

-3-
                        ALSO See pg. 3-A
       SWORN TO UNDER PENALTY OF PERJURY: 12-8-05

J. DEFENDANT: DANIEL SULLIVAN, CO II
OFFICIAL/INDIVIDUAL    MCI- CEDAR JUNCTION
P.O. BOX 100
South WALpole, MA 02071

K. DEFENDANT: KIMBERLY KENNEY CO II
OFFICIAL/INDIVIDUAL    MCI- NORFOLK
2 CLARK St.: P.O. BOX 43
NORFOLK, MA 02056

L. DEFENDANT: LOIS RUSSO, Superintendent
OFFICIAL/INDIVIDUAL    SOUZA- BARANOWSKI CORR. CTR.
P.O. BOX 8000
Shirley, MA 01464

M. DEFENDANT: John MARShALL, JR.
OFFICIAL/INDIVIDUAL    ACTING SUPERINTENDENT
MCI- CEDAR Junction
P.O. BOX 100
South WALpole, MA 02071

N. DEFENDANT: John A. LUONGO, JR.
OFFICIAL/INDIVIDUAL    Deputy Superintendent
MCI- CEDAR Junction
P.O. BOX 1000
South WALpole, MA 02071

O. DEFENDANT: DARRIN C. PAYNE, C.O.
OFFICIAL/INDIVIDUAL    MCI- CEDAR Junction
P.O. BOX 100
South WALpole, MA 02071

(3-A)

P. DEFENDANT. _____ ANDERSON
INDIVIDUAL/OFFICIAL: DEPUTY SUPERINTENDENT FOR
CLASSIFICATION OF CONCORD PRISON:
MCI- CONCORD: P.O. BOX 9106
CONCORD, MA 01742

Q. DEFENDANT. KAREN DINARDO
INDIVIDUAL/OFFICIAL: DIRECTOR AND DEPUTY SUPERINTENDENT
FOR CLASSIFICATION OF CONCORD
MCI- CONCORD: P.O. BOX 9106
CONCORD, MA 01742

R. DEFENDANT. C.O. _____ PARE
INDIVIDUAL/OFFICIAL: C.O. OF CONCORD PRISON
MCI- CONCORD: P.O. BOX 9106
CONCORD, MA 01742

S. DEFENDANT. C.O. _____ DRAGONE
INDIVIDUAL/OFFICIAL: C.O. OF CONCORD PRISON
MCI- CONCORD: P.O. BOX 9106
CONCORD, MA 01742

T. DEFENDANT. C.O. UNKNOWN NAME to be discovered.
INDIVIDUAL/OFFICIAL: C.O. OF CONCORD PRISON
MCI- CONCORD: P.O. BOX 9106
CONCORD, MA 01742

U. DEFENDANT. ANN MARIE AUCION, C.O. I.
INMATE GRIEVANCE COORDINATOR
CEDAR JUNCTION PRISON: BOX 100
SO. WALPOLE, MA 02071

3-B

Address: _____

_____

_____

U.  ● Defendant:    ANN MARie AUCION, CO I

Official Position:    INMATE GRieVANCE CoordiNATOR
AND INDIVIDUAL

Address:    CEdAR JuNCtioN PRiSON

Box 100

So. WALpole, MA 02071

Additional Defendants may be added on a separate sheet of paper.

4.                    PLACE OF PRESENT CONFINEMENT

a.    Is there a prisoner grievance procedure at this facility?

(√) Yes          ( ) No

b.    If your answer to 4(a) is YES, did you present the facts relating to your complaint in this grievance program?

(√) Yes          ( ) No

If your answer to 4(b) is YES:

(i)    What steps did you take?
I MAdE wRitteN ReQuestS to the CommiSSioNeR
ANd filed INMATE GRieVANCES.

(ii)    What was the final result of your grievance?
MY REQUESTS ANd MY GRieVANCES
weRe All deNied (See PART '6'(B) thRu (H) oN
pages 30 thRu 37)

.4-

*My complaints were made in the prison's grievance program and appealed to the superentendent for review by the commissioner. (See 103 CMR 491)*

c.  If there is no grievance procedure in your institution, did you complain to prison authorities about the facts alleged in your complaint?

( ) Yes        ( ) No

If your answer to 4(c) is YES:

(i)  What steps did you take?

_____

_____

(ii)  What was the final result regarding your complaint?

_____

_____

If your answer to 4(c) is NO:

Why did you choose to not complain about the facts relating to your complaint in such prison?

_____

_____

5.  **PREVIOUS LAWSUITS**

a.  Have you ever filed any other lawsuits in any state and federal court relating to your imprisonment?

( ) Yes        (√) No

b.  If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page.

Plaintiffs:

_____

Defendants:

_____

ii.    Court (if federal court, name District; if state court, name County:

_____

iii.    Docket number: _____

iv.    Name of Judge to whom case was assigned:

_____

v.    Disposition (dismissed? on appeal? still pending?)

_____

vi.    Approximate date of filing prior lawsuit:

_____

vii.    Approximate date of disposition:

_____

6.                                    **FACTS**

    Set forth the facts of your case which substantiate your claim of violation of your civil and/or Constitutional rights.  List the events in the order they happened, naming defendants involved, dates and places.

**Note: You must include allegations of wrongful conduct as to EACH and EVERY defendant in your complaint. (You may use additional sheets as necessary.)**

(A)  The PLAINTiFF complAiNS that At All times SiNce his ~~incarceration~~ INcARcERAtioN At coNcoRd PRisoN oN SeptembER 17, 2004, ANd duRiNg his iNcARcERAtioNS At CEdAR JuNctioN fRom JANuARy 2005 uNtiL SeptembER 2005; NoRfolk fRom SeptembER 2005 uNtiL DecembER 2005, ANd cuRReNtly At SouzA-BARANowski SiNce DecembER 2005 uNtiL PReSeNt, the defeNdANts, commiSSioNeR,

KAthleeN M. DeNNehy, Deputy CommiSSioNeR, JAmes R. BendeR, ASSiStANt Deputy CommiSSioNeR, Timothy HAll, ASSiStANt Deputy CommiSSioNeR, JohN MARShAll, ASSociAte CommiSSioNeR oF Re-eNtRy & ReiNteRgRAtioN



VERONICA M. MADDEN, ASSISTANT COMMISSIONER OF
ADMINISTRATION, RONALD T. DUVAL, DEPARTMENT
GRIEVANCE COORDINATOR, KRISTIE LADOUCEUR,
SUPERINTENDENT OF CONCORD PRISON, PETER PEPE,
DEPUTY SUPERINTENDENT FOR CLASSIFICATION OF
CONCORD PRISON, _____ ANDERSON, DIRECTOR AND
DEPUTY SUPERINTENDENT FOR CLASSIFICATION OF
CONCORD PRISON, KAREN DINARDO, C.O. OF CONCORD
PRISON _____ PARE, C.O. OF CONCORD PRISON, _____
DRAGONE, "UNKNOWN NAMED C.O. OF CONCORD PRISON,
SUPERINTENDENT OF CEDAR JUNCTION PRISON, DAVID
NOLAN, ACTING SUPERINTENDENT OF CEDAR
JUNCTION PRISON, JOHN MARSHALL, JR., DEPUTY
SUPERINTENDENT OF CEDAR JUNCTION, JOHN A.
LUONGO, JR., I.G.C. OF CEDAR JUNCTION PRISON,
C.O. II, DANIEL SULLIVAN, I.G.C. OF CEDAR
JUNCTION PRISON, ANN MARIE AUCION, C.O. OF
CEDAR JUNCTION PRISON, DARRIN C. PAYNE,
SUPERINTENDENT OF NORFOLK PRISON, LUIS SPENCER,
I.G.C. OF NORFOLK PRISON, C.O. II, KIMBERLY
KENNEY, SUPERINTENDENT OF SOUZA-BARANOWSKI
PRISON, LOIS RUSSO, AND ALL SUPERINTENDENTS
OF MASSACHUSETTS DOC PRISONS WHERE PLAINTIFF
MAY BE CONFINED, ARE, HAVE, AND WILL BE
DEPRIVING AND DENYING PLAINTIFF THE RIGHTS TO
SMOKE CIGARETTS AND TOBACCO PRODUCTS, ADEQUATE
FOOD, ADEQUATE CLOTHES, IDLE WORK PAY, RACIAL
DISCRIMINATED DOUBLE BUNKING, INMATE ORGANI-
ZATIONS THROUGH COMMUNITY SERVICE PROGRAMS,
FAMILY REUNION CONJUGAL VISITING PROGRAM,

-7-        (CONT. ON REVERSE SIDE)

discriminatory inmate grievance program, walkman cassette players to listen to religious cassette tapes, authorized pornographic magazines, discriminatory in-cell color T.V. program due to indigency, safe and secure prisons which caused plaintiff to be assaulted by another inmate, punished in S.M.U. rather than protected in a protected custody program, denied protective custody and assaulted by staff, pursuant to a pattern or practice of resistance to the full enjoyment of the rights and privileges in violation of the due process and equal protection clauses of the fourteenth amendment and the eighth amendment prohibition against cruel and unusual punishments, as well first amendment.

In doing so, that plaintiff states that all of the above named defendants under the supervision and control of the commissioner, Kathleen M. Dennehy, have employed and are knowingly enforcing an illegal punitive program policy to punish him as an inmate rather than rehabilitate. He states that the state has created his constitutional or statutory rights to be rehabilitated rather than punished by the defendants pursuant to the provisions of G.L. c. 124 sec. 1 (e) & (8) on the duties of the commissioner, Dennehy, to establish, maintain and administer programs of rehabilitation for all persons committed to correctional facilities, and G.L. c. 127 sec. 32 on the "Treatment of Prisoners" which directs all superintendents under the supervision of the

-8-

Commissioner, to treat prisoners with the kindness which their obediance, industry and good conduct merit. The purpose of G.L.C. 127 sec. 32, according to state court, is to ensure equal treatment for prisoners who are not being disciplined, including inmates held under protective custody. (Blaney v. Commissioner of Correction, 374 Mass. 337(1978) The plaintiff also cites the authority of Title 42 USCA sec. 1997a which prohibits state officials, employees or agents of the state from subjecting persons confined to an institution to egregious or flagrant conditions which deprive such persons of any rights, privileges or immunities secured or protected by the constitution or laws of the United States to cause such persons to suffer grievious harm pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges and immunities. These authorities forbid the defendants from depriving or denying plaintiff's rights to smoke cigaretts or tobacco products, adequate food and clothes, idle work pay, adequate housing by discriminatory double bunking, inmate organizations through community service programs, fair grievance program, walkman cassette players with cassette tapes, authorized pornographic magazines, in-cell color T.V. for all regardless to indigency, family reunion conjugal visiting programs and etc., for no other reasons than to punish the plaintiff because he was committed to the state department of corrections.

-9-    (cont. on reverse side)

MOREOVER, plaintiff states that WOLFF v. McDonnell, 418 U.S. 539, 571, N.19 (1974) (interpreted together with the above authorities and MASS. G.L.C. 127 sec. 32) "expanded the concept of a liberty interest for prisoners to include the right to be free of punishment without a prior adjudication of guilt." THE REASONINGS behind this are that prisoners are not to be punished in a prison system by CORRECTIONAL OFFICIALS solely because of their CONVICTIONS. INSTEAD, the CORRECTIONAL OFFICIALS have a duty to Rehabilitate and treat the prisoners with the kindness to which their obedience, industry and good conduct merits.

THEREFORE, the plaintiff states that because of the defendants punitive rather than Rehabilitive program policy, he has been deprived of particular rights and privileges pursuant to a pattern or practice ~~of this~~ of Resistance to the full enjoyment of such Rights and privileges which are secured or protected by the U.S. CONSTITUTION and laws of the state, and that such deprivations and denials have caused him to suffer grievious harms. The particular Rights and privileges which he has been deprived or denied by the defendants in violation of his due process and equal protection Rights under the fourteenth Amendment and his first and EIGHTH Amendment Rights are mentioned on pages 7-8-9 of this complaint and are set forth as follows on pages 11 to 38 of this complaint.

-10-

1. Smoking privilege of purchasing and receiving cigarettes and tobacco products. The plaintiff states that as an inmate of Massachusetts DOC, this smoking privilege was taken away from him and/or that he has been deprived of it as a form of punishment without due process of law because ▓▓▓ the defendants in-house ban on smoking could not be applied to preclude him from smoking 'outside' or in a designated area of the facility. He states that the current policy and proposals of most or all state and federal facilities in the United States permits inmates to smoke outside or in designated areas. For example: New York State DOCS. However, he states that the defendants have maintained a policy which completely prohibits him from smoking outside or in a designated area of the facility and that the policy is being maintained by the defendants for no other reason than to punish him. He also cites that fact that Massachusetts DOC is the only ▓▓▓ correctional system within the United States which has placed a complete ban on the inmates use of tobacco

-11-

( AMENDMENT TO PAGE 12 ON SMOKING ISSUE #1 )

Continued from Page 11 of complaint.

products, and that therefore, not only is he being punished without due process but he is also being discriminated against as a state inmate who is similarily situated with other state and federal inmates. Furthermore, he states that the defendants have refused to issue anti-smoking devises such as non-smoking patches, anti-smoking tablets, nicoderm and etc., to help curve the physiological affects of nicotine cravings, and that therefore, he's had to suffer from the physiological affects.  Additionally, the plaintiff states that he has a First Amendment Right to receive, possess and smoke tobacco products outside or in a designated area of Mass. DOC facilities in accord with his Religion of Five Percenters which practices and means that "they are Five Percent of the Muslims who believe in smoking and drinking and/or that they are Five Percent of the Muslim followers of Elijah Muhammad who believe in smoking and drinking" as cited in the files on the Five Percenters maintained by the U.S. Department of Justice, F.B.I.

11-A

(cont. on Reverse side)

11-B

F.O.I.A. SECTION AT 935 PENNSYLVANIA AVE., N.W., WASHINGTON, D.C. 20535. HE states that smoking tobacco products is part of the religious practices of the Five Percenters which has served to distinguish them from other groups and other Muslims and to attract members. THE FIVE PERCENTERS who are also known as the Nation of Gods and Earths, were recently recognized as a bona fide religion within New York State D.O.C.S. per decision and order of the U.S. District Court for the Southern District of New York in the case of MARRIA VS. BROADDUS, et. al. 97-CV-82097, through which the "PROTOCOLS FOR SINCERE ADHERENTS OF NATION OF GODS AND EARTHS RELIGIOUS PRACTICES", were established.

ALSO, UPON INFORMATION AND belief, he states that the Defendants Allow the "INDIAN INMATES" to smoke outside or in a designated area of MASS. DOC facilities during their religious ceremonies, but have refused to recognize his first amendment right to smoke as well.

THE END OF STATEMENT OF FACTS ON ISSUE #1, AS AMENDED

11-B SWORN TO UNDER PENALTY OF PERJURY: 12-8-05

11-C

ON September 30, 2005, while iNCARCERAtED At
NORFOLK PRISON, I filed A gRievANCe # ███ 135/6
with Supplemental AppeAL ARGuMENTS to be Allowed
to exeRCiSe my fiRSt AmendmeNt Right to Smoke
CigARettes ANd/OR tObACCO PROducts iN ACCORd
with my ReligioN of the 5%eRS GOOdS ANd EARthS.
ON December 7, 2005, GRieVANCe COORdiNAtOR
Kimberly KeNNey deNied my Request.
She AlSO deNied my Request foR ANti-SmokiNg
tReAtment to help CuRVe the physiologicAl
Affects of NiCOtiNe CRAViNgS which CONSiSt of
ShAKiNg, NeRVOuSNeSS, bluRRy ViSiON, ANd
ANXiety ANd AlSO iNCReASed Appetite.
I AppeAled her deciSiONS to the SupeRiNteNdeNt
LuiS SpeNCeR, who oN 12-28-05, deNied the
gRievANCe ANd ReligiOuS Request. At thAt time
the gRievANCe beCAme SubJect to ReView by KRiStie
LAdouCeuR ANd COmmiSSiONeR DeNNehy, both of
whom hAve AlSO deNied my RequestS iN the
gRievANCe.  ON febRuARy 2006 I filed A
ReligiOuS Request fORm to exeRCiSe my
fiRSt AmendmeNt Right AS A fiVe PeRCeNteR
to Smoke CigARettes ANd/OR tObACCO PROducts
At SouzA BARANOwSKi PRISON.  I explAiNed
the ReligiOuS SmokiNg PRActice iN the Request
ANd thAt it ShOuld be ObSeRVed ON my HolydAyS

11-C         (CONt. ON ReVeRSe Side)

11-D

which in accord with the practice of Supreme mathematics, is everday. I submitted the request form to Superintendent Lois Russo through her director of treatment. The Superintendent has denied my religious request and fowarded her recommendation to the Religious Services Review Committee which consist of either Assistant Deputy Commissioners, Timothy Hall, John Marshall, Ronald T. Duval or Veronica M. Madden. They in turn have also denied or affirmed the Superintendent Russo's decision on the Religious Services Request Form.

11-D

2. INADEQUATE FOOD. The plaintiff complains that the meals served to him at Concord facility and Cedar Junction facility, which were approved by the Commissioner, Deputy Commissioner, Superintendent Pepe and Superintendent Dolan, as the same foods being served throughout Massachusetts DOC, does not meet the minimum requirements of Public Health law which requires a daily minimum of a 2000 calorie diet. He also states that the

meals lack in quality foods and does not contain a variety of nutricious foods. For examples: The breakfast never includes butter and jelly and are repetative because they consist of five types of breakfasts for seven days a week, which are: ① two pancakes with syrup, milk, juice and coffee; ② dry unsweetened cereal with small cake, milk, juice and coffee; ③ oatmeal with small thomas english muffin, milk, juice and coffee; ④ cold grits with small thomas english muffin, milk, juice and coffee, and ⑤ small dish of eggs with thomas english muffin, milk, juice and coffee. Usually, it is the oatmeal that is repeated during the seven days from amongst the five breakfast meals. The lunch and dinner are also repetative, consisting always of ▓▓▓ inexpensive foods such as white rice, macaroni, and white potatoe and carrots which are prepared and served in an appauling manner to ▓ appear as though they've been spit in or tampered with. Meals which are suppose to include two beef burgers, only includes one. Only one piece of veal or one chicken patty per meal. So, in addition to being inexpensive,

AND APPAULING, the INMATE CLAIMS that his MEALS ARE 'RATIONED' which is A PUNITIVE PROCEDURE USED by other STATE PRISONS to PUNISH AN INMATE AS A disciplINARY PENALTY FROM A disciplINARY HEARING. FOR EXAMPLE: "NEW YORK STATE DOCS USES it iN its Special Housing Unit At GREAT MEADOWS." But only for several days At A time. However, iN MASSACHUSETTS DOCS, the plaintiff complaiNs that the defendants have approved and directed that he be served 'RATIONED' MEALS while in the GENERAL POPULATION AS A form of puNishment without ANy due process HEARiNG. He Also States that the tax payers which included himself, provided money for him to Receive Adequate food And that this money is going unaccounted for AS A Result of the defendants punitive policy program which has imposed extreme sanctions without due process, on the AMount of foods he Receives. AS A Result he States that he has suffered the effects of NUTRITIONAL deficiency Such AS DRY SKIN, brittle bones, CRAMPS, NUMBNESS

-14-

(AMENDMENT TO PAGE 15 ON INADEQUATE FOOD ISSUE #2)
continued from page 14 of complaint.

in limbs, pulled muscles, weight loss and
crawling empty stomach. He states that
the defendants have resisted his requests
for an extra tray or extra meal, supplemental
multiple vitamins which he could not afford,
and compliance with the Public Health law
to improve the meals by a daily minimum
of 2000 calories of a variety of quality
foods. At Norfolk Prison, in accord
with the Commissioner and other defendants,
including Superintendent, Luis Spencer,
punitive program policy to punish inmates
rather than rehabilitate them, the meals
approved by the defendants are the same
as those being served throughout Mass.
DOC facilities. Not only do they fail to
meet the minimum daily requirements
of 2000 calories, but as noted by
Superintendent, David Nolan, in his
final decision on Grievance #11434, the
'average' daily caloric intake required
is 2,775 calories. Therefore, the meals
approved by the defendants do not

14-A  (cont. on reverse side)

provide the plaintiff with sufficient nor adequate food. The BREAKFAST, LUNCH and DINNERS at NORFOLK PRISON, AS at all other MASS. DOC facilities MANAGED by the defendants, are Repetative. They carry the same or similar inexpensive meals as those set forth on page 13 of the complaint. Appauling meals are still served which appear as though they've been tampered with or spit in. When meals appear that way, there's a possibility that they have been tampered with or spit in, or that they could be, because you cant tell the difference. The meals are still punitively rationed to consist of one burger instead of two; one fish patty instead of two, and one of every sandwich type meat, fish or poultry. Only two hot dogs when dieticians elsewhere recommend three hot dogs. Also, there are no food dressings served with the meals such as mayonaise, tarta sauce, relish, chili, onions, peppers and etc. There are never any jelly served with the BREAKFAST which consist of five types. There are no

14-B

deserts such as cakes, cupcakes, muffins, pies and etc., ever served with lunches and dinners. Also, in the special management and administrative segregation units, the meats are rarely ever hot.

In addition to refusing to improve the meals, the defendants have also refused to provide holiday meals for New Year's Day; Martin Luther King Jr.'s Birthday; President's Day; Easter Sunday; Evacuation Day; Patriot's Day; Memorial Day; Bunker Hill Day (Suffolk County); Independence Day; Labor Day; Columbus Day; and Veteran's Day, as complained of by the plaintiff in Norfolk's Grievance #13886. The defendants current policy of punishing inmates, limits their facilities to providing only Thanksgiving and Christmas holiday meals.

THE END OF STATEMENT OF FACTS
ON ISSUE # 2, AS AMENDED

SWORN TO UNDER PENALTY OF PERJURY: 12-8-05

15(a) amendments continued on reverse side.

14-C

On June 23, 2005, plaintiff filed an inmate grievance at MCI-Cedar Junction, Grievance Number 11434, complaining that he was being denied the daily minimum 2000 calorie diet and citing injuries related to nutritional deficiency. Grievance Coordinator Daniel Sullivan denied plaintiff's grievance and the relieve sought that prison comply with the Public Health law of at least minimum 2000 calorie diet. Sullivan denied grievance on July 7, 2005, and plaintiff appealed to Supt. David Nolan on July 11 and Nolan denied grievance which sought compliance with Public Health law of 2000 calories or an extra meal. He denied the grievance appeal on July 28, 2005, at which time it became subject to automatic review at any time by Commissioner Dennehy and LaDouceur, both of whom affirmed Nolan's decision on October 19, 2005, and thereby also denied plaintiff the relief sought. Furthermore, on 10-16-05, plaintiff while at Norfolk Prison filed a grievance #13886 for Holiday Meals indicating that the 103 CMR 760 may be interpreted to allow prison to prepare Holiday meals and if not, that prison should accept food donations from outside sponsors for the Holiday meals. Grievance Coordinator Kimberly Kenney denied plaintiff's grievance requests on 12-16-05. Plaintiff appealed to Supt. Spencer who also denied relief on 12-28-05 at which time it became subject to review by LaDouceur and Dennehy who also affirmed Spencer's decision and denied plaintiff the relief. Supt. Lois Russo at Souza Baranowski also serves the insufficient meals.        14-D

3. INADEQUATE CLOTHES: The plaintiff complains that the defendants are not providing him with adequate clothing such as "pants with pockets and zippers, button-up shirts with collars (long and short sleeves), brief underware, formal dress shirts, sweatshirt, ski-coat and boot-shoes, which are suppose to instill a sense of self-worth, self-esteem and dignity with an eye towards rehabilitation as well as protect his body from the cold and inclement north-eastern weather. He states that the style of clothing that the defendants approved and given him to wear, are issued by other state and federal facilities to

-15-

(cont. on reverse side)

inmates in punitive segregation units, and that therefore, the clothing is punitive in nature and designed to punish him without due process of law.  Such clothing which he complains of consist of a "short sleeve v-neck shirt with no buttons and large D.O.C. letters on the back. Pants with no pockets nor zippers, boxer underware, T-shirts, socks, blue cloth loafers, wool knit cap and blue denim jacket.  The plaintiff states that not only are the clothing undignified and designed to humiliate and punish him, but they do not protect his body from the cold and inclement north-eastern weather.  For examples: He states that during the long winter months which in the north-east, includes the fall and spring seasons, when it rain, hails and snows, he could not button up the short sleeve shirt and that the blue denim jacket becomes easily soaked and wet and does not protect him from the cold and that he is not issued any thermal underware.  The blue cloth loafers also become soak and wet and do not protect his feet from the cold, snow, ice and pouring rain.  While at Concord facility, he states he had to walk back and forth to the mess hall; the health

SERVICES UNIT, LIBRARY, GYM, YARD AND other places which REQUIRED him to exit the housing UNIT, AND that he became SUBJECT to the common cold, flue, pNemoNiA AND that his body SUFFERED fRom the ● cold, wet AND iNclement weatheR.
HE ALSo State that the PANTS PoSe A health RiSk AND ARe undigNiFied because inmates oftentimes hold their geNiTAls because they have No pockets AND cAN exchANge Such geRmS Such AS geNiTAl heRpeS, lice AND etc., duRiNg handshakes AND oN objects Such AS tableS, SeatS AND etc.
HE ALSo complAiNS that the lAck of 'bRieF' undeRWARe cAN cAuSe testicle iNjuRieS Such AS cANceR AND SwelliNg because the testicles go unsuppoRted foR A long teRm. This poteNTiAl health RiSk iN males ARe RecogNized by phySiciANS who RecommeNd Male Athletes to weAR jock STRAPS.
TheRefore, he State that brief undeRWARe ARe RequiRed foR his health AS A male.
The plaiNtiff StateS that the defeNdANts have ReSiSted his RequestS to pRovide him with Adequate clothiNg AND that the tAx payeRS, which iNcluded himSelf, pRovided money FoR ■■ Adequate clothiNg which iS Not beiNg uSed foR that puRpoSe.
FuRtheRmoRe, he StateS that MASSAchuSetts DepARtmeNt oF CoRRectioNS iS the oNly coRRectioNAl

-17-

(CoNt. oN ReveRSe Side)

system within the United States, who provides punitive and inadequate clothing to its state inmates. While at Norfolk Prison on 9-30-05, plaintiff filed a grievance #13514 on these clothing issues which was denied by Kimberly Kenney on 12-7-05 and appealed to Supt. Spencer who also denied the relief sought in grievance on 1-5-06 at which time it became subject to review by Dennehy and Ladouceur who also denied plaintiff's requests.

4. Idle Pay.                           The plaintiff states that since his imprisonment on September 17, 2004, he has been indigent and unable to work because the defendants are not providing him with work programs. He complains that as a result, he is entitled to idle pay, and that the idle pay is a percentage or portion of the money provided by the tax payers, which included himself, towards each inmate's work and vocational programs. He states that when the inmate is unable to work, a percentage or portion of that general support money, must be allocated to him, but that he has not been receiving his and neither have the defendants set up an inmate account for that purpose. He states that it is the defendants policy not to pay him idle pay to which he is entitled, and that the defendants have resisted their obligations to pay the money to him. He states that other state and federal inmates receive idle pay. For example: New York DOCS.

The Plaintiff states that on June 21, 2005, while at Cedar Junction he filed a Grievance #11331 requesting Idle Pay and Grievance Coordinator Daniel Sullivan denied him on July 8, 2005. On July 11, 2005, Plaintiff appealed to Supt. Nolan who on July 28, 2005, also denied him Idle Pay. Upon Review on 10-19-05, Ladouceur and Dennehy also denied him Idle Pay.

5. DOUBLE BUNKING. The plaintiff states that the defendants have approved and maintained an illegal double bunking system through which he has been or will be subjected to double bunking within Massachusetts DOC, and that such double bunking was and is illegal because while at Concord facility, it deprived him of his own personal privacy, adequate space, and subjected him to a health risk of exposure to germs and diseases from another inmate with whom he had to breath the same air and share the sink and toilet with. He states that double bunking has been outlawed and condemned as violative of the eighth amendment prohibition against cruel and unusual punishments, in all state and federal facilities, ▬ and that therefore, the defendants policy which caused or will cause him to be double bunked, violated his eighth amendment right to be free from cruel and unusual punishments. Furthermore, he complains that he was subjected to a discriminatory policy and practice while at Concord facility between September 2004 and January 2005, which was also approved and directed by the defendants at Concord and

-19-

(cont. on Reverse Side)

FN. THE DETAILS OF THE DOUBLE BUNKING COVERS All STATE
FACILITIES INCLUDING SPENCER'S AT NORFOLK.

IN All MASSACHUSETTS DOC FACILITIES WHERE
double bunking EXIST. THE DEFENDANT PETER
PEPE WAS the SUPERINTENDENT At CONCORD
FACILITY WHO ALSO implemented the discriminAtory
double bunking policy AND PRACTICE UNDER the
direction AND Authority OF the Commissioner,
DENNEHY, DEPUTY Commissioner, BENDER AND
other defendants listed. IN doing so, the
plaintiff claims that he WAS double bunked
with ONLY 'black inmates of his RACE', AND
thAt 'white inmates were ONLY double bunked
with whites; hispanics with hispanics,
ASIANS with ASIANS, INDIANS with INDIANS,
AND etc. ON Oct.16,2005, while At NORFOLK PRISON, the
plaintiff Filed grievAnce #13896 RegArding this issue. ON 12-8-05,
the Relief sought in the GRievAnce WAS denied by GRievAnce Coordinator,
Kimberly KENNEY, who denied that RACIAL segregation in DOC double bunking
process promotes RACIAL violence AND hAtred Amongst inmates AFFecting plaintiff.
SPENCER denied Appeal ON ~ 12-28-05 At which time it WAS Reviewed by LAbAirew
? DenNehy

6. INMATE ORGANIZATIONS. The inmate
complains that the defendants have Refused
to Allow him the privilege OR First Amendment
Right OF ASSOCIATION with other inmates AS
AN INMATE ORGANIZATION called the "N.A.A.C.P."
HE STATES that he is AN AFRICAN-AMERICAN
black PERSON AND that the N.A.A.C.P. provides
CHARTERS, Constitution AND by-lAWS to AFRICAN
AMERICAN inmates to set up AND operAte
the N.A.A.C.P. ORGANIZATION within STATE AND

Plaintiff was denied the right to be approved for N.A.A.C.P. program by gender and Dennehy in their Jan, 19, 2005, Reply that inmates cannot represent. Plaintiff also states he was denied because he is black and N.A.A.C.P. is an African-American black organization.

Plaintiff states he has the right to be approved for this program under 103 CMR 485

→ federal correctional facilities throughout the United States.    He states that the defendants have deprived him of this privilege and denied him this right of association as an inmate organization called the N.A.A.C.P., while other state and federal inmates are being allowed. FOR EXAMPLE: New York State DOC.

He also states he is being denied because he is African-American(black) and N.A.A.C.P. is black organization

Furthermore, he states that he has been denied this right and deprived of this privilege because the defendants have implemented an illegal punitive program policy directed towards the punishment of inmates rather than rehabilitation. ON 10-16-05 while at Norfolk prison plaintiff filed grievance#13887 for N.A.A.C.P. organization and was denied by grievance coordinator Kimberly Kenney on 12-7-05. He appealed to Supt. Spencer who also denied him on 12-28-05 at which time grievance was reviewed and denied by LaDouceur and Dennehy despite 103 CMR 485 authorizing program.

7.    INMATE LIASON COMMITTEE. The inmate complains that the defendants have refused to allow him the privilege or first amendment right of association with other inmates as an INMATE LIASON Committee. The INMATE LIASON Committee is a program directed towards reducing misunderstandings and promoting better relations between the inmates and the administration through an interaction which explains to each the problems and concerns of the other.

-21-            (cont. on reverse side)

Plaintiff states that he has a right under 103 CMR 485 to form, request and be approved for this program but that Kenney, Spencer, Laboureur, Dennehy and Bender have denied him on Jan. 19, 2005, reply letter and again on 12-7-05 and 12-28-05 Grievance #13883 decisions.

The Inmate Liason Committee (ILC) proposed by the plaintiff is the same as that being utilized by inmates within New York State DOCS. The plaintiff states that the defendants are depriving him of this privilege and denying him this right because of their illegal punitive program policy which punishes inmates rather than rehabilitate them, and that he is being discriminated against because other state and federal inmates are allowed this privilege or right while the defendants of Massachusetts DOCS are denying and depriving him. On 9-30-05 while at Norfolk Prison plaintiff filed grievance # ████ 13883 on this claim and was denied on 12-7-05 by Kimberly Kenney. He appealed and was denied by Supt. Spencer on 12-28-05, at which time it was also denied by Laboureur and Dennehy.

8.  INMATE GRIEVANCE PROGRAM

The inmate complains that the defendants have refused to allow meaningful review and decisions on his inmate grievances by not allowing inmates to participate in the review and decision making process and by not having a 'Master Index' of recorded prior decisions upon which to base the grievance decisions. He states that the defendants denial violates his First Amendment Rights of Association and to effectively petition them for redress of grievances as

-22-

Well as his fourteenth amendment right to
due process of the law. He states that his
inmate grievances are not
thouroughly investigated, and he is not
afforded a hearing with an impartial
tribunal which includes his peers of
elected inmates from the general inmate
population, and that the facility's staff
coordinator cannot make an informed
decision because he does not have a
master index of prior decisions. The
master index tells what the rulings
are on a particular subject matter.
He also states that it violates his equal
protection rights since the coordinator
could have granted a right or privilege
to one inmate while denying him the same
right or privilege. The right or privilege
to have inmates participate in the inmate
grievance program and for meaning review
and decisions through a master index system,
are contained in the plaintiff's proposal
to have the same inmate grievance program
which is utilized by inmates and staff
within New York State Docs.

-23-        (cont. on reverse side)

This request was denied by the defendants while other state and federal inmates are being allowed. Therefore, the plaintiff states that not only is he being discriminated against, but the defendants have denied him these rights and deprived him of this privilege because of their illegal punitive program policy directed towards the punishment of inmates rather than rehabilitation. On 7-18-05 Ann Marie Aucion denied plaintiff's grievance on this claim at Cedar Junction, grievance #11823. On 8-11-05, Nolan affirmed the denial at which time it became subject to review by Ladoucer and Dennehy who also denied it on 8-11-05.

9. FAMILY REUNION PROGRAM.

The plaintiff states that the defendants have denied his request to implement a "family reunion program" consisting of conjugal visits and free state sponsored bus rides for relatives and friends to visit him. He states that the current policy discourages visits from them because the visitation schedule does not provide enough time per visit and are not frequent enough. He states that he is being denied the "family reunion program" while other state and federal inmates are being allowed. For example: New York State DOCS.

-24-

DENNEHY AND BENDER ALLOW LIBERAL VISITATION PROGRAMS AT SOME FACILITIES BUT NOT AT THE ONES I AM OR HAVE BEEN INCARCERATED. THEREFORE, I AM BEING DISCRIMINATED AGAINST. THE DENIAL OF CONJUGAL VISITS HAS A SEVERE IMPACT ON MY PERSONALITY STRUCTURE AND INFLICTS CONSIDERABLE PSYCHOLOGICAL AND PHYSICAL PAIN. IT ALSO INHIBITS AN EXPRESSION OF ALL THE INTIMATE AND PRIVATE COMMUNICATION NECESSARY BETWEEN GOD AND EARTH OR HUSBAND AND WIFE AND VIOLATES MY RELIGION AS AS I FIVE PERCENTER GOD AND EARTH.

HE ALSO PROPOSED THAT THE "FAMILY REUNIOUN PROGRAM" BE THE SAME AS THAT UTILIZED BY INMATES WITHIN NEW YORK STATE DOCS WHICH ALLOWS INMATES CONJUGAL VISITS WITH THEIR FAMILY AND RELATIVES, AND FREE STATE SPONSORED BUS RIDES FOR RELATIVES AND FRIENDS TO VISIT HIM. HE FURTHER STATES THAT THE REASONS THE DEFENDANTS ARE DENYING HIM IS BECAUSE OF THEIR ILLEGAL PUNITIVE PROGRAM POLICY TOWARDS INMATES TO PUNISH THEM RATHER THAN REHABILITATE.

Supt. RUSSO AND DEPUTY COMMISSIONERS HALL, MARSHALL, DUVAL AND MADDEN WILL NOT APPROVE HIS RELIGIOUS REQUEST BECAUSE DENNEHY, BENDER, LADOUCEUR, KENNEY AND SPENCER HAVE DENIED HIM CONJUGAL VISITING. THE DEPUTY COMMISSIONERS ARE ON THE RELIGIOUS SERVICES REVIEW COMMITTEE.

DENNEHY AND BENDER DENIED ME CONJUGAL VISITS ON 1-19-05 IN A REPLY LETTER AND KENNEY, SPENCER, LADOUCEUR AND DENNEHY DENIED MY GRIEVANCES FOR CONJUGAL VISITS ON 12-8-05 AND 1-5-06 IN VIOLATION OF 8th AMENDMENT AND THE FREE EXERCISE CLAUSE OF 5%er GOD AND EARTH AND IN VIOLATION MY RIGHT TO PRIVACY AND DUE PROCESS.

10. MUSIC BY MAIL. THE PLAINTIFF STATES THAT THE DEFENDANTS DEPRIVED HIM OF THE PRIVILEGE OR RIGHT TO PURCHASE AND RECEIVE WALKMAN CASSETT PLAYERS WITH CASSETT TAPES THROUGH THE 'MUSIC BY MAIL' PROGRAM WHICH SERVES INMATES IN ALL OTHER STATE AND FEDERAL FACILITIES, AND THAT THEREFORE, HE'S BEING DISCRIMINATED AGAINST. HE COMPLAINS THAT HE IS UNABLE TO LISTEN TO THE MOST RECENT OR NEW RELEASED MUSIC FROM RECORDING ARTISTS AND THAT HIS FIRST AMENDMENT RIGHT OF ACCESS TO MEDIA MATERIALS OR FREE SPEECH IS BEING

-25-

(CONT. ON REVERSE SIDE)

Plaintiff's Religious Beliefs because Bender and Dennehy has denied him cassette players.
Plaintiff also states he has a First Amendment Right to exercise his
Religion by being allowed to listen to the FIVE PERCENTER Religious music
on cassette tapes as a member of the FIVE PERCENTERS Gods and Earths.

violated by the inability to Receive speeches,
lectures and other political and educational
materials which are recorded on cassetts.
He further states that the defendants have
no legitimate reasons for denying him the
music by mail program other than to
punish him without due process as part
of their illegal punitive program policy. Plaintiff
was denied the Right to Walkman cassette player and tapes on Jan. 19, 2005,
Reply From Bender and Dennehy. He also filed a Grievance # 1087# which was
denied by Daniel Sullivan, Supt. Nolan, Ladouceur and Dennehy on 8-3-05 and 9-26-05

## II. ACCESS TO PORNOGRAPHIC MATERIALS.

The plaintiff states that the defendants
current policy (103 CMR 481) deprives him
of access to pornographic materials such
as 'PLAYBOY', 'Penthouse' and 'PLAYERS'
magazines, while inmates in all other
state and federal facilities are allowed
to subscribe and Receive them, and that
therefore, the defendants are discriminating
against him. He also claims a First
Amendment Right of access to media or free
speech with Respect to the pornographic
materials, and that the defendants have no
legitimate reasons for denying and depriving
him of access to the materials other than to
punish him without due process of law under
their illegal punitive program policy.

Furthermore, plaintiff states that the 103 CMR 481.15(2)(g) is written to allow him to receive the PLAYBOY, PENTHOUSE, PLAYERS and HUSTLER magazines because the nature and content of the magazines do not pose a threat to the security, good order or discipline of the institutions.

12. IN-CELL COLOR T.V.: The plaintiff states that he is being deprived of the privilege of having a color T.V. in his cell and/or of the privilege of watching one, due to his poverty of being unable to afford one, while other inmates who can afford the T.V. are being allowed, and that therefore, the defendants in-cell T.V. policy in effect at Cedar Junction and other Massachusetts DOC facilities, discriminates against him. He states that if there was no in-cell T.V. program, that Mass. DOC have in the past and would in the present, provide a T.V. on the units to be watched by all inmates during their recreation time. He states that the defendants in-cell T.V. program disenfranchises the poor inmates such as himself, of the privilege of watching a T.V. He states that as a remedy to disenfranchising the poor, the defendants should provide an in-cell free color T.V. to every inmate. He further complains that the defendants would not allow him to receive a color T.V. from charitable community organizations.

-27-

(cont. on reverse side)

He states that this discrimination and deprivation is also a part of the defendants illegal punitive program policy to punish inmates without due process rather than Rehabilitate them. Plaintiff states he is a member of an indigent class of inmates and that on 7-8-05 Grievance Coordinator Daniel Sullivan denied his Grievance #11331 on these claims. He appealed to Supt. Nolan who also denied the Grievance on 7-28-05 and that LaDoucceur and Dennehy denied him on 10-19-05.

13. PROTECTIVE CUSTODY PROGRAM.

The plaintiff states that the defendants do not have a protective custody program for their state inmates who need or Request protection, and that when he applied for admission into such a program while at Cedar Junction prison between January and may 2005, he was not admitted because the defendants do not have one. He states that the defendants are required to have a protective custody program within mass. DOC and that every other state and federal facility has one. For example. New York State DOC at Clinton Dannemora facility. The plaintiff states that as a result of not having a protective custody program, the defendants have approved and directed that inmates who request

-28-

protection, be placed in punitive Administrative segregation units where they are punished and exposed to a greater risk of harm, rather than protected. He further states that in response to his requests, he was placed in the punitive administrative segregation unit of 10 Block at Cedar Junction on or about June 1, 2005. He did, however, sign-off from his need for protection but claims that his placement in the punitive segregation unit constituted a failure to protect, and that if the need for protection arise in the future, he would not be adequately protected within MASS. DOC but instead, punished and put in a greater risk of harm because the defendants do not have a required protective custody program for state inmates in their custody. Furthermore, he states that when placed in the punitive administrative segregation unit as a protective custody inmate, he was subject to the same penalties and restrictions as the inmates who were placed in there for disciplinary reasons. He further states that the defendants do not have a protective custody program because of their illegal punitive program policy to punish inmates rather than rehabilitate.

-29-    (cont. on reverse side)

14. SAFE AND SECURE PRISONS. The plaintiff states that the MASS. DOC PRISONS in which he has been confined (Concord), and is currently confined (Cedar Junction) and to which he is likely to be confined, are not safe nor secure because the defendants policies on prison operations and treatment of inmates, promotes racial and gang violence amongst inmates which threatens his safety, security, well-being and has caused him serious physical injuries to his head, fractured nose and stitches from a cut in his face. The plaintiff cites 4 policies of the defendants which has left him without safety and security. First, he states that because the defendants policy does not regulate a seat-by-line formation in the prisons mess halls which requires each seat at the tables to be filled consecutively as each inmate enters the mess hall and leaves the food line, inmates are allowed to group at the tables by race, gang and other illegal affiliations for the purpose of excluding other inmates such as himself from eating in the mess hall by use of threats, intimidations and assaults, and that on several days between July 27, 2005 and Aug. 10, 2005, the inmates did that to him. Secondly, the defendants policy employed by Superintendent David Nolan and prison officials at Cedar Junction, does not provide security officers in the prison yard and along the walkways during recreation as well as no recreation equipment. As a result, the plaintiff was assaulted on the walkway on July 28, 2005, and received the above physical injuries. Thirdly, the defendants policy on the penalty for inmate assaults on other inmates and inmate fights, are so minimum or non-existent that it encourages inmate assaults on each other, and that as a result he was assaulted on July 28, 2005, and is in continual fear, threat and risk of assaults. The current policy imposes a couple of days or less of AA lock-in cell for assaulting another inmate or initiating a fight with another inmate, while the inmate who is the victim of the assault or fight, such as the plaintiff, suffers lock-in status for a long period of time for his own protection. Fourthly, the defendants policy of depriving inmates including plaintiff of the above rights, privileges and programs which are needed for rehabilitative purposes, does not provide incentatives or rewards for good behavior and encourages misbehavior. The plaintiff filed grievances on these policies which were either denied or fowarded to Commissioner Dennehy at Internal Affairs and her I.G.R. Christian DaLucia.

Page 29½ - continued on #14: SAFE AND SECURE PRISONS:

On August 12, 2005, plaintiff filed grievance number 12502, complaining that Superintendent Nolan and Deputy Superintendent John A. Luongo, Jr., were encouraging racial and gang violence which threatened his safety and well being and caused him serious physical injuries by failing to enforce a seat-by-line seating arrangements in the prison's mess hall. He also complained that Nolan and Luongo failed to provide security along the walkways during recreation on July 28, 2005, and that as a result he was assaulted by another inmate. Correction officer Darrin C. Payne was assigned to the recreation yard on July 28, 2005, but did not perform his duty and remained inside of the prison's East wing building in anticipation of the assault against the plaintiff on July 28, 2005. Luongo was the Deputy of Security. On Aug. 19, 2005, grievance coordinator referred plaintiff's grievance to Investigative Services and on Oct. 31, 2005, Acting Superintendent John Marshall, Jr., refused to sustain the allegations in the grievances. Also on ~~████~~ April 3, 2006, he made another decision refusing to sustain the allegations and sustaining the prison policies.

29½ - A

(Amendment to Page 29 beginning at the end of
Statement of facts on Page 29 on Protective
Custody issue #13 )

15. Additionally, plaintiff states that while at Cedar
Junction Prison after signing off from Protective
Custody in the Administrative Segregation Unit
in 10 Block, because he was being punished
rather than protected, he was approached by
an inmate on July 28, 2005, one-day after being
assigned to General population, on the walkway
returning from the Yard Recreation area, and
told to get out of general population or he
would be assaulted or killed; at which time,
he was assaulted by the inmate, and sustained
serious head injuries; a fractured nose, and a
laceration or cut to the Right side of his face,
which Required emergency treatment in a
hospital, where he Received stitches on the
cut in his face. After the assault, the plaintiff
was continually threatened by inmates in the
general population and was Required to be
Re-admitted to protective custody status in
Cedar Junction's Administrative Segregation
units 10 & 9, where he is punished Rather than
protected and subjected to continual threats
and stigmatizations from other inmates.
The plaintiff filed Grievance Numbers 12310;
12502 and 12574 at Cedar Junction involving
the assault, threats, stigmatizations, which
he suffered as the Result of the defendants
lack of a bona fide state protective custody

29-B          (cont. on Reverse side)

29-C

PROGRAM to protect him RATHER than punish him. The plaintiff has since been housed-out At NORFOLK PRISON AS A CEDAR JUNCTION BOARDER under Protective Custody Status in A Special MANAGEMENT UNIT, where he has complained by GRIEVANCE #13512, of being punished RATHER than protected AS A Protected Custody INMATE, by the deprivations AND RESTRICTIONS ON his Rights AND privileges to A T.V. AND Radio in his cell; general canteen items; telephone; use of RECREATION equipment, contact visits, AND etc., because of the defendants failure to implement A bona fide state protective custody PROGRAM to which he could be Assigned.

Furthermore, the plaintiff complains that the Restrictions contained in the Special MANAGEMENT UNIT (S.M.U.) Booklet for inmates under Disciplinary Sanctions At NORFOLK PRISON, were Applied to him by Superintendent Luis Spencer, who Approved And implemented the Rules AND Regulations contained in the Booklet, AND denied plaintiff's GRIEVANCE #13512, for Relief from the Restrictions. He states that the Restrictions contained in Superintendent's Spencer's S.M.U. Booklet should not Apply to him because he is under Protective Custody Status, And that their Application violates his due process And equal protection Rights under the fourteenth Amendment And his eighth Amendment Right to be free from cruel And unusual punishments.

29-C

( THE END OF STATEMENT OF FACTS
ON ISSUE #13, AS Amended by Adding
to page 29 )

SWORN TO UNDER PENALTY OF PERJURY: 12-8-05

29-D

Page 29 3/4

## FACTS, cont.:

16. The plaintiff states that all of the above named defendants, including the superintendents, are senior staff members of Massachusetts D.O.C., whose duties include, but are not limited to authorizing, approving, and directing the management and operations of the facilities and the rules and regulations for inmates therein; management of the inmates and their classifications; programs, including food, clothing, cell-housing, education, health services, recreation, leisure activities, reentry, reintergration and etc., pursuant to the statutory authority conferred under M.G.L. chpt. 124 sec.10; M.G.L. chpt. 124 sec. 1, and M.G.L. chpt. 127 sec. 88-90, through which such programs and policies complained of by the plaintiff, are promulgated and implemented by them in the 103 CMR and through the facility operations manuals, codes, rules, regulations, and decisions on the plaintiff's grievances and written complaints. Moreover, the defendants punitive program policy to punish inmates, including the plaintiff, by the deprivation of the rights and privileges complained of in this complaint pursuant to a pattern or practice of resistance to the full enjoyment of the rights and privileges, is contrary to the state's laws governing rehabilitation of inmates. The following decisions on

29 3/4 - D    (cont. on reverse side)

plaintiff's written complaints and grievances which deprives and denies him the aforementioned rights and privileges, are because of the defendants punitive program policy; the application of which violates his due process and equal protection rights under the fourteenth amendment and his eighth amendment right to be free from cruel and unusual punishments as well as particular first amendment rights. The plaintiff's grievances were and are reviewed and denied by the defendants through their Department Grievance Coordinator, Kristie Ladouceur. (Ann. Laws of Mass. Chpt. 124 sec. 1G)

SWORN TO UNDER PENALTY OF PERJURY:

12-8-05

29 3/4 — D

29-E

17. DENIED PROTECTIVE CUSTODY AND ASSAULTED BY STAFF.

Plaintiff states that on December 19, 2004, he was discriminatorily double bunked by RACE on the J-2 unit at Concord Prison. During the morning hours between 9-11 A.M. on that day, he packed up all of his belongings and brought them out of the cell and went to C.O. Pare at the officers desk and requested that officer Pare have him escorted off of the unit to be placed in protective custody. He requested protective custody because of the nature of his conviction charges and because of police involvement in the community and because he had been in protective custody at the Berkshire County Jail and may be recognized and harmed by inmates. J-2 was a Reception unit. Officer Pare first told him to wait a moment and plaintiff sit at one of the tables on the Recreation floor with his property as all other inmates locked in. Officer Pare then told him to take all of his property and go back to the double bunked cell. Plaintiff indicated to officer Pare that because his life may be in danger he needed to be escorted off of the unit and was afraid to return to the cell. Officer Pare then got up from

29-E                    (cont. on reverse side)

29-F

behind his desk, walked over to the plaintiff, and without asking plaintiff to stand-up turn around and be handcuffed, he grabbed at plaintiff's property and then simultaneously forced plaintiff to the floor in a head lock and commenced to strangle plaintiff in the head lock. While doing so, ~~the~~ the other C.O. who was assigned to work the unit ~~████~~ (whose name will be in Discovery) with Pare, joined in the assault and began punching plaintiff in the head, face, back and stumped and slammed the left side of plaintiff's head into the floor ● breaking the stem of ~~████~~ plaintiff's eye-glasses into his left-eye, causing serious injuries to his eye, face, head, neck and back. C.O. Pare continued to strangle or choke the plaintiff breathless with all his might and strength. While doing so and while still being beaten by the unknown named C.O., three to four officers came onto the unit and an officer later identified as "Washington" told Pare and the other C.O. to stop and to get off of me. Amongst the 3 to 4 officers who came on the unit was Washington and Dragone. Without anyone noticing him, officer Dragone secret rapped a black strapp around my neck and then as though he was holding me by my ~~████████~~ jacket collar, he pulled me up off of the floor using the black strapp around my neck and continued to strangle

OR choke me as he escorted me off of the unit through the door. He strangled me or choked me breathless until I passed out in the hallway. I miracously revived myself and they escorted me to the Health Services Unit and took pictures of my injuries. Over 50 or more inmates witnessed the assault on J-2 Unit which occured out in the opening on the recreation floor. The next day on Dec. 20, 2004, I filed an inmate grievance #7589 about the assault. A copy of which is annexed hereto as Exhibit "J" (FN.) ~~~~~ In retaliation for making the grievance I was given a disciplinary report which falsely alleged that I had assaulted the officers. The grievance was fowarded to Commissioner Dennehy's Internal investigation on 12-31-04, but was never investigated by the Commissioner. Instead, Superintendent Peter Pepe received a copy of the grievance and decided about 6 months later, that my grievance about the assault was unfounded. In the interim between Dec. 19, 2004 and Jan. 27, 2005, at Concord I renewed my requests in writing to be placed in protective custody. I made written request Superintendent Peter Pepe, Deputy Superintendent for Classification,

(FN) Plaintiff also filed grievance #8387 citing officer Oragone's name which went uninvestigated by Dennehy and was decided by PEPE.

29-6       (Cont. on Reverse side)

29-H

ANDERSON AND Deputy SuperintendANt AND
DiRECTOR FoR CLASSificAtion, KAREN DiNARdo,
All of whom deNied my REQUEST AND
ARbitRARily chAnged my CLASSificAtion
level AND diREcted thAt I be SENt to
WALpole CEdAR JunctioN whERE thERE
is No pRotective custody PROGRAM NOR
uNit AND whERE I WAS puNished RAthER
thAN pRotected by plAcement iN the S.M.U.
becAuse thERE WAS No pRotective custody uNit
OR pROGRAM thERE. CommissioNER DenNehy
AppRoved the CLASSificAtion chANge mAde
by ANdERSON, DiNARdo AND PEPE AND
DenNehy AlSO AppRoved my tRANSfER to
CEdAR JunctioN FROm ConcoRd. I WAS
tRANSfERed to CEdAR JunctioN FROm ConcoRd
ON JAN. 27, 2005.

29-H

FACTS, cont. :

6. (B)    While At Concord Prison, the plaintiff wrote A December 17, 2004, Request to the Commissioner, Kathleen M. Dennehy, to be Restored And to Receive the Afore-mentioned Rights And Privileges. A copy of the letter of Requests is Annexed hereto As 'EXHIBIT 'A'. IN her written Response made through her Deputy Commissioner, James R. Bender, dated January 19, 2005, the Commissioner denied All of the plaintiff's Requests for the Rights And Privileges. (See Exhibit "I" Annexed hereto)

(C)    While At Cedar Junction Prison, the plaintiff filed AN INMATE Grievance #10874 dated May 19, 2005, involving the same Rights And Privileges; to be Restored And to Receive them. A copy of the Grievance is Annexed hereto As 'EXHIBIT 'B'. However, the Grievance Coordinator did Not Record the entire complaint And did Not make A decision on the grievance. The plaintiff then Appealed the Grievance to Superintendent David Nolan, between July 6-8, 2005, with A complaint that the Grievance

-30-

(cont. on Reverse Side)

COORDINATOR did NOT iNCLUDE the full facts of the grievance ANd did NOT make A decision. Since the Rights ANd PRivileges complained of in the Grievance had been denied by the Commissioner iN heR JANuARY 19, 2005, Response, they were also denied by SupeRiNtendent DAvid NolAN, AfterWhich it became Subject to the CommissioneR's Review through heR designee OR INMATE GRievANce ReviewER, Kristi LADOUCEUR . (see 103 CMR 491) Thus, those Rights ANd PRivileges were AgAiN denied to the plaintiff by the CommissioneR DenNehy ANd LAdouceuR on 9-26-05.

(D)    While At CedAR JuNctioN PRisoN, the plaintiff filed AN INMATE GRievANce #11331, on the discRimiNATioN ANd depRivATioN, iNvolviNg the iN-cell coloR T.V. PRivilege ANd the deNiAl of Idle PAY. The GRievANce was dated MAY 21, 2005; A copy of which is ANNexed hereWith AS `EXHIBIT `C`. The GRievANce was deNied oN July 1, 2005, ANd Appealed to SupeRiNteNdeNt DAvid NolAN, between July 6 to 8, 2005. The SupeRiNteNdeNt NolAN Also deNied the plaintiff the Relief sought iN the gRievANce, AfterWhich it became subject to the CommissioneR's Review through heR INMATE GRievANce ReviewER, Kristi LADOUCEUR . (103 CMR 491) ANd, was AgAiN deNied by the CommissioneR DenNehy ANd LAdouceuR oN 10-19-05.

-31-

*FN. CHRISTIAN LADUCIA was AMENDED to "KRITIE LADOUCEUR

FACTS, cont.:

6. (E)  In the plaintiff's December 17, 2004,
Request to the Commissioner, Kathleen M.
Dennehy, on page '3' at number '6', he
Requested an "increase in quality and quantity
of meals." (see EXHIBIT "A")  In her January
19, 2005, Response, she denied the plaintiff's
Request; stating that "DOC was providing
healthy and hearty meals."  On May 19, 2005,
while at Cedar Junction Prison, the plaintiff
filed Inmate Grievance #10874 containing a
complaint of "inadequate food per meal" at
Number '2' of the Grievance. (see EXHIBIT "B"
at no. 2)  See the above sub-paragraph (c) for
the Resolutions of denials on Grievance #10874.
On June 23, 2005, while at Cedar Junction Prison,
the plaintiff filed another similar Inmate
Grievance #11434; complaining that he was being
deprived of the daily minimum 2000 calorie
diet by the prison's failure to comply with that
public health law.  On June 28, 2005, the
Inmate Grievance Coordinator, Ann Marie
Aucoin, decided that the Grievance was a non-

- 32 -    (cont. on Reverse side)

# FACTS, cont.:

grievable medical grievance. The plaintiff appealed that portion of the grievance which was non-medical and applied to the prison's failure to comply with the public health dietary law of a daily minimum requirement of 2000 calories. A copy of the Inmate Grievance #11434 together with its July 7, 2005, appeal to Superintendent, David Nolan, are annexed herewith as "EXHIBIT "D". The plaintiff also filed a grievance with the medical Health Services Administrator at Cedar Junction regarding the other portion of the grievance which related to medical. Superintendent, David Nolan, concurred with the IGC decision and denied plaintiff the relief sought in the appeal; afterwhich it became subject to the Commissioner's Review through her Inmate Grievance Reviewer, Kristi̲ ̲Ladouceur̲ ̲LaDouceur̲ (see 103 CMR 491) whom also affirmed and denied plaintiff. Both Dennehy and Ladouceur denied the plaintiff on 10-19-05 upon their review.

-33-

FN. CHRISTIAN LADOUCIA was amended to Kristie Ladouceur

FACTS, cont. :

6. (F)  While at Cedar Junction Prison, the plaintiff filed an INMATE GRIEVANCE #11824 on July 11, 2005, to subscribe to and receive pornographic magazines from PLAYBOY, PENTHOUSE AND PLAYERS.  A copy of the grievance is annexed herewith as EXHIBIT 'E'. MASS. DOC policy 103 CMR 481, which is being maintained by the defendants, restricts inmates from subscribing to, possessing and receiving pornographic materials. As a result, the GRIEVANCE was denied on July 13, 2005, by INMATE GRIEVANCE Coordinator, Ann Marie Aucoin, and appealed to Superintendent Nolan by the plaintiff on July 16, 2005.  Superintendent, David Nolan, concurred with the IGC decision and denied plaintiff the relief sought in the appeal; afterwhich it became subject to the Commissioner's Review through her INMATE GRIEVANCE REVIEWER, ██Kristi██ ██LADOUCEUR██ (see 103 CMR 491) whom also affirmed and denied plaintiff.  However, 103 CMR 481.15(2)(g) only restricts the type of pornography which poses a threat to the security, good order or discipline of the institutions. Both Dennehy and LADOUCEUR denied the plaintiff on 11-18-05 upon their Review.

-34-

(CONT. ON REVERSE SIDE)

FN. CHRISTIAN LADUCIA WAS AMENDED TO KRISTIE LADOUCEUR.

FACTS, cont.:

(6)  In the plaintiff's December 17, 2004, Request to the Commissioner, Kathleen M. Dennehy, on page '2' at Number '1', he requested an improvement in the Inmate Grievance Program by including Inmate grievance Representatives similar to New York State and Federal Prisoners. (See EXHIBIT "A") In her January 19, 2005, Response, she denied the defendant's Request. On July 12, 2005, the plaintiff made a similar complaint at Cedar Junction Prison in Grievance #11823; complaining that MASS. DOC grievance Program was not providing him with meaningful Review of his inmate grievances because there were no inmate grievance Representatives and that the Grievance Coordinator, Superintendent, and Commissioner's Reviewer, were not able to make informed decisions on his Inmate Grievances because the Grievance Program does not have a "MASTER Index" containing a Record of prior decisions by subject matter upon which they may rely on to base their decisions. As a Result, he claimed that his First Amendment

FACTS, cont. :

Right to effectively address DOC for Redress of his inmate grievances, was being violated together with his Right under the equal protection clause of the fourteenth amendment. A copy of the GRIEVANCE #11823 is annexed hereto as "EXHIBIT ■"F", together with the JULY 15, 2005, decision of INMATE GRIEVANCE COORDINATOR, ANN MARIE AUCOIN, which denied the GRIEVANCE. The GRIEVANCE was appealed by the plaintiff to Superintendent NOLAN on JULY 16, 2005. Superintendent, NOLAN DAVID, concurred with the IGC decision and denied plaintiff the Relief sought in the appeal; afterwhich it became subject to the Commissioner's Review through her inmate Grievance Reviewer, ▮Kristie LA▮▮▮▮ Douceur (103 CMR 441) whom also Affirmed and denied plaintiff. Both Denneny and Kristie Ladouceur denied plaintiff grievance on 11-22-05.

(H) While at CEDAR JUNCTION PRISON, between JANUARY and MAY 2005, the plaintiff made a series of Requests for protection followed by an INMATE GRIEVANCE #8836 dated MARCH 7, 2005, to be placed in a protective custody PROGRAM. The plaintiff also wrote a letter of Request to the Commissioner, KATHLEEN M. DENNEHY, for placement in a protective custody PROGRAM.

FN. CHRISTIAN LADUCIA WAS AMENDED TO KRISTIE LADOUCEUR.

-36-

(CONT. ON REVERSE SIDE)

A copy of that letter is annexed hereto as 'EXHIBIT 'G'. In the interim, the plaintiff appealed grievance #8836 to Superintendent, DAVID NOLAN. A copy of the appeal decision is also annexed hereto as 'Exhibit 'H". However, as previously stated, the defendants did not have a state protective custody program and as a result, they have approved and directed that inmates who requests protection, be placed in the punitive administrative segregation units, where plaintiff contends he was punished rather than protected, and subjected to a greater risk of harm. The Superintendent's decision was reviewed by the Commissioner through her INMATE Grievance Reviewer, ▮Kristi— LADOUCEUR (103 CMR 491) Also, the plaintiff signed-off from his need for protection but claims that the defendants conduct in failing to have a protective custody program constitutes a failure to protect and that they are discriminating against him because other state and federal INMATES have one. He also claims that the defendants do not have such a program because of their illegal punitive program to punish inmates rather than rehabilitate them.

FN. CHRISTIAN LADOUCIA was amended to KRISTIE LADOUCEUR

-37-

6(I) The defendant's denial of plaintiff's 'MUSIC BY MAIL PROGRAM' is contained in the defendant's JAN. 19, 2005, Response letter and Grievance #10874.

7.                    CAUSES OF ACTION

Note: You must clearly state each cause of action you assert in this lawsuit.

### FIRST CAUSE OF ACTION

DUE PROCESS. The plaintiff states that the courts have recognized his right as an inmate to due process of law which involves his right to notice and opportunity to be heard before and during the imposition of punishments, and that the defendants have denied and deprived him of the aforementioned rights and privileges without due process, for no legitimate reasons other than to punish him under an illegal punitive program policy.

### SECOND CAUSE OF ACTION

EQUAL PROTECTION. The plaintiff states that as a state convicted inmate committed to MASS.DOC, he is similarily situated by virtue of that status, with other convicted state and federal inmates, whom on a national correctional standard, are being allowed the afore-mentioned rights and privileges, while he is not, and that therefore, he is being denied equal protection of the law.

### THIRD CAUSE OF ACTION

CRUEL AND UNUSUAL PUNISHMENT. The plaintiff states that the denial and deprivation of the aforementioned rights and privileges by the defendants for no legitimate reasons other than to punish him without due process under an illegal punitive program policy, is so 'dissimilar' to the rights and privileges being afforded other convicted state and federal inmates, that it violates his eighth amendment right to be free from cruel and unusual punishments, in that, the eighth amendment prohibits more than physical barbarous punishments, it also embodies broad and                 idealistic concepts of dignity, civilized standards, 'humanity' and decency against which the punitive penal measures of the defendants can be evaluated. Furthermore, in this case, the plaintiff states that the denial and deprivation of some of the aforementioned rights and privileges states a cause of action under the eighth amendment in and of themselves.

FOURTH CAUSE OF ACTION: 1st AMEND. -38-  FIRST AMENDMENT ISSUES

8. PRAYER FOR Relief against the defendants in their INdividual AND Official capacities.

Wherefore, plaintiff REQUEST that this Court grant the following Relief against All defendants in their INdividual AND Official capacities:

i. Compensatory damages from the defendants in the Amount of $500.000 (Five Hundred-Thousand Dollars) for the unnecessary infliction of the pain and Sufferings associated with the denial and deprivation of the Rights and privileges set forth in the complaint, and to compensate or Reimburse plaintiff for the food, clothing, idle pay and other benefits to which he was entitled and would have otherwise Received.

ii. Punitive damages from the defendants in the Amount of $250.000 (Two Hundred Fifthy Thousand Dollars).

iii. Order directing the defendants to Restore or Allow plaintiff the privilege of purchasing, Receiving, possessing and smoking tobacco

-39-          (cont. on Reverse side)

PRAYER FOR RELIEF, cont.:

products outside or in a designated area of the facilities of Mass. DOC and/or to provide or allow plaintiff non-smoking patches, anti-smoking tablets and anti-smoking devises. And, that the defendants make a provision in its 103 CMR which would permit an inmate privilege of smoking tobacco products outside or in a designated area of the facilities of Mass. DOC., and permit him to exercise his religious right to smoke cigarettes and tobacco.

iv. Order directing the defendants to provide the plaintiff with adequate food per meal consisting of a variety of quality nutricious foods in compliance with the Public Health Law of no less than a daily minimum 2000 calorie diet. That the menu be prepared by a certified dietician and that the meals are not repetative nor punitively rationed. That butter and jelly are included with the breakfast, and that ketchups, mustards, mayonaise, tarta sauce, relish, chilli, onions, peppers, sandwich dressings and etc., for all sandwich meats such as beef burgers, turkey, hot dogs, fish patties and etc. Also, that

PRAYER FOR RELIEF, CONT.:

the MEALS include A VARIETY of fresh fRuits and fresh vegetables AND deserts with the lunch And dinner such AS cakes, cupcakes, muffins, pies AND etc. AND, such other AND further corrective measures AS the Court deems Appropriate to ensure that the defendants provide Adequate food per meal And not punitively Rationed MEALS. Also, holiday MEALS.

V. Order directing the defendants to provide the plaintiff with Adequate clothes such as pants with pockets And zippers; button-up shirts (long And short sleeves) with name tags AND number on pockets Rather than DOC letters on the back; brief underware; formal dress shirt, sweatshirt, ski-coat And boot-shoes together with such other And further corrective measures AS the court deems Appropriate to ensure that the defendants provide Adequate clothes.

V½. Order directing the defendants to provide a safe And secure prison environments by discouraging ethnic And gang violence amongst inmates by enforcing seat-by-line mess hall formation; recreation equipment And security in prison yard And its walkways; by maximum or increased penalty for inmate on inmate Assaults And initiated fights including mandatory criminal charges, And the above rights, privileges And programs As incentatives for good behavior.        -41-        (cont. on reverse side)

PRAYER FOR Relief, cont.:

vi. ORDER directing the defendants to provide the plaintiff with idle PAY when he is available to WORK OR PROGRAM but is not assigned WORK OR PROGRAM, and that the idle PAY be deducted AS A percentage OR portion from the money which is provided to the defendants for his education, VOCATIONAL and WORK PROGRAMS. And, that the defendants MAKE A PROVISION in its 103 CMR governing idle PAY.

vii. ORDER directing the defendants to eliminate double bunking within MASS. DOC facilities which would also eliminate the PRACTICE of RACIAL SEGREGATION (discrimination) in the defendants double bunking process.

viii. ORDER directing the defendants to Allow the plaintiff the First Amendment Right OR privilege of ASSOCIATION with other INMATES AS AN INMATE ORGANIZATION called the N.A.A.C.P., and that the defendants MAKE A PROVISION in their 103 CMR for INMATE ORGANIZATIONS, and/or comply with 103 CMR 485. -42-

PRAYER FOR RELIEF, cont.:

ix. Order directing the defendants to allow the plaintiff the first amendment Right or privilege of association with other inmates as an Inmate Liason Committee. And, that the defendants make a provision in their 103 CMR for its function, and/or comply with 103 CMR 485

x. Order directing the defendants to improve the Inmate Grievance Program by allowing inmate representatives to participate in the Review and decision making process, and by the creation and maintenance of a "MASTER Index" containing prior decisions by subject matter upon which Review and decisions shall be based. And, that the 'MASTER INDEX be made available to the inmate population, and for such other and further corrective measures as the court deems appropriate for a fair and just INMATE GRIEVANCE PROGRAM.

-43-    (cont. on reverse side)

PRAYER FOR RELIEF, cont.:

xi. ORDER directing the defendants to implement a "FAMILY REUNIOUN PROGRAM" consisting of conjugal visits and free state sponsored bus rides for relatives and friends to visit, and that the visiting schedules provide more time per visit and are made more frequent. And, that the defendants make a provision in their 103 CMR governing a "FAMILY REUNIOUN PROGRAM," and permit him to exercise the Five ~~█████~~ PERCENTER God and EARTH Religion by conjugal visits with his EARTHS.

xii. ORDER directing the defendants to restore or allow plaintiff's privilege or right to purchase and receive WALKMAN CASSETT players with CASSETT tapes through the "MUSIC BY MAIL" PROGRAM, and that the defendants make a provision in their 103 CMR governing such a "MUSIC BY MAIL" PROGRAM, including the receipt and possession of musical instruments, and the exercise of his religion by being allowed to listen to FIVE PERCENTER RELIGIOUS music on cassette players and tapes.

-44-

PRAYER FOR RELIEF, cont.:

xiii. Order directing the defendants to RESTORE OR Allow plaintiff's Right And privilege to subscribe And Receive PORNOGRAPHIC MATERIALS Such AS "PLAYBOY, PENTHOUSE And PLAYERS & HUSTLER MAGAZINES, And that the defendants REViSE theiR 103 CMR 481 to Allow this Right And privilege, And/or comply with the 103 CMR 481.15(2)(g) which is written to Allow him to Receive those type of magazines because they do not pose A threat to security, good order or discipline of the institutions.

ivx. Order directing that the defendants provide the plaintiff with AN IN-CELL COLOR T.V. due to his poverty And/or that the defendants Allow Such INMATES AS the plaintiff, who ARE UNAble to AFFORd A COLOR T.V., to Receive a COLOR T.V. from a chARitAble Community ORGANIZATION. AS AN ALTERNATIVE, AN ORDER directing that the defendants provide A COLOR T.V. IN every cell of DOC fAcilities iNWhich T.V. is Allowed, And that the COLOR T.V. be A pARt of the APPLIANCE OR fuRNITURE of StAte property belonging to the cell. And for Such other And fuRther corrective MEASURES as the Court deems AppROpRiAte to ENSURE equality in the privilege of the defendants' IN-CELL COLOR T.V. PROGRAM.

-45-     (cont. on Reverse side)

PRAYER FOR RELIEF, cont. :

**XV.** ORDER directing that the defendants implement and maintain a protective custody program and units for all of their state inmates who need or request protection, and that such program is not within the punitive administrative segregation units; that such protective custody inmate would not be placed in the punitive administrative segregation units under an order or request for protection, and that such protective custody inmate receive the same privileges afforded inmates in the general population which is not inconsistent with their protective custody status, and such other and further corrective measures as the court deems appropriate.

**XVi.** The plaintiff demands a trial by jury.

I swear under the penalty of perjury that the foregoing is true and correct.

DATED: August 18, 2005.

SIGNATURE:

FELIPE OTEZE FOWLKES:

-46-

EXHIBIT "A"

(1)

pgs. 1 of 4

# REQUEST FOR RESTORATION OF PRIVILEGES AND FOR PARTICULAR RIGHTS

DATED: DEC. 17, 2004.

MADE TO:

Commissioner of Massachusetts Department of Corrections: 50 Maple Street, Suite 3 Milford, MA 01757

FROM:

Felipe Oteze Fowlkes #W84202 And All other inmates of the Massachusetts Department of Corrections Who are Similarily Situated. MCI Concord: P.O. Box 9106, 965 Elm St., Concord, MA 01742.

YOUR COMMISSIONER:

PLEASE TAKE NOTICE, I am making this Request in behalf of myself and other inmates who are or who may become Similarily Situated.

This Request involves challenges to your current Departmental policies and procedures which have ~~been~~ arbitrarily deprived me and other inmates of particular privileges and Rights which we enjoyed and were secured to us by the U.S. Constitutional Amendments and the Declaration of Rights from the Constitution of Massachusetts. It should be noted by you that the deprivation of some of these privileges and rights violates the due process requirements and equal protection clauses of the Constitutions and threatens the safety, security and well-being of the inmates in your custody.

WHEREFORE, it is Respectfully Requested that you Restore the following privileges and allow myself and other inmates, to exercise the following Rights.

1: Inmate Grievance Program to include inmate grievance Representatives similar to New York State and Federal prisoners.

2: Inmate Liason Committees to serve as a Liason between inmates and Administration similar to New York State and Federal prisoners.

3. INMATE ORGANIZATIONS REPRESENTATIVE OF the ethnic groups such as N.A.A.C.P., LATIN-AMERICANS And etc.

4. INMATE ACCOUNT FROM the CANTEEN purchases to purchase Appliances And Recreation equipment And etc., by And For INMATES.

5. ILLEVIATE double bunking in All facilities.

6. INCREASE quality And quantity of meals.

7. New clothing to include pants with pockets, New COATS And boots For All.

8. PROPER CLASSIFICATION And SEPARATION of PRE-TRIAL Detainees or UN-SENTENCED INMATES FROM State Convicts.

9. Idle pay For INMATES unAble to work or AwAiting transfer

10. FAMILY REUNION PROGRAM to include CONJUGAL visits And Free Bus Rides For Relatives And friends to visit INMATES in facilities.

11. Music by MAiL to include WALKMAN Cassett players And Cassett orders.

12. Packages to include hermitically sealed items And etc.

13. Smoking privilege of CigArretts, tobacco products to be Restored. This privilege was taken AwAy ARbitrARily And Capriciously.

13½ PORNOGRAPHY —

As you know, inmates in Massachusetts were entitled to hearings before the imposition of sanctions to deprive them of a privilege which included smoking, canteen and etc. No Disciplinary Reports or Hearings were conducted prior to imposing this sanction of No Smoking. Neither was the alternative of smoking outdoors or in a designated area implemented. Also, no non-smoking patches, Nicoderm or Anti-smoking tablets or chewing gum issued to treat the affects of Nicotine cravings. Also, there is an inherent threat to the safety of inmates since Correction Officials are now able to manipulate inmates to harm other inmates for a pack of cigaretts or tobacco. This places to much power in the hands of officers who are only human and not infallible. Inmates have a general fear of being harmed by other inmates who are paid with cigaretts by Correction official. This inherent threat and potential for the abuse of official power should be removed by the restoration of the smoking privilege.

The smoking privilege should be restored for all those reasons listed above.

(cont. on reverse side)

Furthermore, we are similarily situated with Federal and other State prisoners who are allowed to smoke cigarretts in designated areas or outside.

There are also other privileges and rights that you could implement to provide some incentatives. Also, there exist racial segregation in cell assignments here at Concord and throughout the State. We have noticed no black and white inmate sharing a double bunked cell with each other as a result of the facility policy on cell assignments. This has only served to reinforce racial prejudices and create racial prejudice between the inmates.

Generally, it is respectfully requested that you improve the conditions underwhich we are being held in your custody by modernizing your system. Thank you for your time.

Written copy: F.O.F.

Respectfully Submitted,

Felipe Oteze Fowlkes

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM
### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)



| | | | | |
|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | **Grievance#** 10874 | **Institution** | MCI CEDAR JUNCTION |
| **Commit No.** | W84202 | **Housing** ~~TEN BLOCK~~ OU #122 | **Date Of Incident** 20050519 | **Date Of Grievance** 20050519 |

**Complaint**
Deprivations of rights and privileges. Deprivation of rights and privileges.
the inmate complains that he is being deprived of particular rights and
privileges, and that the deprivation of such rights and privileges are so
"dissimilar" to the rights and privileges enjoyed by other state and federal
prisoners, that it violates the eighth amendment clause which prohibits "cruel
and unusual punishments" and the due process and equal protection clauses of the
fourteenth amendment. The particular rights and privileges he complains of being
deprived in violation of his constitutional rights, are listed as follows:
1. Smoking, privilege of cigarettes and tobacco products. The smoking privilege
was taken away arbitrarily and capriciously as a form of punishment, and could
have been maintained outside or in a designated area of the prison.
2. Inadequate food per meal (i.e. lack of quantity is unable to satisfy the human
needs of an adult. repetitive is five types of breakfast meals for seven days a
week; appauling is food meals that appears to be spit in and tampered with, and
etc.)
3. Inadequate clothes (i.e. no boot-shoes, ski-coats, sweatshirts, long sleeve
shirts; for north-eastern inclement weather are state issued; pants with no
pockets are undignified and post a health risk from prisoners holding their
genitals and matching shirt has no buttons, short sleeves, v-neck with DOC
letters on the back, are the same as jailhouse clothing or worse, and etc.)
Blankets fall apart within six months and pose a health risk to the lungs from
breathing in the synthetic material. My clothing and blanket are incomparable
with other state and federal prisoners. In fact, everything on this list shows
that my rights and privileges are incompatible and so dissimilar with the rights
and privileges of other state and federal prisoners as to violate my
constitutional rights.
4. Idle pay when unable to work, is not recived by me (i.e. no inmate account.

**Remedy Requested**
Restoration and changes (where applicable) of the foregoing rights and
privileges. Monetary compensations. I would like to be restoredmy smoking
privilege and that you will address and allow each one of the rights and
privileges I've listed above.

**Staff Recipient**
Sullivan Daniel   CO II

**Staff Involved**

**Signature**

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

| | | | |
|---|---|---|---|
| **Date Received** | 20050530 | **Decision Date** | |
| **Signature** | | | |
| **Final Decision** | | | |
| **Decision** | | | |
| **Signature** | | **Date** | |

# COMMONWEALTH OF MASSACHUSETTS 10874

## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

| Name | FOWLKES FELIPE O | | | Institution | MCI CEDAR JUNCTION | | |
|---|---|---|---|---|---|---|---|

**Number**  W84202    **Housing**  O1

**Appeal Date**  06-JUL-2005    **Date Of Grievance**  19-MAY-2005

**Appeal Received Date**  13-JUL-2005

**Appeal**

The inmate argues on this appeal that the IGC never rendered a decision on the grievance #10874 regarding the deprivation of his rights and privileges, and that IGC did not type in the full facts of his complaint which he provided to IGC.

Therefore, he appeals for a full review of the grievance #10874, including those portions which were not typed in the body of the complaint.

**Remedy Requested**

Is the same as that sought in the grievance except that the portion involving protective custody status is no longer applicable since he signed off of "AA" status.

Other than that, he still seeks restoration and privileges listed. Also, monetary compensation and restoration of the smoking privilege "outside" or in a designated area of the prison(s). He argues that the in-house smoking band does not and should not prevent him for exercising the smoking privilege outside or in other designated areas in or around the facilities or prison(s). That each of the rights and privileges listed above will be addressed except for the protective custody issue which is no longer applicable because he signed off "AA".

He also requests such other and further reliefs.

Dated: July 6, 2005

**Staff Recipient**  Sullivan Daniel   CO II

**Signature**

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date**  13-JUL-2005    **Decision Date**    **Decision**

**Decision By**

**Reasons**

**Signature** _____    **Date** _____

---

## INMATE RECEIPT

**Inmate's Name**  FOWLKES FELIPE O    **Institution**  MCI CEDAR JUNCTION

**Number**  W84202    **Appeal Received Date**  13-JUL-2005

**Staff Recipient**  Sullivan Daniel  CO II

**Superintendent's Signature**  David Nolan

Exhibit "B"

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

#/0874

| **Name** | FOWLKES FELIPE O | | | **Institution** | MCI CEDAR JUNCTION | | |
|---|---|---|---|---|---|---|---|
| **Number** | W84202 | **Housing** | A 3 | **Appeal Date** | 06-JUL-2005 | **Date Of Grievance** | 19-MAY-2005 |
| | | | | **Appeal Received Date** | 13-JUL-2005 | | |

**Appeal**
The inmate argues on this appeal that the IGC never rendered a decision on the grievance #10874 regarding the deprivation of his rights and privileges, and that IGC did not type in the full facts of his complaint which he provided to IGC.
Therefore, he appeals for a full review of the grievance #10874, including those portions which were not typed in the body of the complaint.

**Remedy Requested**
Is the same as that sought in the grievance except that the portion involving protective custody status is no longer applicable since he signed off of "AA" status.
Other than that, he still seeks restoration and privileges listed. Also, monetary compensation and restoration of the smoking privilege "outside" or in a designated area of the prison(s). He argues that the in-house smoking band does not and should not prevent him for exercising the smoking privilege outside or in other designated areas in or around the facilities or prison(s). That each of the rights and privileges listed above will be addressed except for the protective custody issue which is no longer applicable because he signed off "AA".
He also requests such other and further reliefs.

Dated: July 6, 2005

| **Staff Recipient** | Sullivan Daniel  CO II |
|---|---|
| **Signature** | |

### DECISION BY SUPERINTENDENT

| **Appeal Received Date** | 13-JUL-2005 | **Decision Date** | 03-AUG-2005 | **Decision** | DENIED |
|---|---|---|---|---|---|

**Decision By**    Nolan David F  SUPERINTENDENT

| **Reasons** | I concur with the IGC. | | |
|---|---|---|---|
| **Signature** | | **Date** | 8/3/6 |

### INMATE RECEIPT

| **Inmate's Name** | FOWLKES FELIPE O | **Institution** | MCI CEDAR JUNCTION |
|---|---|---|---|
| **Number** | W84202 | **Appeal Received Date** | 13-JUL-2005 |
| **Staff Recipient** | Sullivan Daniel  CO II | | |
| **Superintendent's Signature** | | | |

# COMMONWEALTH OF MASSACHUSETTS    *10874*
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| | | | | | |
|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | **Institution** | MCI CEDAR JUNCTION | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Number** | W84202 | **Housing** | O1 | **Appeal Date** | 06-JUL-2005 | **Date Of Grievance** 19-MAY-2005 |

**Appeal Received Date**   13-JUL-2005

**Appeal**   The inmate argues on this appeal that the IGC never rendered a decision on the grievance #10874 regarding the deprivation of his rights and privileges, and that IGC did not type in the full facts of his complaint which he provided to IGC. Therefore, he appeals for a full review of the grievance #10874, including those portions which were not typed in the body of the complaint.

**Remedy Requested**   Is the same as that sought in the grievance except that the portion involving protective custody status is no longer applicable since he signed off "AA" status.

Other than that, he still seeks restoration and privileges listed. Also, monetary compensation and restoration of the smoking privilege "outside" or in a designated area of the prison(s). He argues that the in-house smoking band does not and should not prevent him for exercising the smoking privilege outside or in other designated areas in or around the facilities or prison(s). That each of the rights and privileges listed above will be addressed except for the protective custody issue which is no longer applicable because he signed off "AA".

He also requests such other and further reliefs.

Dated: July 6, 2005

**Staff Recipient**   Sullivan Daniel  CO II

**Signature**

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date**   13-JUL-2005    **Decision Date**    **Decision**

**Decision By**

**Reasons**

**Signature**    **Date**

---

## INMATE RECEIPT

**Inmate's Name**  FOWLKES FELIPE O    **Institution**  MCI CEDAR JUNCTION

**Number**   W84202    **Appeal Received Date**   13-JUL-2005

**Staff Recipient**   Sullivan Daniel  CO II

**Superintendent's Signature**   _David Nolan_

NAME: FELIPE FOWLKES    INSTITUTION: CEDAR JUNCTION

NUMBER: W84202    HOUSING UNIT: OU    DATE OF INCIDENT: MAY 19, 2005.

APPEAL: GRIEVANCE #10874 — A COPY Attached —
(See Attached Page.)

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY REQUESTED: (See Attached Page)

INMATE SIGNATURE: _____    DATE: July 6, 2005.

STAFF RECIPIENT: _____    DATE: _____

DATE RECEIVED: _____

**SECTION B**

ASSIGNED GRIEVANCE NUMBER: _____

ASSIGNED INSTITUTION APPEAL NUMBER: _____

DECISION RENDERED:    ____APPROVED
                      ____DENIED

SUMMARY OF FINDINGS:
_____
_____
_____
_____
_____

SUPERINTENDENT'S SIGNATURE: _____    DATE: _____

**SECTION C**
                    INMATE APPEAL RECEIPT

INMATE NAME: _____    INSTITUTION: _____

NUMBER: _____    DATE RECEIVED: _____

RECEIPTING STAFF: _____    TITLE: _____

01/05/01                                        191 - 15

GRIEVANCE # 10874

## Appeal

The inmate argues on this Appeal that the IGC Never Rendered a decision on the grievance #10874 Regarding the deprivation of his Rights and privileges, And that IGC did Not type in the full facts of his complaint which he provided to IGC.

Therefore, he Appeals For a full Review of the Grievance #10874, including those portions which were not typed in the body of the complaint.

## Remedy Requested

Is the same as that sought in the Grievance except that the portion involving Protective custody status is no longer applicable since he signed off of "AA" status. Other than that, he still seeks Restoration and changes (where applicable) of the Rights and privileges listed. Also, Monetary compensation and Restoration of the smoking privilege "outside" or

(cont. on Reverse side)

Exh. #"B"

July 12, 2005

FROM:   FELIPE OTEZE FOWLKES #10874202

REC'D SUPT'S OFFICE
MCI CEDAR JUNCTION
2005 JUL 13  A 7:34

OU

TO:  JOANNE PAGUIN, AA
     Superintendent's Office

IN RE:  GRIEVANCE #10874 Appeal

DEAR MS. PAGUIN:

I am Returning the enclosed GRIEVANCE Appeal for Review and decision by the Superintendent.

The REASON is because ✓ IGC is not working on the GRIEVANCE. Therefore, I cannot Resubmit it because IGC is not going to give an ANSWER and that is stated as one of the grounds for this Appeal. Please process the enclosed papers as my Appeal. THANK YOU.

Written copy: F.O.F.
          w/ENC.

Signature: _____
          FELIPE FOWLKES

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| **Name** | FOWLKES FELIPE O | | **Grievance#** 10874 | **Institution** MCI CEDAR JUNCTION | |
|---|---|---|---|---|---|

| **Commit No.** | W84202 | **Housing** ~~TEN BLOCK~~ 10 I # 122 | **Date Of Incident** 20050519 | **Date Of Grievance** 20050519 |
|---|---|---|---|---|

**Complaint**

Deprivations of rights and privileges. Deprivation of rights and privileges. the inmate complains that he is being deprived of particular rights and privileges, and that the deprivation of such rights and privileges are so "dissimilar" to the rights and privileges enjoyed by other state and federal prisoners, that it violates the eighth amendment clause which prohibits "cruel and unusual punishments" and the due process and equal protection clauses of the fourteenth amendment. The particular rights and privileges he complains of being deprived in violation of his constitutional rights, are listed as follows:
1. Smoking, privilege of cigarettes and tobacco products. The smoking privilege was taken away arbitrarily and capriciously as a form of punishment, and could have been maintained outside or in a designated area of the prison.
2. Inadequate food per meal (i.e. lack of quantity is unable to satisfy the human needs of an adult. repetitive is five types of breakfast meals for seven days a week; appauling is food meals that appears to be spit in and tampered with, and etc.)
3. Inadequate clothes (i.e. no boot-shoes, ski-coats, sweatshirts, long sleeve shirts; for north-eastern inclement weather are state issued; pants with no pockets are undignified and post a health risk from prisoners holding their genitals and matching shirt has no buttons, short sleeves, v-neck with DOC letters on the back, are the same as jailhouse clothing or worse, and etc.) Blankets fall apart within six months and pose a health risk to the lungs from breathing in the synthetic material. My clothing and blanket are incomparable with other state and federal prisoners. In fact, everything on this list shows that my rights and privileges are incompatible and so dissimilar with the rights and privileges of other state and federal prisoners as to violate my constitutional rights.
4. Idle pay when unable to work, is not recived by me (i.e. no inmate account).
5. Inmate Grievance Program do

**Remedy Requested**

Restoration and changes (where applicable) of the foregoing rights and privileges. Monetary compensations. I would like to be restored my smoking privilege and that you will address and allow each one of the rights and privileges I've listed above.

**Staff Recipient**   Sullivan Daniel   CO II

**Staff Involved**

**Signature**

---

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20050530   **Decision Date**

**Signature**

**Final Decision**

**Decision**

**Signature**                                    **Date**

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM
### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| Name | FOWLKES FELIPE O | | | Institution | MCI CEDAR JUNCTION | | |
|---|---|---|---|---|---|---|---|
| Commit No. | W84202 | Housing | TEN BLOCK | Date Of Incident | 20050519 | Date Of Grievance | 20050519 |

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

(3) A grievance may only be filed concerning one subject matter.

| Signature | | Date | |
|---|---|---|---|

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

## INMATE RECEIPT

| Name | FOWLKES FELIPE O | | | Institution | MCI CEDAR JUNCTION |
|---|---|---|---|---|---|
| Commit No. | W84202 | Grievance# | 10874 | Date Received | 20050530 |

Signature.    Sullivan Daniel    CO II

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### INMATE GRIEVANCE APPEAL FORM

**FORWARD TO SUPERINTENDENT**

11331

EXHIBIT "C"



| Name | FOWLKES FELIPE O | | | Institution | MCI CEDAR JUNCTION | | |
|---|---|---|---|---|---|---|---|
| **Number** | W84202 | **Housing** | O1 | **Appeal Date** | 08-JUL-2005 | **Date Of Grievance** | 21-JUN-2005 |
| | | | | **Appeal Received Date** | 11-JUL-2005 | | |

**Appeal**

First, the inmate appeals because the IGC refused to include the full facts of his grievance #11331 which he wrote to IGC, and Secondly, that the IGC did not address all of the remedies requested.

He therefore, ask for a denova review of the entire grievance he submitted.

On appeal he argues that the prison or DOC is responsible for discriminating against him due to his poverty, through its in-cell T.V. policy provides and allows the T.V. privilege only to those inmates who can afford them. He also argues that due to his poverty, the prison or DOC should allow him to receive his T.V. through the community charitable organizations he's listed and that no decision was made by IGC as to whether or not that would be allowable.

He also argues on this appeal that the law entitles him to idle pay and that due to his long term indigent status and inability to work, he is entitled to an equitable amount of canteen items without interference with his indigent legal mail status. The IGC never made a decision on his claims for idle pay and whether or not he should be provided with canteen items. Thus, his appeal revolves around his poverty and exactly what a poor inmate under these circumstances, would be entitled to.

Discriminatory pollicies violates the equal protection clause of the 14th amend to the U. S. Constitution.

**Remedy Requested**

That inmate's entire grievance be reviewed, including the "page" which IGC did not type in the body of the complaint containing the full facts. And that the IGC decision be reversed and modified to allow the prison to provide him with a color T.V. or to allow him to receive the color T.V. from the community charitable organizations he's listed. And that he be allowed "idle pay" which the law entitles him and an equitable amount of canteen items without interference with his indigent legal mail status, and for such other and further reliefs as might remedy these problem.

Dated: July 8, 2005

**Staff Recipient**   Sullivan Daniel   CO II

**Signature**

## DECISION BY SUPERINTENDENT

| **Appeal Received Date** | 11-JUL-2005 | **Decision Date** | | **Decision** | |
|---|---|---|---|---|---|

**Decision By**

**Reasons**

**Signature**                                                                 **Date**

## INMATE RECEIPT

**Inmate's Name**   FOWLKES FELIPE O                        **Institution**   MCI CEDAR JUNCTION

**Number**   W84202                                          **Appeal Received Date**   11-JUL-2005

**Staff Recipient**   Sullivan Daniel   CO II

**Superintendent's Signature**   David Nolan

$^{\omega}C$ '

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| **Name** | FOWLKES FELIPE O | | | **Grievance#** 11331 | | **Institution** MCI CEDAR JUNCTION | |
|---|---|---|---|---|---|---|---|

| **Commit No.** | W84202 | **Housing** ORIENTATION ONE | | **Date Of Incident** | 20050621 | **Date Of Grievance** | 20050621 |
|---|---|---|---|---|---|---|---|

**Complaint**
Inmate complains that he is being deprived of the privilege of having a color T.V. and canteen items because of his poverty, while other inamtes are being allowed (see attached page)

**Remedy Requested**
That the prison refrain from discriminating against him due to his poverty through its in-cell T.V. policy by providing him with a color T.V. like the other inamtes have in their cells and/or by allowing and making arrangements for him to receive his color T.V. from the Americal Red Cross Worker in Pittsfield or another dontated color T.V. from the Christian Center in Pittsfield. He also requests to be provided with the idle pay which the law entittles him to inorder to purchase canteen items, and that such idle pay does not interere with his indigent legal mail status. In the alternative, he also request to be provided with the canteen items he requested through AA Joanne Paquin because of his long term and on-going poverty status as an indigent inmate.

**Staff Recipient**
Sullivan Daniel    CO II

**Staff Involved**
Paquin Joanne M  Admin Assistant II

**Signature**

---

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20050622    **Decision Date** 20050701

**Signature**  AUCION ANN MARie CO I

**Final Decision**  DENIED

**Decision**  The iNStitution iS Not ResPoNSible to PROUide you with A T.V.

**Signature**    **Date**

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

---

### INMATE RECEIPT

| **Name** | FOWLKES FELIPE O | | | **Institution** MCI CEDAR JUNCTION |
|---|---|---|---|---|

| **Commit No.** | W84202 | **Grievance#** 11331 | **Date Received** 20050622 |
|---|---|---|---|

**Signature.**  Sullivan Daniel   CO II

PART

#11331

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| | | | | |
|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | **Institution** | MCI CEDAR JUNCTION |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Number** | W84202 | **Housing** | HOSPITAL | **Appeal Date** | 08-JUL-2005 | **Date Of Grievance** 21-JUN-2005 |

**Appeal Received Date** ___11-JUL-2005___

**Appeal**

First, the inmate appeals because the IGC refused to include the full facts of his grievance #11331 which he wrote to IGC, and Secondly, that the IGC did not address all of the remedies requested.

He therefore, ask for a denova review of the entire grievance he submitted.

On appeal he argues that the prison or DOC is responsible for discriminating against him due to his poverty, through its in-cell T.V. policy provides and allows the T.V. privilege only to those inmates who can afford them. He also argues that due to his poverty, the prison or DOC should allow him to receive his T.V. through the community charitable organizations he's listed and that no decision was made by IGC as to whether or not that would be allowable.

He also argues on this appeal that the law entitles him to idle pay and that due to his long term indigent status and inability to work, he is entitled to an equitable amount of canteen items without interference with his indigent legal mail status. The IGC never made a decision on his claims for idle pay and whether or not he should be provided with canteen items. Thus, his appeal revolves around his poverty and exactly what a poor inmate under these circumstances, would be entitled to.

Discriminatory pollicies violates the equal protection clause of the 14th amend to the U. S. Constitution.

**Remedy Requested**

That inmate's entire grievance be reviewed, including the "page" which IGC did not type in the body of the complaint containing the full facts. And that the IGC decision be reversed and modified to allow the prison to provide him with a color T.V. or to allow him to receive the color T.V. from the community charitable organizations he's listed. And that he be allowed "idle pay" which the law entitles him and an equitable amount of canteen items without interference with his indigent legal mail status, and for such other and further reliefs as might remedy these problem.

Dated: July 8, 2005

**Staff Recipient**    Sullivan Daniel  CO II

**Signature** _____

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date**  11-JUL-2005    **Decision Date**  28-JUL-2005    **Decision**  DENIED

**Decision By**    Nolan David F  SUPERINTENDENT

**Reasons**    I concur with the IGC. Furthermore, be advised indigent inmates are provided with the necessary hygiene supplies.  In regards to your mail, indigent mail is processed in accordance with 103 CMR 481.10

**Signature** _____    **Date** _____

---

## INMATE RECEIPT

**Inmate's Name**  FOWLKES FELIPE O    **Institution**  MCI CEDAR JUNCTION

**Number**    W84202    **Appeal Received Date**    11-JUL-2005

**Staff Recipient**    Sullivan Daniel  CO II

**Superintendent's Signature** _____

NAME: FELIPE FOWLKES   INSTITUTION: Cedar Junction

NUMBER: W84202   HOUSING UNIT: OU   DATE OF INCIDENT: June 21, 2005

APPEAL: Grievance # 11331 - A Copy Attached
— SEE ATTACHED PAGE S —

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY
REQUESTED: — See ATTACHED PAGE —

INMATE SIGNATURE: Felipe Fowlkes   DATE: July 8, 2005.

STAFF RECIPIENT: _____   DATE: _____

DATE RECEIVED: _____

**SECTION B**

ASSIGNED GRIEVANCE NUMBER: _____

ASSIGNED INSTITUTION APPEAL NUMBER: _____

DECISION RENDERED:   ___ APPROVED
                     ___ DENIED

SUMMARY OF FINDINGS: _____
_____
_____
_____
_____

SUPERINTENDENT'S
SIGNATURE: _____   DATE: _____

**SECTION C**
                    INMATE APPEAL RECEIPT

INMATE NAME: _____   INSTITUTION: _____

NUMBER: _____   DATE RECEIVED: _____

RECEIPTING STAFF: _____   TITLE: _____

01/05/01                                              191 - 15

C - PART

GRIEVANCE # 11331

# -APPEAL-

FiRST, the iNMATE AppEals because the IGC Refused to iNclude the full facts of his grievance # 11331 which he wRote to IGC, and

Secondly, that the IGC did Not Address ~~them~~ All of the Remedies REquested.

HE therefore, Ask for A deNoVA Review of the entiRe Grievance he submitted.

ON Appeal he ARgues that the PRiSON OR DOC is Responsible for discriminating AgaiNst him due to his poverty, through its iN-cell T.V. policy which provides and Allows the T.V. privilege only to those iNMATEs who CAN Afford them. HE Also ARgues that due to his poverty, the PRiSON OR DOC should Allow him to Receive his T.V. through the community chARitable ORgaNizations he's listed and that No decisioN WAs MADE by IGC As to whether OR Not that would be Allowable.

HE Also ARgues on this Appeal that the law entitles him to 'idle pay' And that due to his long term indigent status And iNAbility to work, he is entitled to AN equitable AmouNt of cANteen items without ANy iNteRference with his indigent legal mail status. The IGC NeveR MADE A decisioN ~~on~~ on his claims for idle pay And whether OR Not he should be provided with cANteeN items.

(cont. ON Reverse side)

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | **Grievance#** 11331 | **Institution** MCI CEDAR JUNCTION | | |

| **Commit No.** | W84202 | **Housing** ORIENTATION ONE | **Date Of Incident** 20050621 | **Date Of Grievance** 20050621 |
|---|---|---|---|---|

**Complaint** Inmate complains that he is being deprived of the privilege of having a color T.V. and canteen items because of his poverty, while other inamtes are being allowed (see attached page)

**Remedy Requested** That the prison refrain from discriminating against him due to his poverty through its in-cell T.V. policy by providing him with a color T.V. like the other inamtes have in their cells and/or by allowing and making arrangements for him to receive his color T.V. from the Americal Red Cross Worker in Pittsfield or another dontated color T.V. from the Christian Center in Pittsfield.  He also requests to be provided with the idle pay which the law  entittles him to inorder to purchase canteen items, and that such idle pay does not interere with his indigent legal mail status.  In the alternative, he also request to be provided with the canteen items he requested through AA Joanne Paquin because of his long term and on-going poverty status as an indigent inmate.

**Staff Recipient** Sullivan Daniel  CO II

**Staff Involved** Paquin Joanne M  Admin Assistant II

**Signature**

---

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20050622    **Decision Date** 20050701

**Signature** Aucoin Ann Marie  CO I

**Final Decision** DENIED

**Decision** The institution is not responsible to provide you with a television.

**Signature** *[signature]*    **Date** 7-1-05

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

---

### INMATE RECEIPT

| **Name** | FOWLKES FELIPE O | | | | **Institution** MCI CEDAR JUNCTION |
|---|---|---|---|---|---|
| **Commit No.** | W84202 | | **Grievance#** 11331 | **Date Received** 20050622 | |

**Signature.** Sullivan Daniel  CO II

11434

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM

EXHIBIT "D"

#### FORWARD TO SUPERINTENDENT

| Name | FOWLKES FELIPE O | | | Institution | MCI CEDAR JUNCTION | |
|---|---|---|---|---|---|---|
| Number | W84202 | Housing | O1 | Appeal Date | 07-JUL-2005 | Date Of Grievance 23-JUN-2005 |
| | | | | Appeal Received Date 11-JUL-2005 | | |

**Appeal**

I am appealing those portions of my grievance #11434 which do not apply to the medical provider, which are: my request for an extra tray or extra meal, and that the Prison comply with the public health law of daily minimum requirement of a 2,000 calorie diet. Inmate complains that the June 28, 2005, decision on his inmate grievance #11434; a copy of which is enclosed herewith, is erroneous because a portion or portions of the grievance does not apply to the medical provider and is therefore grievable through the DOC grievance process.

He complains that the prison is responsible for him being denied of a daily minimum 2000 calorie diet and that the prison should provide him with an extra tray or extra meal, or comply with the Public Health Law which requires a daily minimum of 2000 calories. He states that the breakfast, lunch and Dinner each contains less than 500 calories which when added together, equals far less than the minimum 2000 calories and do not contain a variet of nutrients. As a result he suffers ailments related to nutritional deficiency such as frequent urination, dry skin, brittle bones, pulled muscles, cramps and numbness in limbs as well as a crowling empty stomach, which can be remedied by an extra tray or extra meal, or that prisons compliance with the Public Health Law of daily minimum 2000 or more diet. Currently he is indigent and has been indigent since his imprisonment in DOC's sept 2004, and therefore could not afford to purchase canteen products, Although canteen is not a supplement for a healthy diet which law says he is entitled to despite canteen items.

**Remedy Requested**

That prison comply with the Public Health Law of daily minimum 2000 calorie diet and or provide him with an extra tray or meal.

Dated July 7, 2005

**Staff Recipient**

Sullivan Daniel  CO II

**Signature**

## DECISION BY SUPERINTENDENT

| Appeal Received Date | 11-JUL-2005 | Decision Date | | Decision | |
|---|---|---|---|---|---|

**Decision By**

**Reasons**

**Signature** _____    **Date** _____

## INMATE RECEIPT

| Inmate's Name | FOWLKES FELIPE O | Institution | MCI CEDAR JUNCTION |
|---|---|---|---|

| Number | W84202 | Appeal Received Date | 11-JUL-2005 |
|---|---|---|---|

**Staff Recipient**    Sullivan Daniel  CO II

**Superintendent's Signature**

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

#### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| **Name** | FOWLKES FELIPE O | | **Grievance#** 11434 | **Institution** MCI CEDAR JUNCTION | | | |
|---|---|---|---|---|---|---|---|
| **Commit No.** | W84202 | **Housing** ORIENTATION ONE | | **Date Of Incident** | 20050623 | **Date Of Grievance** | 20050623 |

| **Complaint** | denial of medical treatment for nutritional deficiency and deprivatino of daily minimum 2000 calorie diet. Inmate complaines that he is suffering from nutritional deficiency because he is not getting a sufficient amount of nutrients or calories per meal and necause the hypertension medicaitons he is taking absorbs the few nutrients or calories he receives from the deficient meals. He states that regular exervise is required to help control high bloood pressure and for his general health, but that he is unable to exercise regularly due to a lack of sufficient calories in the meals. He also suffers numbness in his limbs and other related illnesses. He complains that the doctor and dietician refuses to treat him for this deficiency by providing him with supplememtal multiple vitamins (which he cannot afford to purchase due to his indigency); liquid dietary supplement called 'ensure; and by refusing to direct that he be provided with an extra meal or extra tray per meal. He states that the daily dietary intake requires by law a minimum of 2,000 calories or more for those with speical dietary needs and that he's not receiving the minimum daily requirements nor those which are required to meet his special dietary needs of additional calories. |
|---|---|

| **Remedy Requested** | That he be provided with supplemental multiple vitamins together with an extra meal or extra tray evry meal and/or that the prison comply with the public health law of daily minimum requirement of a 2,000 calorie diet. |
|---|---|

| **Staff Recipient** | Sullivan Daniel   CO II |
|---|---|
| **Staff Involved** | |
| **Signature** | |

---

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

| **Date Received** 20050626 | **Decision Date** 20050628 |
|---|---|

**Signature** AUCOIN ANN MARIE CO I

**Final Decision** NON-GRIEV MED TREATMENT/DIAGNOS

**Decision** PURSUANT to 103 CMR 491, medical decisions ARE NOT grievable AS the medical prowider HAS its own Grievance process. I have Attached A Medical grievance form for you to utilize. YOU MAY Submit YOUR medical grievance to the health service Administrator in HSU.

**Signature** _____ **Date** 6-28-05

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

---

### INMATE RECEIPT

| **Name** | FOWLKES FELIPE O | | | **Institution** MCI CEDAR JUNCTION |
|---|---|---|---|---|
| **Commit No.** | W84202 | **Grievance#** 11434 | **Date Received** 20050626 | |
| **Signature.** | Sullivan Daniel   CO II | | | |

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

*Exhibit D*

#11434

| | | | | | |
|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | | **Institution** | MCI CEDAR JUNCTION |

| **Number** | W84202 | **Housing** | HOSPITAL | **Appeal Date** | 07-JUL-2005 | **Date Of Grievance** | 23-JUN-2005 |
|---|---|---|---|---|---|---|---|

**Appeal Received Date** _ 11-JUL-2005

**Appeal**

I am appealing those portions of my grievance #11434 which do not apply to the medical provider, which are: my request for an extra tray or extra meal, and that the Prison comply with the public health law of daily minimum requirement of a 2,000 calorie diet. Inmate complains that the June 28, 2005, decision on his Inmate grievance #11434; a copy of which is enclosed herewith, is erroneous because a portion or portions of the grievance does not apply to the medical provider and is therefore grievable through the DOC grievance process.

He complains that the prison is responsible for him being denied of a daily minimum 2000 calorie diet and that the prison should provide him with an extra tray or extra meal, or comply with the Public Health Law which requires a daily minimum of 2000 calories. He states that the breakfast, lunch and Dinner each contains less than 500 calories which when added together, equals far less than the minimum 2000 calories and do not contain a variet of nutrients. As a result he suffers ailments related to nutritional deficiency such as frequent urination, dry skin, brittle bones, pulled muscles, cramps and numbness in limbs as well as a crowling empty stomach, which can be remedied by an extra tray or extra meal, or that prisons compliance with the Public Health Law of daily minimum 2000 or more diet. Currently he is indigent and has been indigent since his imprisonment in DOC's sept 2004, and therefore could not afford to purchase canteen products, Although canteen is not a supplement for a healthy diet which law says he is entitled to despite canteen items.

**Remedy Requested**

That prison comply with the Public Health Law of daily minimum 2000 calorie diet and or provide him with an extra tray or meal.

Dated July 7, 2005

**Staff Recipient**   Sullivan Daniel  CO II

**Signature**   [signature]

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date**   11-JUL-2005      **Decision Date**   28-JUL-2005      **Decision**   DENIED

**Decision By**   Nolan David F  SUPERINTENDENT

**Reasons**   Be advised, registered dieticians developed the cycle menu that the Department of Correction currently utilizes. Furthermore, the daily average calorie count is 2,775 calories.

**Signature** _____    **Date** [signature]

---

## INMATE RECEIPT

**Inmate's Name**   FOWLKES FELIPE O                    **Institution**   MCI CEDAR JUNCTION

**Number**   W84202                                    **Appeal Received Date**   11-JUL-2005

**Staff Recipient**   Sullivan Daniel  CO II

**Superintendent's Signature** _____

11434

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

| | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | | **Institution** | MCI CEDAR JUNCTION | |
| **Number** | W84202 | **Housing** | O1 | **Appeal Date** | 07-JUL-2005 | **Date Of Grievance** 23-JUN-2005 |

**Appeal Received Date** 11-JUL-2005

**Appeal**

I am appealing those portions of my grievance #11434 which do not apply to the medical provider, which are: my request for an extra tray or extra meal, and that the Prison comply with the public health law of daily minimum requirement of a 2,000 calorie diet. Inmate complains that the June 28, 2005, decision on his inmate grievance #11434; a copy of which is enclosed herewith, is erroneous because a portion or portions of the grievance does not apply to the medical provider and is therefore grievable through the DOC grievance process.

He complains that the prison is responsible for him being denied of a daily minimum 2000 calorie diet and that the prison should provide him with an extra tray or extra meal, or comply with the Public Health Law which requires a daily minimum of 2000 calories. He states that the breakfast, lunch and Dinner each contains less than 500 calories which when added together, equals far less than the minimum 2000 calories and do not contain a variet of nutrients. As a result he suffers ailments related to nutritional deficiency such as frequent urination, dry skin, brittle bones, pulled muscles, cramps and numbness in limbs as well as a crowling empty stomach, which can be remedied by an extra tray or extra meal, or that prisons compliance with the Public Health Law of daily minimum 2000 or more diet. Currently he is indigent and has been indigent since his imprisonment in DOC's sept 2004, and therefore could not afford to purchase canteen products, Although canteen is not a supplement for a healthy diet which law says he is entitled to despite canteen items.

**Remedy Requested**

That prison comply with the Public Health Law of daily minimum 2000 calorie diet and or provide him with an extra tray or meal.

Dated July 7, 2005

**Staff Recipient**   Sullivan Daniel  CO II

**Signature**   _____

........................................................................................................................................

## DECISION BY SUPERINTENDENT

| | | | | | |
|---|---|---|---|---|---|
| **Appeal Received Date** | 11-JUL-2005 | **Decision Date** | | **Decision** | |
| **Decision By** | | | | | |
| **Reasons** | | | | | |
| **Signature** | | | | **Date** | |

........................................................................................................................................

## INMATE RECEIPT

| | | | |
|---|---|---|---|
| **Inmate's Name** | FOWLKES FELIPE O | **Institution** | MCI CEDAR JUNCTION |
| **Number** | W84202 | | |
| **Staff Recipient** | Sullivan Daniel  CO II | **Appeal Received Date** | 11-JUL-2005 |

**Superintendent's Signature**   _David Nolan_

ATTACHMENT "C"

**DEPARTMENT OF CORRECTION**
**INSTITUTION APPEAL FORM**
**FORWARD TO THE INSTITUTIONAL SUPERINTENDENT**

<u>SECTION A</u>

NAME: FELIPE FOWLKES    INSTITUTION: CEDAR JUNCTION

NUMBER: W84202   HOUSING UNIT: OU    DATE OF INCIDENT: June 23, 2005

APPEAL: I AM APPEALING those PORTIONS of MY GRIEVANCE #11434 which do NOT APPLY to the MEDICAL PROVIDER, which ARE: MY REQUEST FOR MY EXTRA TRAY OR EXTRA MEAL, AND that the PRISON COMPLY with the PUBLIC HEALTH LAW of dAILY MINIMUM REQUIREMENT OF A 2,000 CALORIE diet. (See ATTACHED PAGE)

**(ATTACH ADDITIONAL PAGE IF NECESSARY)**

**REMEDY**
**REQUESTED:** ① REVERSAL OF IGC 6-28-05 DECISION bASED UPON fACTS SET fORTH IN the APPEAL, that the PRISON COMPLY with the PUBLIC HEALTH LAW of dAILY MINIMUM 2000 CALORIE diet OR PROVIDE him with AN EXTRA TRAY OR EXTRA MEAL.    → see ATTACH PAGE

INMATE SIGNATURE: Felipe Fowlkes    DATE: July 7, 2005.

STAFF RECIPIENT: _____    DATE: _____

DATE RECEIVED: _____

--------------------------------------------------

<u>SECTION B</u>

ASSIGNED GRIEVANCE NUMBER: 11434

ASSIGNED INSTITUTION APPEAL NUMBER: _____

DECISION RENDERED:    ____ APPROVED
                       ____ DENIED

SUMMARY OF FINDINGS: _____
_____
_____
_____
_____

SUPERINTENDENT'S
SIGNATURE: _____    DATE: _____

<u>SECTION C</u>
**INMATE APPEAL RECEIPT**

INMATE NAME: _____    INSTITUTION: _____

NUMBER: _____    DATE RECEIVED: _____

RECEIPTING STAFF: _____    TITLE: _____

"D-part"

Grievance # 11434

# -Appeal-

INMATE complains that the June 28, 2005, decision on his inmate grievance # 11434; a copy of which is enclosed herewith, is erroneous because a portion or portions of the grievance does not apply to the medical provider and is therefore grievable through the DOC grievance process. He complains that the PRISON is responsible for him being deprived of a daily minimum 2000 calorie diet and that the PRISON should provide him with an extra tray or extra meal, or comply with the Public Health Law which requires a daily minimum of 2000 calories. He states that the BREAKFAST, LUNCH AND DINNER each contains less than 500 calories which when added together, equals ~~far~~ far less than the minimum 2000 calories and do not contain a variet of Nutrients. As a result, he suffers ailments related to nutritional deficiency such as frequent urination, dry skin, brittle bones, pulled muscles, cramps and numbness in limbs as well as a crawling empty stomach, which can be remedied by an extra tray or extra meal, or that PRISON'S compliance with the Public Health Law of ~~the~~ daily minimum 2000 or more calorie diet. Currently, he is indigent and has been indigent since his ~~imprisonment~~ imprisonment in DOCS Sept 2004, and therefore, could not afford to purchase canteen products, Althaigh

(continued on reverse side)

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | **Grievance#** 11434 | **Institution** MCI CEDAR JUNCTION | | |
| **Commit No.** | W84202 | **Housing** ORIENTATION ONE | | **Date Of Incident** 20050623 | **Date Of Grievance** | 20050623 |

**Complaint**  denial of medical treatment for nutritional deficiency and deprivatino of daily minimum 2000 calorie diet.  Inmate complaines that he is suffering from nutritional deficiency because he is not getting a sufficient amount of nutrients or calories per meal and necause the hypertension medicaitons he is taking absorbs the few nutrients or calories he receives from the deficient meals.  He states that regular exersise is required to help control high bloood pressure and for his general health, but that he is unable to exercise regularly due to a lack of sufficient calories in the meals.  He also suffers numbness in his limbs and other related illnesses.  He complains that the doctor and dietician refuses to treat him for this deficiency by providing him with supplememtal multiple vitamins (which he cannot afford to purchase due to his indigency); liquid dietary supplement called 'ensure; and by refusing to direct that he be provided with an extra meal or extra tray per meal.  He states that the daily dietary intake requires by law a minimum of 2,000 calories or more for those with speical dietary needs and that he's not receiwing the minimum daily requirements nor those which are required to meet his special dietary needs of additional calories.

**Remedy Requested**  That he be provided with supplemental multiple vitamins together with an extra meal or extra tray evry meal and/or that the prison comply with the public health law of daily minimum requirement of a 2,000 calorie diet.

**Staff Recipient**  Sullivan Daniel    CO II

**Staff Involved**

**Signature**

---

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received**  20050626    **Decision Date**  20050628

**Signature**  Aucoin Ann Marie    CO I

**Final Decision**  Non-Griev Med Treatmnt/Diagnos

**Decision**  Pursuant to 103 CMR 491, medical decisions are not grievable as the medical provider has it's own grievance process.  I have attached a medical grievance form for you to utilize.  You may submit your medical grievance to the Health Service Administrator in the HSU.

**Signature**                                                    **Date**  6/28/05

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

---

### INMATE RECEIPT

| | | | | |
|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | **Institution** | MCI CEDAR JUNCTION |
| **Commit No.** | W84202 | **Grievance#** 11434 | **Date Received** | 20050626 |

**Signature.**

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

*EXHIBIT "E"*

## FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| **Name** | FOWLKES FELIPE O | | **Grievance#** 11824 | **Institution** MCI CEDAR JUNCTION |
|---|---|---|---|---|

| **Commit No.** | W84202 | **Housing** ORIENTATION ONE | **Date Of Incident** | 20050711 | **Date Of Grievance** | 20050711 |
|---|---|---|---|---|---|---|

**Complaint**

The inmate complains that DOC policy (103 CMR 481) which prohibits him from subscribing to, possessing and receiving pornograpic magazines for Playboy, Penthouse, Players, and etx., is unconstitutional because it violates his first Amendment right to access to media or free speech and press. He further complains that since the prion and DOC have no legitimate reasons for restricting the pornographic magazines other than to :punish: him, that his due process rights are beingviolated as well as his fourteenth amendment right of equal protection of the law since other state and federal inmates are being permitted to receive the magazines.

**Remedy Requested**

To subscribe to, possess and receive pornographic magazines from Playboy, Penthouse, Players and etc.

**Staff Recipient**    Aucoin Ann Marie    CO I

**Staff Involved**

**Signature**

---

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20050712    **Decision Date** 20050713

**Signature**    AUCOIN ANN MARIE

**Final Decision**    DENIED

**Decision**    IN ACCORDANCE with 103 CMR 481 SPECIFICAlly 481.15 Section (6) PUBLICATIONS MAY Be excluded Solely because they contain SEXUAlly explicit MATERIAL OR feature NUDITY AS defiNed iN 103 CMR 481.06.

**Signature**                     **Date**    7/13/05

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

---

## INMATE RECEIPT

| **Name** | FOWLKES FELIPE O | | | **Institution** MCI CEDAR JUNCTION |
|---|---|---|---|---|

| **Commit No.** | W84202 | **Grievance#** 11824 | **Date Received** | 20050712 |
|---|---|---|---|---|

**Signature.**    Aucoin Ann Marie    CO I

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| Name | FOWLKES FELIPE O | | | **Institution** | MCI CEDAR JUNCTION | | |
|------|------------------|--|--|-----------------|-------|--|--|

| **Number** | W84202 | **Housing** | O1 | **Appeal Date** | 16-JUL-2005 | **Date Of Grievance** | 11-JUL-2005 |
|------------|--------|-------------|-----|-----------------|-------------|----------------------|-------------|

**Appeal Received Date**    18-JUL-2005

**Appeal**

The inmate appeals from the decision of IGC on the grounds that DOC policy 103 CMR 481.15 section (b) and 103 CMR 481.06,which prohibits him from subscribing to, possessing and receiving pornographic magazines from Playboy, Penthouse, Players, And etc., is unconstitutional because it violates his First Amendment Right to Access to media or Free Speech and press. The Appellant also states that since the prison and doc have no legitimate reasons for restricting the pornographic magazine other than to punish him,  that his due process rights are being violated as well as his 14th Amendment right of equal protection of the law since other state and federal inmates are being permitted to receive the magazines and because he is being punished without a hearing.

**Remedy Requested**

To subscribe to, possess and receive pornographic magazines from Playboy, Penthouse, Players and etc.  And that DOC 103 CMR 481 be revised to permit the right or privilege, and for such other and further reliefs as may compensate for or remedy the violations of his constitutional Rights.

Dated: July 15, 2005

**Staff Recipient**    Aucoin Ann Marie  CO I

**Signature**

## DECISION BY SUPERINTENDENT

| **Appeal Received Date** | 18-JUL-2005 | **Decision Date** | | **Decision** | |
|--------------------------|-------------|-------------------|--|--------------|--|

**Decision By**

**Reasons**

**Signature** _____ **Date** _____

## INMATE RECEIPT

| **Inmate's Name** | FOWLKES FELIPE O | **Institution** | MCI CEDAR JUNCTION |
|-------------------|------------------|-----------------|--------------------|

| **Number** | W84202 | **Appeal Received Date** | 18-JUL-2005 |
|------------|--------|--------------------------|-------------|

**Staff Recipient**    Aucoin Ann Marie  CO I

**Superintendent's Signature**    _Daniel Nolan_

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

EXHIBIT "F"

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

**Name** FOWLKES FELIPE O  **Grievance#** 11823  **Institution** MCI CEDAR JUNCTION

**Commit No.** W84202  **Housing** ORIENTATION ONE  **Date Of Incident** 20050712  **Date Of Grievance** 20050712

**Complaint**
The inmate complains that DOC inmate grievance program is not providing meaningful review of his inmate grievances, and the inmate grievance coordinator(s), Superintendent and Commissioner's grievance reviewer, Christian LaDucia, were and are not able to make informed decisions on his inmate grievances because the DOC grievance program does not have a "Master Index" containing a record of prior decisions by subject matter upon which they may rely on to base their decisions. As a result, the inmate claims he is being denied his first amendment right to effectively address DOC for redress of grievances, and that his right under the equal proteciton clause of the 14th Amendment is also being violated because the grievance coordinator, Superintendent, and Commissioner's grievance reviewer, may have made decisions allowing another inmate a right or privilege which they have denied to him. The inmate claims that he has the education and skills, and experience to prepare a master index system for the prison and DOC and would like to be assigned a job preparing it.

**Remedy Requested**
That the prison and DOC improve the inmate grievance program to provide for meaningful review of his inmate grievances by preparing a "master Index System containing a record of prior decisions by subject matter, upon which the grievance coordinator, Superintendent, and Commissioner's grievance reviewer may rely on to base their decisions, and that if possible, he be assigned a job to help prepare the Master Index System because he has the education, skills and experience, and for such other and further feliefs as may compensate for or remedy the violations of his constitutinal rights, and that the master index if prepared, be made availabel to him in the inmate population through law library or grievance program.

**Staff Recipient** Aucoin Ann Marie  CO I

**Staff Involved**

**Signature**

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

**Date Received** 20050712  **Decision Date** 20050715

**Signature** AUCION ANN MARIE CO I

**Final Decision** DENIED

**Decision** All grievances are processed pursuant to 103 CMR 491, INMATE GRIEVANCES. Each grievance is investigated and responded to individually based on supporting evidence that is provided and collected.

**Signature**  **Date** 7/15/05

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

### INMATE RECEIPT

**Name** FOWLKES FELIPE O  **Institution** MCI CEDAR JUNCTION

**Commit No.** W84202  **Grievance#** 11823  **Date Received** 20050712

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
#### FORWARD TO SUPERINTENDENT

| | | | | |
|---|---|---|---|---|
| **Name** | FOWLKES FELIPE O | | **Institution** | MCI CEDAR JUNCTION |

| **Number** | W84202 | **Housing** | O1 |
|---|---|---|---|

| **Appeal Date** | 16-JUL-2005 | **Date Of Grievance** | 12-JUL-2005 |
|---|---|---|---|

**Appeal Received Date** 18-JUL-2005

**Appeal**

The inmate appeals from the decision of the IGC on the grounds that DOC Inmate Grievance Program promulgated and maintained pursuant to 103 CMR 491, is not providing meaningful review of his inmate grievances and the grievance coordinator(s) Superintendent and Commissioner's grievance reviewer, Christian LaDucia, were and are not able to make informed decisions on his inmate grievances because the DOC grievance program does not have a "Master Index" containing a record of prior decisions by subject matter upon which they may rely on to base their decisions.

As a result, the Appellant claims that he is being denied his first Amendment Right to effectively Address DOC for redress of grievances, and that his right under the equal protection clause of the 14th Amendment is also being violated because the grievance Coordinator, Superintendent and Commissioner's grievance reviewer, may have made decisions allowing another inmate a right or privilege which they have denied to him.

The inmate claims that he has the education, skills and experience to prepare a Master Index System for the prison and DOC and would like to be assigned a job preparing it.

**Remedy Requested**

That the prison and DOC improve the inmate grievance program to provide for meaningful review of his inmate grievances by preparing a "Master Index System" containing a record of prior decisions by subject matter, upon which the grievance coordinator(s), superintendent(s) and commissioner's grievance reviewer may rely on to base their decisions, and if possible, he be assigned a job to help prepare the "Master Index System" because he has the education, skills and experience, and that the Master Index System if prepared, be made available to him in the inmate population through the grievance program and law library. He also requests such other and further reliefs as may compensate for or remedy the violations of his Constitutional Rights.
Dated: July 16, 2005.
W/enc. Decision

**Staff Recipient**    Aucoin Ann Marie   CO i

**Signature**

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date**    18-JUL-2005    **Decision Date**    **Decision**

**Decision By**

**Reasons**

**Signature**    **Date**

---

## INMATE RECEIPT

**Inmate's Name**   FOWLKES FELIPE O    **Institution**  MCI CEDAR JUNCTION

**Number**    W84202    **Appeal Received Date**    18-JUL-2005

**Staff Recipient**    Aucoin Ann Marie, CO I

**Superintendent's Signature**

EXHIBIT "G"

MARCH 21, 2005

FELiPE OTEZE FOWLKES# W84202
MCI- CEDAR JUNCTION
Box 100, So. WALpole, MA 02071

Commissioner: Kathleen M. Dennehy
MASS. Dept. of Correction
50 MAple street, Suite 3
MilFORd, MA 01757- 3698

IN Re: Placement iN Protective Custody PROGRAM oR Unit;
     Admission to INteR-State PRisoNeR exchange PROgRAM,
     ANd Status oN GORievances Referred to INteRNAl AFFAiRs.

DEAR Commissioner:

ON MARCH 7, 2005, AN iNMAte grievANce filed by me
WAS fowARded to the SupeRiNteNdent of CEdAR JuNCtioN
by the GRievANce CoORdiNAtoR foR his ActioN RegARdiNg
my PRotective Custody issues. I've consistently Requested
to be placed iN A PRotective Custody PROgRAm oR UNit.
The REASONS foR thAt REQUEST ARE set foRth iN my iNMAte
grievANce# 8836; A Copy oF which I've enclosed. The OFFiciAls
ANd SupeRiNteNdent oF CEdAR JuNctioN hAve been ReluctANt
to place me iN the PROgRAm oR UNit. I Would Simply ASK

(cont. oN Reverse side)

that you direct them and/or that your office, place me in the protective custody program or unit ASAP. I think the enclosed grievance spells out the reasons why such placement is necessary.

My next request, which could serve as an alternative, is to be admitted into the Inter-State Prisoner exchange program or to be housed in a facility of another state or federal jurisdiction. I was informed that in the past, you have housed your state prisoners in prisons of other states and/or federal jurisdictions. Therefore, I would ask that you consider me for such housing placement as well. Otherwise, I will be locked-in a cell for all the time I spend in your prison system under protective custody.

My next request is with respect to the status of my inmate grievances which were forwarded to your Internal Affairs, involving harrassments, assaults and attempts to kill me by your staff. They are numbered by Grievance Coordinator Ann Marie Giampietro of MCI-Concord as Grievance Numbers 7588, 7589, 8387, and 8394. I have not been seen or interviewed by any investigator with respect to them from your office. I simply ask that you look into them and them processed and me interviewed for whatever reliefs I may be entitled. They also contain part of the reasons why I requested Protective Custody , and to be housed out of state. I hope that you will give these matters your attention and prompt response. Thank you. Very truly yours, Felipe Oteze Foulkes

written copy: F.O.F./enc.

EXHIBIT "H"

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
## INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

| | | |
|---|---|---|
| **Name** | FOWLKES FELIPE O | **Institution** MCI CEDAR JUNCTION |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Number** | W84202 | **Housing** O1 | **Appeal Date** | 06-MAY-2005 | **Date Of Grievance** | 03-MAR-2005 |

**Appeal Received Date**    11-MAY-2005

**Appeal**

Inmate grievance #8836 at the direction of Administrative Assistant, Joanne Paquin

**Remedy Requested**

To be placed in protective custody program or unit ASAP or to be transferred to another state facility preferrably New York State DOCS

**Staff Recipient**

Barrett Patrick M  CO I

**Signature**

---

## DECISION BY SUPERINTENDENT

**Appeal Received Date**    11-MAY-2005    **Decision Date**    08-JUN-2005    **Decision**    DENIED

**Decision By**    Nolan David F  SUPERINTENDENT

**Reasons**    Be advised, pursuant to 103 CMR 491, Inmate Grievances, appeals must be filed within ten working days from receipt of a decision on the original grievance. You received a decision on grievance #8836 on March 7, 2005. You have clearly exhausted these time limits; however, the Director of Classification has been informed of your issues regarding your housing placement.

**Signature**    **Date**    6/7/15

---

## INMATE RECEIPT

**Inmate's Name**    FOWLKES FELIPE O    **Institution**    MCI CEDAR JUNCTION

**Number**    W84202    **Appeal Received Date**    11-MAY-2005

**Staff Recipient**    Barrett Patrick M  CO I

**Superintendent's Signature**



**Mitt Romney**
*Governor*
**Kerry Healey**
*Lieutenant Governor*
**Edward A. Flynn**
*Secretary*

*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Office of the Deputy Commissioner*
*P.O. Box 9125*
*Concord, MA  01742-9125*
*(978) 405-6622*
*Fax: (978) 405-6619*
*www.mass.gov/doc*



**Kathleen M. Dennehy**
*Commissioner*
**James R. Bender**
*Deputy Commissioner*

January 19, 2005

Felipe Fowlkes (W84202)
MCI Concord
P.O. Box 9106
Concord, MA. 01742

Dear Mr. Fowlkes:

Please be advised that your letter to Commissioner Dennehy dated December 17, 2004, has been referred to me for reply. I will attempt to address the issues raised in this letter. I cannot assist or advocate your position that you have been falsely convicted. You may, as stated in your letter, plan to exercise your appellate rights.

In terms of your status at MCI-Concord, you were classified for a level five facility. However, since that classification, you have received several disciplinary reports that may alter this placement recommendation. In the near future, a final decision will be made on your placement. It is likely that at some point in time you will be placed in a facility that requires you to be placed in a double cell.

In your letter, you included what appears to be a petition requesting restoration of privileges and rights, stating that you are making the request for yourself and other inmates. Be advised that you cannot speak for or represent other inmates.

You request changes in the grievance process. Please be advised that the Department of Correction is in the process of amending its Inmate Grievance Process. Since this is a Code of Massachusetts Regulation, any changes will need to be brought before a public hearing.

Regarding conditions of confinement, the Department of Correction facilities are accredited by the American Correctional Association. In order to achieve accreditation, the facilities must be in compliance with national standards. It is not possible to eliminate double bunking, nor are inmates assigned to cells based on their race. The Department of Correction is allowed by law to house awaiting trial inmates and sentenced inmates in the same facility. As for your issues with food, be advised that the meals are heart healthy and reviewed by a registered dietician for caloric intake and nutritional balance.

Printed on Recycled Paper

Exhibit "I"

You raise various issues concerning property, visits, inmate wages and smoking privileges. As mandated by Code of Massachusetts Regulations, clothing is available for purchase through the inmate canteen as stated in 103 CMR 403. If an inmate is indigent, he or she is provided with adequate clothing as noted in 103 DOC 755. Your request to purchase music by mail and Walkman cassette players by mail is denied. Property is limited to that which is available through the inmate canteen. Recreational equipment is purchased with profits from the inmate canteen.

Smoking is not allowed for inmates or staff at any facility. Your request to have smoking privileges restored is denied. Your request that inmates who do not work, are indigent or are awaiting transfer receive "idle pay" is also denied.

In regard to your request for conjugal visits, please be advised that this is not an option. We allow liberal visitation programs, and have family programs in some of our facilities. We are committed to keeping family bonds strong, as we believe this is an important part of reentry. We are not in a position, however, to provide free transportation for visitors.

I trust I have addressed your concerns.

Sincerely,

James R. Bender
Deputy Commissioner


cc:     Kathleen M. Dennehy, Commissioner
        File

$Exh$. "$I$"

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| Name | FOWLKES FELIPE O | | Grievance# 7589 | Institution | MCI CONCORD | | |
|---|---|---|---|---|---|---|---|
| Commit No. | W84202 | Housing J-1 | | Date Of Incident | 20041219 | Date Of Grievance | 20041220 |

**Complaint**

I am complaining that CO named "Pare" and another unknown named CO who was working on J-2 unit during the morning hours of Dec 19, 2004, at or between 10:30 and 11:00 am, used "unnesessary force and violence" against me, causing me to my throat, eye, left side of my head my back and abrasions on my hands and legs. On this morning I packed all of my property from the double bunked cell #23 and sat at the table in the recreation area. At that time I told Officer Pare that I wanted to leave the unit and asked him to call security to escort me off the unit, Officer Pare got up from his seat and desk and walked over to me while i was sitting down on the stool at the table and pulled at my property in my hand and then jumped me and wrestled me to the floor and began "strangling" or "chokigng " me with all his might to cut off my breath. The other CO came behind him and hit me in the face while I was wearing eyeglasses. He slammed the left side of my head to the floor and the glasses broke on the left side in my face causing serious damage and swelling to my left eye  and left side of my face. While the officer Pare was choking me, I was gasping for breath trying to tell them I could not breathe and they kept pretending as though they could not cuff me and I kept trying to put my hands behind my back so that  they could cuff me. After the cuffs were on, the officers continued to kick me in my back and slam my head to the floor while still choking me. After they lifted me up off of the floor to escort me off the unit,. some unknown officer had tied a cloth around my throat  and continued to strangle and choke me until I was out of breath  and I passed out in the hallway. I was not treated by the medical department for any of these injuries and no ex-rays were taken but only pictures by IPS of my face and head. I was later told that this was a custom or practice called "choke out an inmate". They never asked me to be cuffed up. They just jumped me. During the whole incident

**Remedy Requested**

That officers be counselled, reprimanded and a report be filed in their employment records of unjust treatment towards an inmate and such other administrative sanctions as the department deems appropriate. That there be a camera placed on J2 reception unit. That the officers be charged with assault against me and/or that the matter be referred to the local DA in my behalf to pursue assault charges against the officers. The full names of all officers involved in the incident and a copy of all the documents, photographs, and information obtained by IPS investigators. Monetary compensation as punitive damages and reliefs for the injuries I sustained, including repairing or replacing my eyeglasses which officers broke.

| Staff Recipient | Giampietro Ann Marie    CPO I |
|---|---|
| Staff Involved | Pare Stephen M  CO I |
| Signature | annMarie Giampietro |

---

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

| Date Received | 20041223 | Decision Date | 20041224 |
|---|---|---|---|
| Signature | Giampietro Ann Marie    CPO I | | |
| Final Decision | Referred to Internal Affairs | | |

**Decision**

Exhibit "J"

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| **Name** | FOWLKES FELIPE O | | | **Institution** MCI CONCORD | | | |
|---|---|---|---|---|---|---|---|
| **Commit No.** | W84202 | **Housing** J-1 | | **Date Of Incident** | 20041219 | **Date Of Grievance** | 20041220 |

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

Referred to Internal Affairs.

**Signature** _Ann Marie Giampietro_  **Date** _12-31-04_

✱ Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

### INMATE RECEIPT

| **Name** | FOWLKES FELIPE O | | | **Institution** MCI CONCORD | |
|---|---|---|---|---|---|
| **Commit No.** | W84202 | **Grievance#** 7589 | **Date Received** | 20041223 | |

**Signature.** Giampietro Ann Marie    CPO I