# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS:

Felipe "OTEZE" Fowlkes,

PLAINTIFF,

VS.

Civil Action

#05-CV-11749-JLT

KATHLEEN M. DENNEHY, et., AL.

DEFENDANTS.

## "DEFINITE STATEMENT ON EACH DEFENDANT"

A. DEFENDANT: Commissioner KATHLEEN M. DENNEHY.

1. Since PLAINTIFF WAS committed to MASS. D.O.C. At CONCORD PRISON ON September 17, 2004, UNTIL JANUARY 2005, AND CEDAR JUNCTION PRISON ON JANUARY 2005 UNTIL September 2005, AND NORFOLK PRISON ON September 2005 UNTIL December 2005, AND SOUZA-BARANOWSKI PRISON ON December 2005 UNTIL the PRESENT 2007, Commissioner KATHLEEN M. DENNEHY, hAS implemented, directed, AND maintained illegal punitive pROGRAM policies to punish him for being committed to D.O.C. by the denial AND depRIVATION OF ORDINARY PRISONER Rights, PRIVILEGES, AND IMMUNITIES PURSUANT to A PATTERN OR PRACTICE OF RESISTANCE to the full ENJOYMENT OF SUCH Rights, PRIVILEGES, AND immunities IN VIOLATION OF TITLE 42 USCA Sec. 1997a, AND IN VIOLATION OF MASS. GEN. LAWS chpt. 124 sec. 1(e)(l)(q) ON Commissioner's duties to

-1-

establish, maintain, and develop programs of Rehabilitation Rather than punitive programs, and in violation of Mass. Gen. Laws Chpt. 127 sec. 32, on the "Treatment of Prisoners", which requires that "all superintendents of the institutions under the supervision of the Commissioner of D.O.C. treat prisoners with the kindness which their obediance, industry, and good conduct merit."

2. In carrying out the illegal punitive program policies in violation of state and federal laws, Commissioner, Kathleen M. Dennehy, on Jan. 19, 2005, in response to plaintiff's December 17, 2004, requests, and on August 3, 2005 and Sept. 26, 2005, in response to plaintiff's inmate grievance #10874, and on December 28, 2005 and July 17, 2006, in response to plaintiff's inmate grievance #13516, deprived and denied plaintiff the right and privilege to smoke cigarrettes and tobacco products outdoors or in a designated area of Mass. D.O.C. prisons in the exercise of his first amendment religious way of life of the 5%ers Gods and Earths and in accord with the state created right.

3. In carrying out the illegal punitive program policies in violation of state and federal laws, Commissioner, Kathleen M. Dennehy, on Jan. 19, 2005, in response to plaintiff's December 17, 2004, request, and on August 3, 2005 and Sept. 26, 2005, in response to plaintiff's inmate grievance #10874, and on July 28, 2005 and October 19, 2005, in response to plaintiff's inmate grievanc #11434, and on December 28, 2005 and July 26, 2006, in response to plaintiff's grievance #13886, and on Sept. 8, 2006, in response to plaintiff's grievance numbers 19102 and 20230

-2-

And on October 4, 2006, in Response to plaintiff's inmate grievance #21061, and on June 1, 2007, in Response to plaintiff's grievance #26582, deprived and denied plaintiff adequate food which falls far below both the minimum and average daily Requirements of 2000 and 2775 calories and are without Required condiments; Required variety; and are Repetative, Repulsive, contaminated by tamperings, and excludes holiday meals even those offered by donations from other public and private sources.

4.  In carring out the illegal punitive program policies in violation of State and Federal laws, Commissioner, Kathleen M. Dennehy, on Jan. 19, 2005, in Response to plaintiff's December 17, 2004, Request, and on August 3, 2005 and September 26, 2005, in Response to plaintiff's inmate grievance #10874, and on Jan. 5, 2006 and Feb. 22, 2006, in Response to plaintiff's grievance #13514, deprived and denied plaintiff adequate clothes such as conventional slack-pants with pockets and zippers, long-sleeve shirts, boots or boot-shoes, sweatshirts, thermols, brief underware, and ski-coats to protect him from inclement North-eastern weather and to meet Rehabilitative standards. The clothing issued to him was and is punitive in style  and designed to punish, degrade and humiliate him and cause him health problems.

5.  In carrying out the illegal punitive program policies in violation of State and Federal laws, Commissioner, Kathleen M. Dennehy, on Jan. 19, 2005, in Response to plaintiff's December 17, 2004, Request, and on August 3, 2005 and Sept. 26, 2005, in Response to plaintiff's inmate

-3-

GRIEVANCE #10874, AND ON JULY 28, 2005 AND OCTOBER 19, 2005, IN RESPONSE TO PLAINTIFF'S INMATE GRIEVANCE #11331, DEPRIVED AND DENIED PLAINTIFF A SUBSIDIARY IDLE PAY AS A PORTION OR PERCENTAGE OF THE STATE AND FEDERAL STIPENDS GIVEN PRISONERS FOR CERTAIN PROGRAM OR WORK ASSIGNMENTS, AND THAT COMMISSIONER DENNEHY HAS DENIED HIM THE IDLE PAY HE WAS DUE WHEN D.O.C. WAS UNABLE TO PROVIDE HIM WITH THE WORK OR PROGRAM ASSIGNMENTS THAT THE STATE AND FEDERAL STIPENDS WERE PROVIDED FOR.

6. IN CARRYING OUT THE ILLEGAL PUNITIVE PROGRAM POLICIES IN VIOLATION OF STATE AND FEDERAL LAWS, COMMISSIONER, KATHLEEN M. DENNEHY, ON JANUARY 19, 2005, IN RESPONSE TO PLAINTIFF'S DECEMBER 17, 2004, REQUEST, AND ON AUGUST 3, 2005 AND SEPTEMBER 26, 2005, IN RESPONSE TO PLAINTIFF'S INMATE GRIEVANCE #10874, AND ON DECEMBER 28, 2005, IN RESPONSE TO PLAINTIFF'S INMATE GRIEVANCE #13896, DEPRIVED AND DENIED PLAINTIFF ADEQUATE CELL SPACE AND SUBJECTED HIM TO GERMS AND DISEASES FROM OTHER PRISONERS, AND TO RACIAL VIOLENCE AND HATRED FROM OTHER PRISONERS BY DOUBLE-BUNKING HIM IN RACIALLY SEGREGATED CELLS.

7. IN CARRYING OUT THE ILLEGAL PUNITIVE PROGRAM POLICIES IN VIOLATION OF STATE AND FEDERAL LAWS, COMMISSIONER, KATHLEEN M. DENNEHY, ON JAN. 19, 2005, IN RESPONSE TO PLAINTIFF'S DEC. 17, 2004, REQUEST, AND ON AUG. 3, 2005 AND SEPTEMBER 26, 2005, IN RESPONSE TO PLAINTIFF'S INMATE GRIEVANCE #10874, AND ON DEC. 28. 2006 AND SEPT. 5, 2006, IN RESPONSE TO PLAINTIFF'S INMATE GRIEVANCE #13887, DEPRIVED AND DENIED PLAINTIFF REHABILITATION RIGHTS THROUGH THE ASSOCIATION AND REPRESENTATION OF AN INMATE ORGANIZATION CALLED THE N.A.A.C.P. PLAINTIFF ALSO STATES THAT HE IS PUT IN A CONSTANT FEAR OF VIOLENCE IN ABSENCE OF ANY INMATE ORGANIZATIONS.

-4-

8. IN CARRYING out the illegal Punitive PROGRAM POLICIES IN VIOLATION OF STATE AND FEDERAL LAWS, COMMISSIONER, KATHLEEN M. DENNEHY, ON JAN. 19, 2005, IN RESPONSE to PLAINTIFF'S December 17, 2004, REQUEST, AND ON Aug. 3, 2005 AND September 26, 2005, IN RESPONSE to plaintiff's INMATE GRIEVANCE #10874, AND ON DEC. 28, 2005 AND Sept. 7, 2006, IN RESPONSE to plaintiff's INMATE GRIEVANCE #13883, deprived AND denied PLAINTIFF'S RIGHTS OF REHABILITATION through the ASSOCIATION AND REPRESENTATION OF AN INMATE ORGANIZATION called the INMATE LIASON Committee (ILC). PLAINTIFF ALSO STATES that he IS PUT IN A CONSTANT FEAR OF VIOLENCE IN ABSENCE OF ANY INMATE ORGANIZATIONS.

9. IN CARRYING out the illegal Punitive PROGRAM POLICIES IN VIOLATION OF STATE AND FEDERAL LAWS, COMMISSIONER, KATHLEEN M. DENNEHY, ON JAN. 19, 2005, IN RESPONSE to PLAINTIFF'S DEC. 17, 2004, REQUEST, AND ON Aug. 3, 2005 AND September 26, 2005, IN RESPONSE to PLAINTIFF'S INMATE GRIEVANCE #10874, AND ON Aug. 11, 2005 AND Nov. 22, 2005, IN RESPONSE to PLAINTIFF'S INMATE GRIEVANCE #11823, deprived AND denied plaintiff EQUAL PROTECTION OF the LAWS UNDER the 14th Amendment by failure to PREPARE AND MAINTAIN A "MASTER INDEX System" WITH A RECORD OF PRIOR INMATE GRIEVANCE decisions by subject MATTER UPON which to base decisions. AS A RESULT, the COORDINATORS have denied him RIGHTS AND PRIVILEGES that they have allowed other PRISONERS with whom he is SIMILARILY situated AS A PRISONER with A STATE CREATED LIBERTY INTEREST IN RECEIVING A FAIR AND UNBIASED REVIEW, INVESTIGATION AND decision ON his INMATE GRIEVANCES. COMMISSIONER DENNEHY ALSO denied

plaintiff the Rights of Rehabilitation by not allowing Inmate Representatives to partici- pate in the Review, Investigation, and decision making process of his Grievances in the same way inmates participate in the Inmate Grievance Program within New York State Department of Correctionals Services.

10. In carrying out the illegal punitive program policies in Violation of State and Federal Laws, Commissioner, Kathleen M. Dennehy, on Jan. 19, 2005, in Response to plaintiff's Dec. 17, 2004, Request, and on Aug. 3, 2005 and Sept. 26, 2005, in Response to plaintiff's Inmate Grievance #10874, and on Jan. 5, 2006 and Feb. 22, 2006, in Response to plaintiff's Inmate Grievance #13537, deprived and denied plaintiff Conjugal Visits as a funda- mental Right of Marital Privacy in the exercise of his Religion of the 5%ers Gods and Earths and the Rehabilitation of Visits from Relatives and friends by Transporta- tion afforded by D.O.C. through a Family Reunioun Program similar to the one established within New York State Docs.

11. In carrying out the illegal punitive program policies in Violation of State and Federal Laws, Commissioner, Kathleen M. Dennehy, on Jan. 19, 2005, in Response to plaintiff's December 17, 2004, and on Aug. 3, 2005 and September 26, 2005, in Response to plaintiff's Inmate Grievance #10874, deprived and denied plaintiff the Music by Mail Program to receive and possess Walkman Cassette Players and Cassette Tapes containing Religious 5%ers Gods and Earths music, and educational and free speech info.

-6-

12. IN CARRYING out the illegal punitive PROGRAM POLICIES IN VIOLATION of State And Federal LAWS, Commissioner KAthleen M. Dennehy, ON Aug. 3, 2005 And September 26, 2005, IN Response to plaintiff's Inmate GRIEVANCE #10874, And ON Aug. 11, 2005 And NOV. 18, 2005, IN Response to plaintiff's Inmate Grievance #11824, deprived And denied plaintiff FIRST Amendment Right to subscribe to And Receive the PORNographic magazines of PLAYboy, Penthouse, HUStLeR, And PLAYERS which the 103 CMR 481.15 (2)(g) Allows because they do Not pose A threat to the Security, good order or discipline of the INStitutions.

13. IN CARRYING out the illegal punitive PROGRAM POLICIES IN VIOLATION of State And Federal LAWS, Commissioner, KAthleen M. Dennehy, ON Aug. 3, 2005 And September 26, 2005, IN Response to plaintiff's Inmate GRIEVANCE #10874, And ON July 28, 2005 And Oct. 19, 2005, IN Response to PLAINtiff's Inmate GRIEVANCE #11331, discriminated Against plaintiff by depriving And denying him A 13" Color T.V. iN his cell due to his poverty while Allowing other PRISONERS with whom he is SimilARily Situated, to have 13" Color T.V.'S iN their cells, And would Neither Allow him to Receive A 13" Color T.V. AS A donation From other public And PRIVATE sources.

14. IN CARRYING OUT THE ILLEGAL PUNITIVE PROGRAM POLICIES IN VIOLATION OF STATE AND FEDERAL LAWS, COMMISSIONER, KATHLEEN M. DENNEHY, IN MARCH 2005, IN RESPONSE TO PLAINTIFF'S MARCH 21, 2005, REQUEST FOR PLACEMENT IN A PROTECTIVE CUSTODY PROGRAM AND PLAINTIFF'S MARCH 3, 2005, INMATE GRIEVANCE #8836 WHICH WAS ATTACHED TO THE MARCH 21, REQUEST, AND ON 12-28-05 IN RESPONSE TO PLAINTIFF'S INMATE GRIEVANCE #13512, AND ON JAN. 22, 2007 AND MARCH 17, 2007, IN RESPONSE TO PLAINTIFF'S INMATE GRIEVANCE #23851, DEPRIVED AND DENIED PLAINTIFF PLACEMENT IN A PROTECTIVE CUSTODY PROGRAM AND HAS DENIED HIM "SAFETY" BECAUSE THE STATE'S D.O.C. DID NOT HAVE A PROTECTIVE CUSTODY PROGRAM AT CEDAR JUNCTION PRISON BETWEEN JANUARY AND DECEMBER 2005. AS A RESULT HE WAS PLACED IN CEDAR JUNCTION'S ADMINISTRATIVE SEGREGATION S.M.U. IN 10 BLOCK ON JUNE 1, 2005, WHERE HE WAS PUNISHED BY THE S.M.U. RESTRICTIONS RATHER THAN PROTECTED. BECAUSE OF THE PUNISHMENTS, HE SIGNED OFF OF THE S.M.U. AT CEDAR JUNCTION IN JULY 2005 AND ENTERED GENERAL POPULATION WHERE HE WAS THREATENED BY INMATES WHO WERE ALLOWED TO EXERCISE AUTHORITY AND CONTROL OVER OTHER INMATES EATING AT MESSHALL TABLES, AND WAS THREATENED BY THOSE INMATES NOT TO EAT AT MESSHALL TABLES AND SUBSEQUENTLY ASSAULTED BY ONE OF THE INMATES WITH A WEAPON IN THE YARD AND SUSTAINED SERIOUS PHYSICAL INJURIES ON JULY 28, 2005, REQUIRING HOSPITALIZATION. THIS OCCURED BECAUSE COMMISSIONER DENNEHY FAILED TO PROVIDE HIM SAFETY BY NOT HAVING A PROTECTIVE CUSTODY PROGRAM AT CEDAR JUNCTION PRISON

And denied his REQUESTS AND INMATE GRIEVANCE FOR PROTECTION.

Commissioner Dennehy has a duty under M.G.L.c. 124 s. 1(Q) to provide plaintiff with safety.

In August 2005 plaintiff was threatened by inmate Joseph Druce and others while in S.M.U. in 9-Block At Cedar Junction At the REQUEST of STAFF/officers who informed and encouraged "Druce" and other prisoners about plaintiff's conviction charge on a sex offense and registration as a Risk level '3' Sexual offender. Consequently, he was threatened and stigmatized by all the prisoners on that 9-Block Tier, who threw feces, urine, and etc., in front of his cell and one of them threw a substance on plaintiff while the officers dropped their protection sheilds and allowed it. The other prisoners had called and labeled plaintiff a child Rapist, skinner, snitch, and nigger, nigger, nigger for several days. All of this occured because Commissioner Dennehy failed to provide him safety at Cedar Junction Prison by not having a protective custody program and denied his Request for Protection.

From Sept. to December 2005, plaintiff was continually punished by the S.M.U. Restrictions Rather than protected, in the S.M.U. At Norfolk Prison because Commissioner Dennehy failed to provide him safety by not having a protective

-9-

Custody Program At the Norfolk Prison And denied his Request for protection.

In December 2005 he was Assigned to A Protective Custody Unit At Souza- BARANOWSKI PRISON which is NOT A Protective Custody PROGRAM. While in the unit between December 2005 And November 2006, plaintiff was denied sufficient indigent hygienic items (i.e., soaps, toothpaste, toothbrush, deodorant, shampoo, Razors, shaving cream, shower slippers, And etc.) plaintiff was also denied A Prison Program or Job to EARN money to purchase items. He was constantly threatened by both Staff And inmates due to the Nature of his conviction charge on A Sex offense And Registration As A Risk Level '3' Sex offender of children on the same P/c unit where Catholic Priest John Geoghan was murdered by Another prisoner named Joseph Druce in 2003 because of his conviction on Sex charges. Inmates Are misclassified And put on the P/c unit At SBcc by Staff for that purpose of targeting for Assaults And murder other prisoners convicted on Sex charges. While on the P/c unit plaintiff meals were targeted And tampered with by spit And etc., from cooks, Staff, And inmates. Consequently, plaintiff was forced into the S.M.U. At Souza-BARANOWSKI in November 2006 where he is locked-in A cell 24 hours A day And punished by the S.M.U. Restrictions Rather than protected. plaintiff Requires protection from both Staff And inmates in the General populations And Protective Custody units of Mass. D.O.C. Prisons.

All of this has And is occuring to plaintiff because Commissioner Dennehy failed to provide him Safety by Not having A bona fide protective Custody PROGRAM in Accord with her duty to determine And develop programs for the needs of plaintiff. (M.G.L.c.124 sec.1(e) (F)(G)(H)(Q)

-10-

15.  IN CARRYING out the illegal punitive program policies IN VIOLATION of STATE AND FEDERAL LAWS, Commissioner, KATHLEEN M. DENNEHY, IN JULY 2005, promoted GANG AND RACIAL VIOLENCE towards him by ALLOWING prisoners At CEDAR JUNCTION PRISON to exercise Authority AND CONTROL OVER the MESSHALL TABLES AND OVER the PLAINTIFF by USE OF threats OF VIOLENCE AND ASSAULT to prevent him from sitting AND eating At MESSHALL TABLES. IN doing so, Commissioner DENNEHY failed to provide PLAINTIFF with "SAFETY" by ALLOWING prisoners to own AND group up At MESSHALLS TABLES by GANG, RACE, AND illegal AFFILIATIONS. PLAINTIFF STATES that Commissioner DENNEHY has A duty to MAKE AND PROMULGATE RULES AND REGULATIONS UNDER M.G.L. chpt. 124 sec. 1(Q) governing his "SAFETY" which INCLUDES implementing A "SEAT-by-LINE" Regulation IN MASS. D.O.C. PRISONS. AS A Result OF Commissioner DENNEHY's failure to promulgate AND implement the NECESSARY RULES AND REGULATIONS governing INMATE SAFETY AND SECURITY within the MESSHALLS OF MASS. D.O.C. PRISONS, PLAINTIFF WAS threatened AND seriously injured from AN ASSAULT by other other prisoners to prevent him from eating IN the MESSHALLS. ON August 12, 2005, PLAINTIFF filed INMATE GRIEVANCE #12502 seeking Among other things, MONETARY Compensations FOR the injuries he sustained AND Requested SAFE AND SECURE PRISON ENVIROMENT by the implementation OF A 'SEAT-by-LINE' Regulation IN the MASS. D.O.C. PRISONS' MESSHALLS to discourage AND prevent GANG AND RACIAL VIOLENCE towards him.

-11-

ON OR between October 31 And November 2005, Commissioner Dennehy, investigated And inquired into the Allegations in Plaintiff's Inmate Grievance #12502, pursuant to her duty under M.G.L. chpt. 124 sec. 1(i) And denied him the Reliefs Sought. The Plaintiff's Inmate Grievance had been denied by Acting Superintendent of Cedar Junction, John Marshall, JR., on Oct. 31, 2005, And forwarded to Commissioner Dennehy for Review.

16. In carrying out the illegal punitive program policies in violation of State And Federal Laws, Commissioner, Kathleen M. Dennehy, in July 2005, failed to provide plaintiff with safety during recreation in the Prison Yard At Cedar Junction And Along the walkways leading to And from the Yard or in Any Recreation Area in or outside of the Prison, by failing to provide security correctional officers to patrol the Recreation Areas in or outside of the Prison or Along the walkways. As a Result, Plaintiff was assaulted by another Prisoner on July 28, 2005, in the Recreation Yard And Along the walkway to the Recreation Yard At Cedar Junction Prison, And Sustained serious physical injuries Such As a Fractured Nose, head injuries, Stab wound And etc., which Required hospitalization And Suture Surgery. Plaintiff States that Commissioner Dennehy had a duty to provide him with "Safety" by promulgating Rules And Regulations under M.G.L.C. 124 sec. 1(Q) governing the Safety And Security

OF INMATES IN the RECREATION AREAS of the MASS. D.O.C. PRISONS which REQUIRES CORRECTIONAL OFFICERS to PATROL the RECREATION AREAS IN AND outside of the MASS. D.O.C. PRISONS AND ALONG the WALKWAYS. AS A RESULT of Commissioner's DENNEhY's failure to PROMULGATE AND implement the NECESSARY RULES AND REGULATIONS REQUIRING CORRECTION OFFICERS to PATROL the RECREATION AREAS, plaintiff WAS Approached AND Attacked by ANOTHER PRISONER ON A WALKWAY IN the RECREATION YARD AREA At CedAR JUNCTION PRISON.    ON August 12, 2005, plaintiff filed AN INMATE GRIEVANCE #12502, seeking Among other things, MONETARY compensations for the INJURIES he sustained AND REquested SAFE AND SECURE PRISON ENVIROMENTS by PROviding Security STAFF CORRECTION Officers to PATROL the RECREATION AREAS during RECREATION periods IN MASS. D.O.C. PRISONS. ON Oct. 31, 2005, Acting SuperINTENdENT of CedAR JUNCTION denied the GRIEVANCE AND FOWARDED it to Commissioner DENNEhy for REVIEW under M.G.L. chpt. 124 sec. 1(i), who Also denied the Reliefs sought.

17.   IN CARRYING out the illegal punitive PROGRAM policies IN VIOLATION of STATE AND FEDERAL LAWS, Commissioner, KATHLEEN M. DENNEhy, IN JUNE 2005, failed to MAKE AND PROMULGATE NECESSARY RULES AND REGU- LATIONS UNDER MASS. GEN. LAWS chpt. 124 sec. 1(Q) governing the discipline of INMATES with sufficient SANCTIONS FOR ASSAULTS AND INITIATED fights ON INMATE to INMATE.

The plaintiff States that the Regulations promulgated by Commissioner Kathleen M. Dennehy under 103 CMR 430.25 on "Discipline" Sanctions, Are insufficient to discourage Assaults and initiated fights Against him from other prisoners. Currently, inmates Receive less than 5-days And no more than 15-days for An Assault or initiated fight. When petitioner was Assaulted by Another prisoner at Cedar Junction on 7-28-05, the prisoner who Assaulted him, was Released into the general population the same day without Any lock-in. Moreover, the Cedar Junction officials Refused to file criminal charges Against the other prisoner which were Requested by the plaintiff in inmate Grievance #12310. The lack of sufficient Sanctions and Refusals to file criminal Charges At the Request of plaintiff, who was An inmate Assaulted by Another inmate, does no more than encourage initiated fights, Assaults, And violence Amongst the prisoners, which makes the prison enviroments unsafe And which caused plaintiff to be Assaulted by Another prisoner on July 28, 2005, At Cedar Junction during yard Recreation. On July 31, 2005, plaintiff filed inmate Grievance #12310 Requesting Amongst other things, that criminal charges be filed Against inmate Thomas DeLaCruz, who Assaulted him in Cedar Junction Recreation yard on July 28, 2005, with A weapon. In April 2006, Commissioner Dennehy Reviewed under M.G.L.C. 124 sec. 1(i), Acting Superintendent's John Marshall, JR.'s April 3, 2006, decision

-14-

denying the plaintiff the Reliefs sought in the Grievance which included monetary damages and follow-up medical examinations at the hospital in addition to the filing of criminal charges against inmate "Delacruz." In April 2006, Commissioner Dennehy denied plaintiff the Reliefs sought in Grievance #12310. On August 12, 2005, plaintiff filed Grievance #12502, seeking the Reliefs of mandatory criminal charges and maximum sanctions for assaults and initiated fights of an inmate(s) on another inmate. Between October 31 and November 2005, Commissioner Dennehy reviewed under M.G.L. chpt. 124 sec. 1(i), Acting Superintendent's John Marshall, Jr.'s decision denying plaintiff the Reliefs sought in Inmate Grievance# 12502. Commissioner Dennehy also denied plaintiff the Reliefs sought.

18. In carrying out the illegal punitive program policies in violation of state and federal laws, Commissioner, Kathleen M. Dennehy, on or between October 31, and Nov. 2005, in response to plaintiff's Inmate Grievance #12502 forwarded to her by Acting Superintendent of Cedar Junction, John Marshall, Jr., have refused to restore or implement ordinary prisoner rights and privileges as incentatives or rewards for good behavior to discourage misbehavior, and have therefore, made and promoted dangerous and unsafe prison enviroments which not only poses a constant threat to plaintiff's safety and well-being but also caused him to be assaulted on July 28, 2005, at Cedar Junction by another inmate.

-15-

B. Defendant: Deputy Commissioner, James R. Bender.

19. Since plaintiff was committed to Mass. D.O.C. at Concord prison on September 17, 2004 until January 2005, and Cedar Junction prison on January 2005 until September 2005, and Norfolk prison on September 2005 until December 2005, and Souza-Baranowski prison on December 2005 until the present 2007, Deputy Commissioner, James R. Bender, under the supervision and control of the Commissioner, has planned and directed illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the denial and deprivation of ordinary prisoner Rights, privileges, and immunities pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, and immunities in violation of Title 42 USCA Sec. 1997a and in violation of Mass. Gen. Laws chpt. 124 section 1(e)(L)(Q) on Commissioner's duties to establish, maintain, and develop programs of Rehabilitation rather than punitive programs, and in violation of Mass. Gen. Laws chpt. 127 sec. 32, on the "Treatment of Prisoners", which requires that "all Superintendents of the Institutions under the supervision of the Department of Correction treat prisoners with the kindness which their obediance, industry, and good conduct merit."

20. IN CARRYING out the illegal punitive PROGRAM policies IN VIOLATION of State AND Federal LAWS, Deputy Commissioner, James R. Bender, on JAN. 19, 2005, IN RESPONSE to PLAINTIFF'S December 17, 2004, Requests, deprived AND denied plaintiff the Right AND privilege to Smoke Cigar-Rettes AND tobacco products outdoors OR IN A designated AREA of MASS. D.O.C. PRISONS in the exercise of his FIRST Amendment Religious WAY of Life of the 5%ers Gods AND EARths AND IN Accord with the State CREATED Right.

21. IN CARRYING out the illegal punitive PROGRAM policies IN VIOLATION of State AND Federal LAWS, Deputy Commissioner, James R. Bender, on JAN. 19, 2005, IN RESPONSE to PLAINTIFF'S December 17, 2004, Request, deprived AND denied plaintiff AdeQuate Food which FAllS FAR below both the minimum AND AVERAGE daily REQUIREMENTS of 2000 AND 2775 CALORIES AND ARE without REQUIRED condiments; REQUIRED VARIETY; AND ARE Repetative, Repulsive, ContAMINATED by tamperings, AND excludes holiday meals even those offered by donations From other public AND private Sources.

22. IN CARRYING out the illegal punitive PROGRAM policies IN VIOLATION of State AND Federal LAWS, Deputy Commissioner, James R. Bender, on JAN. 19, 2005, IN RESPONSE to PLAINTIFF'S December 17, 2004,

deprived and denied plaintiff Adequate clothes such as conventional slack-pants with pockets and zippers, long-sleeve shirts, boots or boot-shoes, sweatshirts, thermols, brief underware, and ski-coats to protect him from inclement, North-eastern weather and to meet Rehabilitative standards. The clothing issued to plaintiff by D.O.C. was and is punitive in style and designed to punish, degrade and humiliate him and cause him health problems.

23. In carrying out the illegal punitive program policies in violation of state and federal laws, Deputy Commissioner, James R. Bender, on Jan. 19, 2005, in response to plaintiff's December 17, 2004, Request, deprived and denied plaintiff a subsidiary Idle Pay as a portion or percentage of the state and federal stipends given prisoners for certain program or work assignments, and that Deputy Commissioner, Bender, has denied him the Idle Pay he was due when D.O.C. was unable to provide him with the work or program assignments that the state and federal stipends were provided for.

24. In carrying out the illegal punitive program policies in violation of state and federal laws, Deputy Commissioner, James R. Bender, on Jan. 19, 2005, in response to plaintiff's Dec. 17, 2004, Request, deprived and denied plaintiff

Adequate cell space and subjected him to germs and diseases from other prisoners, and to racial violence and hatred from other prisoners by double-bunking him in racially segregated cells.

25. In carrying out the illegal punitive program policies in violation of state and federal laws, Deputy Commissioner, James R. Bender, on Jan. 19, 2005, in response to plaintiff's December 19, 2004, request, deprived and denied plaintiff his right of rehabilitation through the association and representation of an inmate organization called the N.A.A.C.P. Plaintiff also states that he is put in a constant fear of violence in absence of any inmate organizations.

26. In carrying out the illegal punitive program policies in violation of state and federal laws, Deputy Commissioner, James R. Bender, on Jan. 19, 2005, in response to plaintiff's December 17, 2004, request, deprived and denied plaintiff his right of rehabilitation through the association and representation of an inmate organization called the Inmate Liason Committee (ILC). Plaintiff also states that he is put in a constant fear of violence in absence of any inmate organizations.

27. IN CARRYING out the illegal punitive program policies in violation of state and federal laws, Deputy Commissioner, James R. Bender, on Jan. 19, 2005, in response to plaintiff's Dec. 17, 2004, request, deprived and denied plaintiff equal protection of the laws under the 14th Amendment by failure to prepare and maintain a "master index system" containing a record of prior decisions by subject matter upon which to base decisions. As a result, the coordinators have denied him rights and privileges that they have allowed other prisoners with whom he is similarily situated as a prisoner with a state created liberty interest in receiving a fair and unbiased review, investigation and decision on his inmate grievances. Deputy Commissioner, Bender, also denied plaintiff the right of rehabilitation by not allowing inmate representatives to participate in the review, investigation, and decision making process of his grievances in the same way inmates participate in the inmate grievance program within New York State D.O.C.S.

28. IN CARRYING out the illegal punitive program policies in violation of state and federal laws, Deputy Commissioner, James R. Bender, on Jan. 19, 2005, in response to plaintiff's Dec. 17, 2004, request, deprived and denied plaintiff conjugal visits as a fundamental right of marital privacy in the exercise of his religion

- 20 -

OF the 5%ers Gods And EARths And the Rehabilitation of visits From Relatives And friends by tRANsportation Afforded by D.O.C. through A FAmily Reunioun PROGRAM similAR to the one established within New York State D.O.C.S.

29. IN CARRying out the illegal punitive PROGRAM policies IN Violation of State And Federal LAWs, Deputy Commissioner, James R. Bender, on JAN. 19, 2005, IN Response to plaintiff's Dec. 17, 2004, Request, deprived And denied plaintiff the music by MAIL PROGRAM to Receive And possess WALKMAN CAssette PLAYERs And CAssette tapes containing Religious 5%ers Gods And EARths music, Educational, And free speech inFORMAtion.

30. IN CARRying out the illegal punitive PROGRAM policies in Violation of State And Federal LAWs, Deputy Commissioner, James R. Bender, on JAN. 19, 2005, in Response to plaintiff's Dec. 17, 2004, Request, deprived And denied plaintiff's FIRST Amend-ment Right to subscribe to And Receive the pornographic magazines of Playboy, Penthouse, PLAYERs, And Hustler, which the 103 CMR 481.15 (2)(9) Allows because they do Not pose A threat to the security, good order or discipline of the Institutions.

-21-

31. IN CARRYING out the illegal punitive program policies in violation of State and Federal laws, Deputy Commissioner, James R. Bender, on Jan. 19, 2005, in response to plaintiff's December 17, 2004, Request, have Refused to Restore or implement ordinary prisoner Rights and privileges as incentatives or Rewards for good behavior to discourage misbehavior, and have therefore, made and promoted dangerous and unsafe prison environments which not only poses a constant threat to plaintiff's safety and well-being, but also caused him to be assaulted by another prisoner on July 28, 2005, at Cedar Junction.

C. Defendant: Assistant Deputy Commissioner, Timothy Hall.

32. Since plaintiff was committed to Mass. D.O.C. at Concord prison on Sept. 17, 2004 until Jan. 2005, and Cedar Junction prison on Jan. 2005 until September 2005, and Norfolk prison on Sept. 2005 until Dec. 2005, and Souza-Baranowski prison on Dec. 2005 until the present 2007, Assistant Deputy Commissioner, Timothy Hall, under the supervision and control of the Commissioner, has planned and directed illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the denial and deprivation of ordinary prisoner Rights, privileges, and immunities in violation of Title 42 USCA Sec. 1997a and in violation of

MASS. GEN. LAWS chpt. 124 sec. 1(e)(L)(Q) on Commissioner's duties to establish, maintain, and develop programs of Rehabilitation Rather than punitive programs, and in violation of MASS. GEN. LAWS chpt. 127 sec. 32, on the "Treatment of Prisoners", which requires that "All Superintendents of the Institutions under the Supervision of the Department of Correction treat prisoners with the kindness which their obediance, industry, and good conduct merit."

33. In carrying out the illegal punitive program policies in violation of state and federal laws, Assistant Deputy Commissioner, Timothy Hall, between February and March 2006, and in April 2007, as a member of the D.O.C. Religious Services Review Committee, denied Plaintiff's February 2006, Religious Services Request to exercise the Religious way of life of the 5%ers Gods and Earth by being allowed to receive and smoke cigarettes and tobacco products outdoors or in a designated area of MASS. D.O.C. PRISONS.

34. In carrying out the illegal punitive program policies in violation of state and federal laws, Assistant Deputy Commissioner, Timothy Hall, in May 2006 and April 2007, as a member of the D.O.C. Religious Services Review Committee, denied Plaintiff's May 2006 Religious Services Request to receive conjugal visits as a fundamental right of marital privacy in the exercise of his religion of the 5%ers Gods and Earths.

-23-

35. IN CARRYING OUT the illegal punitive program policies in violation of State and Federal laws, Assistant Deputy Commissioner, Timothy Hall, in May 2006 and April 2007, as a member of the D.O.C. Religious Services Review Committee, denied plaintiff's May 2006, Religious Services Request to listen to the Religious Music, Songs, Proverbs, and messages of the 5%ers Gods and Earths Recording Artists on Walkman Cassette Players and Cassette Tapes.

D. DEFENDANT: Assistant Deputy Commissioner, John MARSHALL

36. Since plaintiff was committed to Mass. D.O.C. at Concord Prison on Sept. 17, 2004, until Jan. 2005, and Cedar Junction Prison on Jan. 2005 until Sept. 2005, and Norfolk Prison on Sept. 2005 until December 2005, and Souza-Baranowski Prison on Dec. 2005 until the present 2007, Assistant Deputy Commissioner, John Marshall, under the supervision and control of the Commissioner, has planned and directed illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the denial and deprivation of ordinary prisoner rights, privileges, and immunities in violation of Title 42 USCA sec. 1997a and in violation of Mass. Gen. Laws chpt. 124 sec. 1 (e)(l)(q) on Commissioner's duties to establish, maintain, and develop programs of

Rehabilitation Rather than punitive programs, and in violation of Mass. Gen. Laws chpt. 127 Sec. 32, on the "Treatment of Prisoners", which requires that "all Superintendents of the Institutions under the Supervision of the Department of Correction treat prisoners with the kindness which their obediance, industry, and good conduct merit."

37. In carrying out the illegal punitive program policies in violation of State and Federal Laws, Assistant Deputy Commissioner, John Marshall, between February and March 2006, and in April 2007, as a member of the D.O.C. Religious Services Review Committee, denied plaintiff's February 2006 Religious Services Request to exercise the Religious way of Life of the 5%ers Gods and Earths by being allowed to smoke cigarettes and tobacco products outdoors or in a designated area of Mass. D.O.C. Prisons.

38. In carrying out the illegal punitive program policies in violation of State and Federal Laws, Assistant Deputy Commissioner, John Marshall, in May 2006 and April 2007, as a member of the D.O.C. Religious Services Review Committee, denied plaintiff's May 2006 Religious Services Request to receive conjugal visits as a fundamental right of marital privacy in the exercise of his religion of the 5%ers Gods and Earths.

-25-

39. In carrying out the illegal punitive program policies in violation of state and federal laws, Assistant Deputy Commissioner, John Marshall, in May 2006 and April 2007, as a member of the D.O.C. Religious Services Review Committee, denied Plaintiff's May 2006, Religious Services request to listen to the religious music, songs, proverbs, and messages of the 5%ers Gods and Earths recording artists on walkman cassette players and cassette tapes.

E. Defendant: Associate Commissioner of Re-Entry and Re-Intergration, Veronica M. Madden.

40. Since Plaintiff was committed to Mass. D.O.C. at Concord Prison on Sept. 17, 2004, until Jan. 2005, and Cedar Junction Prison on Jan. 2005 until Sept. 2005, and Norlfolk Prison on Sept. 2005 until December 2005, and Souza-Baranowski Prison on December 2005 until the present 2007, Associate Commissioner, Veronica M. Madden, under the supervision and control of the Commissioner, planned, directed, and managed illegal punitive program policies to punish Plaintiff for being committed to D.O.C., by the denial and deprivation of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice of resistance to the full enjoyment of such rights,

-26-

privileges, and immunities in violation of Title 42 USCA Sec. 1997a And in violation of Mass. Gen. Laws chpt. 124 sec. 1 (e)(L)(a) on Commissioner's duties to establish, maintain, and develop programs of rehabilitation rather than punitive programs, and in violation of Mass. Gen. Laws chpt. 127 sec. 32, on the "Treatment of Prisoners", which requires that "all superintendents of the institutions under the supervision of the Department of Correction treat prisoners with the kindness which their obediance, industry, and good conduct merit."

41. In carrying out the illegal punitive program policies in violation of State and Federal Laws, Associate Commissioner, Veronica M. Madden, between February and March 2006, and in April 2007, as a member of the D.O.C. Religious Services Review Committee, denied plaintiff's February 2006 Religious Services Request to exercise the Religious way of life of the 5%ers Gods And Earths by being Allowed to smoke cigarettes and tobacco products outdoors or in a designated Area of Mass. D.O.C. Prisons.

42. In carrying out the illegal punitive program policies in violation of State and Federal Laws, Associate Commissioner, Veronica M. Madden, in May 2006 and April 2007, as a member of D.O.C. Religious Services Review Committee, denied plaintiff's

MAY 2006 Religious Services Request to receive conjugal visits as a fundamental right of marital privacy in the exercise of his Religion of the 5%ers Goods And Earths.

43. In carrying out the illegal punitive program policies in violation of State and Federal Laws, Associate Commissioner, Veronica M. Madden, in May 2006 and April 2007, as a member of D.O.C. Religious Services Review Committee, denied plaintiff's May 2006, Religious Services Request to listen to the Religious music, songs, proverbs, and messages of the 5%ers Goods and Earths recording artists on walkman cassette players and cassette tapes.

F. Defendant: Assistant Deputy Commissioner, Ronald T. Duval

44.   Since Plaintiff was committed to Mass. D.O.C. at Concord Prison on Sept. 17, 2004, until Jan. 2005, and Cedar Junction Prison on Jan. 2005 until September 2005, and Norfolk Prison on Sept. 2005 until Dec. 2005, and Souza-Baranowski Prison on Dec. 2005 until the present 2007, Assistant Deputy Commissioner, Ronald T. Duval, under the supervision and control of the Commissioner, planned and directed illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the denial and

-28-

deprivation of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, and immunities in violation of Title 42 USCA Sec. 1997a and in violation of MASS. Gen. Laws chpt. 124 Sec. 1 (e)(L)(Q) on Commissioner's duties to establish, maintain, and develop programs of rehabilitation rather than punitive programs, and in violation of MASS. Gen. Laws chpt. 127 sec. 32, on the "Treatment of Prisoners", which requires that "all Superintendents of the Institutions under the supervision of the Department of Correction treat prisoners with the Kindness which their obedience, industry, and good conduct merit."

45. In carrying out the illegal punitive program policies in violation of State and Federal Laws, Assistant Deputy Commissioner, Ronald T. Duval, between February and March 2006, and in April 2007, as a member of D.O.C. Religious Services Review Committee, denied plaintiff's February 2006 Religious Services Request to exercise the Religious way of life of the 5%ers Gods and Earths by being allowed to smoke cigarettes and tobacco products outdoors or in a designated area of MASS. D.O.C. Prisons.

46. In carrying out the illegal punitive program policies in violation of State and Federal Laws, Assistant Deputy Commissioner

Ronald T. Duval, in May 2006 and April 2007, as a member of D.O.C. Religious Services Review Committee, denied plaintiff's May 2006 Religious Services Request to receive conjugal visits as a fundamental right of marital privacy in the exercise of his religion of the 5%ers Gods and Earths.

47. In carrying out the illegal punitive program policies in violation of state and federal laws, Assistant Deputy Commissioner Ronald T. Duval, in May 2006 and April 2007, as a member of D.O.C. Religious Services Review Committee, denied plaintiff's May 2006, Religious Services Request to listen to the religious music, songs, proverbs, and messages of the 5%ers Gods and Earths Recording Artists on Walkman Cassette Players and Cassette Tapes.

G. Defendant: Department Grievance Coordinator, Kristie Ladouceur

48. Since plaintiff was committed to Mass. D.O.C. at Concord Prison on Sept. 17, 2004 until Jan. 2005, and Cedar Junction Prison on Jan. 2005 until Sept. 2005, and Norfolk Prison on Sept. 2005 until Dec. 2005, and Souza-Baranowski Prison on Dec. 2005 until the present 2007, Department Grievance Coordinator, Kristie Ladouceur, under the supervision and control of the Commissioner to review, investigate and decide inmate grievances, has reinforced illegal

-30-

punitive program policies to punish plaintiff for being committed to D.O.C., by the denial and deprivation of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, and immunities in violation of MASS. Gen. Laws chpt. 124 sec. 1 (e)(L)(Q) on Commissioner's duties to establish, maintain, and develop programs of rehabilitation rather than punitive programs, and in violation of MASS. Gen. Laws chpt. 127 sec. 32, on the "TREATMENT OF PRISONERS", which requires that "ALL Superintendents of the Institutions under the supervision of the D.O.C. treat prisoners with the kindness which their obediance, industry, and good conduct merit."

49. In reinforcing the illegal punitive program policies in violation of state and federal laws, Department Grievance Coordinator, Kristie Ladouceur, on Aug. 3, 2005 and Sept. 26, 2005, in response to plaintiff's inmate grievance #10874, and on Dec. 28, 2005 and July 17, 2006, in response to plaintiff's inmate grievance #13516, deprived and denied plaintiff the right and privilege to smoke cigarettes and tobacco products outdoors or in a designated area of MASS. D.O.C. prisons in the exercise of his First Amendment religious way of life of the 5%ers Gods and Earths and in accord with the state created right.

-31-

50.   IN REINFORCING   the illegal Punitive
PROGRAM policies IN VIOLATION OF STATE AND
FEDERAL LAWS, DEPARTMENT GRIEVANCE
COORDINATOR, KRISTIE LaDouceur, ON Aug. 3
2005 AND Sept. 26, 2005, IN RESPONSE TO
PLAINTIFF'S INMATE GRIEVANCE #10874, AND
ON JULY 28, 2005 AND October 19, 2005,
IN RESPONSE to PLAINTIFF'S INMATE GRIEVANCE
#11434, AND ON December 28, 2005 AND JULY
26, 2006, IN RESPONSE to PLAINTIFF'S INMATE
GRIEVANCE #13886, AND ON Sept. 8, 2006,
IN RESPONSE to PLAINTIFF'S INMATE GRIEVANCES
NUMBERS 19102 AND 20230, AND ON Oct. 4,
2006, IN RESPONSE to PLAINTIFF'S INMATE
GRIEVANCE #21061, AND ON JUNE 1, 2007, IN
RESPONSE to PLAINTIFF'S GRIEVANCE #26582,
depRived AND denied PLAINTIFF ADEQUATE
FOOD which FALLS FAR below both the
MINIMUM AND AVERAGE daily REQUIREMENTS
OF 2000 AND 2775 CALORIES AND ARE
without REQUIRED CONDIMENTS; REQUIRED
VARIETY; AND ARE Repetative, Repulsive;
CONTAMINATED by tAMPERINGS, AND excludes
holiDAY MEALS even those OFFERED by
DONATIONS From other public AND PRIVATE
SOURCES.

51.   IN REINFORCING   the illegal punitive
PROGRAM policies IN VIOLATION OF STATE AND
FEDERAL LAWS, DEPARTMENT GRIEVANCE
COORDINATOR, KRISTIE LaDouceur, ON Aug.
3, 2005 AND Sept. 26, 2005, IN RESPONSE
to PLAINTIFF'S INMATE GRIEVANCE #10874,
AND ON JAN. 5, 2006 AND Feb. 22, 2006,
IN RESPONSE to PLAINTIFF'S GRIEVANCE #13514,
depRived AND denied PLAINTIFF ADEQUATE

Clothes such as conventional slack-pants with pockets and zippers; long-sleeve shirts; boots or boot-shoes, sweat-shirts, thermals, brief underware, and ski-coats to protect him from inclement north-eastern weather and to meet rehabilitative standards. The clothing issued to plaintiff was and is punitive in style and designed to punish, degrade, and humiliate him and cause him health problems.

52. In reinforcing the illegal punitive program policies in violation of State and Federal laws, Department Grievance Coordinator, Kristie Ladouceur, on Aug. 3, 2005 and Sept. 26, 2005, in response to plaintiff's Inmate Grievance #10874, and on July 28, 2005 and October 19, 2005, in response to plaintiff's Inmate Grievance #11331, deprived and denied plaintiff a subsidiary idle pay as a portion or percentage of the State and Federal stipends given prisoners for certain program or work assignments, and that Department Grievance Coordinator, Kristie Ladouceur, has, as with all other inmate grievances filed by plaintiff, failed to act where she has a duty to act to remedy the deprivation, by granting him the idle pay he was due when D.O.C. was unable to provide him with the work or program assignments that the State and Federal stipends were provided for.

53. IN REINFORCING the illegal punitive program policies in violation of state and federal laws, Department Grievance Coordinator, Kristie Ladouceur, on Aug. 3 2005 and September 26, 2005, in response to plaintiff's inmate grievance #10874, and on Dec. 28, 2005, in response to plaintiff's inmate grievance #13896, deprived and denied plaintiff adequate cell space and subjected him to germs and diseases from other prisoners, and to racial violence and hatred from other prisoners by double-bunking him in racially segregated cells.

54. IN REINFORCING the illegal punitive program policies in violation of state and federal laws, Department Grievance Coordinator, Kristie Ladouceur, on Aug. 3 2005 and Sept. 26, 2005, in response to plaintiff's inmate grievance #10874, and on Dec. 28, 2005 and Sept. 5, 2006, in response to plaintiffs inmate grievance #13887, deprived and denied plaintiff the association and representation of an inmate organization called the N.A.A.C.P. Plaintiff also states that he is put in a constant fear of violence from inmates in absence of any inmate organizations because there are no positive inmate role models.

55. IN REINFORCING the illegal punitive program policies in violation of state and federal laws, Department Grievance Coordinator, Kristie Ladouceur, on Aug. 3,

-34-

2005 And Sept. 26, 2005, in Response to plaintiff's inmate Grievance #10874, And on Dec. 28, 2005 And Sept. 7, 2006, in Response to plaintiff's Inmate Grievance #13883, deprived and denied plaintiff's Rights of Rehabilitation through the Association and Representation of An inmate organization called the inmate Liason Committee (ILC). Plaintiff also states that he is put in a constant Fear of violence from inmates in Absence of Any inmate organizations because there are no positive inmate Role models.

56. In Reinforcing the illegal punitive program policies in violation of state And federal Laws, Department Grievance Coordinator, Kristie Ladouceur, on Aug. 3, 2005 And Sept. 26, 2005, in Response to plaintiff's inmate Grievance # 10874, And on Aug. 11, 2005 And Nov. 22, 2005, in Response to plaintiff's inmate Grievance #11823, deprived And denied plaintiff equal protection of the Laws under the 14th Amendment by failure to prepare and maintain a "master Index System" containing a record of prior decisions upon which to base grievance decisions. As a Result, the inmate grievance coordinators including the Department's Grievance Coordinator, Kristie Ladouceur, have denied plaintiff Rights and privileges that they have allowed other prisoners with whom plaintiff is similarily situated As a prisoner with

A state created liberty interest in receiving a fair and unbiased review, investigation and decision on his inmate grievances. Department Grievance Coordinator, Kristie Ladouceur, also denied plaintiff the rights of rehabilitation by not allowing inmate representatives to participate in the review, investigation, and decision making process of his grievances in the same way inmates participate in the inmate grievance program within New York State Department of Correctional Services.

57. In reinforcing the illegal punitive program policies in violation of State and Federal Laws, Department Grievance Coordinator, Kristie Ladouceur, on Aug. 3, 2005 and Sept. 26, 2005, in response to plaintiff's inmate Grievance #10874, and on Jan. 5, 2006 and Feb. 22, 2006, in response to plaintiff's inmate Grievance #13537, deprived and denied plaintiff conjugal visits as a fundamental right of privacy in the exercise of his religion of the 5%ers Goods and Earths and the rehabilitation of visits from relatives and friends by transportation afforded by D.O.C. through a family reunioun program similar to the one established within New York State D.O.C.S.

58. IN REINFORCING the illegal punitive PROGRAM policies IN VIOLATION OF State AND Federal LAWS, Department Grievance Coordinator, Kristie Ladouceur, on Aug. 3, 2005, AND Sept. 26, 2005, IN Response to plaintiff's INMATE Grievance #10874, deprived AND denied plaintiff the music BY MAIL PROGRAM to Receive AND possess WALKMAN Cassette Players AND Cassette Tapes to listen to the Religious music, songs, proverbs AND messages of the 5%ers Gods AND Earths Recording Artists, AND educational AND Free Speech information.

59. IN REINFORCING the illegal punitive PROGRAM policies IN VIOLATION OF State AND Federal LAWS, Department Grievance Coordinator, Kristie Ladouceur, on Aug. 3, 2005 AND Sept. 26, 2005, IN Response to plaintiff's INMATE Grievance #10874, AND on July 28, 2005 AND Oct. 19, 2005, IN Response to plaintiff's INMATE Grievance #11331, discriminated against plaintiff by depriving AND denying him A 13" Color T.V. in his cell due to his poverty, while Allowing other prisoners with whom he is similarily situated, to have 13" Color T.V.'s in their cells, AND would Not Allow him to Receive A 13" Color T.V. AS A donation from other public AND PRIVATE sources.

-37-

60. IN REINFORCING the illegal punitive program policies IN violation of State And Federal Laws, Department Grievance Coordinator, Kristie Ladouceur, between October 31 And Nov. 2005, IN Response to plaintiff's Inmate Grievance # 8836, And on Dec. 28, 2005 IN Response to plaintiff's Inmate Grievance # 13512, And on Jan. 22, 2007 And March 17, 2007, IN Response to plaintiff's Inmate Grievance # 23851, deprived And denied plaintiff placement IN A Protective Custody Program And has denied him "Safety" because the State's D.O.C. did Not have A Protective Custody Program At Cedar Junction Prison between January And September 2005. As A Result he was placed IN Cedar Junction's Administrative Segregation Unit (S.M.U.) IN 10 Block on June 1, 2005, where he was punished by the S.M.U. Restrictions Rather than protected. Because of the punishments, he signed off of S.M.U. At Cedar Junction IN July 2005, And entered General population where he was threatened by Inmates who were Allowed to exercise Authority And control over other inmates trying to eat At the messhall Tables, And was threatened with violence by those inmates controlling the tables And subsequently Assaulted by one of them with A weapon IN the Cedar Junction Yard And sustained serious physical injuries on July 28, 2005, Requiring hospitalization.

This happened to the plaintiff because Department Grievance Coordinator, denied his inmate grievances for protection and failed to act where she had a duty to act to ensure that Cedar Junction Prison and the State D.O.C. have a bona fide protective custody program to provide "safety" rather than punishment, for inmates who need it such as this plaintiff.

As a result of the Department Grievance Coordinator, Kristie Ladouceur, failure to act where she had a duty to act to provide in her grievance decisions, a bona fide State D.O.C. protective custody program, the plaintiff was again sent to the S.M.U. in 9-Block at Cedar Junction in August 2005, where he was punished by restrictions rather than protected because the State D.O.C. did not have a protective custody program.

While in 9-Block, the staff and C.O.'s informed and encouraged inmate Joseph Druce and others about plaintiff's conviction charge on a sex offense and registration as a risk level '3' sex offender. Consequently, he was continually threatened and stigmatized by all the prisoners on the 9-block tier. The prisoners threw feces, urine, and etc., in

in front of his cell door. And one of them threw A substance on plaintiff while officers who were suppose to have been protecting him, dropped their sheilds to Allow the prisoner to throw it on plaintiff. The prisoners had called and labeled plaintiff A child rapists, skinner, snitch, aat and other obscenities including Nigger, Nigger, Nigger, for several days. They didn't stop until plaintiff was transferred to Norfolk Prison. All of this occured because Department Grievance Coordinator, Kristie Ladouceur, who received the March 31, 2005, letter Attached with Grievance #8836, from the plaintiff, failed to act when she had A duty to act to provide plaintiff protection And because she failed to make A decision to implement A bona fide state protective custody program.

Between Sept. to December 2005, plaintiff was continually punished by the S.M.U. restrictions rather than protection, At Norfolk's prison despite his Grievance #13512 that he be protected rather than punished or placed in a bona fide protective custody program or transferred to another state's protective custody program such as in NYSDOCS. The Inmate Grievance #13512 was filed at Norlfork prison on Sept. 20, 2005. The Department Grievance Coordinator,

-40-

Kristie Ladouceur, directed the Institutional Grievance Coordinators and the Superintendent Spencer, to delay a decision on the Plaintiff's Inmate Grievance #13512. As a result, Superintendent Spencer did not decide and deny Plaintiff's Grievance until Dec. 28, 2005, at which time it became subject to Automatic Review by the Department Grievance Coordinator, Kristie Ladouceur, who also denied it.

In December 2005, Plaintiff was assigned to a Protective Custody Unit at Souza-Baranowski Prison, which is not a Protective Custody Program. Instead, it is a "Quasi or Semi-Satellite Unit". While in the unit between December 2005 and November 2006, Plaintiff was denied sufficient indigent hygeinic items (i.e., soap, toothpaste, toothbrush, deodorant, shampoo, razors, shaving cream, shower slippers, and etc.) Plaintiff was also denied a Prison Program or Job to earn money to purchase such items. He was constantly threatened by both Staff and Inmates due to the nature of his conviction charge on a sex offense against a child and Registration as a Risk Level '3' Sexual Predator of Children. This was the same unit amongst some of the same inmates, where Catholic Priest John Geoghan was murdered by another inmate named Joseph Druce, who had previously threatened Plaintiff. Inmates are misclassified and

-41-

put on that unit at SBCC by Staff for the purpose of targeting for assaults and murder, other prisoners convicted and registered on sex charges. Also, while on the unit, plaintiff meals were targeted and tampered with by spit and etc., from cooks, Staff, and inmates. Consequently, plaintiff was threatened off of the unit into the S.M.U. At Souza-Baranowski where he is locked-in a cell 24 hours a day and punished for protection by the S.M.U. restrictions rather than protected. Plaintiff requires protection from both Staff and inmates in the general populations and Protective custody units of Mass. D.O.C. prisons.

All of this has and is occuring to plaintiff because Department Grievance Coordinator, Kristie Ladouceur, failed to act where she had a duty to act to prevent the violations by making a decision on plaintiff's inmate grievances to provide him with "safety" rather than punishment, in a bona fide Protective Custody program.

61. In reinforcing the illegal punitive program policies in violation of state and federal laws, Department Grievance Coordinator, Kristie Ladouceur, on or between October 31 and November 2005, in response to plaintiff's inmate grievance #12502, fowarded to her for review by

Acting Superintendent, John Marshall, Jr., from Cedar Junction Prison, failed to act where she had a duty to act, by making a decision on plaintiff's inmate grievance, to implement a "seat-by-line" Regulation in Mass. D.O.C. prisons, including Cedar Junction, to prevent gang and racial violence towards the plaintiff by inmates involved in racism, gangs and illegal affiliations, being allowed to exercise authority and control over the plaintiff by threats of violence and assault to prevent plaintiff from sitting and eating at a messhall table in Mass. D.O.C. prisons at Cedar Junction and elsewhere. On July 28, 2005, plaintiff was assaulted by one of the threatening inmates and sustained serious physical injuries which he also requested Mass. D.O.C. to compensate him for. Department Grievance Coordinator, Kristie Ladouceur, also denied that aspect of the inmate grievance.

62. In reinforcing the illegal punitive program policies in violation of state and federal laws, Department Grievance Coordinator, Kristie Ladouceur, on or between October 31 and November 2005, in response to plaintiff's inmate grievance #12502, forwarded to her for review by Acting Superintendent, John Marshall, Jr., from Cedar Junction Prison, failed to act

-43-

Where she had a duty to act to provide plaintiff with "safety" during recreation in the Mass. D.O.C. prison yards and in all recreation areas in or outside of the prisons, including Cedar Junction, by requiring security correctional officers to patrol all of the recreation areas. Because these were no officers patrolling the yard recreation areas at Cedar Junction Prison, plaintiff was assaulted and received serious physical injuries on July 28, 2005, in Cedar Junction yard recreation area by another inmate. As part of the Inmate Grievance, plaintiff requested to be compensated for the physical injuries he sustained as a result of D.O.C.'s failure to provide him the safety of officers patrolling the prison yards and recreation areas. Department Grievance Coordinator, Kristie Ladouceur, also denied that relief sought in the Inmate Grievance.

63. In reinforcing the illegal punitive program policies in violation of state and federal laws, Department Grievance Coordinator, Kristie Ladouceur, on or between October 31 and November 2005, in response to plaintiff's Inmate Grievance #12502, fowarded to her for review by Acting Superintendent, John Marshall, JR., on October 31, 2005, from Cedar

-44-

Junction Prison, and in April 2006, in response to plaintiff's Inmate Grievance #12310, fowarded to her for review by Acting Superintendent, John Marshall, Jr., on April 3, 2006, from Cedar Junction Prison, denied and deprived plaintiff the relief of criminal charges against inmate Thomas Delacruz who approached and assaulted plaintiff with a weapon in Cedar Junction Yard on July 28, 2005. Department Grievance Coordinator, Kristie Ladouceur, also denied plaintiff the relief of monetary compensations for the injuries he sustained and also the reliefs of mandatory criminal charges and maximum disciplinary sanctions for assaults on inmate-to-inmate and/or initiated fights between inmates, to discourage violence amongst inmates and create safe prison enviroments.

64. In reinforcing the illegal punitive program policies in violation of state and federal laws, Department Grievance Coordinator, Kristie Ladouceur, on or between October 31 and Nov. 2005, in response to plaintiff's Inmate Grievance #12502, fowarded to her on Oct. 31, 2005, by Acting Superintendent of Cedar Junction, John Marshall, Jr., deprived and denied plaintiff ordinary prisoner rights and privileges as incentatives or rewards for good behavior, and have therefore, made

And promoted dangerous and unsafe prison enviroments which not only poses a threat to plaintiff's safety and well-being but also caused him to be assaulted on July 28, 2005, at Cedar Junction Prison by another inmate. Moreover, Department Grievance Coordinator, Kristie Ladouceur, has failed to act where she has a duty to act to remedy the foregoing violations.

## H. Defendant: Superintendent of Concord Prison, Peter Pepe

65. Since plaintiff was committed to Mass. D.O.C. at Concord Prison on September 17, 2004 until January 2005, Superintendent, Peter Pepe, under the supervision, control, planning and directions of the Commissioner, Deputy and Assistant Deputy Commissioners, has administered and enforced illegal punitive program policies to punish plaintiff for being committed to D.O.C. by the denial and deprivation of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, and immunities in violation of Title 42 USCA sec. 1997a and in violation of Mass. Gen. Laws chpt. 124 sec. 1(e)(4)(q) on Commissioner's duties to establish, maintain, and develop programs of rehabilitation rather than punitive programs, and in violation of Mass. Gen.

-46-

Laws, chpt. 127 sec. 32, on the "Treatment of Prisoners", which requires that "All Superintendents of the Institutions under the Supervision of the Department of Corrections treat prisoners with the kindness which their obediance, industry, and good conduct merit."

66. In Administering and enforcing the illegal punitive program policies in violation of State and Federal Laws, Superintendent, Peter Pepe, At Concord Prison, from Sept. 17, 2004 to Jan. 27, 2005, deprived plaintiff of his Religious and State created Rights to smoke cigarettes and tobacco products outdoors or in A designated area of the Prison; Adequate food; Adequate clothes; Idle work-program pay; Inmate organizations of the ILC and N.A.A.C.P.; Conjugal visits and free transportation for Relatives and friends to visit in A family Reunioun Program; Walkman Cassette Players and Cassette Tapes to listen to Religious music; educational and free speech information; men magazines of Playboy, Penthouse, Hustler and Players pornography; impartial and fair Inmate Grievance decisions. Also seat-by-line procedures in the mess-halls; security officers patrolling the recreation areas and double bunked plaintiff by Race with inadequate space. All of these deprivations administered and enforced by superintendent Peter Pepe are in accord with MASS. D.O.C. Policies on the unfair Treatment of Inmates.

67. IN Administering And enforcing the illegal punitive program policies in violation of state and Federal Laws, Superintendent, Peter Pepe, between December 2004 and January 2005, denied Plaintiff's written requests for protection from staff and other inmates who were targeting him for assaults and murder due to the nature of his conviction charge on a sex crime against a child and registration as a risk level '3' sexual predator of children. In doing so, Superintendent Peter Pepe, directed that plaintiff be re-classified to higher classification and transferred to Cedar Junction Prison where there was no protective custody program. Superintendent Peter Pepe also approved higher classificational transfer to Cedar Junction Prison in light of plaintiff's requests for protection.

68. IN Administering And enforcing the illegal punitive program policies in violation of state and Federal Laws, Superintendent, Peter Pepe, on Aug. 15, 2005, IN response to plaintiff's inmate grievances #7589 And #8387, deprived and denied plaintiff of the reliefs sought in the grievances which included but were not limited to, counsel, Reprimand, And criminal charges against Correction officers "Pare", "Dragone" And "Martin" for assaulting him on Dec. 19, 2004, in an attempt to murder plaintiff. The plaintiff also sought monetary compensations for the injuries he sustained from the assault

-48-

With intent to Kill him. Thus, Superintendent Peter Pepe failed to act where he had a duty to act to remedy the violations against plaintiff by Correction Officers at his facility.

## I. Defendant: Superintendent of Cedar Junction, David Nolan

69. Since plaintiff was committed to Mass. D.O.C. at Concord prison on Sept. 17, 2004 until January 2005, and Cedar Junction on January 2005 until September 2005, Superintendent, David Nolan, under the supervision, control, planning and directions of the Commissioner, Deputy and Assistant Deputy Commissioners, has administered and enforced illegal punitive program policies to punish plaintiff for being committed to D.O.C. by the denial and deprivation of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, and immunities in violation of Title 42 USCA Sec. 1997a and in violation of Mass. Gen. Laws Chpt. 124 Sec. 1(e)(L)(Q) on Commissioner's duties to establish, maintain, and develop programs

-49-

of Rehabilitation Rather than Punitive programs, and in violation of Mass. Gen. Laws, chpt. 127 Sec. 32, on the "Treatment of Prisoners", which requires that "All Superintendents of the Institutions under the Supervision of the Department of Correction treat Prisoners with the kindness which their obediance, industry, and good conduct merit."

70. In administering and enforcing the illegal punitive program policies in violation of State and Federal Laws, Superintendent, David Nolan, on Aug. 3, 2005, in response to plaintiff's Inmate Grievance #10874, and on July 28, 2005, in response to plaintiff's Inmate Grievance #11434, and on July 28, 2005, in response to plaintiff's Inmate Grievance #11331, and on Aug. 11, 2005, in response to plaintiff's Inmate Grievance #11824, and on June 8, 2005, in response to plaintiff's Inmate Grievance #8836, and on July 31, 2005, in response to plaintiff's Inmate Grievance #12310, and on Aug. 12, 2005, in response to plaintiff's Inmate Grievance #12502, and on Aug. 17, 2005, in response to plaintiff's Inmate Grievance #12574, deprived and denied plaintiff his Religious and State created Rights to smoke cigarettes and tobacco products outdoors or in a designated area of the prison; adequate food; adequate clothes; Idle work/program pay; Inmate organizations such as the N.A.A.C.P. and I.L.C.; Relief from double-bunking by race with inadequate space; conjugal visits and free transpor-

-50-

tation for relatives and friends to visit in a family reunioun program; Walkman cassette players and cassette tapes to listen to religious music, educational and free speech information; men pornographic magazines of Playboy, Penthouse, Hustler, and Players; impartial and non-discriminatory inmate grievance decisions; denied protective custody and punished in S.M.U. by S.M.U. restrictions rather than protected because of not having a bona fide protective custody program; deprived and denied seat-by-line procedures in the messhall which resulted in inmates exercising their authority and control over plaintiff by gangs, race and illegal affiliations claiming ownership of messhall tables and threatened plaintiff with violence and assaulted plaintiff on July 28, 2005, to prevent plaintiff from eating at messhall tables; and deprived and denied plaintiff safety by not having security officers patrolling the yard and recreation areas in and outside of prison, which resulted in plaintiff being approached and assaulted by another inmate with a weapon on July 28, 2005, causing plaintiff serious physical injuries which required hospitilization; deprived and denied plaintiff criminal charges against the inmate who feloniously assaulted him pursuant to Mass. Gen. Law chpt. 127 sec. 38C; and deprived and denied plaintiff the maximum sanctions for inmate-on-inmate assaults and initiated fights between inmates, to create a safe prison enviroment; "in-cell 13" color T.V. discrimination due to poverty; and deprived and denied

-51-

Plaintiff Monetary Compensation for the injuries he sustained from the assault caused by Nolan's neglect to implement the proper security procedures in the messhalls, yards and all recreation areas.

Therefore, not only did Superintendent David Nolan deny plaintiff all of the foregoing rights, privileges, and immunities in his decisions on plaintiff's inmate grievances, but Superintendent Nolan also failed to act where he had a duty to act to remedy the violations.

Furthermore, all of the foregoing deprivations of rights, privileges and immunities, administered and enforced by Superintendent David Nolan, are pursuant to Mass. D.O.C. illegal punitive program policies on the unfair treatment of prisoners.

# I. (1). Defendant: Superintendent of Norfolk Prison, Luis Spencer

71. Since Plaintiff was committed to Mass. D.O.C. at Concord Prison on Sept. 17, 2004 until January 2005, and Cedar Junction on January 2005 until September 2005, and Norfolk Prison on September 2005 until December 2005, Superintendent, Luis Spencer, under the supervision, control, planning and directions of the Commissioner, Deputy and Assistant Deputy Commissioners, has administered and enforced illegal punitive program policies to punish Plaintiff for being committed to D.O.C. by the denial and deprivation of ordinary prisoner Rights, privileges and immunities, pursuant to a pattern or practice of Resistance to the full enjoyment of such Rights, privileges, and immunities in Violation of Title 42 USCA sec. 1997a and in Violation of Mass. Gen. Laws chpt. 124 sec. 1 (e)(l)(q) on Commissioner's duties to establish, maintain, and develop programs of Rehabilitation Rather than punitive programs, and in Violation of Mass. Gen. Laws chpt. 127 sec. 32, on the "Treatment of Prisoners", which Requires that "all Superintendents of the Institutions under the Supervision of the

Department of Correction treatment of prisoners with the kindness which their obediance, industry, and good conduct merit."

72. In Administering and enforcing the illegal punitive program policies in violation of state and federal laws, Superintendent, Luis Spencer, on December 28, 2005, in response to plaintiff's Inmate Grievance # 13516, and on December 28, 2005, in response to plaintiff's Inmate Grievance # 13886, and on Jan. 5, 2006, in response to plaintiff's Inmate Grievances # 13514, and on December 28, 2005, in response to plaintiff's Inmate Grievance # 13896, and on December 28, 2005, in response to plaintiff's Inmate Grievance # 13887, and on December 28, 2005, in response to plaintiff's Inmate Grievance # 13883, and on Jan. 5, 2006, in response to plaintiff's Inmate Grievance # 13537, and on December 28, 2005, in response to plaintiff's Inmate Grievance # 13512, deprived and denied plaintiff his religious and state created rights to smoke cigarettes and tobacco products outdoors or in a designated area of the prison; adequate food; adequate clothes; idle work/program pay; representation and association through inmate organizations such as the N.A.A.C.P. and I.L.C.; conjugal visits and free transportation for relatives and friends to visit him in a family reunioun program similar to or the same as NYSDOCS; walkman cassette players and cassette tapes to listen to religious music, educational and free speech information; in-cell 13" color T.V. due to poverty;

-54-

Relief from double-bunking by RACE with inadequate space; men pornographic magazines of Playboy, Penthouse, Hustler, and Players; impartial and non-discriminatory Inmate Grievance Decisions; protection without punishment of S.M.U. Restrictions because of Not having A bona fide protective custody program; Seat-by-line procedures in the messhalls to prevent inmates from exercising authority and control over the tables by Gangs, Race and illegal affiliations to threaten plaintiff with violence and assault plaintiff to prevent plaintiff from eating at a messhall table; Security correctional officers patrolling the Yards and all recreation areas in or outside of prison; mandatory criminal charges and maximum sanctions for inmate-on-inmate assaults and initiated fights to create a safe prison enviroment.

Not only has Superintendent Luis Spencer denied plaintiff all of the foregoing rights, privileges, and immunities in his decisions on plaintiff's Inmate Grievances, but Superintendent Luis Spencer, has also failed to act where he had a duty to act to remedy the violations.

All of the foregoing deprivations of plaintiff's rights, privileges, and immunities, administered and enforced by Superintendent, Luis Spencer, are pursuant to Mass. D.O.C. illegal punitive program policies on the unfair treatment of prisoners.

-55-

J. DEFENDANT: DANIEL SULLIVAN, C.O. II, I.G.C.

73. Since Plaintiff was committed to Mass. D.O.C. at Concord Prison on Sept. 17, 2004 until Jan. 2005, and Cedar Junction Prison on Jan. 2005 until Sept. 2005, Institution Grievance Coordinator, Daniel Sullivan, under the supervision and control of the Commissioner and Department Grievance Coordinator, to review, investigate, and decide Inmate Grievances, has reinforced illegal punitive program policies to punish Plaintiff for being committed to D.O.C., by the deprivation of ordinary prisoner Rights, privileges, and immunities pursuant to a pattern or practice of resistance to the full enjoyment of such Rights, privileges and immunities in violation of Title 42 USCA 1997a and Mass. Gen. Laws chpt. 124 Sec. 1 (e)(L)(Q) on Commissioner's duties to establish, maintain, and develop programs of Rehabilitation rather than punitive programs, and in violation of Mass. Gen. Laws chpt. 127 Sec. 32, on the "Treatment of Prisoners", which requires that "All Superintendents of the Institutions under the supervision of the D.O.C. treat prisoners with the kindness which their obediance, industry, and good conduct merit."

-56-

74. In reinforcing the illegal punitive program policies in violation of state and federal laws, Institution Grievance Coordinator, Daniel Sullivan, on May 30, 2005, in response to plaintiff's Inmate Grievance # 10874, and on July 11, 2005, in response to plaintiff's Inmate Grievance # 11434, deprived and denied plaintiff his religious and state created rights to smoke cigarettes and tobacco products outdoors or in a designated area of the prisons; adequate food; adequate clothes; idle work-pay; in-cell 13" color T.V. due to poverty; representation and association through inmate organizations such as the N.A.A.C.P. and I.L.C.; conjugal visits and free transportation for relatives and friends to visit him in a family reunioun program similar to or the same as NYSDocs; walkman cassette players and cassette tapes to listen to religious music; educational and free speech information; men pornographic magazines of Playboy, Penthouse, Hustler, and Players; impartial and non-discriminatory inmate grievance decisions; protection without punishment of S.M.U. restrictions because of not having a bona fide protective custody program; seat-by-line procedures in the messhalls to prevent inmates from exercising authority and control over the tables by gangs, race and illegal affiliations to threaten plaintiff with vidence and assault plaintiff to prevent plaintiff from eating at a messhall table; relief from double-bunking by race with inadequate space;

-57-

Security correctional officers patrolling the yards and all recreation areas in or outside of prison; mandatory criminal charges and maximum sanctions for inmate-on-inmate assaults and initiated fights to create a safe prison enviroment.

Not only has Institution Grievance Coordinator, Daniel Sullivan, denied plaintiff all of the foregoing Rights, privileges, and immunities, in his decisions on plaintiff's Inmate Grievances, but Institution Grievance Coordinator, Daniel Sullivan, has also failed to act where he had a duty to act to Remedy the violations.

Moreover, all of the foregoing deprivations of plaintiff's Rights, privileges, and immunities, Reinforced by Institutional Grievance Coordinator, Daniel Sullivan, are pursuant to Mass. D.O.C. illegal punitive program policies on the unfair treatment of prisoners.

K. DEFENDANT: KIMBERLY KENNEY, C.O. II
    INSTITUTION GRIEVANCE COORDINATOR:

75. Since PLAINTIFF WAS committed to MASS. D.O.C. At CONCORD PRISON on Sept. 17, 2004 UNTIL JAN. 2005, And CEDAR JUNCTION PRISON ON JAN. 2005 UNTIL SEPT. 2005, And NORFOLK PRISON ON Sept. 2005 UNTIL DEC. 2005, INSTITUTION GRIEVANCE COORDINATOR, Kimberly Kenney, UNDER the SUPERVISION And CONTROL of the COMMISSIONER And DEPARTMENT GRIEVANCE COORDINATOR, have REINFORCED illegal punitive PROGRAM POLICIES to PUNISH PLAINTIFF FOR being committed to D.O.C., by the DEPRIVATION OF ORDINARY PRISONER RIGHTS, PRIVILEGES, And immunities PURSUANT to A PATTERN OR PRACTICE OF RESISTANCE to the full ENJOYMENT OF Such Rights, PRIVILEGES, And immunities IN VIOLATION of TITLE 42 USCA SEC. 1997a, And IN VIOLATION OF MASS. GEN. LAWS Chpt. 124 Sec. 1 (e)(L)(Q) ON Commissioner's duties to establish, MAINTAIN, And develop PROGRAMS OF Rehabilitation RATHER THAN punitive PROGRAMS, And IN VIOLATION OF MASS. GEN. LAWS Chpt. 127 Sec. 32, ON the "TREATMENT OF PRISONERS", which REQUIRES that "ALL SUPERINTENDENTS OF the INSTITUTIONS UNDER the SUPERVISION of the D.O.C., TREAT PRISONERS with the KINDNESS which their OBEDIANCE, INDUSTRY, And good conduct merit."

76. In reinforcing the illegal punitive program policies in violation of state and federal laws, Institution Grievance Coordinator, Kimberly Kenney, on Dec. 7, 2005, in response to plaintiff's inmate grievance #13887, and on Dec. 8, 2005, in response to plaintiff's inmate grievance #13883, and on Dec. 7, 2005, in response to plaintiff's inmate grievance #13516, and on Dec. 8, 2005, in response to plaintiff's inmate grievance #13537, and on Dec. 7, 2005, in response to plaintiff's inmate grievance #13514, and on Dec. 16, 2005, in response to plaintiff's inmate grievance #13886, and on Dec. 8, 2005, in response to plaintiff's inmate grievance #13896, and on Dec. 7, 2005, in response to plaintiff's inmate grievance #13512, deprived and denied plaintiff his religious and state created rights to smoke cigarettes and tobacco products outdoors or in a designated area of the prison; adequate clothes; adequate food; idle work/program pay; representation and association through inmate organizations such as the N.A.A.C.P. and I.L.C.; conjugal visits and free transportation for relatives and friends to visit him in a family reunioun program similar to or the same as NYSDOCS; walkman cassette players and cassette tapes to listen to religious music, educational and free speech information; in-cell 13" color T.V. due to poverty; men pornographic magazines of playboy, penthouse, hustler, and players; impartial and non-discriminatory inmate grievance decisions; relief from double-bunking by race with inadequate space;

PROTECTION without PUNISHMENT of S.M.U. RESTRICTIONS because of Not having A BONA FIDE PROTECTIVE CUSTODY PROGRAM; seat-by-line procedures in the messhalls to prevent inmates from exercising authority and control over the tables by gangs, race, and illegal affiliations to threaten plaintiff with violence and assault plaintiff to prevent plaintiff from eating at a messhall table; security correctional officers patrolling the prison yards and all recreation areas in or outside of prison; MANDATORY CRIMINAL charges and maximum sanctions for inmate-on-inmate assaults and initiated fights between inmates, to create a safe prison enviroment.

Not only has Institution Grievance Coordinator, Kimberly Kenney, denied plaintiff all of the foregoing rights, privileges, and immunities, in her decisions on plaintiff's inmate grievances, but Institution Grievance Coordinator, Kimberly Kenney, has also failed to act where she had a duty to act to remedy the violations.
Furthermore, all of the foregoing depri- vations of plaintiff's rights, privileges, and immunities, reinforced by Institution Grievance Coordinator, Kimberly Kenney, are pursuant to MASS. D.O.C. illegal punitive program policies on the unfair treatment of prisoners.

-61-

L. DEFENDANT: LOIS RUSSO, SUPERINTENDENT
OF SOUZA-BARANOWSKI PRISON

77.     Since plaintiff was committed to MASS. D.O.C. At Concord Prison on Sept. 17, 2004 until Jan. 2005, and Cedar Junction Prison on Jan. 2005 until Sept. 2005, and Norfolk Prison on Sept. 2005 until December 2005 and Souza-Baranowski Prison on December 2005 until the present 2007, Superintendent, Lois Russo, under the supervision, control, planning and directions of the Commissioner, Deputy and Assistant Deputy Commissioners, has administered and enforced illegal punitive program policies to punish plaintiff for being committed to D.O.C. by the denial and deprivation of ordinary prisoner rights, privileges and immunities, pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges and immunities, in violation of Title 42 USCA Sec. 1997a and in violation of MASS. Gen. Laws chpt. 124 Sec. 1(e)(L)(Q) on Commissioner's duties to establish, maintain, and develop programs of rehabilitation rather than punitive programs, and in violation of MASS. Gen. Laws chpt. 127 Sec. 32, on the "Treatment of Prisoners", which requires that "all superintendents of the institutions under the supervision of the department of

-62-

CORRECTION treat PRISONERS with the kind-
Ness which their obediance, industry, And
good conduct merit."

78. IN Administering And enforcing the
illegal punitive PROGRAM policies iN
VIOLATION of STATE And FEDERAL LAWS,
Superintendent, Lois RUSSO, ON Sept. 14,
2006, iN Response to Plaintiff's Inmate
Grievance # 21061, And ON Aug. 2, 2006, iN
Response to plaintiff's Inmate Grievance # 19102,
And on Aug. 14, 2006, iN Response to plaintiff's
Inmate Grievance # 20230, And ON JAN. 17, 2007,
iN Response to plaintiff's Inmate Grievance # 23851,
And ON MAY 15, 2007, iN Response to plaintiff's
Inmate Grievance # 26582, And iN Feb. 2006,
iN Response to plaintiff's Inmate Religious
Services Request to exercise the 5%ers Gods
And Earths way of Life to Smoke cigarettes And
tobacco products outdoors or iN A designated
AREA of the PRISON, And iN MAY 2006 iN Response
to plaintiff's Inmate Religious Services Request
to exercise the 5%ers Gods And Earths way
of Life to Receive Conjugal Visits AS A
fundamental Right of MARITAL privacy iN the
exercise of his Religion of the 5%ers Gods And
Earths, And iN MAY 2006, iN Response to
plaintiff's Inmate Religious Services Request
to Listen to the Religious MUSIC, Songs,
proverbs, And messages of the 5%ers Gods And
Earths Recording Artists ON WALKMAN CASSETTE
Players And CASSETTE tapes, deprived And
denied plaintiff his Religious And State
CREATED Rights to Smoke Cigarettes And
tobacco products outdoors or iN A designated
AREA of the PRISON; Conjugal Visits And FREE

-63-

transportation for relatives and friends to visit him in a family reunion program similar to or the same as NYSDOCS; Walkman cassette players and cassette tapes to listen to religious music, educational and free speech information; adequate food; adequate clothes; idle work pay; representation and association through inmate organizations such as the N.A.A.C.P. and I.L.C.; impartial and non-discriminatory inmate grievance decisions; relief from double-bunking by race with inadequate space; relief from discrimination on in-cell 13" color T.V. due to poverty; men pornographic magazines of Playboy, Penthouse, Hustler and Players; protection without punishment of S.M.U. restrictions because of not having a bona fide protective custody program; seat-by-line procedures in the messhalls to prevent inmates from exercising authority and control over the tables by gangs, race, and illegal affiliations to threaten plaintiff with violence and assault plaintiff to prevent plaintiff from eating at messhall tables; security correctional officers patrolling the yards and all recreation areas in or outside of prison; mandatory criminal charges and maximum sanctions for inmate-on-inmate assaults and initiated fights between inmates, to create a safe prison enviroment.

Not only has superintendent Lois Russo, denied plaintiff all of the foregoing rights, privileges, and immunities, in her decisions

-64-

ON PLAINTIFF'S INMATE GRIEVANCES, but SUPERINTENDENT, LOIS RUSSO, HAS ALSO FAILED TO ACT WHERE SHE HAD A duty to ACT TO REMEDY THE VIOLATIONS.

FURTHERMORE, ALL OF THE FOREGOING deprivations OF PLAINTIFF'S RIGHTS, PRIVIleges AND IMMUNITIES, Administered AND ENFORCED by SUPERINTENDENT LOIS RUSSO, ARE PURSUANT TO TO MASS. D.O.C. ILLEGAL PUNITIVE PROGRAM POLICIES ON the UNFAIR TREATMENT OF PRISONERS.

## M. DEFENDANT: John MARSHALL, JR., Acting SUPERINTENDENT OF CEDAR JUNCTION PRISON

79. SINCE PLAINTIFF WAS COMMITTED TO MASS. D.O.C. AT CONCORD PRISON ON Sept. 17, 2004 UNTIL JAN. 2005, AND CEDAR JUNCTION PRISON ON JAN. 2005 UNTIL SEPTEMBER 2005, Acting SUPERINTENDENT, JOHN MARSHALL, JR., UNDER THE SUPERVISION, CONTROL, PLANNING AND DIRECTIONS OF THE COMMISSIONER, DEPUTY AND ASSISTANT DEPUTY COMMISSIONERS, HAS Administered AND ENFORCED ILLEGAL PUNITIVE PROGRAM POLICIES TO PUNISH PLAINTIFF FOR BEING COMMITTED TO D.O.C. BY THE DENIAL AND DEPRIVATION OF ORDINARY PRISONER RIGHTS,

-65-

privileges, and immunities in violation of Title 42 USCA Sec. 1997a and in violation of Mass. Gen. Laws chpt. 124 Sec. 1(e)(L)(Q) on Commissioner's duties to establish, maintain, and develop programs of rehabilitation rather than punitive programs, and in violation of Mass. Gen. Laws chpt. 127 Sec. 32, on the "Treatment of Prisoners", which requires that "All Superintendents of the Institutions under the supervision of the Department of Correction treat prisoners with the kindness which their obedience, industry, and good conduct merit."

80. In administering and enforcing the illegal punitive program policies in violation of state and federal laws, Acting Superintendent, John Marshall, Jr., on October 31, 2005, in response to plaintiff's Inmate Grievance Numbers 8836, 12502, 12574, and on April 3, 2006, in response to plaintiff's Inmate Grievance #12310, deprived and denied plaintiff his religious and state created rights to smoke cigarettes and tobacco products outdoors or in a designated area of the prison; conjugal visits and free transportation for relatives and friends to visit him in a family reunion program similar to or the same as NYSDOCS; walkman cassette players and cassette tapes to listen to religious music, educational and free speech information;

- 66 -

Adequate Food; Adequate clothes; Idle
work, pay; Representation and association
through inmate organizations such as the
N.A.A.C.P. and I.L.C.; impartial and non-
discriminatory inmate grievance decisions;
relief from double-bunking by race with
inadequate space; relief from discrimi-
nation on in cell 13" color T.V. due to
poverty; men pornographic magazines
of playboy, penthouse, hustler, and players;
protection without punishment of S.M.U.
restrictions because of not having a
bona fide protective custody program
which resulted in plaintiff being assaulted
on July 28, 2005, by another inmate in
the prison yard at Cedar Junction and
sustaining serious physical injuries which
required hospitalization; seat-by-line
procedures in the prison messhalls to
prevent inmates from exercising authority
and control over the tables by gangs, race,
and illegal affiliations to threaten plaintiff
with violence and assaulted plaintiff on
July 28, 2005, to prevent plaintiff from
eating at messhall tables; security
correctional officers patrolling the yards
and all recreation areas in or outside
of the prison which resulted in plaintiff
being assaulted by another inmate on
July 28, 2005, with a weapon; mandatory
and requested criminal charges and
maximum disciplinary sanctions for inmate-
on-inmate assaults and initiated fights
between inmates, to create a safe prison

ENVIROMENT. SUPERINTENDENT, John MARSHALL, JR., WAS REQUIRED to FILE CRIMINAL charges AGAINST INMATE THOMAS DELACRUZ, REGARDING the FELONIOUS ASSAULT WITH A WEAPON AGAINST PLAINTIFF ON JULY 28, 2005, UNDER MASS. GEN. LAW chpt. 127 SEC. 38-C, but REFUSED to do SO even AFTER being INFORMED About the ASSAULT through PLAINTIFF'S INMATE GRIEVANCES.

Not ONLY hAS ACTING SUPERINTENDENT, John MARSHALL, JR., denied PLAINTIFF ALL of the foregoing RIGHTS, PRIVILEGES, AND IMMUNITIES, IN his decisions ON PLAINTIFF'S INMATE GRIEVANCES, AND through his AdMINISTERING AND enforcements of D.O.C. iLLEGAL PUNITIVE PROGRAM POLICIES, but ACTING SUPERINTENDENT, John MARSHALL, JR., hAS ALSO FAILED to ACT WHERE he hAd A duty to ACT to COMPENSATE PLAINTIFF WITH MONETARY COMPENSATIONS FOR the SERIOUS INJURIES he SUSTAINED AND to REMEDY the VIOLATIONS.

N. DEFENDANT: JOHN LUONGO, JR.,
DEPUTY SUPERINTENDENT OF
CEDAR JUNCTION PRISON.

81. Since plaintiff was committed to Mass. D.O.C. At Concord Prison on Sept. 17, 2004 until Jan. 2005, and Cedar Junction Prison on Jan. 2005 until Sept. 2005, Deputy Superintendent, John Luongo, Jr., under the supervision, control, planning and directions of the Commissioner, Deputy and Assistant Deputy Commissioners, and Superintendent, has administered, managed, and enforced illegal punitive program policies to punish plaintiff for being committed to D.O.C. by the denial and deprivation of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice of resistance to the full enjoyment of the rights, privileges, and immunities in violation of Title 42 USCA sec. 1997a and in violation of Mass. Gen. Law chpt. 124 sec. 1(e)(L)(Q) on Commissioner duties to establish, maintain, and develop programs of rehabilitation rather than punitive programs, and in violation of Mass. Gen. Laws chpt. 127 sec. 32, on the "Treatment of Prisoners" which requires that "All superintendents of the institutions under the supervision of the D.O.C. treat prisoners with the kindness which their obediance, industry, and good conduct merit."

-69-

82. In Administering, Managing, and enforcing the illegal punitive program policies in violation of State and Federal Laws, Deputy Superintendent, John Luongo, Jr., between Jan. 2005 and September 2005, deprived and denied plaintiff his Religious and State created Rights to smoke cigarettes and tobacco products outdoors or in a designated area of the prison; conjugal visits and free transportation for relatives and friends to visit him in a family reunion program similar to or the same as NYSDOCS; walkman cassette players and cassette tapes to listen to Religious music, educational and free speech information; adequate food; adequate clothes; Idle work pay; Representation and association through Inmate organizations such as the N.A.A.C.P. and I.L.C.; impartial and non-discriminatory Inmate Grievance decisions; Relief from double-bunking by Race with inadequate space; Relief from discrimination on in-cell 13" color T.V. due to poverty; men porno-graphic magazines of Playboy, Penthouse, Hustler, and Players; protection without punishment of S.M.U. Restrictions because of not having a bona fide Protective Custody Program; seat-by-line procedures in the messhalls to prevent inmates from exercising authority and control over the messhall tables by gangs, Race, and illegal affiliations to threaten plaintiff with violence and assaulted

-70-

plaintiff to prevent plaintiff from eating at messhall tables; Security Correctional officers patrolling the yards and all recreation areas in or outside of prison; mandatory criminal charges and maximum disciplinary sanctions for inmate-on-inmate assaults and initiated fights between inmates, to create a safe prison enviroment. Deputy Superintendent John Luongo, JR., is part of the Administration at Cedar Junction prison who are responsible for ensuring that "safe" procedures are being employed in the prison messhalls and that security officers are patrolling the prison yards and in all recreation areas during recreation time. Deputy Superintendent, John Luongo, JR., is also responsible for ensuring that criminal charges are filed against an inmate for felonious assault against another inmate. When asked in August 2005, by plaintiff to file criminal charges against inmate THOMAS DeLACRUZ for assaulting plaintiff with a weapon on July 28, 2005, he said he would not because DeLACRUZ was an ITALIAN like him. The Assistant Attorney General directed Deputy Superintendent John Luongo, JR., and Acting Superintendent, John MARSHALL, JR., in response to plaintiff's complaint, to file criminal charges against inmate THOMAS DeLACRUZ for assaulting plaintiff, which Deputy Superintendent John Luongo, JR., still refused to do. The

-71-

Assistant Attorney General and Deputy Superintendent, John Luongo, and plaintiff's complaint to the Assistant Attorney General about the matter, are referred to in Acting Superintendent, John Marshall, Jr.,'s April 3, 2006, decision to deny plaintiff's Grievance Numbers 8836, 12502, 12574 and 12310. Deputy Superintendent, John Luongo, Jr., is also responsible for ensuring the security correction officers are assigned to patrol the yards and recreation areas to ensure safety for all prisoners. As a result of his neglect to ensure plaintiff's safety in the messhalls and yard and in all recreation areas, plaintiff was assaulted by another inmate.

Not only has Deputy Superintendent John Luongo, Jr., deprived and denied plaintiff all of the foregoing rights, privileges, and immunities in his verbal decisions on plaintiff's requests to him in person, and through his administering, management and enforcements of D.O.C. illegal punitive program policies, but Deputy Superintendent, John Luongo, Jr., has also failed to act where had a duty to act to remedy the violations. He also neglected his duties to provide plaintiff with a safe prison enviroment.

-72-

O. DEFENDANT: DARRIN C. PAYNE, C.O.
CEDAR JUNCTION PRISON

83. Since plaintiff was committed to MASS.
D.O.C. At Concord Prison on Sept. 17, 2004
until Jan. 2005, and Cedar Junction
Prison on Jan. 2005 until Sept. 2005,
Correction Officer, DARRIN C. PAYNE, under
the supervision, control, planning and
directions of the Commissioner, Deputy
and Assistant Deputy Commissioners,
Superintendent, Deputy Superintendent,
Captains, Lieutenants, and Seargents,
has administered, managed, and
enforced illegal punitive program
policies to punish plaintiff for being
committed to D.O.C. by the denial and
deprivation of ordinary prisoner rights,
privileges, and immunities pursuant to
a pattern or practice of resistance to
the full enjoyment of the rights, privi-
leges, and immunities in violation of
Title 42 USCA Sec. 1997a and in viola-
tion of MASS. Gen. Laws Chpt. 124 Sec.
1 (e)(L)(Q) on Commissioner's duties to
establish, maintain, and develop programs
of rehabilitation rather than punitive
programs, and in violation of MASS. Gen.
Laws Chpt. 127 Sec. 32, on the "Treatment
of Prisoners", which requires that "all
Superintendents of the Institutions
under the Supervision of the D.O.C.

-73-

treat prisoners with the kindness which their obedience, industry, and good conduct merit."

84. In administering, managing, and enforcing the illegal punitive program policies in violation of state and federal laws, Correction Officer, Darrin C. Payne, and other unknown named correction officers, were assigned to patrol the main yard at Cedar Junction Prison on July 28, 2005, between 9 and 11:15 a.m. However, Correction Officer, Darrin C. Payne and other unknown named correction officers would not patrol the main yard and instead, remained inside of the Prison's Building in the East Wing. This was because the policy and procedure given to them from Superintendent, David Nolan, Acting Superintendent John Marshall, Jr., and Deputy Superintendent, John Luongo, Jr., which they administer to operate the Prison from the planning and directions of Deputy and Assistant Deputy Commissioners, Bender, Hall, John Marshall, Madden, and Duval, approved by Commissioner Dennehy, does not require Correction Officer, Darrin C. Payne and other unknown named correction officers, to patrol the recreation yards during inmate recreation and neither does it require them to enforce a seat-by-line procedure to ensure inmate safety in

the prison messhalls. The Correction officers are directed by policy and procedure, to stay inside of the prison's buildings when inmates are let out for recreation in the prison yards. Consequently, Correction Officer, DARRIN C. PAYNE and other unknown named officers either neglected or were not allowed to patrol the yards. In either event, and as a result, plaintiff was approached and assaulted with a weapon by another inmate named THOMAS DELACRUZ, on this morning of July 28, 2005, and sustained serious physical injuries to his head, face, fractured nose and a stabb wound laceration on the left side of his face and other related injuries which required hospitalization at Norword Hospital and surgery by Doctor Goeller, from which he received sutures or stitches on the lacerated stabb wound, and packagings on his head, face, and nose. The assault and injuries the plaintiff sustained, could have been prevented if Correction officer DARRIN C. PAYNE and other unknown named officers had not neglected their duty of patrolling the yard and/or if the Commissioner, Deputy and Assistant Deputy Commissioners, Superintendents and Deputy Superintendent had promulgated and implemented a rule and regulation which required the Correction officers to provide inmates safety by patrolling

the yards and all Recreation areas during
inmate Recreation.

Not only has Correction Officer, Darrin
C. Payne, deprived and denies plaintiff
all of the foregoing Rights, privileges,
and immunities, through his administering,
management, and enforcements of D.O.C.'s
illegal punitive program policies, but
Correction Officer, Darrin C. Payne,
neglected his duty to provide plaintiff
with safety in the prison's Recreation
yard.

P. DEFENDANT: Scott ANDERSON, DEPUTY SUPERINTENDENT FOR CLASSIFICATION OF CONCORD.

85. Since plaintiff was committed to MASS. D.O.C. At CONCORD PRISON on Sept. 17, 2004 until JANUARY 2005, Deputy Superintendent, Scott ANDERSON, under the supervision, control, planning and directions of the Commissioner, Deputy and Assistant Deputy Commissioners, and Superintendent, has Administered, managed, and enforced illegal punitive program policies to punish plaintiff for being committed to D.O.C. by the denial and deprivation of ORDINARY PRISONER Rights, privileges and immunities pursuant to A pattern or practice of Resistance to the full enjoyment of the Rights, privileges, and immunities in violation of Title 42 USCA sec. 1997a and in violation of MASS. Gen. Laws chpt. 124 sec. 1(e)(l) (Q) on Commissioner's duties to establish, maintain, and develop PROGRAMS of Rehabilitation Rather than punitive programs, and in violation of MASS. Gen. Laws, chpt. 127 sec. 32, on the "TREATMENT OF PRISONERS", which Requires that "ALL SUPERINTENDENTS OF the INSTITUTIONS, under the Supervision

-77-

of the D.O.C. treat prisoners with the kindness which their obediance, industry, and good conduct merit."

86. In administering, managing, and enforcing the illegal punitive program policies in violation of state and federal laws, Deputy Superintendent, Scott Anderson, in Dec. 2004 and Jan. 2005, denied plaintiff's requests for protective custody, and instead, increased plaintiff's classification from a level '4' to a level '6' and classified him to be transfered to Cedar Junction Prison where Deputy Superintendent Scott Anderson, knew there was no protective custody program because the state does not have a bona fide protective custody program. Consequently, once transfered to Cedar Junction Prison, plaintiff was punished in S.M.U. for protection by the S.M.U. Restrictions rather than protected in a protective custody program. Plaintiff was also threatened by other inmates and assaulted by one of them at Cedar Junction. At Souza-Baranowski Prison, plaintiff is still being punished for protection by S.M.U. Restrictions because the state does not have a bona fide protective custody program.

Q. DEFENDANT: KAREN DiNARDO
DIRECTOR OF CLASSIFICATION
CONCORD PRISON.

87. Since plaintiff was committed to MASS. D.O.C. at CONCORD PRISON on Sept. 17, 2004 until JAN. 2005, DIRECTOR OF CLASSIFICATION, KAREN DiNARDO, under the supervision, control, planning and directions of the Commissioner, Deputy and Assistant Deputy Commissioners, and Superintendent, has Administered, MANAGED, and enforced illegal punitive program policies to punish plaintiff for being committed to D.O.C. by the denial and deprivation of ORDINARY prisoner Rights, privileges and immunities pursuant to a PATTERN or PRACTICE or RESISTANCE to the full enjoyment of the Rights, privileges, and immunities in violation of Title 42 USCA sec. 1997a and in violation of MASS. GEN. LAWS chpt. 124 Sec. 1 (e)(L)(Q) on Commissioner's duties to establish, MAINTAIN, and develop programs of Rehabilitation Rather than punitive programs, and in violation of MASS. GEN. LAWS, chpt. 127 Sec. 32, on the "TREATMENT of PRISONERS", which Requires that "ALL SUPERINTENDENTS of the Institutions under the supervision of the D.O.C. treat prisoners with the kindness which their obediance, industry, and good conduct merit."

-79-

88. In administering, managing, and enforcing the illegal punitive program policies in violation of State and Federal laws, Director of Classification, Karen DiNardo, in Dec. 2004 and Jan. 2005, denied plaintiff's request for protective custody, and instead, increased plaintiff's classification from a Level '4' to a Level '6' and classified him to be transferred to Cedar Junction Prison where the Director of Classification, Karen DiNardo, knew there was no protective custody program because the State does not have a bona fide protective custody program. Consequently, once transferred to Cedar Junction Prison, plaintiff was punished in S.M.U. for protection by the S.M.U. restrictions rather than protected in a protective custody program. Plaintiff was also threatened by other inmates and assaulted by one of them at Cedar Junction. At Souza-Baranowski Prison, plaintiff is still being punished for protection by S.M.U. restrictions because the State does not have a bona fide protective custody program.

# R. DEFENDANT: STEPHEN PARE, C.O.
## CONCORD PRISON

89. Since plaintiff was committed to Mass. D.O.C. at Concord Prison on Sept. 17, 2004 until Jan. 2005, Correction Officer, Stephen Pare, under the supervision, control, planning and directions of the Commissioner, Deputy and Assistant Deputy Commissioners, Superintendent, Deputy Superintendents, Captains, Lieutenants, and Seargents, has administered, managed, and enforced illegal punitive program policies to punish plaintiff for being committed to D.O.C. by the denial and deprivation of ordinary prisoner Rights, Privileges, and immunities pursuant to a pattern or practice of resistance to full enjoyment of such Rights, Privileges, and immunities in violation of Title 42 USCA sec. 1997a and in violation of Mass. Gen. Laws chpt. 124 sec. 1(e)(L)(Q) on Commissioner's duties to establish, maintain, and develop programs of Rehabilitation Rather than punitive programs, and in violation of Mass. Gen. Laws chpt. 127 sec. 32, on the "Treatment of Prisoners", which Requires that "All Superintendents of the Institutions under the Supervision of the D.O.C. treat prisoners with the kindness which their obediance, industry, and good conduct merit."

-81-

90. In Administering, Managing, And enforcing the illegal punitive program policies in violation of state and Federal Laws, Correction Officer, Stephen Pare, on J-2 Reception Unit At Concord Prison At Approximately 10:45 A.M. on Dec. 19, 2004, denied plaintiff's Request for Protective Custody. Correction Officer Stephen Pare first told plaintiff to sit At one of the tables And wait As All the other inmates were locking-in their double-bunked cells by Race. Correction Officer Stephen Pare then told plaintiff to take All of his property he had brought with him out of the cell And Return to this cell. Plaintiff Responded And told Correction Officer Stephen Pare that he could not Return to the cell or Remain on the unit because his life would be in danger And he was in fear for his life due to the nature of his conviction charges on A sex offense And because he was Recognized As A Protective Custody inmate From the Berkshire County Jail.

Correction Officer, Stephen Pare, while plaintiff was sitting At Recreation table, And without Asking plaintiff to stand-up turn Around And be hand-cuffed, grabbed plaintiff in A headlock And brought him to the floor And commenced to strangling the plaintiff in the headlock position with All his might. At the same time officer Martin Joined in the Assault And began punching plaintiff in the head, face, And

-82-

back with his fists and knees and stumped and slammed the left side of plaintiff's face and head into the floor, causing the stem of plaintiff's eye-glasses to break off into his left-eye, which caused plaintiff serious physical injuries to his left-eye, face, head, neck, throat, and back. While being strangled breathless by Correctional Officer Stephen Pare and beaten by C.O. Martin, four other Correctional Officers came on the unit, one of whom was Correction Officer Dragone. Correction Officer Dragone secretly rapped a black strap around my neck under my jacket collar and pulled me up off the floor using the black strap wrapped into my jacket collar and continued to strangle and choke me with it as he escorted me off the unit. He strangled me breathless with the black strap until I passed-out in the hallway. I miracously revived myself and the officers took me to the Health Services Unit and IPS took pictures of my injuries. More than 50 inmates witnessed the assault by the officers against me which occured out on the open recreation floor of the J-2 Reception Unit.

Not only has Correction Officer, Stephen Pare, deprived and denied plaintiff all of the foregoing, rights, privileges, and immunities, through his administering,

-83-

MANAGEMENT, AND ENFORCEMENTS OF D.O.C.'s illegal punitive PROGRAM policies, but CORRECTION OFFICER, Stephen PARE, HAS ALSO used UNNECESSARY FORCE AND VIOLENCE against the plaintiff IN AN Attempt to MURDER the plaintiff, AND in doing so, caused the plaintiff serious physical injuries to plaintiff's throat, Neck, head, FACE, eye, And back from the headlock STRANGULATION.

## S. DEFENDANT: DRAGONE, C.O.
### CONCORD PRISON

91. Since plaintiff was committed to MASS. D. O.C. At CONCORD PRISON ON Sept. 17, 2004 UNTIL JAN. 2005, CORRECTION OFFICER, DRAGONE, UNDER the SUPERVISION, CONTROL, PLANNING AND directions OF the Commissioner, Deputy AND ASSISTANT Deputy Commissioners, SUPERINTENDENT, Deputy superintendent, CAPTAINS, Lieutenants, AND SEARGENTS, HAS Administered, MANAGED, AND ENFORCED illegal punitive PROGRAM policies to punish plaintiff for being committed to D.O.C. by the denial AND deprivation OF ORDINARY PRISONER Rights, PRIVILEGES, AND immunities PURSUANT TO A PATTERN OR PRACTICE of resistance to the full enjoyment of such Rights, PRIVILEGES, AND immunities IN violation OF TITLE 42 USCA Sec. 1997a And IN violATION OF MASS. GEN. LAWS, chpt. 124 sec. 1 (e)(L)(Q) ON Commissioner's duties to establish, MAINTAIN, AND develop PROGRAMS

OF REHABILITATION RATHER THAN PUNITIVE PROGRAMS, AND IN VIOLATION OF MASS. GEN. LAWS CHPT. 127 SEC. 32, ON THE "TREATMENT OF PRISONERS", which REQUIRES THAT "ALL SUPERINTENDENTS OF THE INSTITUTIONS UNDER THE SUPERVISION OF THE D.O.C. TREAT PRISONERS WITH THE KINDNESS WHICH THEIR OBEDIANCE, INDUSTRY, AND GOOD CONDUCT MERIT."

92. IN ADMINISTERING, MANAGING, AND ENFORCING THE ILLEGAL PUNITIVE PROGRAM POLICIES IN VIOLATION OF STATE AND FEDERAL LAWS, CORRECTION OFFICER, DRAGONE, ON J-2 RECEPTION UNIT AT CONCORD PRISON AT APPROXIMATELY 10:55 A.M. ON DEC. 19, 2004, JOINED IN AN ASSAULT which WAS OCCURING AGAINST THE PLAINTIFF BY CORRECTION OFFICERS STEPHEN PARE AND MARTIN. IN DOING SO, CORRECTION OFFICER, DRAGONE SECRETLY RAPPED A BLACK STRAP AROUND PLAINTIFF'S NECK UNDER PLAINTIFF'S JACKET COLLAR AND PULLED PLAINTIFF UP OFF THE FLOOR USING THE BLACK STRAP WRAPPED AROUND PLAINTIFF'S NECK IN PLAINTIFF'S JACKET COLLAR AND CONTINUED TO STRANGLE AND CHOKE PLAINTIFF WITH THE BLACK STRAP AS HE ESCORTED PLAINTIFF OFF THE UNIT INTO THE HALLWAY. CORRECTION OFFICER DRAGONE STRANGLED ME, THE PLAINTIFF, BREATHLESS WITH THE BLACK STRAP UNTIL I PASSED OUT IN THE HALLWAY. I, THE PLAINTIFF, MIRACOUSLY REVIVED MYSELF AND THE OFFICERS

took me to the Health Services Unit And
IPS took pictures of my injuries. As
A Result of Correction Officer's Strangu-
lation of me, I passed out in the hallway
hitting the left side of my Head And Face
of the Floor As I Fell, which caused even
more injuries to my head And Face. I
could not talk or swallow Food or drinks
because my throat had been seriously
injured from the strangulation of officer
Dragone. As I WAS Reviving I heard
A female officer Named Shelly Williams
Ask Officer Dragone if I WAS dead
yet. "Is he dead yet she said" And he
answered "he better be". I then came
to Full consciousness to their shock And
Amazement. Therefore, plaintiff Further
States that Correction officers Stephen
Pare, "Martin" And Correction officer
Dragone had intended and Attempted
to murder him.

Not only has Correction Officer, Dragone,
deprived And denied plaintiff All of the
foregoing Rights, privileges, And immunities,
through his Administering, management,
And enforcements of D.O.C.'s illegal
punitive program policies, but Correction
officer Dragone, Also used unnecessary
force And violence Against the plaintiff
in An Attempt to murder the plaintiff,
And in doing so, caused the plaintiff
serious physical injuries.

-86-

# T. DEFENDANT: MARTIN, C.O.
## CONCORD PRISON

93. Since plaintiff was committed to MASS. D.O.C. At CONCORD PRISON on Sept. 17, 2004 until JAN. 2005, CORRECTION OFFICER, MARTIN, under the SUPERVISION, CONTROL, PLANNING And directions of the Commissioner, Deputy, And ASSISTANT Deputy Commissioners, SUPERINTENDENT, Deputy Superintendent, CAPTAINS, Lieutenants, And SEARGENTS, has Administered, MANAGED, And enForced illegal punitive program policies to punish plaintiff FOR being committed to D.O.C. by the denial And depriva-tions oF ORDINARY PRISONER Rights, PRIVILEGES And immunities PURSUANT to A PATTERN or PRACTICE oF RESISTANCE to the full enjoyment of such Rights, privileges And immunities iN ViOLATION of Title 42 USCA Sec. 1997a And iN ViOLATION of MASS. GEN. LAWS chpt. 124 Sec. 1(e)(L)(Q) on Commissioner's duties to establish, MAINTAIN And develop PROGRAMS of REHABILITATION RATHER than punitive PROGRAMS, And iN VIOLATION of MASS. GEN. LAWS chpt. 127 Sec. 32, on the "TREATMENT OF PRISONERS" which Requires that All superintendents of the INSTITU-TIONS under the SUPERVISION of the D.O.C. treat PRISONERS with the Kindness which

-87-

their obedience, industry, And good conduct merit."

94. In Administering, managing And enforcing the illegal punitive program policies in violation of state and federal laws, Correction officer, Martin, on J-2 reception unit At Concord Prison At Approximately 10:45 A.M. on Dec. 19, 2004, joined in An Assault which was occuring Against the plaintiff by Correction officer Stephen Pare. In doing so, Correction officer Martin began punching plaintiff in the head, face, And back with his fists and knees and stumped And slammed the left side of plaintiff's face and head into the floor, causing the stem of plaintiff's eye-glasses to break off into his left-eye, which caused plaintiff serious physical injuries to his left-eye, face, head, neck, throat, And back. Plaintiff put up no resistance to officer Martin or Pare. At all times on the floor plaintiff had his hands behind his back for the officers to cuff him, but instead of putting hand-cuffs on plaintiff, Correction officer Martin continued to beat on him until other officers Arrived on the unit, one of whom, put A black strap Around his neck And pulled plaintiff off the floor using the black strap to strangle plaintiff.

-88-

Not only has Correction officer, Martin, deprived and denied plaintiff all of the foregoing rights, privileges, and immunities through his administering, management, and enforcements of D.O.C.'s illegal punitive program policies, but Correction officer Martin, also used unnecessary force and violence against the plaintiff in an attempt to murder the plaintiff, and in doing so, caused the plaintiff serious physical injuries.

## U. DEFENDANT: ANN MARIE AUCION, I.G.C.: CEDAR JUNCTION PRISON

95. Since plaintiff was committed to Mass. D.O.C. at Concord Prison on Sept. 17, 2004 until Jan. 2005, and Cedar Junction Prison on Jan. 2005 until Sept. 2005, institution grievance coordinator, Ann Marie Aucion, under the supervision and control of the Commissioner and Department grievance coordinator, have reinforced illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation of ordinary prisoner rights, privileges and immunities pursuant to a pattern or practice of resistance to the full

-89-

enjoyment of such Rights, Privileges, and immunities in violation of Title 42 USCA sec. 1997a and in violation of MASS. Gen. LAWS chpt. 124 sec. 1 (e)(L)(Q) on Commissioner's duties to establish, maintain, and develop programs of Rehabilitation Rather than punitive programs, and in violation of MASS. Gen. LAWS chpt. 127 sec. 32, on the "Treatment of Prisoners", which Requires that "all Superintendents of the Institutions under the Supervision of the D.O.C. treat prisoners with the kindness which their obediance, industry, and good conduct merit."

96. In Reinforcing the illegal punitive program policies in violation of State and Federal Laws, Institution Grievance Coordinator, Ann Marie Aucion, on June 28, 2005, in Response to plaintiff's inmate Grievance #11434, and on July 1, 2005, in Response to plaintiff's inmate Grievance #11331, and on July 13, 2005, in Response to plaintiff's inmate Grievance #11824, and on July 15, 2005, in Response to plaintiff's inmate Grievance #11823, and on Aug. 3, 2005, in Response to plaintiff's inmate Grievance #12310, and on Aug. 19, 2005, in Response to plaintiff's inmate Grievance #12574, and on Aug. 19, 2005, in Response to plaintiff's inmate Grievance #12502, deprived and denied plaintiff his Religious and State created Rights to smoke cigarettes and tobacco products outdoors or in a designated area of the prison; Adequate clothes; Adequate Food

-90-

which fell far below the minimum of 2000 calories per day; Idle work pay; Representation and Association through inmate organizations such as the N.A.A.C.P. and I.L.C.; Conjugal visits and free transportation for relatives and friends to visit him in a family reuniоun program similar to or the the same as NYSDOCS; Walkman cassette players and cassette tapes to listen to religious music, educational and free speech information; Relief from discrimination in the in-cell 13" color T.V. program due to poverty; men pornographic magazines of Playboy, Penthouse, Hustler, and Players; Relief from discrimination in the inmate grievance decision making process because of not having a "Master Index" of prior decisions upon which to base decisions and inmate representatives to participate in the review, investigation, and decision making process on plaintiff's inmate grievances similar to or the same as that within NYSDOCS; Relief from discrimination of double-bunking by race with inadequate space; Protection without punishment of S.M.U. restrictions because of not having a bona fide protective custody program; Seat-by-line procedures in the prison messhalls to prevent inmates from exercising authority and control over the messhall tables by gangs, race, and illegal affiliations to threaten plaintiff with violence and assaulted plaintiff on July 28, 2005, to prevent

-91-

PLAINTIFF FROM EATING AT A MESSHALL TABLE;
SECURITY CORRECTION OFFICERS PATROLLING THE
PRISON YARDS AND ALL RECREATION AREAS IN
OR OUTSIDE OF PRISON BUILDINGS, THE LACK OF
WHICH CAUSED PLAINTIFF TO BE ASSAULTED BY
ANOTHER INMATE NAMED THOMAS DELACRUZ
ON JULY 28, 2005, WITH A WEAPON AND
SERIOUSLY INJURED; THE RELIEFS OF CRIMINAL
CHARGES AGAINST THE OTHER INMATE NAMED
THOMAS DELACRUZ, FOR FELONIOUSLY ASSAULTING
PLAINTIFF ON JULY 28, 2005, AND MONETARY
COMPENSATION FOR THE INJURIES PLAINTIFF
SUSTAINED; MANDATORY CRIMINAL CHARGES
AND MAXIMUM DISCIPLINARY SANCTIONS FOR
INMATE-ON-INMATE ASSAULTS AND INITIATED
FIGHTS BETWEEN INMATES TO DISCOURAGE
VIOLENCE AMONGST INMATES AND CREATE A
SAFE PRISON ENVIROMENT.

NOT ONLY HAS INSTITUTIONAL GRIEVANCE
COORDINATOR, ANN MARIE AUCION, DENIED
PLAINTIFF ALL OF THE FOREGOING RIGHTS,
PRIVILEGES, AND IMMUNITIES IN HER
DECISIONS ON PLAINTIFF'S INMATE GRIEVANCES,
BUT INSTITUTION GRIEVANCE COORDINATOR,
ANN MARIE AUCION, HAS ALSO FAILED TO
ACT WHERE SHE HAD A DUTY TO ACT TO
COMPENSATE PLAINTIFF FOR THE INJURIES
HE SUSTAINED FROM THE ASSAULT AND TO
REMEDY THE VIOLATIONS.
FURTHERMORE, ALL OF THE FOREGOING
DEPRIVATIONS OF PLAINTIFF'S RIGHTS,
PRIVILEGES, AND IMMUNITIES, REINFORCED

-92-

by Institution Grievance Coordinator, Ann Marie Aucion, are pursuant to Mass. D.O.C. illegal Punitive Program policies on the unfair treatment of Prisoners.

Dated:

June 16, 2007

Respectfully Submitted,

Felipe Oteze Fowlkes#W84200
Souza-Baranowski Corr.Ctr.
P.O. Box 8000
Shirley, MA 01464

DECLARATION IN LIEU OF NOTARY: Pursuant to Title 28 USCA Sec. 1746:

"I SWEAR UNDER THE PENALTY OF PERJURY THAT THE FOREGOING DEFINITE STATEMENT ON EACH DEFENDANT IS TRUE AND CORRECT."

EXECUTED ON: June 16, 2007.

SIGNATURE:

FELIPE OTEZE FOWLKES
PLAINTIFF, PRO SE,

-93-

# CERTIFICATE OF SERVICE

I, the PLAINTIFF, FELIPE OTEZE FOWLKES, PRO se, do hereby certify that I have caused a true copy of the foregoing "definite Statement on each Defendant" to be served by PrePaid First class mail on the defendants Attorney, DARYL F. GLAZER, D.O.C. Legal Division, 70 FRANKLIN Street, Suite 600, Boston, MA 02110.

Dated: JUNE 16, 2007.

*Felipe Oteze Fowlkes*
Felipe OTEZE Fowlkes #WB4209
SBCC: P.O. Box 8000
Shirley, MA 01464