# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS:

Felipe "Oteze" Fowlkes,

FILED
IN CLERKS OFFICE

PLAINTIFF,              Civil Action

2007 JUL 18 A 11: 09

VS.

U.S. DISTRICT COURT
DISTRICT OF MASS.

#05-11749-JLT

Kathleen M. Dennehy, et., al.

Defendants.

## "DEFINITE STATEMENT ON EACH DEFENDANT"

**A. Defendant: KATHLEEN M. Dennehy, Commissioner.**

**CAUSE of ACTION:** Defendant Dennehy has implemented, directed, and maintained illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L. c 124 Sec. 1 (e)(k)(Q) And M.G.L. c 127 Sec. 32, And in violation of plaintiff's 1st, 8th, and 14th amendment rights.

**DATE of ACTION:** From Sept. 17, 2004 to 2006 on to the present date of 2007.

**PLACE of ACTION:** CONCORD PRISON; CEDAR JUNCTION PRISON; NORFOLK PRISON; SOUZA-BARANOWSKI PRISON, And within ALL MASS. D.O.C. PRISONS.

**BRIEF DESCRIPTION of EVENTS:** Denied plaintiff's REQUESTS And INMATE GRIEVANCES on JAN. 19, 2005; MARCH 3, 2005; JUNE 2005; JULY 2005;

July 28, 2005; Aug. 3, 2005; Aug. 11, 2005; Aug. 12, 2005; Sept. 26, 2005; Oct. 19, 2005; Oct. 31, 2005; Nov. 18, 2005; Nov. 22, 2005; Dec. 28, 2005; Jan. 5, 2006; Feb. 22, 2006; April 3, 2006; Sept. 7, 2006; Sept. 8, 2006; Oct. 4, 2006; July 17, 2006; Jan. 22, 2007; March 17, 2007, and June 1, 2007, to smoke cigarettes and/or tobacco products outdoors or in a designated area of the prisons in the exercise of his 5%er religious way of life and state created right; adequate food; adequate clothes; idle work-program pay; inmate representation through inmate organizations called the N.A.A.C.P. and I.L.C.; relief from double bunking by race with inadequate space; conjugal visits and free transportation for relatives and friends to visit him in a family reunion program similar to NYSDOCS; walkman cassette players and cassette tapes to listen to religious music, educational, and free speech information; relief from discrimination due to poverty in the in-cell 13" color T.V. program; men pornographic magazines of Playboy, Penthouse, Hustler, and Players; relief from discriminatory inmate grievance decisions due to lack of master index record of prior decisions and inmate representatives similar to New York State D.O.C.S.; and protection without punishment by S.M.U. restrictions because of not having a bona fide protective custody program; safe prison environment and protection from violence by other inmates by seat-by-line procedures in the prisons' messhalls to prevent gangs, races, and other illegal affiliations of inmates, from exercising authority and control over plaintiff by claiming ownership to messhall tables and threatening plaintiff with violence and assaulting plaintiff to prevent plaintiff from eating at messhall tables; security correctional officers

patrolling the prison yards and all recreation areas in and outdoors of the prison buildings, and mandatory criminal charges with maximum disciplinary sanctions for inmate-on-inmate assaults and initiated fights between inmates to discourage violence and create a safe prison environment to which plaintiff has a right and for which the defendant, Commissioner Dennehy, has a duty to provide him.

B. Defendant: James R. Bender

"Cause of Action": Deputy Commissioner, James R. Bender, planned and directed illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L. c 124 sec. 1(e)(k)(q); M.G.L. c. 127 sec. 32, and in violation of plaintiff's 1st, 8th, and 14th amendment rights.

"Date of Action": From Sept. 17, 2007 to 2006 on to the present date of 2007.

"Place of Action": Concord Prison; Cedar Junction Prison; Norfolk Prison; Bouza-Bara-Nowski Prison, and all Mass. D.O.C. Prisons.

"Brief Description of events": Denied plaintiffs December 17, 2004, requests, on January 19, 2005, to smoke cigarettes and/or tobacco products outdoors or in a designated area

of the prisons in the exercise of his 5%er
religious way of life and state created right;
adequate food; adequate clothes; idle-work
program pay; inmate representation through
inmate organizations called the N.A.A.C.P.
and I.L.C.; relief from double-bunking
by race with inadequate space; conjugal
visits and free transportation for relatives
and friends to visit him in a family reunion
program similar to NYSDOCS; walkman cassette
players and cassette tapes to listen to
religious music, educational, and free
speech information; relief from discrimination
due to poverty in the in-cell 13" color T.V.
program; men pornographic magazines of
playboy, penthouse, hustler, and players;
relief from discriminatory inmate grievance
decisions due to lack of master index record
of prior decisions and inmate representatives
similar to NYSDOCS; protection without punish-
ment by S.M.U. restrictions because of not
having a bona fide protective custody program;
safe prison environment and protection from
violence by other inmates by seat-by-line
procedures in the prisons' messhalls to prevent
inmate gangs, races, and other illegal inmate
groups from exercising authority and control
over plaintiff by claiming ownership to
messhall tables and threatening and
assaulting plaintiff to prevent plaintiff from
eating at messhall tables; security correc-
tional officers patrolling the yards and all
recreation areas in and outside of prison
buildings; mandatory criminal charges with
maximum disciplinary sanctions for inmate-
on-inmate assaults and initiated fights

between inmates to discourage violence and create a safe prison enviroment to which plaintiff has a right and for which the defendant, Deputy Commissioner, Bender, has a duty to provide him.

C. Defendant: Timothy Hall

"Cause of Action": Assistant Deputy Commissioner, Timothy Hall, planned and directed illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L.c.124 sec.1(e)(L)(Q); M.G.L.c.127 sec.32, and in violation of plaintiff's 1st, 8th, and 14th Amendment Rights.

"Date of Action": From Sept. 17, 2004 to 2006 on to the present date of 2007.

"Place of Action": Concord Prison; Cedar Junction Prison, Norfolk Prison; Souza-Baranowski Prison, and within all Mass. D.O.C. Prisons.

"Brief Description of events": As a member of D.O.C. Religious Services Review Committee, defendant Hall, in February, March, and May 2006 and April 2007, denied plaintiff's February and May 2006, Religious Services requests, to exercise the religious way of life of the 5%ers Gods and Earths to smoke cigarettes and/or tobacco products outdoors or in a designated area of the prisons;

to RECEIVE CONJUGAL VISITS AS A fundamental
Right of MARITAL PRIVACY IN the EXERCISE
OF his RELIGION of the 5%ERS Gods And EARTHs;
And to LISTEN to the RELIGIOUS MUSIC, SONGS,
PROVERBS, And MESSAGES of the 5%ERS Gods
And EARTHs RECORDING ARTISTS ON WALKMAN
CASSETTE PLAYERS And CASSETTE TAPES.
DEFENDANT HALL HAVE ALSO APPROVED RULES,
REGULATIONS, PROCEDURES, PROGRAMS, And
POLICIES to DENY And DEPRIVE PLAINTIFF the
PRIVILEGES And RIGHTS to SMOKE CIGARETTES
And/OR TOBACCO PRODUCTS OUTDOORS, OR IN A
DESIGNATED AREA OF the PRISONS IN ACCORD
with A STATE CREATED RIGHT; AdEQUATE Food;
AdEQUATE CLOTHES; IdLE WORK-PROGRAM PAY;
INMATE REPRESENTATION through INMATE
ORGANIZATIONS CALLED the N·A·A·C·P· And I·L·C·;
RELIEF FROM double bunking by RACE with
INAdEQUATE SPACE; CONJUGAL VISITS And FREE
TRANSPORTATION FOR RELATIVES And FRIENDS
to VISIT him IN A FAMILY REUNIOUN PROGRAM
SIMILAR to NYSDOCS; WALKMAN CASSETTE PLAYERS
And CASSETTE TAPES to LISTEN to RELIGIOUS
MUSIC, EDUCATIONAL, And FREE SPEECH INFOR-
MATION; RELIEF FROM DISCRIMINATION due to
POVERTY IN the IN-CELL 13" COLOR T·V· PROGRAM;
MEN PORNOGRAPHIC MAGAZINES OF PLAYBOY,
PENTHOUSE, HUSTLER, And PLAYERS; RELIEF FROM
DISCRIMINATORY INMATE GRIEVANCE DECISIONS
due to LACK of MASTER INdEX RECORD of
PRIOR DECISIONS And INMATE REPRESENTATIVES
SIMILAR to NYSDOCS; PROTECTION WITHOUT PUNISH-
MENT by S·M·U· RESTRICTION BECAUSE OF NOT
HAVING A bONA FidE PROTECTIVE CUSTOdY PROGRAM;
SAFE PRISON ENVIROMENT And PROTECTION FROM

violence from other inmates by seat-by-line procedures in the prisons messhalls to prevent inmate gangs, races, and other illegal inmate groups from exercising authority and control over plaintiff by claiming ownership to messhall tables and threatening and assaulting plaintiff to prevent plaintiff from eating at messhall tables; security correction officers patrolling the yards and all recreation areas in and outside of prison buildings; mandatory criminal charges with maximum disciplinary sanctions for inmate-on-inmate assaults and initiated fights between inmates to discourage violence and create a safe prison environment to which plaintiff has a right and for which the defendant, Asst. Deputy Commissioner, Tim Hall, has a duty to provide him.

## D. Defendant: John Marshall

"Cause of Action": Assistant Deputy Commissioner, John Marshall, planned and directed illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L. c.124 sec. 1(e)(L)(Q); M.G.L. c.127 sec.32, and in violation of plaintiff's 1st, 8th, and 14th amendment rights.

"Date of Action": From Sept. 17, 2004 to 2006 on to the present date of 2007.

"Place of Action": Concord Prison; Cedar Junction Prison; Norfolk Prison; Souza-Baranowski Prison, and within all Mass. D.O.C. Prisons.

"Brief description of events": As a member of D.O.C. Religious Services Review Committee, defendant, John Marshall, in February, March, and May 2006 and April 2007, denied plaintiff's February and May 2006, Religious Services requests, to exercise the Religious way of Life of the 5%ers Gods and Earths to smoke cigarettes and/or tobacco products outdoors or in a designated area of the prisons; to receive conjugal visits as a fundamental right of marital privacy in the exercise of his religion of the 5%ers Gods and Earths; and to listen to the religious music, songs, proverbs, and messages of the 5%ers Gods and Earths recording artists on walkman cassette players and cassette tapes. Defendant Marshall have also approved rules, regulations, procedures, programs and policies to deny and deprive plaintiff the privileges and rights to smoke cigarettes and/or tobacco products outdoors or in a designated area of the prisons in accord with a state created right; adequate food; adequate clothes; idle work-program pay; inmate representation through inmate organizations called the N.A.A.C.P. and I.L.C.; relief from double bunking by race with inadequate space; conjugal visits and free transportation for relatives and friends to visit him in a family reunion program similar to NYSDOCS; walkman cassette players and cassette tapes to listen to religious music, educational, and free speech information; relief from discrimination due to poverty in the in-cell 13" color T.V. program; men pornographic magazines of Playboy, Penthouse, Hustler, and Players; relief from discriminatory

-8-

inmate grievance decisions due to lack of Master Index record of prior decisions and inmate representatives similar to NYSDOCS; protection without punishment by S.M.U. restrictions because of not having a bona fide protective custody program; safe prison enviroment and protection from violence from other inmates by seat-by-line procedures in the prisons messhalls to prevent inmate gangs, races, and other illegal inmate groups from exercising authority and control over plaintiff by claiming ownership to messhall tables and threatening and assaulting plaintiff to prevent plaintiff from eating at messhall tables; security correction officers patrolling the yards and all recreation areas in and outside of prison buildings; mandatory criminal charges with maximum disciplinary sanctions for inmate-on-inmate assaults and initiated fights between inmates to discourage violence and create a safe prison enviroment to which plaintiff has a right and for which the defendant, John Marshall, has a duty to provide him.

E. Defendant: Veronica M. Madden

"Cause of Action": Associate Commissioner, Veronica M. Madden, planned and directed illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L. c. 124 sec. 1(e)(l)(q);

-9-

M.G.L. c. 127 sec. 32, and in violation of Plaintiff's 1st, 8th, and 14th Amendment Rights.

"Date of Action": From Sept. 17, 2004 to 2006 on to the present date of 2007.

"Place of Action": Concord Prison; Cedar Junction Prison; Norfolk Prison; Souza-Baranowski Prison, and within all Mass. D.O.C. Prisons.

"Brief description of events": As a member of D.O.C. Religious Services Review Committee, defendant, Veronica M. Madden, in February, March, and May 2006 and April 2007, denied Plaintiff's February and May 2006, Religious Services Requests, to exercise the Religious way of life of the 5%ers Gods and Earths to smoke cigarettes and/or tobacco products outdoors or in a designated area of the prisons; to receive conjugal visits as a fundamental right of marital privacy in the exercise of his Religion of the 5%ers Gods and Earths; and to listen to the Religious Music, Songs, Proverbs, and Messages of the 5%ers Gods and Earths Recording Artists on Walkman cassette players and cassette tapes. Defendant Madden have also approved Rules, Regulations, Procedures, Programs and policies to deny and deprive Plaintiff the privileges and Rights to smoke cigarettes and/or tobacco products outdoors or in a designated area of the prisons in accord with a state-created right; adequate food; adequate clothes; Idle work-program pay; Inmate Representation through Inmate organizations called the N.A.A.C.P. and I.L.C.; Relief from double bunking by Race with inadequate space; conjugal visits and free

TRANSPORTATION FOR RELATIVES AND FRIENDS
to VISIT him IN A FAMILY REUNION PROGRAM
SIMILAR to NYSDOCS; WALKMAN CASSETTE
PLAYERS AND CASSETTE TAPES to LISTEN to
RELIGIOUS MUSIC, EDUCATIONAL, AND FREE
SPEECH INFORMATION; RELIEF FROM DISCRIMI-
NATION due to POVERTY IN the IN-CELL 13"
COLOR T.V. PROGRAM; MEN PORNOGRAPHIC
MAGAZINES OF PLAYBOY, PENTHOUSE, HUSTLER,
AND PLAYERS; RELIEF FROM DISCRIMINATORY
INMATE GRIEVANCE DECISIONS DUE to LACK OF
MASTER INDEX RECORD OF PRIOR DECISIONS AND
INMATE REPRESENTATION SIMILAR to NYSDOCS;
PROTECTION WITHOUT PUNISHMENT BY S.M.U.
RESTRICTIONS BECAUSE OF NOT HAVING A BONA
FIDE PROTECTIVE CUSTODY PROGRAM; SAFE PRISON
ENVIRONMENT AND PROTECTION FROM VIOLENCE
FROM OTHER INMATES BY SEAT-BY-LINE
PROCEDURES IN the PRISONS MESSHALLS to
PREVENT INMATE GANGS, RACES, AND OTHER
ILLEGAL GROUPS FROM EXERCISING AUTHORITY
AND CONTROL OVER PLAINTIFF BY CLAIMING
OWNERSHIP to MESSHALLS TABLES AND
THREATENING AND ASSAULTING PLAINTIFF to
PREVENT PLAINTIFF FROM EATING AT MESSHALL
TABLES; SECURITY CORRECTION OFFICERS
PATROLLING the YARDS AND ALL RECREATION
AREAS IN AND OUTSIDE OF PRISON BUILDINGS;
MANDATORY CRIMINAL CHARGES WITH MAXIMUM
DISCIPLINARY SANCTIONS FOR INMATE-ON-
INMATE ASSAULTS AND INITIATED FIGHTS BETWEEN
INMATES to DISCOURAGE VIOLENCE AND CREATE
A SAFE PRISON ENVIRONMENT to WHICH
PLAINTIFF HAS A RIGHT AND FORWHICH the
DEFENDANT, VERONICA M. MADDEN, HAS A
DUTY to PROVIDE HIM.

F. Defendant: Ronald T. Duval

"Cause of Action": Assistant Deputy Commissioner, Ronald T. Duval, planned and directed illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L. c. 124 sec. 1(c)(L)(Q); M.G.L. c. 127 sec. 32; and in violation of plaintiff's 1st, 8th, and 14th Amendment Rights.

"Date of Action": From Sept. 17, 2004 to 2006 on to the present date of 2007.

"Place of Action": Concord Prison; Cedar Junction Prison; Norfolk Prison; Souza-Baranowski Prison, and within all Mass. D.O.C. Prisons.

"Brief description of events": As a member of D.O.C. Religious Services Review Committee, defendant, Ronald T. Duval, in February, March and May 2006 and April 2007, denied plaintiff's February and May 2006, Religious Services Requests to exercise the religious way of life of the 5%ers Gods and Earths to smoke cigarettes and/or tobacco products outdoors or in a designated area of the prisons; to receive conjugal visits as a fundamental right of marital privacy in the exercise of his religion of the 5%ers Gods and Earths; and to listen to the religious music, songs, proverbs, and messages of the 5%ers Gods and Earths recording artists on Walkman

CASSETTE PLAYERS AND CASSETTE TAPES. DEFENDANT, DUVAL, have ALSO APPROVED Rules, REGULATIONS, PROCEDURES, PROGRAMS AND policies to deny AND deprive plaintiff the privileges AND Rights to smoke cigarettes AND/OR tobacco products outdoors OR IN A designated AREA of the PRISONS IN Accord with his state CREATED Right; Adequate food; Adequate clothes; Idle-work PROGRAM PAY; INMATE REPRESENTATION through INMATE ORGANIZATIONS CALLED the N.A.A.C.P. AND I.L.C.; Relief FROM double bunking by RACE with iNAdequate space; CONJUGAL VISITS AND FREE TRANSPORTATION FOR RELATIVES AND friends to visit him IN A FAMILY REUNIOUN PROGRAM similar to NYSDOCS; WALKMAN CASSETTE PLAYERS AND CASSETTE tapes to LISTEN to Religious music, educational, AND FREE speech INFORMATION; Relief FROM discrimiNATION due to poverty IN the IN-CELL 13" COLOR T.V. PROGRAM; men PORNOGRAPHIC MAGAZINES of PLAYBOY, PENT-house, HUSTLER, AND PLAYERS; Relief FROM discriminatory INMATE GRIEVANCE decisions due to LACK of MASTER Index Record of PRIOR decisions AND INMATE REPRESENTATIVES similar to NYSDOCS; PROTECTION without puNISHMENT by S.M.U. RESTRICTIONS because of NOT HAVING A boNA fide PROTECTIVE custody PROGRAM; SAFE PRISON ENVIROMENT AND PROTECTION FROM VIOLENCE FROM other INMATES by seat-by-line procedures IN the PRISONS messhalls to prevent INMATE GANGS, RACES, AND other illegal groups FROM EXERCISING AuthoRity AND CONTROL OVER plaintiff by

claiming ownership to messhalls tables and threatening and assaulting plaintiff to prevent plaintiff from eating at messhall tables; security correction officers patrolling the yards and all recreation areas in and outside of prison buildings; mandatory criminal charges with maximum disciplinary sanctions for inmate-on-inmate assaults and initiated fights between inmates to discourage violence and create a safe prison enviroment to which plaintiff has a right and for which the defendant, RONALD T. DUVAL, has a duty to provide him.

6. Defendant: Kristie Ladouceur

"Cause of Action:" Department Grievance Coordinator, Kristie Ladouceur, sustains illegal punitive program policies to punish plaintiff for being committed to D.O.C.; by the deprivation and denial of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L. c.124 sec. 1(e)(L)(Q); M.G.L. c.127 sec. 32; and in violation of plaintiff's 1st, 8th, and 14th amendment rights.

"Date of Action": From Sept. 17, 2004 to 2006 on to the present date of 2007.

"Place of Action": Concord Prison; Cedar Junction Prison; Norfolk Prison; Souza-Baranowski Prison, and within all Mass. D.O.C. Prisons.

"Brief description of events": Denied plain-
tiff's requests and inmate grievances on
March 3, 2005; June 2005; July 2005; July
28, 2005; August 3, 2005; August 11, 2005;
August 12, 2005; September 26, 2005; October
19, 2005; October 31, 2005; November 18, 2005;
November 22, 2005; December 28, 2005; January
5, 2006; February 22, 2006; April 3, 2006;
September 7, 2006; September 8, 2006; October
4, 2006; July 17, 2006; January 22, 2007;
March 19, 2007, and June 1, 2007, to smoke
cigarettes and/or tobacco products outdoors
or in a designated area of the prisons in the
exercise of his 5Ber religious way of life and
State created right; adequate food; adequate
clothes; idle work-program pay; inmate
representation through inmate organizations
called the N.A.A.C.P. and I.L.C.; relief from
double bunking by race with inadequate
space; conjugal visits and free transportation
for relatives and friends to visit him in a
family reunion program similar to NYSDOCS;
walkman cassette players and cassette tapes
to listen to religious music, educational,
and free speech information; relief from
discrimination in the in-cell 13" color T.V.
program due to poverty; men pornographic
magazines of Playboy, Penthouse, Hustler,
and Players; relief from discriminatory
inmate grievance decisions due to lack of
master index record of prior decisions and
inmate representatives similar to NYSDOCS;
protection without punishment by S.M.U.
restrictions because of not having a bona
fide protective custody program; safe prison
enviroment and protection from violence
from other inmates by seat-by-line procedures

in the Prison messhalls to prevent inmate gangs, races, and other illegal inmate groups from exercising authority and control over plaintiff by claiming ownership to messhall tables and threatening and assaulting plaintiff to prevent plaintiff from eating at messhall tables; security correction officers patrolling the yards and all recreation areas in and outside of prison buildings; mandatory criminal charges with maximum disciplinary sanctions for inmate-on-inmate assaults and initiated fights between inmates to discourage violence and create a safe prison enviroment to which plaintiff has a right and forwhich the defendant, Kristie Ladouceur, had the authority and duty to provide him through her inmate grievance decisions.

## H. Defendant: Peter Pepe

"Cause of Action": Superintendent, Peter Pepe, at Concord Prison, administered illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L. c.124 Sec.1(c)(x)(c); M.G.L. c.127 Sec. 32; and in violation of plaintiff's 1st, 8th, and 14th amendment rights.

"Date of Action": From Sept. 17, 2004 to January 27, 2005.

"Place of Action": Concord Prison;

"Brief description of events": Defendant, Peter Pepe, Administered Rules, Regulations, procedures, programs And policies to deny And deprive plaintiff the privileges And rights to smoke cigarettes And/or tobacco products outdoors or in A designated AREA of Concord Prison in Accord with his Religious way of life of the 5%ers Gods And EARths And in Accord with his state created created Right; Adequate food; Adequate clothes; Idle work Program Pay; Inmate Representation through Inmate Organizations called the N.A.A.C.P. And I.L.C.; Relief from double bunking by Race with inadequate space; Conjugal visits And free transportation for Relatives And friends to visit him in A family Reunion Program similar to NYSDOCS; Walkman cassette players And cassette tapes to listen to Religious music, educational, And free speech information; Relief from discrimination due to poverty in the in-cell 13" Color T.V. Program; Men pornographic magazines of Playboy, Penthouse, Hustler, And Players; Relief from discriminatory inmate grievance decisions due to lack of Master Index Record of prior decisions And inmate representatives similar to NYSDOCS; protection without punishment by S.M.U. Restrictions because of not having A bona fide protective custody Program; Safe prison environment And protection from violence from other inmates by seat-by-line procedures in the Concord Prison messhalls to prevent inmates gangs, Races, And other illegal inmate groups from exercising Authority And control over plaintiff by claiming ownership to messhall tables And threatening And assaulting plaintiff to prevent plaintiff

from eating At messhall Tables; security
correction officers patrolling the yards And
All recreation areas in and outside of prison
buildings; mandatory criminal charges with
maximum disciplinary sanctions for inmate—
on-inmate assaults And iniated fights
between inmates to discourage violence
And create A safe prison enviroment to
which plaintiff has A Right And for which the
defendant, Peter Pepe, had the Authority And
duty to provide him.

## I. Defendant: David Nolan

"Cause of Action":  Superintendent, David
Nolan, At Cedar Junction And Norfolk Prison's
R.B.; Administered illegal punitive program
policies to punish plaintiff for being committed
to D.O.C.; by the deprivation and denial of
ordinary prisoner rights, privileges And
immunities pursuant to a pattern or practice
in violation of Title 42 USCA 1997a; M.G.L.c.
124 sec. 1(e)(l)(Q); M.G.L.c. 127 sec. 32, And in
violation of plaintiff's 1st, 8th, And 14th Amend-
ment Rights.

"Date of Action": From Jan. 27, 2005 to December
2005.

"Place of Action": Cedar Junction Prison And
Norfolk Prison.

"Brief description of events":  Defendant, David
Nolan, denied plaintiff's inmate Grievances
on June 8, 2005, July 28, 2005, July 31, 2005,
August 3, 2005, August 11, 2005, August 12, 2005,
And August 17, 2005, And Administered Rules,
Regulations, procedures, programs And policies
to deprive And deny plaintiff's privileges And

18.

Rights to smoke cigarettes and/or tobacco products outdoors or in a designated area of Cedar Junction and Norfolk Prison's R.B. in accord with his Religious way of life of the 5%ers Gods and Earths and in accord with his state created Right; Adequate Food; Adequate clothes; Idle work program pay; Inmate Representation through Inmate organizations called the N.A.A.C.P. and I.L.C.; Relief from double bunking by Race with inadequate space; conjugal visit and free transportation for Relatives and Friends to visit him in a family Reunion program similar to NYSDOCS; walkman cassette players and cassette tapes to listen to Religious music, educational, and free speech information; Relief from discrimination in the in-cell color T.V. program due to poverty; men pornographic magazines of Playboy, Penthouse, Hustler, and Players; Relief from discriminatory inmate grievance decisions due to lack of master index record of prior decisions and inmate Representatives similar to NYSDOCS; protection without punishment by S.M.U. Restrictions because of not having a bona fide protective custody program; safe prison environment and protection from violence from other inmates by seat-by-line procedures in the Cedar Junction prison messhalls to prevent gangs, Races, and other illegal inmate groups from exercising authority and control over plaintiff by claiming ownership to messhall tables and threatening and assaulting plaintiff to prevent plaintiff from eating at messhall tables; security correction officers patrolling the yards and all Recreation areas in and outside of prison buildings; mandatory criminal charges with maximum disciplinatory

SANCTIONS FOR INMATE-ON-INMATE ASSAULTS AND INITIATED FIGHTS BETWEEN TO DISCOURAGE VIOLENCE AND CREATE A SAFE PRISON ENNIRO- MENT TO WHICH PLAINTIFF HAS A RIGHT AND FOR WHICH THE DEFENDANT, DAVID NOLAN, HAD THE AUTHORITY AND DUTY TO PROVIDE HIM.

I.(1). DEFENDANT: LUIS SPENCER

"CAUSE OF ACTION": SUPERINTENDENT, LUIS SPENCER, AT NORFOLK PRISON, ADMINISTERED ILLEGAL PUNITIVE PROGRAM POLICIES TO PUNISH PLAINTIFF FOR BEING COMMITTED TO D.O.C., BY THE DEPRIVATION AND DENIAL OF ORDINARY PRISONER RIGHTS, PRIVILEGES AND IMMUNITIES PURSUANT TO A PATTERN OR PRACTICE IN VIOLATION OF TITLE 42 USCA 1997a; M.G.L. c. 124 sec. 1 (e) (L)(@); M.G.L.c. 127 sec. 32, AND IN VIOLATION OF PLAINTIFF'S 1st, 8th, AND 14th AMENDMENT RIGHTS.

"DATE OF ACTION": FROM SEPTEMBER 2005 TO DECEMBER 28, 2005, ON TO JANUARY 5, 2006.

"PLACE OF ACTION": NORFOLK PRISON AND SOUZA- BARANOWSKI PRISON.

"BRIEF DESCRIPTION OF EVENTS": DEFENDANT, LUIS SPENCER, DENIED PLAINTIFF'S INMATE GRIEVANCES ON DECEMBER 28, 2005 AND JANUARY 5, 2006 AND ADMINISTERED RULES, REGULATIONS, PROCE- DURES, PROGRAMS AND POLICIES TO DEPRIVE AND DENY PLAINTIFF'S PRIVILEGES AND RIGHTS TO SMOKE CIGARETTES AND/OR TOBACCO PRODUCTS OUTDOORS OR IN A DESIGNATED AREA OF NORFOLK PRISON IN ACCORD WITH HIS RELIGIOUS WAY OF LIFE OF THE 5%ers GODS AND EARTHS AND IN ACCORD WITH HIS STATE CREATED RIGHT; ADEQUATE FOOD; ADEQUATE

clothes; Idle work program pay; Inmate
Representation through Inmate organizations
called the N.A.A.C.P. and I.L.C.; Relief from
double bunking by Race with inadequate
space; conjugal visits and free transportation
for Relatives and friends to visit him in a
family Reunion Program similar to NYSDOCS;
WALKMAN cassette players and cassette tapes
to listen to Religious music, educational,
and free speech information; Relief from
discrimination in the in-cell 13" Color T.V.
Program; men pornographic magazines of
Playboy, Penthouse, Hustler, and Players;
Relief from discriminatory inmate grievance
decisions due to Lack of Master Index Record
of prior decisions and inmate Representatives
similar to NYSDOCS; protection without punish-
ment by S.M.U. Restrictions because of not
having a bona fide protective custody program;
safe prison enviroment and protection from
vidence from other inmates by seat-by-line
procedures in the Norfolk prison messhalls
to prevent inmate gangs, races, and other
illegal inmate groups from exercising
authority and control over plaintiff by
claiming ownership to messhall tables and
threatening and assaulting plaintiff to
prevent plaintiff from eating at messhall
tables; security correction officers patrolling
the yards and all recreation areas in and
outside of prison buildings; mandatory criminal
charges with maximum disciplinary sanctions
for inmate-on-inmate assaults and iniated
fights between inmates to discourage violence
and create a safe prison enviroment to
which plaintiff has a Right and for which the
defendant, Luis Spencer, had the authority
and duty to provide him.

J. Defendant: Daniel Sullivan

"Cause of Action": Institution Grievance Coordinator, Daniel Sullivan, at Cedar Junction Prison, sustained illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L.C. 124 sec. 1 (e)(L)(q); M.G.L.c.127 sec. 32, and in violation of plaintiff's 1st, 8th, and 14th amendment rights.

"Date of Action": From January 27, 2005 to September 2005.

"Place of Action": Cedar Junction Prison.

"Brief description of events": Denied plaintiff's inmate grievances on May 30, 2005 and July 11, 2005, to smoke cigarettes and/or tobacco products outdoors or in a designated area of Cedar Junction Prison in the exercise of his 5%er Religious way of life and state created right; Adequate food; Adequate clothes; Idle work-program pay; Inmate representation through inmate organizations called the N.A.A.C.P. and I.L.C.; Relief from double bunking by race with inadequate space; Conjugal visits and free transportation for relatives and friends to visit him in a family reunioun program similar to NYSDOCs; Walkman cassette players and cassette tapes to listen to religious music, educational, and free speech information; Relief from discrimination in the in-cell 13" color T.V. program due to poverty; men pornographic

Magazines of Playboy, Penthouse, Hustler, and Players; relief from discriminatory grievance decisions due to lack of master index record of prior decisions and inmate representatives similar to NYSDOCS; protection without punishment by S.M.U. restrictions because of not having a bona fide protective custody program; safe prison enviroment and protection from violence from other inmates by seat-by-line procedures in the Cedar Junction prison mess-halls to prevent inmate gangs, races, and other illegal groups from exercising authority and control over plaintiff by claiming owner-ship to messhall tables and threatening and assaulting plaintiff to prevent plaintiff from eating at messhall tables; security correction officers patrolling the yards and all recreation areas in and outside of prison buildings; mandatory criminal charges with maximum disciplinary sanctions for inmate-on-inmate assaults and initiated fights between inmates to discourage violence and create a safe prison enviroment to which plaintiff has a right and for which the defendant, Daniel Sullivan, had the authority and duty to provide him through decisions on his inmate grievances.

K. Defendant: Kimberly Kenney

"Cause of Action": Institution grievance coordinator, Kimberly Kenney, at Norfolk Prison, sustained illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges and immunities pursuant to a pattern or practice

in violation of Title 42 USCA 1997a; M.G.L.C.
124 sec. 1(e)(L)(a); M.G.L.C. 127 sec. 32, and in
violation of plaintiff's 1st, 8th, and 14th amend-
ment rights.

"Date of Action": September 2005 to January
5, 2006.

"Place of Action": Norfolk Prison.

"Brief description of events": Denied Plaintiff's
Inmate Grievances on December 7, 2005; December
8, 2005, and December 16, 2005, to smoke
cigarettes and/or tobacco products outdoors or
in a designated area of the prison in the exercise
of his 5%er religious way of life and state
created right; Adequate food; Adequate clothes;
Idle work program pay; Inmate representation
through Inmate organizations called the N.A.A.C.P.
and I.L.C.; Relief from double bunking by race
with inadequate space; conjugal visits and free
transportation for relatives and friends to visit
him in a family reunion program similar to
NYSDOCS; Walkman cassette player and cassette
tapes to listen to religious music, educational,
and free speech information; Relief from
discrimination in the in-cell 13" color T.V.
program due to poverty; men pornographic
magazines of Playboy, Penthouse, Hustler,
and Players; Relief from discriminatory inmate
grievances decisions due to lack of master
index record of prior decisions and inmate
representatives similar to NYSDOCS; Protection
without punishment by S.M.U. restrictions
because of not having a bona fide protective
custody program; safe prison environment and
and protection from violence from other from

-24-

other inmates by seat-by-line procedures in the NORFOLK PRISON MESSHALLS to prevent inmates gangs, races, and other illegal inmate groups from exercising authority and control over plaintiff by claiming ownership to messhall tables and threatening and assaulting plaintiff to prevent plaintiff from eating at messhall tables; Security correction officers patrolling the yards and all recreation areas in and outside of prison buildings; mandatory criminal charges with maximum disciplinary sanctions for inmate-on-inmate assaults and initiated fights between inmates to discourage violence and create a safe prison enviroment to which plaintiff has a right and for which the defendandant, Kimberly Kenney, had the authority and duty to provide him through her grievance decisions.

L. Defendant: Lois Russo

"Cause of Action": Superintendent, Lois Russo, at Souza-Baranowski prison, administered illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L.c. 124 sec. 1 (e)(L)(Q); M.G.L.c. 127 sec. 32, and in violation of plaintiff's 1st, 8th, and 14th amendment rights.

"Date of Action": December 2005 through 2006 until May 2007.

-25-

"PLACE OF ACTION": Souza-Baranowski Prison.

"Brief description of events": Denied Plaintiff's Religious Services Request and Inmate Grievances in Feburary 2006; May 2006; August 2, 2006; August 14, 2006; September 14, 2006; January 17, 2007, And May 15, 2007, to Smoke Cigarettes And/or tobacco products outdoors or in a designated area of the Prison in the exercise of his 5%er Religious way of life and State created Right; to receive conjugal visits as a fundamental Right of marital privacy in the exercise of his Religion of the 5%ers Gods and Earths; to listen to the Religious Music, Songs, Proverbs and Messages of the 5%ers Gods and Earths Recording Artists on Walkman cassette player and cassette tapes; And administered Rules, Regulations, procedures, programs and policies to deprive and deny Plaintiff Adequate Food; Adequate clothes; Idle work-program pay; Inmate Representation through Inmate organizations called the N.A.A.C.P. and I.L.C.; Relief from double bunking by Race with inadequate space; Conjugal visits and free transportation for Relatives and friends to visit him in a Family Reunion program similar to NYSDOCS; Walkman cassette player and cassette tapes to listen to Religious Music, educational, and free speech information; Relief from discrimination in the in-cell 13" color T.V. program due to poverty; Men pornographic magazines of Playboy, Penthouse, Hustler, and Players; Relief from discriminatory inmate grievance decisions due to lack of Master Index Record of prior decisions and inmate representatives similar to NYSDOCS; Protection without

-26-

punishment by S.M.U. Restrictions because of not having a bona fide protective custody program; safe prison enviroment and protection from violence from other inmates by seat-by-line procedures in the Souza-Baranowski prison messhalls to prevent inmate gangs, races, and other illegal inmate groups from exercising authority and control over plaintiff by claiming ownership to messhall tables and threatening and assaulting plaintiff to prevent plaintiff from eating at messhall tables; security correction officers patrolling the yards and all recreation areas in and outside of prison buildings; mandatory criminal charges with maximum disciplinary sanctions for inmate-on-inmate assaults and iniated fights between inmates to discourage violence and create a safe prison enviroment to which plaintiff has a right and forwhich the defendant, Lois Russo, had the authority and duty to provide him.

M. Defendant: John Marshall, Jr.

"Cause of Action": Acting Superintendent, John Marshall, Jr., at Cedar Junction Prison, administered illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L.c. 124 sec. 1(e)(L)(Q); M.G.L.c. 127 sec. 32, and in violation of plaintiff's 1st, 8th, and 14th amendment rights.

"Date of Action": August 2005 unto December 2006, and on to April 3, 2006.

-27-

"PLACE OF ACTION": CEDAR JUNCTION PRISON AND NORFOLK PRISON'S R. B. AND SOUZA-BARANOWSKI PRISON.

"Brief description of events:" Defendant, Acting Superintendent, John MARSHALL, JR., denied PLAINTIFF'S INMATE GRIEVANCES ON October 31, 2005 AND APRIL 3, 2006, AND Administered Rules, Regulations, Procedures, PROGRAMS AND policies to deprive And deny plaintiff's Privileges And Rights to smoke cigarettes And/or tobacco products outdoors OR IN A designated AREA of cedar Junction PRISON AND NORFOLK PRISON'S R. B. IN ACCORD with his Religious way of life of the 5%ers Gods And EARTHS AND IN ACCORD with his state created Right; Adequate food; Adequate clothes; Idle work PROGRAM PAY; INMATE REPRESENTATION through INMATE ORGANIZATIONS called the N.A.A.C.P. And I.L.C.; Relief from double bunking by RACE with inadequate space; conjugal visits And free TRANSPORTATION FOR RELATIVES AND friends to visit him IN A fAMILY REUNION PROGRAM similar to NYSDOCS; WALKMAN CASSette PLAYER And CASSettes to listen to Religious music, educational, And free speech inFORMATION; Relief from discrimination IN the IN-cell color T.V. PROGRAM due to POVERTY; MEN PORNOGRAPHIC mAGAZINES of playboy, Penthouse, Hustler, And PLAYERS; Relief from discriminatory inmate grievance decisions due to lack of master Index Record of PRIOR decisions And inmate Representatives similar to NYSDOCS; PROTECTION without punishment by S.M.U. RestRictions because of Not having A bona fide PROTECTIVE Custody PROGRAM; SAFE PRISON ENVIROMENT AND protection FROM violence from other inmates by seat-by-LINE PROCEDURES in the CEDAR

-28-

Junction Prison messhalls to prevent inmate gangs, races, and other illegal inmate groups from exercising authority and control over plaintiff by claiming ownership to messhall tables and threatening and assaulting plaintiff to prevent plaintiff from eating at messhall tables; Security Correction Officers patrolling the yards and all Recreation areas in and outside of Prison buildings; Mandatory criminal charges with maximum disciplinary sanctions for inmate-on-inmate assaults and initiated fights between inmates to discourage violence and create a safe Prison enviroment to which plaintiff has a Right and for which the defendant, John Marshall, JR., had the authority and duty to provide him. Defendant, John Marshall, JR., Refused to file criminal charges against inmate Thomas Delacruz for a felonious assault on plaintiff with a weapon on July 28, 2005, under Mass. Gen. Law c. 127 sec. 38-C, even after being directed to do so by the States Assistant Attorney General.

N. Defendant: John Luongo, JR.

"Cause of Action": Deputy Superintendent, John Luongo, JR., of Cedar Junction Prison, administered illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L.c. 124 sec. 1 (e)(L)(Q); M.G.L.c. 127 sec. 32, and in violation of plaintiff's 1st, 8th, and 14th Amendment Rights.

"Date of Action": January 2005 unto December 2005.

"Place of Action": Cedar Junction Prison and Norfolk Prison's R.B.

"Brief description of events": Deputy Superintendent, John Luongo, Jr., administered rules, regulations, procedures, programs and policies to deprive and deny plaintiff's privileges and rights to smoke cigarettes and/or tobacco products outdoors or in a designated area of the prison in accord with his religious way of life of the 5%ers Gods and Earths and in accord with his state created right; adequate food; adequate clothes; idle work-program pay; inmate representation through inmate organizations called the N.A.A.C.P. and I.L.C.; relief from double bunking by race with inadequate space; conjugal visits and free transportation for relatives and friends to visit him in a family reunion program similar to NYSDOCS; walkman cassette player and cassettes to listen to religious music, educational and free speech information; relief from discrimination in the in-cell color T.V. program due to poverty; men pornographic magazines of Playboy, Penthouse, Hustler and Players; relief from discriminatory inmate grievance decisions due to lack of master index record of prior decisions and inmate representatives similar to NYSDOCS; protection without punishment by S.M.U. restrictions because of not having a bona fide protective custody program; safe prison environment and protection from violence from other inmates by sept-by-line procedures in the prison messhalls to prevent inmate gangs, races,

-30-

AND other illegal inmate groups from exercising
Authority And control over plaintiff by claiming
ownership to messhall tables and threatening
And assaulting plaintiff to prevent plaintiff
from eating At messhall tables; security
correction officers patrolling the yards and all
recreation areas in and outside of prison
buildings; mandatory criminal charges with
maximum disciplinary sanctions for inmate-
on-inmate assaults and initiated fights
between inmates to discourage violence and
create a safe prison environment to which
plaintiff has a right and for which the defen-
dant, John Luongo, Jr., had the authority and
duty to provide him. Defendant, John Luongo,
Jr., also refused to file criminal charges
against Thomas DelaCruz for assaulting
the plaintiff, feloniously with a weapon on
July 28, 2005. He refused to do so because
inmate 'DelaCruz' was an Italian Like him.
The criminal charges were mandated under
Mass. Gen. Law c. 127 sec. 38-c.


## O. Defendant: DARRIN C. PAYNE

"Cause of Action": Correction officer, Darrin
C. Payne, At Cedar Junction Prison, Administered
And enforced illegal punitive program policies
to punish plaintiff for being committed to D.O.C.
by the deprivation and denial of ordinary
prisoner rights, privileges and immunities
pursuant to a pattern or practice in violation
of Title 42 USCA 1997a; M.G.L. c. 124 sec. 1(e)
(L) (Q); M.G.L. c. 127 sec. 32, and in violation
of plaintiff's 1st, 8th, and 14th Amendment Rights.

"Date of Action": July 28, 2005, and from January 27, 2005 to September 2005.

"Place of Action": Cedar Junction Prison.

"Brief description of events": Darrin C. Payne was assigned to patrol the main recreation yard at Cedar Junction Prison on July 28, 2005, between 9 to 11:15 A.M. However, correction officer, Darrin C. Payne, nor any other correction officer, would patrol the main yard. Instead, officer Payne and other unknown correction officers remained inside of the prison's building in the East Wing. This is because the policy and procedure given to officer Payne and other correction officers from superintendent, David Nolan, Acting superintendent John Marshall, Jr., and deputy superintendent, John Luongo, Jr., which they administer to operate the prison from the planning and directions of deputy and assistant deputy commissioners, Bender, Hall, John Marshall, Madden, Duval, and approval of Commissioner Dennehy, does not require correction officer, Darrin C. Payne and any other correction officers, to patrol the recreation yards during inmate recreation and neither does it require them to enforce a seat-by-line procedure to ensure inmate safety in

the prison messhalls. The Correction officers are directed by policy and procedure, to stay inside of the prison's buildings when inmates are let out for recreation in the prison yards. Consequently, Correction Officer, Darrin C. Payne and other unknown named officers either neglected or were not allowed to patrol the yards. In either event, and as a result, plaintiff was approached and assaulted with a weapon by another inmate named Thomas Delacruz, on this morning of July 28, 2005, and sustained serious physical injuries to his head, face, fractured nose and a stabb wound laceration on the left side of his face and other related injuries which required hospitalization at Norword Hospital and surgery by Doctor Geller, from which he received sutures or stitches on the lacerated stabb wound, and packagings on his head, face, and nose. The assault and injuries the plaintiff sustained, could have been prevented if Correction officer Darrin C. Payne and other unknown named officers had not neglected their duty of patrolling the yard and/or if the commissioner, Deputy and Assistant Deputy Commissioners, superintendents and Deputy superintendent had promulgated and implemented a rule and regulation which required the correction officers to provide inmates safety by patrolling

the yARds ANd All RecReAtioN AReAs duRiNg
iNmAte RecReAtioN.

Not oNly hAS CoRRectioN officeR, DARRiN
C. PAyNe, depRived ANd deNies plAiNtiff
All of the foRegoiNg Rights, pRivileges,
ANd immuNities, thRough his AdmiNisteRiNg,
mANAgemeNt, ANd eNfoRcemeNts of D.O.C.'s
illegAl puNitive pRogRAm policies, but
CoRRectioN officeR, DARRiN C. PAyNe,
Neglected his duty to pRovide plAiNtiff
with sAfety iN the pRisoN's RecReAtioN
yARd.

P. Defendant: Scott Anderson

"Cause of Action": Deputy Superintendent for Classification, Scott Anderson, At Concord Prison, administered illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L.c. 124 sec. 1 (e)(l)(q); M.G.L.c. 127 sec. 32, and in violation of plaintiff's 1st, 8th and 14th amendment rights.

"Date of Action": September 17, 2004 unto January 27, 2005; and in December 2004.

"Place of Action": Concord Prison.

"Brief description of events": Defendant Anderson, in December 2004 and January 2005, denied plaintiff's requests for protective custody, and instead, increased plaintiff's classification from a level '4' to a level '6' and classified him to be transferred to Cedar Junction Prison, where Deputy Superintendent, Anderson, knew there was no protective custody program because the state does not have a bona fide protective custody program, and although there are protective custody quasi-semi satellite units, there were no such unit at Cedar Junction Prison. Consequently, once transferred to Cedar Junction Prison, plaintiff was punished for protection by the S.M.U. restrictions rather than protected. Plaintiff was also stigmatized, threatened by

-35-

Other inmates and assaulted by one of them at Cedar Junction. At Souza-Baranowski Prison, plaintiff is still being punished for protection by S.M.U. restrictions because the State does not have a bona fide protective custody program.

Q. Defendant: Karen DiNardo

"Cause of Action": Director of classification, Karen DiNardo, at Concord Prison, administered illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation of ordinary prisoner rights, privileges, and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L.C. 124 Sec. 1(e)(L)(q); M.G.L.C. 127 Sec. 32, and in violation of plaintiff's 1st, 8th, and 14th amendment rights.

"Date of Action": September 17, 2004 unto January 27, 2005, and in December 2004 and January 2005.

"Place of Action": Concord Prison.

"Brief description of events": Defendant, DiNardo, in December 2004 and January 2005, denied plaintiff's requests for protective custody, and instead, increased plaintiff's classification from a level '4' to a level '6' and classified him to be transferred to Cedar Junction Prison, where she knew there was no protective custody program because the State does not have a bona fide protective custody program, and although there are protective custody quasi-

-36-

semi satellite units, there were no such unit at Cedar Junction Prison. Consequently, once transferred to Cedar Junction Prison, plaintiff was punished for protection by the S.M.U. restrictions rather than protected. Plaintiff was also stigmatized, and threatened by other inmates and assaulted by one of them at Cedar Junction Prison. At Souza-Baranowski Prison, plaintiff is still being punished for protection by S.M.U. restrictions because the state does not have a bona fide protective custody program.

## R. Defendant: Stephen Pare

"Cause of Action": Correction officer, Stephen Pare, at Concord Prison, administered and enforced illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L. c. 124 sec. 1(e)(6) (Q); M.G.L. c. 127 sec. 32, and in violation of plaintiff's 1st, 8th, and 14th amendment rights.

"Date of Action": December 19, 2004 and from September 17, 2004 unto January 27, 2005.

"Place of Action": Concord MCI Prison Reception J-2 Unit.

"Brief description of events": Correction officer Pare, used unnecessary force and violence against plaintiff on J-2 reception unit at approximately 10:45 A.M. on December 19, 2004. In doing so, officer Pare denied

-37-

PLAINTIFF'S REQUEST FOR PROTECTION AND told
PLAINTIFF to Sit At one of the tAbles And wAit
AS All other inmAtes weRe locking-in to their
RACiAlly double bunked cells. officeR Stephen
PARe then told PLAINtiff to tAke All of his
pRopeRty he bRought with him out of the
RACiAlly double bunked cell And RetuRN to
his RACiAlly double bunked cell. PLAINtiff
Responded And told officeR PARe thAt he
could Not RetuRN to his RACiAlly double
bunked cell NoR RemAIN oN the unit becAuse
his Life would be iN dAngeR And he wAs iN
feAR foR his Life due to the NAtuRe of his
coNviction chARges oN A Sex offeNse And
becAuse he wAs RecogNized AS A PRotective
custody iNmAte fRom the BeRkshiRe couNty JAil.

CoRRection officeR, Stephen PARe, while
plaintiff wAs sitting At RecReAtion tAble,
And without ASking plaintiff to stAnd-up
tuRN ARound And be hAnd-cuffed, gRAbbed
plaintiff iN A heAdlock And bRought him to
the flooR And commenced to stRAngling the
plaintiff iN the heAdlock position with All
his might. At the sAme time officeR
mARtiN joined in the ASsAult And begAn
punching plaintiff iN the heAd, fAce, And

back with his fists and knees and stumped and slammed the left side of plaintiff's face and head into the floor, causing the stem of plaintiff's eye-glasses to break off into his LEFT-EYE, which caused plaintiff serious physical injuries to his LEFT-eye, face, head, neck, throat, and back. While being strangled breathless by Correctional Officer Stephen Pare and beaten by C.O. Martin, four other Correctional officers came on the unit, one of whom was Correction officer Dragone. Correction officer Dragone secretly rapped a black strap around my neck under my jacket collar and pulled me up off the floor using the black strap wrapped into my jacket collar and continued to strangle and choke me with it as he escorted me off the unit. He strangled me breathless with the black strap until I passed-out in the hallway. I miraculsly revived myself and the officers took me to the Health Services unit and IPS took pictures of my injuries. More than 50 inmates witnessed the assault by the officers against me which occured out on the open recreation floor of the J-2 Reception unit.

Not only has Correction officer, Stephen Pare, deprived and denied plaintiff all of the foregoing rights, privileges, and immunities, through his administering,

MANAGEMENT, AND ENFORCEMENTS OF D.O.C.'s illegal punitive PROGRAM policies, but CORRECTION OFFICER, Stephen PARE, HAS ALSO used UNNECESSARY FORCE AND VIOLENCE AGAINST the plaintiff IN AN Attempt to MURDER the plaintiff, AND IN doing SO, CAUSED the plaintiff SERIOUS physical INJURIES to plaintiff's throat, Neck, head, FACE, EYE, AND BACK FROM the headlock STRANGULATION.

## S. DEFENDANT: DRAGONE, C.O.

"CAUSE of ACTION": CORRECTION OFFICER, DRAGONE, At CONCORD PRISON, Administered And enforced illegal punitive program policies to punish plaintiff FOR being committed to D.O.C., by the deprivation of ORDINARY PRISONER Rights, privileges, And immunities pursuant to A PATTERN OR PRACTICE IN VIOLATION of Title 42 USCA 1997a; M.G.L. c. 124 sec. 1(e)(l)(Q); M.G.L.c. 127 sec. 32, AND IN VIOLATION OF PLAINTIFF'S 1st, 8th, And 14th Amendment Rights.

"DATE of ACTION": December 19, 2004 And FROM September 17, 2004 unto JANUARY 27, 2005.

"PLACE of ACTION: CONCORD PRISON, Reception J-2 UNIT AND HALLWAY.

-40-

"Brief description of events":

CORRECTION OFFICER DRAGONE ON J-2 RECEPTION UNIT AT CONCORD PRISON AT APPROXIMATELY 10:55 A.M. ON DEC. 19, 2004, JOINED IN AN ASSAULT WHICH WAS OCCURING AGAINST THE PLAINTIFF BY CORRECTION OFFICERS STEPHEN PARE AND MARTIN. IN DOING SO, CORRECTION OFFICER, DRAGONE SECRETLY RAPPED A BLACK STRAP AROUND PLAINTIFF'S NECK UNDER PLAINTIFF'S JACKET COLLAR AND PULLED PLAINTIFF UP OFF THE FLOOR USING THE BLACK STRAP WRAPPED AROUND PLAINTIFF'S NECK IN PLAINTIFF'S JACKET COLLAR AND CONTINUED TO STRANGLE AND CHOKE PLAINTIFF WITH THE BLACK STRAP AS HE ESCORTED PLAINTIFF OFF THE UNIT INTO THE HALLWAY. CORRECTION OFFICER DRAGONE STRANGLED ME, THE PLAINTIFF, BREATHLESS WITH THE BLACK STRAP UNTIL I PASSED OUT IN THE HALLWAY. I, THE PLAINTIFF, MIRACOUSLY REVIVED MYSELF AND THE OFFICERS

-41-

took me to the Health Services Unit And IPS took pictures of my injuries. As A Result of Correction Officer's Strangulation of me, I passed out in the hallway hitting the left side of my Head And Face of the Floor As I Fell, which caused even more injuries to my head And Face. I could not talk or swallow Food or drinks because my throat had been seriously injured from the strangulation of Officer Dragone. As I was reviving I heard A female officer named Shelly Williams ask Officer Dragone if I was dead yet. "Is he dead yet she said" And he Answered "he better be". I then came to full consciousness to their shock And Amazement. Therefore, plaintiff further states that Correction officers Stephen Bare, "Martin" And Correction officer Dragone had intended and attempted to murder him.

Not only has Correction Officer, Dragone, deprived And denied plaintiff all of the foregoing Rights, privileges, And immunities, through his Administering, Management, And Enforcements of D.O.C.'s illegal punitive program policies, but Correction Officer Dragone, also used unnecessary force And violence Against the plaintiff in an Attempt to murder the plaintiff, And in doing so, caused the plaintiff serious physical injuries.

T. Defendant: MARTIN

"Cause of Action": Correction officer, MARTIN, At Concord Prison, Administered and enforced illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation of ordinary prisoner rights, privileges and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a, M.G.L. c.124 Sec.1(e) (L) (g); M.G.L. c. 127 Sec. 32, And in violation of plaintiff's 1st, 8th, and 14th Amendment Rights.

"Date of Action": December 19, 2004 and from September 17, 2004 unto December 19, 2004 and on to January 27, 2005.

"Place of Action": Concord Prison, Reception Unit J-2.

"Brief description of events": Correction officer MARTIN, on J-2 Reception unit at Concord Prison at approximately 10:45 A.M. on December 19, 2004, joined in an assault which was occurring against plaintiff by correction officer Stephen Pare. In doing so, C.O. MARTIN began punching plaintiff in the head, face, and back with his fists and knees and stumped and slammed the left side of plaintiff's face and head into the floor, causing the stem of plaintiff's eye-glasses to break off into his left-eye, which caused plaintiff serious physical injuries to his left eye, face, head, neck, throat, and back. Plaintiff put up no resistance to officer

-43-

MARTIN AND PARE ATTACKS. At all times on the floor, plaintiff had his hands behind his back for the officers to handcuff him, but instead of putting handcuffs on plaintiff, Correction Officer, MARTIN, continued to beat on plaintiff until other officers arrived on the unit; one of whom put a black STRAPP around plaintiff's neck and pulled plaintiff off the floor using the black STRAP to strangle plaintiff. Not only has C.O. MARTIN deprived and denied plaintiff all of the foregoing Rights, privileges and immunities of ordinary prisoner Rights and privileges, but C.O. MARTIN also used unnecessary force and violence against the plaintiff in an attempt to murder the plaintiff; and in doing so, caused plaintiff serious physical injuries.

## U. Defendant: Ann Marie Aucion

"Cause of Action: Institution Grievance Coordinator, Ann Marie Aucion, at Cedar Junction Prison, sustained illegal punitive program policies to punish plaintiff for being committed to D.O.C., by the deprivation and denial of ordinary prisoner rights, privileges and immunities pursuant to a pattern or practice in violation of Title 42 USCA 1997a; M.G.L. c. 124 sec. 1(e)(L)(Q); M.G.L. c. 127 sec. 32, and in violation of plaintiff's 1st, 8th, and 14th amendment Rights.

"DATE OF ACTION": FROM JANUARY 27, 2005 UNTO September 2005, AND JUNE 28, 2005; July 1, 2005; July 13, 2005; July 15, 2005; August 3, 2005, AND August 19, 2005.

"PLACE OF ACTION": CEDAR Junction PRISON.

"Brief description of events": Denied plaintiff's INMATE GRIEVANCES to ① smoke cigarettes and/or tobacco products outdoors or in a designated AREA of the PRISON in the exercise of his Religious way of life of the 5%ers GodS and EARTHS and State created Right ② Adequate clothes; ③ Adequate food which fell far below the minimum of 2000 CALORIES PER dAY; ④ Idle work-PROGRAM PAY; ⑤ Representation and ASSOCIATION through INMATE organizations called the N.A.A.C.P. AND I.L.C.; ⑥ Conjugal visits and free transportation for Relatives and friends to visit him in a family REUNION PROGRAM similar to or the same AS NYSDOCS; ⑦ WALKMAN CASSette PLAYER and CASSette tapes to Listen to Religious music, educational and free speech INFORMATION; ⑧ Relief from discrimiNATION in the in-cell 13" COLOR T.V. PROGRAM due to poverty; ⑨ men PORNographic magazines of PLAYBOY, Penthouse, HUSTLER and PLAYERS; ⑩ Relief from discrimination in the Inmate grievance decision making process because of NOT having a "MASTER Index" of prior decisions upon which to base decisions and INMATE Representatives to participate in the REVIEW, investigation and decision making process on plaintiff's INMATE

GRIEVANCES SIMILAR to NYSDOCS; (11) Relief from double-bunking by RACE with inadequate space; (12) Protection without Punishment by S.M.U. Restrictions because D.O.C. does Not have A bona fide Protective Custody Program; (13) Seat-by-Line procedures in the messhalls of the Prisons to prevent inmates from exercising Authority and control over the messhall tables by gangs, RACE and other illegal inmate groups to threaten plaintiff with Violence and Assaulted plaintiff on July 28, 2005, to prevent plaintiff from eating at messhall tables; (14) Security correction officers patrolling the Prison yards and all recreation areas in or outside of Prison Buildings; (15) Relief of criminal charges against another inmate named Thomas DeLaCruz for Feloniously Assaulting plaintiff at Cedar Junction on July 28, 2005, with a weapon and monetary compensations for the injuries sustained; (16) Mandatory criminal charges with maximum disciplinary sanctions for inmate-on-inmate Assaults and initiated fights between inmates to discourage Violence Amongst inmates and create a safe prison enviroment to which plaintiff has a Right and forwhich the defendant, Ann Marie Aucion, had the authority and duty to provide plaintiff through her grievance decisions.

Dated:
_____ July 14, 2007.

Respectfully Submitted

Felipe Oteze Fowlkes

Felipe Oteze Fowlkes
#W84202: Pro Se
SBCC: P.O. Box 8000
Shirley, MA 01464

DECLARATION IN LIEU OF NOTARY: PURSUANT
to Title 28 USCA 1746:

"I SWEAR UNDER the PENALTY of PERJURY
that the foregoing DEFINITE Statement
on each defendant is true And Correct."

EXECUTED ON: <u>July 14, 2007</u>

SIGNATURE:

<u>Felipe Oteze Fowlkes</u>
Felipe OTEZE FOWLKES
PLAINtiFF, PRO Se
#W84202
SOUZA-BARANOWSKI PRISON
P.O. Box 8000
ShiRLey, MA 01464

-47-

# CERTIFICATE OF SERVICE

I, the PLAINTIFF, Felipe OTeze FowLkes, PRO Se, do hereby certify that I have caused a true copy of the foregoing "definite statement on each defendant" to be served by prepaid First class mail on the defendants Attorney, DARYL F. GLAZER, D.O.C. Legal Division, 70 FRANKLIN street, Suite 600, Boston, MA 02110.

DATed:
July 14, 2007

Felipe OTeze FowLkes
Felipe OTeze FowLkes
#W84202
SBCC: P.O. Box 8000
ShiRLEY, MA 01464

-48-